[ORAL ARGUMENT NOT YET SCHEDULED]

**No. 25-5279**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, *On Their Own and On Behalf of Others Similarly Situated*,

*Plaintiffs-Appellees*,

v.

MARCO A. RUBIO, in his official capacity as Secretary of the United States Department of State, *et al.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court for the District of Columbia
No. 1:18-cv-1388 (Hon. Tanya S. Chutkan)

---

## JOINT APPENDIX

---

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JOSHUA A. CLEM
LARISSA K. JOHNSON
JAIME A. SCOTT
Trial Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I electronically filed the foregoing with the Clerk of the Circuit Court by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system. I further certify that I will cause seven paper copies of this appendix to be filed with the Court within two business days.

Respectfully submitted,

 /s/ Jaime A. Scott
Jaime A. Scott
Trial Attorney

## TABLE OF CONTENTS

Plaintiffs' Amended Complaint (Dkt. No. 23) ...................................................1–30

Memorandum Opinion on Motion to Dismiss (Dkt. No. 47) ...........................31–52

Order denying Motion to Dismiss (Dkt. No. 48)....................................................53

Defendants' Answer (Dkt. No. 50)...................................................................54–75

Memorandum Opinion on Summary Judgment (Dkt. No. 75)..........................76–94

Order granting in part and denying in part Summary Judgment for Plaintiffs,
Sept. 20, 2019 (Dkt. No. 76)...........................................................................95–96

Memorandum Opinion on Reconsideration (Dkt. No. 86)..............................97–102

Order denying Defendants' Motion for Reconsideration (Dkt. No. 87) ...............103

Memorandum Opinion on Class Certification (Dkt. No. 88) ......................104–131

Order granting Plaintiffs' Motion to Certify Class (Dkt. No. 89) .................132–133

Order re Plaintiffs' Motion for Contempt (Dkt. No. 106) ............................134–136

Order Approving and Adopting the Parties' Joint Proposed Adjudication Plan, June
14, 2020 (Dkt. No. 113) ....................................................................................137

Exhibit to Order Approving and Adopting the Parties' Joint Proposed Adjudication
Plan (Dkt. No. 113-1)....................................................................................138–151

Order denying Defendants' Motion to Decertify
the class (Dkt. No. 114) ................................................................................152–155

Memorandum Opinion on Defendants' Motion for Relief from Injunction and
Plaintiffs' Motion for Clarification and Enforcement, November 30, 2022
(Dkt. No. 190) .............................................................................................156–168

Order granting in part and denying in part Defendants' Motion for Relief from Injunction and Plaintiffs' Motion for Clarification and Enforcement, November 30, 2022 (Dkt. No. 191) ......................................................................................169

Order Amending Class Certification and Dismissing Counts IV and V (Dkt. No. 251) ..............................................................................................170–171

Magistrate Judge's Order Adopting Revised Adjudication Plan (Dkt. No. 260) ......................................................................................172–174

Memorandum Opinion re Objections (Dkt. No. 271)..................................175–184

Order Granting in Part, Denying in Part Defendants' Objections to the Revised Adjudication Plan; Approving and Adopting the Revised Adjudication Plan (Dkt. No. 272) ......................................................................................185–186

Adopted Revised Adjudication Plan (Dkt. No. 272-1)................................187–205

Memorandum Opinion on Count III Dismissal (Dkt. No. 273) ...................206–211

Order Granting Defendants' Motion to Dismiss, Dismissing Count III (Dkt. No. 274) ..................................................................................................212

Defendants' Notice of Appeal, July 30, 2025 (Dkt. No. 276).....................213–214

Defendants' Notice of Appeal, December 30, 2025 (Dkt. No. 304) ............215–216

District Court Docket as of May 3, 2026.....................................................217–283

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>  – against –<br><br>MICHAEL R. POMPEO,<br>c/o United States Department of State<br>2201 C Street NW, Room 4330,<br>Washington DC 20037,<br><br>CARL C. RISCH,<br>c/o United States Department of State<br>2201 C Street NW, Room 4330,<br>Washington DC 20037,<br><br>UNITED STATES DEPARTMENT OF STATE<br>2201 C Street NW, Room 4330,<br>Washington DC 20037,<br><br>KIRSTJEN NIELSEN,<br>c/o United States Department of Homeland Security<br>3801 Nebraska Ave NW,<br>Washington DC 20016,<br><br>L. FRANCIS CISSNA,<br>c/o United States Department of Homeland Security<br>3801 Nebraska Ave NW,<br>Washington DC 20016<br><br>DONALD NEUFELD,<br>c/o United States Department of Homeland Security<br>3801 Nebraska Ave NW,<br>Washington DC 20016<br><br>      and<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br>3801 Nebraska Ave NW,<br>Washington DC 20016,<br>       Defendants. | **Case No.** 1:18-cv-01388-TSC |

## AMENDED CLASS ACTION COMPLAINT

**INTRODUCTION AND SUMMARY**

1.      This class action challenges Defendants' failure to process and adjudicate within a reasonable time the Special Immigrant Visa (*SIV*) applications of Afghan and Iraqi nationals who provided faithful and valuable service to the US government or its allied forces and who, as a consequence of that service, face an ongoing serious threat to their lives in their home countries.  Recognizing that the extreme delays experienced by SIV applicants placed those applicants' lives in continuing danger, Congress, in 2013, ordered Defendants to process SIV applications within nine months.  Notwithstanding this clear congressional direction, SIV application processing times continued to exceed nine months, and, in 2015, at least two groups of plaintiffs brought lawsuits complaining of the government's failure to promptly adjudicate SIV applications.  Nonetheless, today, Defendants themselves publicly admit that they are systemically failing to meet the congressionally-imposed nine-month deadline.  Defendants' failure to abide by their statutory obligations has put proposed class representatives John/Jane Does Alpha, Bravo, Charlie, Delta, and Echo (collectively, *Plaintiffs* or *Allies*) in limbo, fearing for their lives and the lives of their families.

2.      In 2001, in response to the September 11 terrorist attacks, the United States invaded Afghanistan.  Two years later, the United States invaded Iraq.  The United States went on to establish a substantial military presence in both countries for years to come, during which time thousands of ordinary Afghans and Iraqis provided the US military with critical help and assisted the US government with its ongoing work in both countries.

3.      The Allies are among the thousands of ordinary Afghans and Iraqis who risked their own lives and the safety of their family members to assist the United States and the rest of the allied forces.  By working with the United States, the Allies and their families have

become targets for retaliation by the Taliban, Al Qaeda, ISIS (a.k.a. Daesh), and other terrorist groups. This risk is not theoretical: numerous Afghans and Iraqis helping the United States have been targeted and assassinated by these terrorist organizations.

4.     Recognizing the debt of honor that the United States owes the Allies and those like them for the risks they faced and the contributions they made—and recognizing the necessity of protecting those who faithfully serve the United States to ensure that others feel empowered to join as partners—Congress passed the Refugee Crisis in Iraq Act of 2007, Pub. L. 110-181, 122 Stat. 395 (2007) (***RCIA***),[1] signed by President Bush, and the Afghan Allies Protection Act of 2009, Pub. L. 111-8, 123 Stat. 807 (2009) (***AAPA***),[2] signed by President Obama, to create the SIVs for which the Allies applied.

5.     Specifically, these statutes (and subsequent amendments) expanded a preexisting special immigrant visa program by authorizing the issuance of additional SIVs to those who provided "faithful and valuable" service to the US government or allied forces and who face "an ongoing serious threat as a consequence of [their] employment by the United States Government." AAPA § 602(b)(2)(A)(ii)-(iii); RCIA § 1244(b)(1)(C)-(D).

6.     Unfortunately, Defendants' processing of SIV applications routinely requires SIV applicants to wait several years to receive decisions on their applications while the applicants and their families remain in danger each day that their applications are not determined.

---

[1]     The RCIA is codified as a note to 8 U.S.C. § 1157. The Amended Complaint cites to provisions of this Act with the Act's abbreviation and section number (e.g., RCIA § 1244) throughout. "Iraqi SIV" as referenced in this Amended Complaint refers to SIVs under the RCIA.

[2]     The AAPA is codified as a note to 8 U.S.C. § 1101. The Amended Complaint cites to provisions of this Act with the Act's abbreviation and section number (e.g., AAPA § 602) throughout. "Afghan SIV" as referenced in this Amended Complaint refers to SIVs under the AAPA.

7.      In 2013, aware of these ongoing delays in processing SIV applications, Congress amended the AAPA and the RCIA, requiring, inter alia, that Defendants "improve the efficiency by which applications for special immigrant visas . . . are processed so that all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed not later than 9 months" after the applicant's materials are submitted.  AAPA § 602(b)(4)(A); RCIA § 1242(c)(1).  At the same time, Congress ordered Defendants to designate two SIV coordinators to ensure the efficiency and integrity of the SIV application process.  AAPA § 602(b)(2)(D)(ii)(II); RCIA § 1248(h).

8.      Despite the passage of these amendments in 2013, the delays in processing and adjudicating SIV applications persisted.  Forced to wait for longer than nine months for their applications to be processed and adjudicated, at least two groups of SIV applicants filed lawsuits in this Court in 2015, seeking prompt adjudication of their applications.  In one of those cases, this Court found the plaintiffs' claims to be justiciable and denied the government's motion to dismiss.  See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry, 168 F. Supp. 3d 268 (D.D.C. 2016).  The government settled with the individual plaintiffs soon thereafter.  In the other, the government provided the requested relief without even seeking a dismissal.  See Doe v. U.S. Dep't of State, No. 15-cv-01971(RWR) (D.D.C.).

9.      Yet two years after the decision in Nine Iraqi Allies and over four years after the relevant amendments to the AAPA and RCIA, Defendants continue to fail to meet the congressionally-imposed nine-month deadline to complete all government-controlled steps in the SIV application process.  In fact, each of the Allies commenced the process of applying for an SIV years ago.  Facing violence, death threats, and harassment to not only themselves but also

their family members, the SIV applicants have waited **years** without receiving a dispositive decision on their applications while the US government fails to take necessary action to process and adjudicate applications as ordered by Congress.  For example:

- Mr. Doe-Alpha fled his hometown, and continued threats by the Taliban directed towards those members of his family who stayed behind have made clear that he cannot safely return.

- Ms. Doe-Bravo has received death threats by letter and phone, requiring her to change her family's residence and her phone number numerous times.

- The Taliban attacked Mr. Doe-Charlie's brother, apparently believing that his brother was Mr. Doe-Charlie, and forcing him to move away from his home to protect himself and his family.

- Ms. Doe-Delta, and members of her family, have been followed by masked men and told that they would kill her family if she did not quit her job with a US military contractor.

- Mr. Doe-Echo has been subjected to threats from militants, who have targeted his family and kidnapped and murdered his father.

10.    These threats are real.  Indeed, SIV applicants, or members of their families, have been murdered while waiting for the US government to determine their SIV applications.  For example, Sakhidad Afghan started working as a translator for US forces at age 19 in 2009.  Until 2014, when the base where he worked closed, Mr. Afghan provided faithful and valuable service to the United States.  As a result of this service, in the spring of 2015, he was abducted, tortured, and killed.  The Taliban left him by the side of the road with a death threat stuffed in his pocket addressed to his three brothers, who were also working on behalf of the US forces.  Mr. Afghan had been waiting for an Afghan SIV for over four years when he was abducted.  One of the Allies, Mr. Doe-Echo, experienced such a loss when militants murdered his father.  Another Iraqi, who worked as a forklift operator for US forces, was killed after receiving numerous threats by Jamaat Ansar al-Sunna and other terrorist groups, threats which he brought to the attention of those processing his application, to no effect.

11.     The Allies, and others like them, are currently in limbo, unable either to count on the arrival of a US visa or to devote the few resources they have towards trying to secure alternative means of relative safety by moving elsewhere in their home countries or abroad.  Instead, they wait, in mortal danger, for Defendants to fulfill the promise Congress made to them.

12.     The Allies, on behalf of themselves and others similarly situated who have awaited a final decision by Defendants for more than the statutorily-allowed nine months, now seek an order from this Court pursuant to 5 U.S.C. § 706(1) and 28 U.S.C. § 1361 to compel Defendants to adjudicate promptly class members' applications for Afghan or Iraqi SIVs, and to appoint coordinators for the Afghan and Iraqi SIV programs, as required by the AAPA and the RCIA.

## THE PARTIES

13.     Plaintiff John Doe-Alpha is an Afghan citizen and an applicant for an Afghan SIV who applied for an SIV on September 25, 2013, and has not yet received a final decision on his application.  His application has been in Defendants' control for longer than nine months.

14.     Plaintiff Jane Doe-Bravo is an Afghan citizen and an applicant for an Afghan SIV who applied for an SIV on October 15, 2015, and has not yet received a final decision on her application.  Her application has been in Defendants' control for longer than nine months.

15.     Plaintiff John Doe-Charlie is an Afghan citizen and an applicant for an Afghan SIV who applied for an SIV on April 18, 2016, and has not yet received a final decision on his application.  His application has been in Defendants' control for longer than nine months.

16. Plaintiff Jane Doe-Delta is an Afghan citizen and an applicant for an Afghan SIV who applied for an SIV on December 23, 2016, and has not yet received a final decision on her application. Her application has been in Defendants' control for longer than nine months.

17. Plaintiff John Doe-Echo is an Iraqi citizen and an applicant for an Iraqi SIV who applied for an SIV in July 2013, and has not yet received a final decision on his application. His application has been in Defendants' control for longer than nine months.

18. Defendant Michael R. Pompeo is sued in his official capacity as the Secretary of State. Defendant Pompeo exercises authority over Defendant United States Department of State. Defendant Pompeo, along with Defendant Kirstjen Nielsen, is responsible for the administration of the Afghan SIV program pursuant to the AAPA and the Iraqi SIV program pursuant to the RCIA.

19. Defendant Carl C. Risch is sued in his official capacity as the Assistant Secretary of State for Consular Affairs. Defendant Risch has direct oversight over the National Visa Center's operations, which include SIV processing steps such as reviewing SIV applications and scheduling interviews for SIV applicants.

20. Defendant United States Department of State (*State*) is an agency of the United States and shares responsibility with Defendant United States Department of Homeland Security for the administration of the Afghan SIV program pursuant to the AAPA and the Iraqi SIV program pursuant to the RCIA.

21. Defendant Kirstjen Nielsen is sued in her official capacity as the Secretary of Homeland Security. Defendant Nielsen exercises authority over Defendant United States Department of Homeland Security. Defendant Nielsen, along with Defendant Pompeo, is

6

responsible for the administration of the Afghan SIV program pursuant to the AAPA and the Iraqi SIV program pursuant to the RCIA.

22.     Defendant L. Francis Cissna is sued in his official capacity as the Director of US Citizenship and Immigration Services (*USCIS*), a component agency of the Department of Homeland Security.  Defendant Cissna directly oversees USCIS's operations, which include determining whether an SIV applicant can be categorized as a special immigrant.

23.     Defendant Donald Neufeld is sued in his official capacity as the Associate Director of Service Center Operations for USCIS.  Defendant Neufeld is responsible for overseeing the USCIS Nebraska Service Center, which processes SIV applicants' documents related to their petitions to be categorized as a special immigrant.

24.     Defendant United States Department of Homeland Security (*DHS* and, together with Mr. Pompeo, Mr. Risch, State, Ms. Nielsen, USCIS, and Mr. Neufeld, *Defendants*) is an agency of the United States and shares responsibility with Defendant State for the administration of the Afghan SIV program pursuant to the AAPA and the Iraqi SIV program pursuant to the RCIA.  USCIS, which has control over certain stages of the SIV application process, is a component agency of DHS.

## FACTUAL BACKGROUND

### Congress Creates the Iraqi and Afghan
### Special Immigrant Visa Programs to Protect Allies from Violent Reprisals

25.     In 2007, as the war in Iraq experienced its "most deadly six months"[3] and the death toll of Iraqis serving alongside the US military rose, Congress unanimously passed the RCIA, recognizing that military personnel, other on-base support staff who performed vital

---

[3]     Bureau of Democracy, Human Rights, & Labor, 2007 Iraq Human Rights Report (Mar. 11, 2008), https://www.state.gov/j/drl/rls/hrrpt/2007/100596.htm.

services, and those who worked as staff for Defendant State and for USAID were crucial to US efforts in Iraq. Congress acknowledged that those Iraqis who risked their lives and the lives of their families to provide these necessary services were being singled out as collaborators and targeted by death squads, militias, and other terrorist organizations.

26. To combat this threat, Congress passed the RCIA. The RCIA expanded a preexisting special visa program and initially authorized up to 5,000 visas annually for a period of five years for Iraqi citizens who provided "faithful and valuable service" as employees of, or on behalf of, the US Government. RCIA § 1244(b)(1)(C). In its preamble, the RCIA recognizes that

> [m]any Iraqis who have worked in critical positions in direct support of the United States Government in Iraq have been killed or injured in reprisals for their support of the American effort. Many more Iraqis associated with the United States have fled Iraq in fear of being killed or injured.

Id.

27. As the bill became law, former Senator Edward M. Kennedy (D, MA) reported that 257 Iraqi interpreters working for the US forces had been killed in the first four years after the US invaded Iraq. A few months later, the release of an internal document from the primary government contractor responsible for hiring interpreters listed 667 cases of Iraqis killed or injured while working under contract as translators for US military forces.

28. Because of the similar threats faced by Afghans associated with US forces, Congress also expanded the preexisting SIV program for Afghan citizens by enacting the AAPA in 2009 to authorize 1,500 visas annually for Afghan citizens who assisted the US government. Like Iraqi SIVs, Afghan SIVs are available to Afghan citizens who provided "faithful and valuable" service to the US government and who face "an ongoing serious threat as a

8

consequence of [their] employment" by or on behalf of the United States Government.  AAPA § 602(b)(2)(A)(iii)-(iv).

### Defendants Establish a Multistep SIV Application Process

29.    Both the AAPA and the RCIA require the Secretary of State, in consultation with the Secretary of Homeland Security, to oversee the issuance of SIVs by establishing or repurposing existing mechanisms for processing applications for admission to the United States.

30.    Before an applicant for an Afghan or Iraqi SIV receives a visa, Defendants verify the following information:

- That the applicant is an Afghan or Iraqi citizen;

- That the applicant meets the employment eligibility requirements:

  - For Afghan SIV applicants, at least one year of employment between October 2001 and December 2020 for or on behalf of the US government in Afghanistan or the International Security Assistance Force or a successor mission if the applicant applied prior to September 30, 2015, or at least two years of employment under the same conditions if the applicant applied after September 2015, or

  - For Iraqi SIV applicants, at least one year of employment for or on behalf of the US government in Iraq between March 2003 and September 2013;

- That the applicant provided "faithful and valuable service" to the US government;

- That the applicant is experiencing an "ongoing serious threat" as a result of the applicant's service to the United States;

- That the applicant is otherwise admissible to the United States under the Immigration and Nationality Act; and

- That the applicant does not pose a national security threat to the United States.

9

31.    Both Afghan and Iraqi SIV applicants follow the same process to establish that they fulfill these eligibility requirements.  According to Defendants, there are fourteen sequential steps that must be completed to apply for and receive an SIV:

1)    The applicant submits an application for approval by the Chief of Mission (*COM Approval*) to the National Visa Center (*NVC*). Application materials must include a "statement of credible threat" detailing the ongoing threat to the applicant as a result of the applicant's service and a letter of recommendation from a supervisor attesting to the applicant's "faithful and valuable service."

2)    NVC reviews the applicant's documents for completeness.

3)    NVC sends the application materials to the Chief of Mission in Afghanistan for Afghan applicants, or the Chief of Mission in Iraq for Iraqi applicants.

4)    The Chiefs of Mission either approve or deny the applicant's COM Approval application.

5)    The Chief of Mission then advises NVC of the outcome of the application, which is communicated to the applicant.  If denied, the applicant has a statutory right to appeal within 120 days (*COM Appeal*).  According to government reports, many COM Appeals are successful and result in COM Approval.  For example, the percentage of successful appeals in 2017 was as high as 66% for Afghan applicants and 40% for Iraqi applicants.

6)    If the applicant receives COM Approval, the applicant submits a Special Immigrant Petition to USCIS for categorization as a special immigrant.

7)    USCIS adjudicates the Special Immigrant Petition and communicates the results to NVC.

8)    If the applicant is approved, NVC requests standard immigrant visa documentation from the applicant.

9)    The applicant submits the required documentation to NVC.

10)    NVC reviews the applicant's documents for completeness.

11)    If the applicant is determined admissible to the United States and eligible for a US visa, then NVC contacts the applicant to schedule an interview at the embassy in Afghanistan or Iraq.

12)    The applicant attends an interview conducted by a consular officer.

13) If the application is not denied, the applicant's case undergoes administrative processing, the phrase used by Defendants to refer to the final level of background checks.

14) If successful, the applicant is instructed to obtain a medical exam and is issued a US visa.

32. Defendants acknowledge that, with the exception of the following four steps, each of these steps are in their control: the submission of the application for COM Approval (step 1); the submission of the Special Immigrant Petition (step 6); the submission of the standard immigrant visa documentation (step 9); and the medical examination (step 14).

33. With a visa in hand, the successful applicant may travel to the United States. An SIV recipient is eligible to receive resettlement benefits upon arrival and to apply for adjustment of status to seek the status of lawful permanent resident and ultimately of citizen.

### Extreme Delays in Visa Processing Spark Congressional Action

34. From the start, the SIV programs faced considerable processing delays that risked the lives of the very applicants they were intended to protect. Applicants waited years to obtain visas, often while enduring threats or acts of violence against themselves and their families because of their assistance to the US Government.

35. That risk became reality as the casualty list of Afghans and Iraqis killed in relation to their service to the US forces climbed. By December 2009, company officials from the primary government contractor responsible for hiring interpreters and translators in Iraq reported that 1,200 of its employees had been injured and **360 had been killed** since the invasion of Iraq.[4]

36. Those who provided assistance to US forces in Afghanistan fared no better. For example, in 2010, four interpreters were abducted from a wedding procession they

---

[4] T. Christian Miller, Chart: Iraqi Translators, a Casualty List, ProPublica (Dec. 18, 2009), https://www.propublica.org/article/chart-Iraqi-translators-a-casualty-list.

were attending and taken to Pakistan.  The next morning, the dead bodies of the groom, his brother, and two others were found on the Afghan side of the border.  The Taliban took credit for the murders.[5]

37.     These tragedies notwithstanding, the SIV application process failed to keep up with the number of qualified applicants who, fearing for their lives, sought SIVs.  By mid-2011, four years into the Iraqi SIV program, nearly 30,000 Iraqi applicants and their family members had applied for SIVs, but only 4,000 applications had been processed.[6]  In Afghanistan, the first SIV was not granted until 2011, two years after Congress passed the AAPA.[7]  By mid-2012, three years after the AAPA was passed, only 32 Afghan SIVs had been granted out of a total of 5,700 applicants.[8]

38.     Congress blamed the Defendants for the delay, asserting that they were dragging their feet in the processing and adjudication of visas for Afghans and Iraqis who risked their lives to assist the US.  For example, the US embassy in Kabul placed inordinate roadblocks in the way of applicants known to be at risk.  As a result, Defendants approved only a trickle of the 9,000 SIVs that had been authorized.  These delays were unnecessary, shameful, and harmful to long-term American interests.

---

[5]     Rod Nordland, Taliban Say They Killed 4 Afghan Interpreters, N.Y. Times (May 15, 2010), http://www.nytimes.com/2010/05/16/world/asia/16kabul.html.

[6]     George Packer, Iraqi Refugees: A Debt Defaulted, New Yorker (July 29, 2011), https://www.newyorker.com/news/george-packer/Iraqi-refugees-a-debt-defaulted.

[7]     Eline Gordts, America's Afghan and Iraqi Interpreters Risk Lives but Wait Years in Danger for Visas, Huff. Post (June 23, 2013), https://www.huffingtonpost.com/2013/06/23/afghan-Iraq-interpreters-siv_n_3481555.html.

[8]     Kevin Sieff, Facing Taliban threats, Afghan interpreters wait for U.S. visas, Wash. Post (Oct. 25, 2012), https://www.washingtonpost.com/world/asia_pacific/facing-taliban-threats-afghan-interpreters-wait-for-us-visas/2012/10/24/5fc531e2-1d48-11e2-8817-41b9a7aaabc7_story.html?utm_term=.92554e751c9c.

39.     In 2013, with the expiration dates of the initial mandates of the AAPA and the RCIA approaching, and as thousands of Afghans and Iraqis lived in fear while waiting out long delays, Congress amended the AAPA and the RCIA to reauthorize the program beyond the original deadlines, to increase the number of available visas, and to require Defendants to improve the efficiency of SIV application processing.

40.     Specifically, these amendments required that Defendants, in consultation with the Department of Defense, "improve the efficiency by which applications for special immigrant visas under [this statute], are processed so that all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed **not later than 9 months** after the date on which an eligible alien submits all required materials to complete an application for such visa."  AAPA § 602(b)(4)(A); RCIA § 1242(c)(1) (emphasis added).

41.     To enforce this timeline, Congress ordered Defendants DHS and State to report first to Congress, and thereafter publicly on a quarterly basis, the following information: the number of SIV applications received each quarter; the reasons for delays of any applications pending longer than nine months; the total number of applications pending due to the failure to (i) receive COM approval, (ii) adjudicate the Special Immigrant Petition, (iii) conduct a visa interview, or (iv) issue a visa to an eligible alien; the average waiting times at each stage of the application process; the number of denials or rejections at each stage of the application process; and the reasons for denial of COM Approval (the ***Joint Reports***).  AAPA §§ 602(b)(11)(A), (B); RCIA §§ 1248 (f), (g).

42.     Congress also ordered Defendants to designate two SIV coordinators, one each for Afghanistan and Iraq, to oversee the efficiency and integrity of the processing of Afghan

and Iraqi SIVs.  See AAPA § 602(b)(2)(D)(ii)(II); RCIA § 1248(h).  On information and belief, Defendants have not appointed SIV coordinators.

**Defendants Face Multiple Lawsuits Due to their Delays in Processing SIV Applications**

43.     Despite the 2013 amendments to the RCIA and AAPA, the egregious delays in processing and adjudicating SIV applications continued.  Since the amendments, at least two separate groups of SIV applicants have filed individual lawsuits against the government seeking the exact same relief, based on the exact same claims, sought here.  These plaintiffs sought the prompt adjudication of their SIV applications, which the government had not adjudicated within nine months of submission.  In one action, the court found the claims to be justiciable and denied the government's motion to dismiss, see Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry, 168 F. Supp. 3d 268 (D.D.C. 2016); the government then settled the case and agreed to adjudicate the plaintiffs' applications.  In the second action, the government promptly agreed to provide the plaintiff with the requested relief without even seeking dismissal.  See Doe v. U.S. Dep't of State, No. 15-cv-01971(RWR).

**SIV Processing Times Continue to Far Exceed the Congressional Timeline**

44.     Despite Congress's directive to speed up the SIV application process and at least two lawsuits challenging delays, processing times still far exceed the nine-month timeline set by statute.  Applicants often wait years for Defendants to process their applications and to receive a final decision, all while facing threats of reprisals for their work with the US government and military.  Indeed, all Iraqi applicants now awaiting final decisions have necessarily been waiting for more than **three and a half years** because the final, statutory deadline for an Iraqi to begin the SIV application process was September 30, 2014.

45.     In the most recent Joint Reports, Defendants DHS and State calculated that Afghan applicants waited **nearly two years** (700 days) for Defendants to complete all government-controlled processing steps (the ***Total Government Processing Time***).[9]   In other words, Defendants readily admit that it takes, even by their calculations, far longer than the congressionally-mandated nine months to complete government-controlled processing steps for Afghan applicants.

46.     Meanwhile, Defendants admit in the most recent Iraqi Joint Report that, on average, Defendants take over eight months to complete only some of the SIV application process that is within their control.  This Iraqi Joint Report excludes from its calculation of the Total Government Processing Time the time that SIV applicants were required to wait to receive COM Approval, a period that, by itself, can take years.  For example, Mr. Doe-Echo spent approximately 490 days waiting for COM Approval, a period excluded from Defendants' Total Government Processing Time in the January 2018 Iraqi Joint Report.

47.     These "averages" presented by Defendants are often far removed from the delays ultimately suffered by SIV applicants, as demonstrated by the experiences of the Allies. For example, when Ms. Doe-Delta submitted a COM application in December 2016, Defendants claimed that, on average, it took 63 days for an applicant to receive a decision on a COM application.  Today, more than 560 days later (or nearly 9 times the "average" wait time), Ms. Doe-Delta has yet to receive a COM decision.  And Mr. Doe-Alpha, who has waited more than 1,100 days since his visa interview, has waited over 11 times the current "average" of 95 days for the government to complete the penultimate step of administrative processing.

---

[9]     As of the date this Amended Complaint was filed, the January 2018 Joint Reports, reflecting data from the first quarter of fiscal year 2018, were the last Joint Reports issued by Defendants DHS and State.

48. In short, the Joint Reports demonstrate that Defendants have failed to comply with the congressionally-imposed nine-month deadline—and, the admissions in those reports are the low-end estimate of the delays Afghan and Iraqi SIV applicants actually face.[10] Defendants' failure to comply with their statutory obligations is of their own doing, caused by the failure of the interagency process, which has resulted in undue delay, needless stress on applicants, and a sizable drop in SIV admissions during the first and second quarters of fiscal year 2018.

**Thousands of SIV Applicants Continue to Face Reprisals and Insecurity.**

49. As of December 31, 2017, there were at least 9,985 applicants with pending applications for Afghan SIVs and at least 143 applicants with pending applications for Iraqi SIVs. Many of these applications have been in government-controlled steps for longer than nine months.

50. These SIV applicants continue to live under threat while waiting for Defendants to adjudicate their applications. The security situation in both Afghanistan and Iraq remains dangerous. Defendant State describes the security situation in Afghanistan as follows:

> There were major attacks on civilians by armed insurgent groups and targeted assassinations by armed insurgent groups of persons affiliated with the government. The Taliban and other insurgents continued to kill security force personnel and civilians using indiscriminate tactics such as improvised explosive devices (IEDs), suicide attacks, and rocket attacks, and to commit disappearances and torture. The UN Assistance Mission in Afghanistan (UNAMA) attributed 67 percent of civilian casualties (1,141

---

10 In addition, Defendants DHS and State fail to provide consistent and timely Joint Reports, making it difficult for the public to identify trends over time and hold Defendants accountable to their congressional mandates. For example, in fiscal year 2017, the Joint Reports inexplicably skipped over the third quarter numbers and instead presented data and information from the second and fourth quarters in consecutive reports. For fiscal year 2018, the first Joint Report (covering October-December 2017) was not published until May 30, 2018, and Defendants DHS and State have yet to issue the second quarter report (covering January-March 2018).

deaths and 3,574 injured) to nonstate actors. The Taliban used children as suicide bombers, soldiers, and weapons carriers. Other antigovernment elements threatened, robbed, kidnapped, and attacked government workers, foreigners, medical and nongovernmental organization (NGO) workers, and other civilians.[11]

51. This violence has continued. Multiple recent attacks across Afghanistan have left dozens dead, including 26 government security officers and 57 people lining up to register to vote in the country's upcoming parliamentary elections.[12]

52. Iraq also remains wracked with violence. Defendant State describes the security situation in Iraq as follows:

> Violence continued throughout the year, largely fueled by the actions of the Islamic State in Iraq and Syria (ISIS). … ISIS committed the majority of serious abuses and atrocities. ISIS members committed acts of violence on a mass scale, including killings through suicide bombings and improvised explosive devices (IEDs); executions including shootings and public beheadings; use of civilians as human shields; as well as use of chemical weapons. They also engaged in kidnapping, rape, enslavement, forced marriage, and sexual violence, committing such acts against civilians from a wide variety of religious and ethnic backgrounds, including Shia, Sunnis, Kurds, Christians, Yezidis, and members of other religious and ethnic groups.[13]

53. SIV applicants experience a particular visibility and vulnerability due to their connection with US forces and government agencies. Stories abound of the state of fear in which SIV applicants live. One Afghan SIV applicant wrote,

---

[11] Bureau of Democracy, Human Rights, & Labor, 2017 Afghanistan Human Rights Report (2018), http://www.state.gov/j/drl/rls/hrrpt/humanrightsreport/index.htm?year=2017&dlid=277275.

[12] Najim Rahim & Jawad Sukhanyar, Attacks in Afghanistan Leave Dozens Dead and 2 Schools Burned, N.Y. Times (Apr. 15, 2018), https://nyti.ms/2H00QLA; Mujib Mashal Jawad Sukhanyar, 'So Many Bodies': Bomber Kills Dozens Signing Up to Vote in Kabul, N.Y. Times (Apr. 22, 2018), https://nyti.ms/2K6Ohfo.

[13] Bureau of Democracy, Human Rights, & Labor, 2017 Iraq Human Rights Report (2018), http://www.state.gov/j/drl/rls/hrrpt/humanrightsreport/index.htm?year=2017&dlid=277243.

The Taliban know what they are doing. That's how they turned this country into hell. They know how to track you, because they are everywhere. No matter how long you hide, how long you sneak around, or how many times you change houses; even if you fly from one province to another to avoid getting killed - finally you will do something wrong. And they're everywhere. They could be in the street, they could be in the shop, they could be your friend without you knowing. That's why it's very hard for the interpreters to trust someone.[14]

54. For some SIV applicants, the wait becomes deadly. For example, in March 2015, an Afghan former interpreter was tortured and killed by insurgents after waiting for a decision on his SIV application for over four years. See also supra ¶ 10. An unknown number of SIV applicants have suffered a similar fate while waiting for their applications to be adjudicated.

**The Allies Are Among the Thousands of SIV Applicants Who
Must Live in Fear While Awaiting Application Processing by Defendants.**

55. Allies John/Jane Does Alpha, Bravo, Charlie, Delta, and Echo are all SIV applicants who reside in Afghanistan or Iraq and who, like other SIV applicants, live in fear of reprisal for their service to the US government while they await final decisions from Defendants on their applications. For each of the Allies, and for many of the hundreds of similarly situated SIV applicants, Defendants have now taken far longer than the statutorily-allowed nine months to complete all government-controlled processing steps.

---

[14]   Afghan Interpreter: 'Taliban don't wait to kill you', Al Jazeera (Apr. 6, 2016), https://www.aljazeera.com/indepth/features/2016/04/afghan-interpreter-taliban-don-wait-kill-160403131005408.html; see also, Sarah Feinberg & Daniel Davis, Save the visa program for Afghan interpreters, Politico (May 31, 2016), https://www.politico.com/agenda/story/2016/05/congress-should-save-visa-program-for-afghan-interpreters-000135.

*John Doe-Alpha Has Spent More Than 53 Months (and Counting)*
*Waiting for Defendants to Process His SIV Application*

56. Mr. Doe-Alpha is an Afghan citizen who provided faithful and valuable service to the international development projects of a US government contractor from 2011 to 2014, and 2015 to the present. As a result of that service, he had to flee his hometown, which is controlled by the Taliban. He now lives with his wife and daughter in a nearby city, and his family members who remained behind have been repeatedly threatened and harassed by people identifying themselves as members of the Taliban (who have even put his parents on house arrest). As a result, Mr. Doe-Alpha fears he will be targeted if he returns to his hometown.

57. Mr. Doe-Alpha applied for an SIV over **four and a half years** ago, on September 25, 2013. He is now awaiting administrative processing of his application. In total, Defendants have taken over 53 months—and counting—to process his application: over four months for the initial COM decision; five days for his Special Immigrant Petition; and over twelve months for his visa interview. Mr. Doe-Alpha had his visa interview 37 months ago, on June 11, 2015, and continues to wait for Defendants to complete administrative processing of his application.

*Jane Doe-Bravo Has Spent Nearly 32 Months (and Counting)*
*Waiting for Defendants to Process Her SIV Application*

58. Ms. Doe-Bravo is an Afghan citizen who has worked for a US government-funded development organization since 2013. After she and her family began receiving frequent death threats, she moved to a new address with her husband and three young children. She has kept her address secret and has changed her phone number numerous times. She feels hopeless and cannot trust anyone, even as she recovers from recent childbirth and cares for her newborn.

59.    Ms. Doe-Bravo applied for an SIV over **two and a half years ago**, on October 15, 2015.  She was just authorized to submit her Special Immigrant Petition, which she will do promptly.  Ms. Doe-Bravo waited nearly three months to receive a decision on her application for COM Approval, which she appealed within a month. She received her COM Appeal Decision, granting her COM approval, on July 6, 2018, **29 months** after submitting her COM Appeal.  In total, Defendants have taken nearly 32 months—and counting—to process her application.  Although she has already waited more than three times the statutory time frame to receive COM Approval, Defendants still will need to decide her Special Immigrant Petition, schedule an interview, and complete administrative processing of her application before she can receive a final decision on her SIV application.

*John Doe-Charlie Has Spent More Than 23 Months (and Counting)*
*Waiting for Defendants to Process His SIV Application*

60.    Mr. Doe-Charlie is an Afghan citizen who worked as an interpreter and translator for two US military contractors between 2009 and 2013.  As a result, Mr. Doe-Charlie and his family have been subjected to death threats.  The Taliban attacked and repeatedly stabbed Mr. Doe-Charlie's brother, apparently mistaking him for Mr. Doe-Charlie.  Mr. Doe-Charlie has moved in order to protect his family, yet he continues to fear for their safety.

61.    Mr. Doe-Charlie applied for an SIV more than **two years ago**, on April 18, 2016.  He is now awaiting a decision on a COM Appeal.  In total, Defendants have taken over 23 months—and counting—to process his application.  Mr. Doe-Charlie first waited more than eight months for a decision on his application for COM Approval.  He then appealed that decision over fifteen months ago on April 3, 2017, and continues to wait for Defendants to decide that appeal.

20

*Jane Doe-Delta Has Spent More Than 18 Months (and Counting)*
*Waiting for Defendants to Process Her SIV Application*

62.     Ms. Doe-Delta is an Afghan citizen who currently works with a US government communications contractor, where she has worked since August 2013.  Her role requires her to travel with colleagues to active conflict zones and interact with the public.  As a result of her work, she and her family have received threats from the Taliban and have been followed by masked men.  Both she and her father have been told that her family would be killed if she did not quit her job.  She constantly feels unsafe.

63.     Ms. Doe-Delta is at the beginning of the SIV application process, but has already been waiting over **eighteen months** for Defendants to complete processing of her COM application.  She applied for an SIV on December 23, 2016, and is still waiting for Defendants to decide whether to grant COM Approval.

*John Doe-Echo Has Spent More Than 54 Months (and Counting)*
*Waiting for Defendants to Process His SIV Application*

64.     Mr. Doe-Echo is an Iraqi citizen who provided faithful and valuable service to the United States as a translator for US forces for more than two years, including eight months training the Iraqi police at the request of the United States.  As a result, Mr. Doe-Echo has been threatened by militants who kidnapped and murdered his father and have shot at his home.  Fearing for his safety after his father's murder, he briefly fled Iraq but, without employment or a means of supporting himself, he was forced to return.  He now lives in hiding in Iraq.

65.     Mr. Doe-Echo applied for an SIV nearly **five years** ago, in July 2013.  He is now awaiting administrative processing of his case.  In total, Defendants have taken more than 54 months—and counting—to process his application: approximately sixteen months for the original COM decision; nearly a month for his COM Appeal to be granted; nearly six months for

21

his Special Immigrant Petition; and nearly three months to schedule and hold his interview. Mr. Doe-Echo had his visa interview over 29 months ago, on February 3, 2016, and continues to wait for Defendants to complete administrative processing of his application.

## CLASS ACTION ALLEGATIONS

66.     Named Plaintiffs bring this action on behalf of themselves and all others similarly situated. Plaintiffs' proposed class consists of all people who have applied for an Afghan or Iraqi SIV pursuant to the AAPA or the RCIA by submitting an application for COM Approval, and whose applications have been in government-controlled steps for longer than nine months.

67.     Plaintiffs and the proposed class meet the requirements of Rules 23(a)(1)-(4) and Rule 23(b)(2) because:

- The class is so numerous that joinder of all members of the class is impracticable. Although the precise number of potential class members is within Defendants' control, on information and belief, there are likely hundreds of Afghan and Iraqi SIV applicants who have waited longer than the statutorily-allowed nine-month period for Defendants to complete the processing of their SIV applications;

- There are questions of law and fact common to the proposed class, namely whether Defendants have a nondiscretionary duty to adjudicate SIV applications; whether they have a nondiscretionary duty to do so within a reasonable period of time; whether they are required to do so within the congressionally-mandated nine-month period; and whether their failure to do so merits relief under the APA, 5 U.S.C. § 555(b), or the Mandamus Act;

- The claims of the named Plaintiffs are typical of the claims of the proposed class in that each named Plaintiff applied for either an Afghan or Iraqi SIV and has now waited longer than nine months for Defendants to complete all government-controlled steps in the SIV application process;

- The named Plaintiffs will fairly and adequately represent and protect the interests of the proposed class. They have no interests that are antagonistic to the proposed class and seek relief that will benefit all members of the proposed class. They are represented by counsel with significant experience with this type of litigation; and

- By failing to act within the congressionally stipulated timeline, Defendants have acted and continue to act on grounds generally applicable to the entire class,

thereby making injunctive or declaratory relief appropriate with respect to the class as a whole.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment, Unreasonable Delay,**
**on behalf of Plaintiffs and the Class**

68.     Pursuant to the AAPA, the RCIA, and the regulations governing the issuance of immigrant visas, Defendants have a nondiscretionary duty to adjudicate applications for SIVs.  AAPA § 602(b); RCIA § 1244(a)-(b); see also 22 C.F.R. § 42.81.

69.     The APA obligates Defendants to complete these nondiscretionary actions within a "reasonable time."  5 U.S.C. § 555(b).

70.     The AAPA and the RCIA require Defendants to process SIV applications such that "all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed not later than 9 months after the date on which an eligible alien submits all required materials to complete an application for such visa."  AAPA § 602(b)(4)(A); RCIA § 1242(c)(1).

71.     Plaintiffs and proposed class members are entitled to a declaratory judgment that Defendants have a nondiscretionary duty to adjudicate their SIV applications, that Defendants must do so within a reasonable period of time, that the reasonable period of time is nine months, and that Defendants have unreasonably delayed the processing and adjudication of all SIV applications that have been pending in government-controlled steps for longer than nine months.

**SECOND CAUSE OF ACTION**
**Administrative Procedure Act, Unreasonable Delay,**
**on behalf of Plaintiffs and the Class**

72.     Pursuant to the AAPA, the RCIA, and the regulations governing the issuance of immigrant visas, Defendants have a nondiscretionary duty to adjudicate applications for SIVs.  AAPA § 602(b); RCIA § 1244(a)-(b); see also 22 C.F.R. § 42.81.

73.     The APA obligates Defendants to complete these nondiscretionary actions within a "reasonable time."  5 U.S.C. § 555(b).

74.     The AAPA and the RCIA require Defendants to process SIV applications such that "all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed not later than 9 months after the date on which an eligible alien submits all required materials to complete an application for such visa."  AAPA § 602(b)(4)(A); RCIA § 1242(c)(1).

75.     Defendants have failed to adjudicate Plaintiffs' and proposed class members' SIV applications within a reasonable time, which caused and continues to cause irreparable harm to Plaintiffs and proposed class members.

76.     The APA provides that this Court "*shall* … compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1) (emphasis added).

77.     Plaintiffs and proposed class members are entitled to relief pursuant to 5 U.S.C. § 702 and 5 U.S.C. § 706(1) compelling Defendants to adjudicate their SIV applications.

**THIRD CAUSE OF ACTION**
**Mandamus to Compel, Adjudication of SIVs,**
**on behalf of Plaintiffs and the Class**

78.     The mandamus statute, 28 U.S.C. § 1361, vests this Court with original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a nondiscretionary duty owed to Plaintiffs.

79.     Pursuant to the AAPA, the RCIA, and the regulations governing the issuance of immigrant visas, Defendants have a nondiscretionary duty to adjudicate applications for SIVs.  AAPA § 602(b); RCIA § 1244(a)-(b); see also 22 C.F.R. § 42.81.

80.     The APA obliges Defendants to complete these nondiscretionary actions within a "reasonable time."  5 U.S.C. § 555(b).

81.     The AAPA and the RCIA require Defendants to process SIV applications such that "all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed not later than 9 months after the date on which an eligible alien submits all required materials to complete an application for such visa."  AAPA § 602(b)(4)(A); RCIA § 1242(c)(1).

82.     Plaintiffs have brought this action because Plaintiffs have no other means to compel Defendants to perform the duties owed to Plaintiffs.

83.     Plaintiffs and proposed class members are entitled to a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling Defendants to adjudicate their SIV applications.

**FOURTH CAUSE OF ACTION**
**Administrative Procedure Act, Appointment of SIV Coordinators,**
**on behalf of Plaintiffs and the Class**

84.     Defendants have a nondiscretionary duty imposed by Congress to appoint two SIV coordinators, one each for Afghanistan and Iraq.  AAPA § 602(b)(2)(D)(ii)(II); RCIA § 1248(h).

25
JA 026

USCA Case #25-5279   Document #2171785   Filed: 05/04/2026   Page 31 of 287

85.     Upon information and belief, Defendants have not appointed such coordinators.

86.     The APA provides that this Court "*shall* … compel agency action unlawfully withheld."  5 U.S.C. § 706(1) (emphasis added).

87.     Plaintiffs and proposed class members are entitled to relief pursuant to 5 U.S.C. § 702 and 5 U.S.C. § 706(1) compelling Defendants to appoint SIV coordinators.

## FIFTH CAUSE OF ACTION
### Mandamus to Compel, Appointment of SIV Coordinators, on behalf of Plaintiffs and the Class

88.     The mandamus statute, 28 U.S.C. § 1361, vests this Court with original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a nondiscretionary duty owed to Plaintiffs.

89.     Defendants have a nondiscretionary duty imposed by Congress to appoint two SIV coordinators, one each for Afghanistan and Iraq.  AAPA § 602(b)(4)(A); RCIA § 1248(h).

90.     Upon information and belief, Defendants have not appointed such coordinators.

91.     Plaintiffs have brought this action because Plaintiffs have no other means to compel Defendants to perform the duties owed to Plaintiffs.

92.     Plaintiffs and proposed class members are entitled to a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling Defendants to appoint SIV coordinators.

## JURISDICTION AND VENUE

93.     Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus), and 5 U.S.C. §§ 701-06 (Administrative Procedure Act).

94.     This Court has personal jurisdiction over Defendants because Defendants are federal agencies or officers of federal agencies, all of which are headquartered in the District of Columbia.

95.     Venue is proper pursuant to 28 U.S.C. § 1391(e) because Defendants are federal agencies or officers of federal agencies, all of which are headquartered in the District of Columbia, and because a substantial part of the events or omissions giving rise to the Amended Complaint necessarily occurred or failed to occur within the District of Columbia.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Certify a class pursuant to Federal Rule of Civil Procedure 23.

2.     Declare that Defendants' delay in the adjudication of Plaintiffs' SIV applications is unreasonable and that a reasonable period of time to adjudicate SIV application is defined as nine months.

3.     Issue an order pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1), that requires Defendants to adjudicate proposed class members' SIV applications, which have all been in government-controlled processing steps for longer than nine months;

4.     Issue a writ of mandamus, pursuant to 28 U.S.C. § 1361, directing Defendants to adjudicate proposed class members' SIV applications, which have all been in government-controlled processing steps for longer than nine months;

5.     Issue an order pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1), directing Defendants to appoint an Afghan and an Iraqi SIV coordinator in accordance with AAPA § 602(b)(4)(A) and RCIA § 1248(h);

6.      Issue a writ of mandamus, pursuant to 28 U.S.C. § 1361, directing Defendants to appoint an Afghan and an Iraqi SIV coordinator in accordance with AAPA § 602(b)(2)(D)(ii)(II) and RCIA § 1248(h);

7.      Retain jurisdiction over this action and any attendant proceedings until Defendants have in fact adjudicated Plaintiffs' and class members' SIV applications, and have communicated the results of such adjudication to the class and the Court;

8.      Award Plaintiffs' attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

9.      Award such other and further relief that the Court may deem just and proper.

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 34 of 287

Dated: New York, New York          By:        /s/ Shannon  M. Leitner

      July 12, 2018

Linda H. Martin (D.D.C. Bar No. NY0210)
David Y. Livshiz (D.D.C. Bar No. NY0269)
Shannon M. Leitner (D.D.C. Bar No. NY0268)
Rebecca L. Curwin (D.D.C. Bar No. NY0267)
Allison C. Wilson (D.D.C. Bar No. NY0271)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
linda.martin@freshfields.com
david.livshiz@freshfields.com
shannon.leitner@freshfields.com
rebecca.curwin@freshfields.com
allie.wilson@freshfields.com


  /s/ Deepa Alagesan

Deepa Alagesan (D.D.C. Bar No. NY0261)
Mariko Hirose (D.D.C. Bar No. NY0262)
INTERNATIONAL REFUGEE ASSISTANCE
PROJECT
40 Rector Street, 9th Floor
New York, New York 10006
Telephone: (646) 602-5639
dalagesan@refugeerights.org
mhirose@refugeerights.org

*Attorneys for Plaintiffs and Proposed Class Counsel*

JA 030

USCA Case #25-5279   Document #2171785   Filed: 05/04/2026   Page 35 of 287

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL R. POMPEO, CARL C. RISCH, UNITED DEPARTMENT OF STATE, KIRSTJEN NIELSEN, L. FRANCIS CISSNA, DONALD NEUFELD, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Civil Action No. 18-cv-01388 (TSC) |

**<u>MEMORANDUM OPINION</u>**

Plaintiffs are five anonymous Afghan or Iraqi nationals seeking refuge in the United States. They allege that they "provided faithful and valuable service to the US government or its allied forces" in their capacities as employees of or on behalf of the United States government over the past several years. (ECF. No. 23 ("Am. Compl.") at ¶¶ 1, 56, 58, 60, 62.) They allege that because of their service, they "face an ongoing serious threat to their lives in their home countries." (*Id.*) In response to various threats and acts of violence, Plaintiffs submitted Special Immigrant Visa ("SIV") applications to the U.S. Department of State, seeking lawful admission into the United States. (*Id.* at ¶¶ 13–17.) Two Plaintiffs submitted their applications in 2013, one in 2015, and the other two in 2016. (*Id.*) Plaintiffs claim that at the time they filed this

JA 031

action on June 12, 2018, none of their SIV applications had received a final decision. (*Id.* at ¶¶ 57, 59, 61, 63, 65.)

Plaintiffs bring this case on behalf of themselves and a class of all people who have applied for an Afghan or Iraqi SIV pursuant to the Afghan Allies Protection Act of 2009, Pub. L. 111-8, 123 Stat. 807, or the Refugee Crisis in Iraq Act of 2007, Pub. L. 110-181, 122 Stat. 395, by submitting an application for Chief of Mission Approval, and whose applications have been awaiting government action for longer than nine months.[1] (ECF No. 3 ("Mot. Class Certification") at 1.) Plaintiffs allege that Defendants have failed to process and adjudicate Plaintiffs' SIV applications within a reasonable time. (Am. Compl. at ¶ 1.) They request, among other things, that this court (i) enter a declaratory judgment stating that Defendants have unreasonably delayed the processing and adjudication of all applications that have been in government-controlled steps for longer than nine months, (ii) compel Defendants to adjudicate the SIV applications, and (iii) compel Defendants to appoint two SIV coordinators. (*Id.* at ¶¶ 68–92.)

Defendants have moved, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to partially dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. Upon consideration of Defendants' motion and the parties' briefs in support thereof and in opposition thereto, and for the reasons set forth below, the motion is hereby **DENIED**.

---

[1] Plaintiffs' motion for class certification is granted on a provisional basis for the sole purpose of resolving Defendants' partial motion to dismiss (ECF No. 30), Plaintiffs' motion for preliminary injunction, (ECF No. 34), and Plaintiffs' motion for expedited discovery (ECF No. 35). Plaintiffs' counsel is appointed to represent the provisional class.

## I.     FACTUAL BACKGROUND[2]

### A.  Refugee Crisis in Iraq Act and Afghan Allies Protection Act

In 2007, Congress enacted the Refugee Crisis in Iraq Act ("RCIA"), in part to fulfill the United States' "fundamental obligation to help the vast number of Iraqis displaced in Iraq and throughout the region by the war and the associated chaos, especially those who have supported America's efforts in Iraq."  S. Res. 1651, 110th Cong. (2007) (enacted).  In so doing, Congress noted:

> Many Iraqis who have worked in critical positions in direct support of the United States Government in Iraq have been killed or injured in reprisals for their support of the American effort.  Many more Iraqis associated with the United States have fled Iraq in fear of being killed or injured.

*Id.*  Under the RCIA, Iraqi nationals can apply and interview for admission to the United States as special immigrants if they: (1) were or are "employed by or on behalf of the United States Government in Iraq, on or after March 20, 2003, for not less than one year"; (2) "provided faithful and valuable service to the United States Government"; and (3) "experienced or [are] experiencing an ongoing serious threat as a consequence of [their] employment by the United States Government."  RCIA §§ 1242(a)(2), 1244(b)(1).

In 2009, Congress enacted the Afghan Allies Protection Act ("AAPA"), with similar objectives.  (Am. Compl. ¶¶ 4, 28.)  Pursuant to the AAPA, certain Afghan nationals may receive special immigrant status if they: (1) were or are "employed by or on behalf of the United States Government in Afghanistan on or after October 7, 2001, for not less than one year"; (2) "provided faithful and valuable service to the United States Government"; and (3) "experienced

---

[2] Unless otherwise indicated, the following facts are taken from the Amended Complaint, and are assumed to be true for the purposes of deciding the instant motion.

or [are] experiencing an ongoing serious threat as a consequence of [their] employment by the United States Government."  AAPA §§ 602(b)(1)–(2).

Plaintiffs allege that after the enactment of the RCIA and AAPA, applicants to both programs experienced "considerable processing delays that risked the lives of the very applicants they were intended to protect."  (Am. Compl. ¶ 34.)  For example, by mid-2011, four years after the start of the Iraqi SIV program, while nearly 30,000 Iraqi applicants and their family members had applied for the SIV program, only 4,000 applications had been processed.  (*Id.* ¶ 37.)  And, while some of the Iraqi applicants waited for a decision, they "endur[ed] threats or acts of violence against themselves and their families because of their assistance to the US Government."  (*Id.* ¶ 34.)

In 2013, Congress amended the RCIA and AAPA to "improve the efficiency by which applications for special immigrant visas . . . are processed."  RCIA § 1242(c)(1); AAPA § 602(b)(4)(A).  Per the amendment, all government-controlled steps incidental to issuing the SIVs, "including required screenings and background checks," should be completed within nine months after submission of a complete application.  *Id.*  However, additional time may be taken to process "visas in high-risk cases for which satisfaction of national security concerns requires additional time."  RCIA § 1242(c)(2); AAPA § 602(b)(4)(B).  The amendment also required the Secretary of State and the Secretary of Homeland Security, in consultation with the Secretary of Defense, to publish periodic reports describing "the implementation of improvements to the processing of applications for special immigrant visas."  RCIA § 1242(f)(2); AAPA § 602(b)(12)(B).  These reports must include, among other things, information on enhancements made to provide for the orderly processing of applications without significant delay and "the

reasons for the failure to process any applications that have been pending for longer than 9 months." *Id.*

### B. Afghan and Iraqi SIV Application Process

To successfully obtain admission into the United States through the SIV program, Iraqi and Afghan nationals must complete fourteen steps. (Am. Compl. ¶ 31.) In the January 2018 joint periodic report, incorporated by reference in Plaintiffs' Amended Complaint (*see id.* ¶¶ 45–46, 48), the steps are grouped together to comprise a four-stage process. (*See* ECF No. 36-14 at 58–62 ("January 2018 Joint Report").)

The first stage is referred to as the "Chief of Mission ('COM') application process." (*Id.* at 2.) It begins at step one with the submission of an application, including "a 'statement of credible threat' detailing the ongoing threat to the applicant as a result of the applicant's service and a letter of recommendation from a supervisor attesting to the applicant's 'faithful and valuable service.'" (Am. Compl. ¶ 31.) At steps two through five, the National Visa Center ("NVC") reviews the application and sends it to COM, who either approves or denies it. (*Id.*) An applicant who is denied has a statutory right to appeal the decision within 120 days. (*Id.*) In 2017, the successful appeal rate at the COM Approval stage was 40% for Iraqi applicants and 66% for Afghan applicants. (*Id.*)

The second stage is the "Form I-360 adjudication process." (January 2018 Joint Report at 2.) It consists of steps six and seven. (*Id.*) At step six, the applicant submits a Special Immigrant Petition to U.S. Citizenship and Immigration Services ("USCIS") for categorization as a special immigrant. (Am. Compl. ¶ 31.) At step seven, USCIS "adjudicates the Special Immigrant Petition and communicates the results to NVC." (*Id.*)

5

JA 035

The third stage is the "Visa Interview Process"; it includes steps that occur before and after the interview.  (January 2018 Joint Report at 3.)  At steps eight through eleven, which occur before the interview, the NVC requests and reviews "standard immigrant visa documentation" from the applicant to determine whether the applicant is admissible to the United States and eligible for a United States visa.  (Am. Compl. ¶ 31.)  If the applicant is eligible, she will be contacted to schedule an interview at the embassy in Afghanistan or Iraq.  (*Id.*)  Step twelve is an interview with a consular officer.  (*Id.*)  Following the interview, if the applicant has not been denied, her case undergoes step thirteen, administrative processing.  (*Id.*)

The fourth and final stage is known as "Visa issuance to eligible applicants."  (January 2018 Joint Report at 3.)  This stage consists of only one step—fourteen.  *Id.*  After obtaining a medical examination, eligible applicants are issued an SIV.  *Id.*  With an SIV, an individual is "eligible to receive resettlement benefits upon arrival and to apply for adjustment of status to seek the status of lawful permanent resident and ultimately of citizen."  (Am. Compl. ¶ 33.)

## C.  Provisional Class Representatives

There are five provisional class representatives: Mr. Doe-Alpha, Ms. Doe-Bravo, Mr. Doe-Charlie, Ms. Doe-Delta, and Mr. Doe-Echo.  The provisional class representatives are SIV applicants, who reside in either Iraq or Afghanistan and "live in fear of reprisal for their service to the US government while they await final decisions from Defendants on their applications." (*Id.* ¶ 55.)  In the case of each provisional class representative, Plaintiffs allege that "Defendants have now taken far longer than the statutorily-allowed nine months to complete all government-controlled processing steps."  (*Id.*)

1. Mr. Doe-Alpha

Mr. Doe-Alpha is an Afghan national who applied to the SIV program on September 25, 2013, following approximately two years of service to a United States government contractor. (*Id.* ¶¶ 13, 56–57.)  Although Mr. Doe-Alpha fled his Taliban-controlled hometown and relocated his wife and daughter to a nearby city, his family members who remained behind have been repeatedly threatened and harassed by individuals self-identifying as the Taliban.  (*Id.* ¶¶ 9, 56.)  In addition, at some point, the Taliban placed Mr. Doe-Alpha's parents under house arrest. (*Id.* ¶ 56.)  As a result, Mr. Doe-Alpha fears that if he returns to his hometown, he will be targeted by the Taliban.  (*Id.*)

When the Amended Complaint was filed, Mr. Doe-Alpha had been seeking a final decision on his SIV application for almost five years.  (*Id.* ¶ 57.)  Defendants took "over four months for the initial COM decision; five days for his Special Immigrant Petition; and over twelve months for his visa interview."  (*Id.*)  On June 11, 2015, Mr. Doe-Alpha had his visa interview.  (*Id.*)  Since then, his application has remained at stage three, step thirteen of the Afghan SIV application process—administrative processing.  (*Id.*)

2. Ms. Doe-Bravo

Ms. Doe-Bravo is an Afghan national who applied to the SIV program on October 15, 2015, following approximately two years of service to a United States government-funded development organization.  (*Id.* ¶¶ 14, 58–59.)  In response to frequent death threats via letter and phone, Ms. Doe-Bravo has changed her phone number and relocated with her husband and three young children numerous times.  (*Id.* ¶¶ 9, 58.)  She alleges that she feels hopeless and unable to trust anyone as she recovers from her recent childbirth and cares for her newborn.  (*Id.* ¶ 58.)

JA 037

When the Amended Complaint was filed, Ms. Doe-Bravo had been seeking a final decision on her SIV application for almost three years.  (*Id.* ¶ 59.)  Defendants took nearly three months to issue a denial on her application for COM Approval, which she subsequently appealed.  (*Id.*)  Twenty-nine months after Doe-Bravo submitted her appeal and four days before she filed her Amended Complaint, Defendants granted her request for COM Approval and informed her that she was authorized to submit her Special Immigration Petition.  (*Id.*)  At the time of her response to the motion to dismiss, Ms. Doe-Bravo's application was at stage two, step six of the Afghan SIV application process—submission of the Special Immigration Petition to USCIS for categorization as a special immigrant—and she was taking prompt action to make the requisite submission.  (*Id.*)

　　　3. Mr. Doe-Charlie

Mr. Doe-Charlie is an Afghan national who applied to the SIV program on April 18, 2016, following approximately four years of service as an interpreter and translator for two U.S. military contractors.  (*Id.* ¶¶ 15, 60–61.)  Mr. Doe-Charlie and his family have received death threats, (*id.* ¶ 60), and the Taliban attacked and repeatedly stabbed Mr. Doe-Charlie's brother, believing he was Mr. Doe-Charlie, (*id.* ¶¶ 9, 60).  Although Mr. Doe-Charlie has relocated to protect his family, he continues to fear for their safety.  (*Id.*)

At the time of the Amended Complaint, Mr. Doe-Charlie had been awaiting a final decision on his SIV application for over two years.  (*Id.* ¶ 61.)  Defendants took over eight months to deny his application for COM Approval, which he subsequently appealed on April 3, 2017.  (*Id.*)  Since that time, Mr. Doe-Charlie has been awaiting a decision on his renewed application for COM Approval, which places his application at stage one, step four of the Afghan SIV application process—COM review.  (*Id.*)

### 4. Ms. Doe-Delta

Ms. Doe-Delta is an Afghan national who applied to the SIV program on December 23, 2016, following approximately three years of service to a U.S. government communications contractor. (*Id.* ¶¶ 16, 62–63.) The nature of her position requires her to travel with colleagues to active conflict zones and interact with the public. (*Id.* ¶ 62.) The Taliban has threatened her and her family, and masked men have followed her and her family. (*Id.* ¶¶ 9, 62.) Ms. Doe-Delta and her father also have been threatened with Ms. Doe-Delta's death if she did not quit her job. (*Id.*) As a result, Ms. Doe-Delta constantly feels unsafe. (*Id.* ¶ 62.)

At the time of the Amended Complaint, Ms. Doe-Delta had been awaiting a final decision on her SIV application for over a year and a half. (*Id.* ¶ 63.) Because she has yet to receive a decision on her COM application, her application is in the initial steps of stage one of the Afghan SIV application process. (*Id.*)

### 5. Mr. Doe-Echo

Mr. Doe-Echo is an Iraqi national who applied to the SIV program in July 2013, following approximately two years of service as a translator for U.S. forces, "including eight months training Iraqi police at the request of the United States." (*Id.* ¶¶ 17, 64–65.) Because of his service, Mr. Doe-Echo has been threatened by militants, who shot at his home, and who kidnapped and murdered his father. (*Id.* ¶¶ 9–10, 64.) After his father's murder, Mr. Doe-Echo fled Iraq, but has since had to return because he was unable to find a job or otherwise support himself. (*Id.* ¶ 64.) He now lives in hiding in Iraq. (*Id.*)

At the time of the Amended Complaint, Mr. Doe-Echo had been awaiting a final decision on his SIV application for almost five years. (*Id.* ¶ 65.) Defendants took "approximately sixteen months for the original COM decision; nearly a month for his COM Appeal to be granted; nearly six months for his Special Immigrant Petition; and nearly three months to schedule and hold his

interview." (*Id.*)  On February 3, 2016, Mr. Doe-Echo had his visa interview.  (*Id.*)  Since that time, his application has remained at stage three, step thirteen of the Iraqi SIV application process—administrative processing.  (*Id.*)

### D. Procedural History

On June 12, 2018, Plaintiffs filed this action, moved for class certification, and moved for the appointment of class representatives as well as class counsel.  (ECF Nos. 1, 3–4.)  One month later, on July 12, 2018, Plaintiffs filed an Amended Complaint.  (ECF No. 23.)  Defendants then moved to partially dismiss Plaintiffs' Amended Complaint on August 13, 2018.  (ECF No. 30.)

On September 7, 2018, Plaintiffs filed a motion for preliminary injunction and a motion for expedited discovery shortly before their response to Defendants' partial motion to dismiss. (ECF Nos. 34–36.)  Plaintiffs' preliminary injunction motion explained that the additional filings were in response to "Defendants' failure to produce data in informal discovery that should have been simple for them to produce," and "[i]n order to avoid further delay."  (ECF No. 34 at 13.) Plaintiffs also requested permission to supplement the preliminary injunction motion once discovery had been completed.  (*See id.*)

On September 28, 2018, Defendants filed a reply in support of their pending partial motion to dismiss, a response to Plaintiffs' motion to expedite discovery, and a response to Plaintiffs' motion for a preliminary injunction.  (ECF Nos. 41–43.)  Defendants argue, in part, that Plaintiffs' motion to expedite discovery should be denied because the court has not ruled on Defendants' partial motion to dismiss.  (*See* ECF No. 41 at 5.)

Because Plaintiffs' preliminary injunction motion includes a request to supplement the motion with discovery before the court rules on the merits, the court turns first to Defendants' partial motion to dismiss.

## II.   LEGAL STANDARD

Federal courts are of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "Limits on subject-matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have prescribed,' and those limits 'must be policed by the courts on their own initiative.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Such limits are especially important in the agency review context, where "Congress is free to choose the court in which judicial review of agency decisions may occur." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Watts*, 482 F.3d at 505).  The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).  Thus, plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  "Nevertheless, 'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept [plaintiffs'] legal conclusions.'"

11

*Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  Importantly, the court "is not limited to the allegations of the complaint."  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing, *inter alia*, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Conversely, a motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plaintiffs' factual allegations do not need to be "detailed," but "the Federal Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing *Twombly*, 550 U.S. at 570).

### III.   ANALYSIS

#### A. <u>Subject-Matter Jurisdiction</u>

Defendants' motion to dismiss for lack of subject-matter jurisdiction is premised entirely upon their contention that Plaintiffs lack standing to bring the first three causes of action, which seek, in part, a declaration that Defendants' delay is unreasonable as well as an order compelling

Defendants to adjudicate the applications pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361.  (*See* ECF. No. 30 ("Defs.' Mot. to Dismiss") at 20–32.)  In so contending, Defendants explicitly ask this court to reject the reasoning and holding of another court in this district.  (*See id.* at 16 n.8.)

In *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016), Judge Gladys Kessler was presented with the question of whether the nine plaintiffs, Iraqi and Afghan citizens who had applied for SIVs, had standing to seek an order compelling the defendants to adjudicate their applications within a reasonable period of time, pursuant to the APA and the Mandamus Act.  *Id.* at 272–73.  Of those nine plaintiffs, three of them presented factual circumstances akin to those presented here.

In *Nine Iraqi Allies*, one plaintiff—Plaintiff Kilo—had been waiting for COM approval for almost two years.  *Id.* at 292.  The government contended that Kilo lacked standing because, "not having submitted an SIV application, he [could not] claim that he [was] injured by the Government's failure to adjudicate an SIV application."  *Id.*  In rejecting this argument, Judge Kessler noted that a statutory provision required Kilo to obtain COM Approval before submitting his full SIV application; that there was nothing he could do without the approval; that review of applications for COM Approval was non-discretionary; and that a statutory provision gave applicants who had been denied a right to appeal.  *Id.*

In *Nine Iraqi Allies*, two plaintiffs—Plaintiffs Hotel and Lima—had completed the visa interview and had remained at the "administrative processing" step for over four years.  *Id.* at 278–79.  The government contended that "administrative processing" was synonymous with "final refusal," and thus Plaintiffs lacked standing to pursue their claims.  *Id.* at 284.  In ruling in favor of the Plaintiffs, the district court noted that the government's "own actual practices and

13

statements" belied their assertions. *Id.* For example, "administrative processing" was listed in the Joint Reports to Congress as step 13 of the 14 required steps in the SIV application process. *Id.* In addition, a U.S. Embassy website explained that applicants should see one of three status indicators when logging into the State Department's Consular Electronic Application Center: administrative processing, issued, or refused. *Id.* at 286. Judge Kessler concluded that

> the Government endeavored to enjoy the benefits of consular nonreviewability . . . without having to report to Congress that it has denied the SIV applications of many Iraqis and Afghans who supported the United States' military efforts in their countries. The applications have either been finally denied or they are still working their way through the 14 steps the Government requires to be completed. The Government cannot have it both ways.

*Id.* at 289.

In light of specific factual circumstances attendant to the plaintiffs in each category, the court held that the plaintiffs had standing to bring the claims because (1) they had suffered an injury in fact, "the failure to receive final decisions on their SIV applications within a reasonable period"; (2) their injury was "quite clearly caused by [the] [d]efendants' conduct"; and (3) an order to adjudicate the plaintiffs' applications "would directly redress [the] [p]laintiffs' injury caused by the [g]overnment's failure to decide." *Id.* at 281–82. Judge Kessler further held that the defendants' adjudication of the plaintiffs' SIV application within nine months was non-discretionary, "that judicially manageable standards exist to measure the [g]overnment's performance of its duty, and that the national security exception does not undermine these conclusions." *Id.* at 295.

In this case, Defendants directly challenge two of the court's holdings in *Nine Iraqi Allies*. First, Defendants urge the court to find that none of the Plaintiffs have suffered an injury-in-fact, and therefore have no standing to sue. Second, Defendants argue that Plaintiffs have not identified a non-discretionary agency action to compel.

1. <u>Plaintiffs have standing to bring their claims</u>.

In order to have standing to sue, (1) Plaintiffs must have "suffered an 'injury in fact,'" that was or is "actual or imminent, not 'conjectural' or 'hypothetical'"; (2) there must be a causal relationship between the injury and the basis for the claim; and (3) it must be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560–61 (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

### a.   *Plaintiffs Doe-Bravo, Doe-Charlie, and Doe-Delta*

Defendants argue that Plaintiffs Doe-Bravo, Doe-Charlie, and Doe-Delta have no standing to sustain the first three causes of action because they have not filed a complete visa application and thus have not suffered a cognizable legal injury that is redressable by the court. (Defs.' Mot. to Dismiss at 21–23.)  In the alternative, Defendants assert that the nine-month deadline does not apply to Doe-Bravo, Doe-Charlie, and Doe-Delta because an officer has not yet determined that they are "eligible" for an SIV.  (*Id.* at 23.)  These arguments are unavailing.

That these three Plaintiffs have yet to reach steps 8 and 9—when they would be directed to submit and subsequently do submit "standard immigrant visa documentation"—is of no consequence where, as here, Plaintiffs can do nothing to advance their applications without non-discretionary action by the government.

When this case was filed, Plaintiff Doe-Bravo was awaiting COM Approval.  (Am. Compl. ¶ 59.)  Subsequently, she received COM Approval, which allowed her to move to the second stage—the Form I-360 adjudication process.  (*Id.*)  While a final decision, favorable or unfavorable, would render her claims moot, *see e.g.*, *Nine Iraqi Allies*, 168 F. Supp. 3d at 277–78

15

(finding claims moot where plaintiffs had received a visa), her progression through the process while this case has been pending does not.  As detailed above, once Doe-Bravo submits the requisite documents, she must wait for USCIS, an agency of the Department of Homeland Security, to rule on her petition.  USCIS' obligation to issue a decision is non-discretionary.  *See* APAA §§ 602(b)(1)(D), (b)(12)(B)(v)(II) (providing that an applicant must clear "a background check and appropriate screening, as determined by the Secretary of Homeland security" and stating that quarterly reports shall include information on the total number of applications that are pending due to USCIS' "failure . . . to complete the adjudication of the Form I-360").

Second, Plaintiffs Doe-Charlie and Doe-Delta, like Plaintiff Kilo in *Nine Iraqi Allies*, are still awaiting COM Approval (Am. Compl. ¶¶ 61, 63), and therefore cannot submit a full SIV application because, pursuant to the APAA, COM Approval confirming their "employment and faithful and valuable service to the United States Government" is a pre-requisite to submitting the full SIV application.  APAA § 602 (b)(2)(D)(i).  The COM or her designee's obligation to issue a decision is non-discretionary.  *See* APAA §§ 602(b)(2)(D)(i), (b)(12)(B)(v)(I) (providing that the appropriate Chief of Mission, or her designee, "shall conduct a risk assessment of the alien and an independent review of records maintained by the United States Government or hiring organization or entity to confirm employment and faithful and valuable service" and stating that quarterly reports shall include information on the total number of applications that are pending due to USCIS' "failure to receive approval from the Chief of Mission").

Therefore, all three Plaintiffs have carried their burden by showing that they have suffered and continue to suffer an injury in fact: "the failure to receive final decisions on their SIV applications within a reasonable period." *Nine Iraqi Allies*, 168 F. Supp. 3d at 282.  Because these three Plaintiffs have established injury-in-fact, without reliance on the nine-month

deadline, the court need not assess Defendants' alternative argument regarding the meaning of the phrase "eligible alien" in the provision referencing the nine-month deadline. *See e.g.*, *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50 (D.D.C. 2008) (holding that jurisdiction is proper over an unreasonable delay claim even when the applicable statute "does not specify a timeframe for action"); *see also Telecomm. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting forth a standard to assess unreasonable delay claims that permits consideration of a Congress-provided timetable, but does not require a timetable for consideration of a claim).

Having determined that an injury-in-fact exists, the court must next assess whether Plaintiffs have carried the remainder of their burden by establishing the other two requirements for standing—a causal relationship and redressability. Defendants do not dispute the causal relationship, nor could they reasonably. As the court found in *Nine Iraqi Allies*, "Plaintiffs' alleged injury—the lack of final decisions on their SIV applications—is quite clearly caused by Defendants' conduct (*i.e.*, Defendants' failure to adjudicate the applications)." *Nine Iraqi Allies*, 168 F. Supp. 3d at 282. In terms of redressability, Defendants summarily contend that were this court to grant the requested relief, Plaintiffs could not submit a complete visa application. (Defs.' Mot. to Dismiss at 23.) But this argument mischaracterizes Plaintiffs' requested relief. Plaintiffs seek final adjudication of their applications; not a specific outcome. If Plaintiffs are granted a visa, their injury will be redressed. If Plaintiffs are finally denied at any of the intermediary steps, although it is not their desired outcome, their injury—the lack of adjudication—also will be redressed.

Accordingly, the court finds that Plaintiffs Doe-Bravo, Doe-Charlie, and Doe-Delta have alleged sufficient facts to establish standing to sue for an order compelling Defendants to adjudicate their SIV applications in a reasonable amount of time.

b. *Plaintiffs Doe-Alpha and Doe-Echo*

Defendants challenge whether Plaintiffs Doe-Alpha and Doe-Echo have standing to sustain the first three causes of action because they argue that, contrary to the findings in *Nine Iraqi Allies*, "administrative processing" is in fact synonymous with "final refusal." (Defs.' Mot. to Dismiss at 23–29.) Thus, according to Defendants, Plaintiffs Doe-Alpha and Doe-Echo cannot ask this court to "review and reverse discretionary visa denials by consular officers." (*Id.* at 28–29.) In response, Plaintiffs contend that all applicants who complete an interview, regardless of whether they are issued a visa, must go through the administrative processing step, and therefore "administrative processing" and "final refusal" are different steps. Plaintiffs have the better of this argument.

Plaintiffs Doe-Alpha and Doe-Echo, like Plaintiffs Hotel and Lima in *Nine Iraqi Allies*, have completed their visa interviews and remain at step 13—the administrative processing step. (Am. Compl. ¶¶ 57, 65.) Plaintiffs cite to an abundance of evidence indicating that the administrative processing step that Plaintiffs Doe-Alpha and Doe-Echo have been in since 2015 and 2016, respectively, is separate and apart from a final adjudication. First, Plaintiffs have shown that Defendants' policy mandates administrative processing for every applicant who has a visa interview before a final decision can be made. The State Department's website states, "even if your visa interview is successful, you will not receive your visa on the same day. All SIV applicants require additional *administrative processing* after the interview." (ECF No. 36-13 ("Poellot Decl.") Ex. C at 19 (emphasis in original).) And, as discussed above, the Joint Reports state that a visa issues only "[u]pon completion of administrative processing." (*Id.* Ex. A at 5.) Second, Plaintiffs have adduced evidence that, as a matter of practice, after every interview, applicants are handed a form indicating that their "application is 'refused' pending

'administrative processing' and/or pending submission of additional documents requested by DOS." (*Id.* ¶ 10.)  The "'refusals' are not treated as and are not intended to be final adjudications of an SIV application.  Rather, . . . administrative processing is an expected and anticipated part of the SIV process." (*Id.* ¶ 11.)  Third, Plaintiffs have been told that their applications are still being processed and that they will receive further information about their applications.  For example, Plaintiff Doe-Alpha was informed that his case was "pending administrative processing in order to verify [his] qualifications for [a] visa." (*See* ECF No. 36-8 ("Doe-Alpha Decl.") Exs. B–D.)  And, while Plaintiff Doe-Echo's case was in administrative processing, he was told that his "case [w]as in the final stages of processing" and that while the Immigration Visa Unit could not tell him exactly when he would receive his visa, it would be "relatively soon." (ECF No. 36-2 ("Doe-Echo Decl.") Ex. B.)

These facts establish that administrative processing is not a final adjudication but a mandatory intermediate step.  Applicants who languish in that step for unreasonable periods of time suffer and continue to suffer an injury in fact: "the failure to receive final decisions on their SIV applications within a reasonable period." *Nine Iraqi Allies*, 168 F. Supp. 3d at 282.  Thus, Plaintiffs have met part of their burden by establishing the first requirement for standing.

As with the other group of Plaintiffs, Defendants cannot reasonably dispute the presence of a causal relationship, and, as to redressability, here again Defendants misapprehend Plaintiffs Doe-Alpha and Doe-Echo's requested relief.  They do not seek judicial review of a consular decision, but instead seek a final decision on their applications.  Plaintiffs Doe-Alpha and Doe-Echo are in a state of liminality: Will their application be granted so that they can progress to step 14?  Or, will their application be denied, which will remove them from consideration altogether?  A decision, favorable or unfavorable, will redress their injury.

Accordingly, the court finds that Plaintiffs Doe-Alpha and Doe-Echo have alleged sufficient facts to establish standing to sue for an order compelling Defendants to adjudicate their SIV applications in a reasonable amount of time.

        2. <u>Plaintiffs have identified a required action to compel under the APA and the Mandamus Act.</u>

Finally, Defendants argue that all Plaintiffs lack standing to bring claims under the APA and Mandamus Act because their applications have been timely refused or not even submitted, and therefore there is no discretionary action to challenge.  (Defs.' Mot. to Dismiss at 29–32.)

The APA and the Mandamus Act each provide a cause of action to remedy a government agency's inaction.  More specifically, the APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C.A. § 706.  And the Mandamus Act grants district courts original jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Notably, a claim under either the APA or the Mandamus Act may not be sustained unless the act sought to be compelled is a clear nondiscretionary duty.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[Section] 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'"); *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) ("The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'").

In arguing that Plaintiffs cannot identify a non-discretionary action, Defendants rely only on their proffered understanding of the status of each Plaintiff's application and the notion that the nine-month deadline is inapplicable to applicants unless and until they receive a visa.  As detailed above, Defendants' understanding is inaccurate, and Plaintiffs' standing does not

USCA Case #25-5279   Document #2171785   Filed: 05/04/2026   Page 55 of 287

necessarily rise or fall based on the applicability of the nine-month deadline.[3]  Accordingly, the

court finds that Plaintiffs have standing to bring claims under the APA or Mandamus Act.

### B.  Sufficiency of Plaintiffs' Cause of Action

Defendants argue that Plaintiffs have failed to state claims under the Declaratory

Judgment Act, the APA, and the Mandamus Act because Congress has not mandated the nine-

month deadline.  (Defs.' Mot. to Dismiss at 32–35.)  This argument is unavailing.

It is true that if the nine-month deadline were mandatory, any delay beyond that time

would likely be *per se* unreasonable.  However, even if the nine-month deadline is not

mandatory, that does not preclude Plaintiffs from using it as a benchmark to assess whether the

current delays are unreasonable in light of Congress's stated intention to "improve the efficiency

by which applications for special immigrant visas . . . are processed."  RCIA § 1242(c)(1);

AAPA § 602(b)(4)(A).  Moreover, Defendants' invocation of the provision permitting the

government to take additional time to process requests for visas in "high-risk cases" where there

are "national security concerns," does not help their position.  RCIA § 1242(c)(2); AAPA

§ 602(b)(4)(B).  That provision appears to carve out an exception to the nine-month deadline,

and the government does not argue that that exception applies here.  Thus, Defendants' motion to

dismiss for failure to state a claim is without merit.

---

[3] At least one court in this district has held that, with respect to all fourteen steps, "the APA, 5
U.S.C. § 555 (b), creates a duty for the Government to reach a final decision on Plaintiffs'
applications 'within a reasonable period,' and RCIA § 1242(c)(1) and AAPA § 602(4)(A) clarify
that duty is non-discretionary and must 'ordinarily' be completed within nine months." *Nine
Iraqi Allies*, 168 F. Supp. 3d at 282.  In addition, in the FOIA context, another court in this
district held that "the statute gives the State Department nine months to adjudicate SIV
applications, a timeline which includes all steps incidental to the issuance of [SIV] visas,
including . . . COM approval." *Airaj v. United States*, No.15-cv-983 (ESH), 2016 WL 1698260,
at *9 (D.D.C. Apr. 27, 2016), *aff'd sub nom. Airaj v. United States Dep't of State*, No. 16-5193,
2017 WL 2347794 (D.C. Cir. Mar. 30, 2017) (internal quotations omitted).

JA 051

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for partial dismissal of the Amended

Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is

hereby **DENIED**.

An appropriate Order accompanies this Memorandum Opinion.


Date:  January 30, 2019




*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

JA 052

USCA Case #25-5279    Document #2171785         Filed: 05/04/2026    Page 57 of 287

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL R. POMPEO, CARL C. RISCH, UNITED DEPARTMENT OF STATE, KIRSTJEN NIELSEN, L. FRANCIS CISSNA, DONALD NEUFELD, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil Action No. 18-cv-01388 (TSC) |

## ORDER

Before the court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.

(ECF No. 30.)  Upon consideration of the arguments presented in Defendants' motion (ECF No.

30), the arguments presented in Plaintiffs' Opposition (ECF No. 36), and the arguments

presented in Defendants' Reply (ECF No. 43); and for the reasons set forth in the court's

Memorandum Opinion dated January 30, 2019 (ECF No. 47), it is hereby **ORDERED** that

Defendants' Motion to Dismiss is **DENIED**.

Date:  January 30, 2019

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

1

JA 053

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AFGHAN AND IRAQI ALLIES UNDER )
SERIOUS THREAT BECAUSE OF THEIR )
FAITHFUL SERVICE TO THE UNITED )
STATES, ON THEIR OWN AND ON BEHALF )    Civil Action No. 1:18-cv-01388-TSC
OF OTHERS SIMILARLY SITUATED, )
                                       )
        Plaintiffs, )
                                       )
    v. )
                                       )
MICHAEL POMPEO, *et al.*, )
                                       )
        Defendants. )
                                       )

## DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW Defendants and file this Answer to Plaintiffs' First Amended Complaint.

Answering the allegations of each paragraph of the amended complaint and using the same

headings (which are not admissions) and paragraph numbers, Defendants respond as follows:

## INTRODUCTION AND SUMMARY

1.      The first sentence of paragraph 1 consists of Plaintiffs' characterization of their

complaint, to which no response is required.  To the extent a response is required, the first

sentence of paragraph 1 is denied, and instead Defendants aver that the Secretary of State and

Secretary of Homeland Security are meeting all statutory obligations to include the processing of

applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or

Special Immigrant, and DS-260, Immigrant Visa Application, as required under the Refugee

Crisis in Iraq Act of 2007 ("RCIA") and Afghan Allies Protection Act of 2009 ("AAPA").  The

second sentence of paragraph 1 consists of Plaintiffs' characterization of Congress' motivation in

amending the RCIA and AAPA by National Defense Authorization Act for Fiscal Year 2014

1

("2014 NDAA"), to which no response is required. To the extent a response is required, the second sentence of paragraph 1 is denied, and instead Defendants aver that RCIA and AAPA speak for themselves. Defendants further aver that in the 2014 NDAA, Congress modified the RCIA and AAPA, directing the Secretary of State and Secretary of Homeland of Security to improve the efficiency of processing special immigrant visas under and the AAPA and the RCIA, and to publish quarterly public reports on the efficiency improvements. The first clause of the third sentence of paragraph 1 is denied. The second clause of the third sentence of paragraph 1 consists of Plaintiffs' characterization of *Nine Iraqis v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016) and *Doe v. U.S. Dep't of State*, No. 15-cv-01971(RWR) (D.D.C. closed Feb. 3, 2016), to which no response is required. To the extent a response is required, Defendants aver that *Nine Iraqis v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016) and *Doe v. U.S. Dep't of State*, No. 15-cv-01971(RWR) (D.D.C. closed Feb. 3, 2016) speak for themselves. The fourth sentence of paragraph 1 is denied. Defendants lack knowledge or information sufficient to admit or deny the fifth sentence of paragraph 1, but Defendants otherwise deny the fifth sentence of paragraph 1.

2.       The first sentence of paragraph 2 consists of Plaintiffs' characterization of the United States' combat operations in Afghanistan, to which no response is required. To the extent that a response is required, Defendants aver that on October 7, 2001 the United States took actions in national self-defense in Afghanistan. The second sentence of paragraph 2 consists of Plaintiffs' characterization of the United States' combat operations in Iraq, to which no response is required. To the extent a response is required, Defendants aver that on March 19, 2003 the United States took action in national self-defense in Iraq. The third sentence of paragraph 2 consists of Plaintiffs' characterization of United States action in Afghanistan and Iraq and the contribution of Afghanistan and Iraq citizens to support United States governmental action in

those countries, to which no response is required.  To the extent that a response is required, Defendants aver that the United States or contractors for the United States employ, and have employed, citizens of Afghanistan and Iraq in Afghanistan or Iraq respectively, and that Defendants lack knowledge or information sufficient to admit or deny the general allegation that "thousands of ordinary Afghans and Iraqis provided the U.S. military with critical help".

3.      Paragraph 3 consists of Plaintiffs' characterization of the putative class members, to which no response is required.  To the extent that a response is required, Defendants admit paragraph 3.

4.      Paragraph 4 consists of Plaintiffs' characterization of Congress' motives in passing the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

5.      Paragraph 5 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

6.      Paragraph 6 is denied.

7.      Defendants admit Congress amended both the AAPA and RCIA in 2013, and that the language in quotes in the first sentence of paragraph 7 is found at the sections of those two laws cited at the end of the sentence.  The remainder of the first sentence of paragraph 7 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.  The second sentence of paragraph 7 is admitted.

8.      The first sentence of paragraph 8 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to

3

include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.  The second through fourth sentences of paragraph 2 consist of Plaintiffs' characterization of *Nine Iraqis v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016) and *Doe v. U.S. Dep't of State*, No. 15-cv-01971(RWR) (D.D.C. closed Feb. 3, 2016), to which no response is required.  To the extent a response is required, Defendants aver that *Nine Iraqis v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016) and *Doe v. U.S. Dep't of State*, No. 15-cv-01971(RWR) (D.D.C. closed Feb. 3, 2016) speak for themselves.

9.      The first sentence of paragraph 9 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.  The second sentence of paragraph 9 is denied, and instead Defendants aver that while Plaintiff Doe-Alpha submitted an application for Chief of Mission approval on September 25, 2013; Plaintiff Doe-Bravo submitted an application for Chief of Mission approval on October 15, 2015; Plaintiff Doe-Charlie submitted an application for Chief of Mission approval on April 18, 2016; Plaintiff Doe-Delta submitted an application for Chief of Mission approval on December 23, 2016; and, Plaintiff Doe-Delta submitted an application for Chief of Mission approval on July 20, 2013, the date of submission of an application for Chief of Mission approval does not reflect the amount of time an application has been pending in government controlled steps or in applicant controlled steps.  Defendants lack knowledge or information sufficient to admit or deny the third sentence and remaining subparagraphs of paragraph 3, but Defendants otherwise aver that: a consular officer refused to issue Plaintiff Doe-

4

Alpha a visa under 8 U.S.C. § 1201 (g) on June 6, 2015; Plaintiff Doe-Bravo has a visa interview scheduled for March 13, 2019; U.S. Embassy Afghanistan denied Plaintiff Doe-Charlie's application for Chief of Mission approval on December 30, 2016; U.S. Embassy Afghanistan denied Plaintiff Doe-Delta's application for Chief of Mission approval on December 20, 2018; and, a consular officer refused to issue Plaintiff Doe-Echo a visa under 8 U.S.C. § 1201(g) on February 26, 2016.

10. Defendants lack knowledge or information sufficient to admit or deny the specific allegations in paragraph 10, but Defendants admit that putative class members face threats as a result of their employment with the United States or contractors for the United States.

11. Defendants lack knowledge or information sufficient to admit or deny paragraph 11.

12. Paragraph 12 consists of Plaintiffs' characterization of the Complaint, to which no response is required. To the extent that a response is required, Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA, and deny that Plaintiffs are entitled to any relief whatsoever.

### THE PARTIES

13. Paragraph 13 is admitted to the extent that Plaintiff Doe-Alpha is an Afghan citizen but is otherwise denied. Instead Defendants aver that a consular officer refused to issue Plaintiff Doe-Alpha a visa under 8 U.S.C. § 1201(g) on June 11, 2015 and on August 21, 2016.

14. Paragraph 14 is admitted to the extent that Plaintiff Doe-Bravo is an Afghan citizen but is otherwise denied. Instead Defendants aver that Plaintiff Doe-Bravo is scheduled for a visa interview on March 13, 2019.

15.     Paragraph 15 is admitted to the extent that Plaintiff Doe-Charlie is  an Afghan citizen but is otherwise denied.  Instead Defendants aver that U.S. Embassy Afghanistan denied Plaintiff Doe-Charlie's application for Chief of Mission approval on December 30, 2016.

16.     Paragraph 16 is admitted to the extent that Plaintiff Doe-Delta is an Afghan citizen, but is otherwise denied.  Instead Defendants aver that U.S. Embassy Afghanistan denied Plaintiff Doe-Delta's application for Chief of Mission approval on December 20, 2018.

17.     Paragraph 17 is admitted to the extent that Plaintiff Doe-Echo is an Iraqi citizen but is otherwise deined.  Instead Defendants aver that a consular officer refused to issue Plaintiff Doe-Alpha a visa under 8 U.S.C. § 1201(g) on February 3, 2016 and on June, 6, 2017.

18.     The first sentence of paragraph 18 consists of the description of the capacity in which Michael R. Pompeo is named as a Defendant, to which no response is required.  To the extent a response is required, Defendants admit Michael R. Pompeo is the U.S. Secretary of State.  The second and third sentences of paragraph 18 are admitted.

19.     The first sentence of paragraph 18 consists of the description of the capacity in which Carl C. Risch is named as a Defendant, to which no response is required.  To the extent a response is required, Defendants admit Carl C. Risch is the U.S. Assistant Secretary of State for Consular Affairs.  The second sentence of paragraph 18 is admitted.

20.     Paragraph 20 is admitted.

21.     The first sentence of paragraph 21 consists of the description of the capacity in which Kirstjen Nielsen is named as a Defendant, to which no response is required.  To the extent a response is required, Defendants admit Kirstjen Nielsen is the U.S. Secretary of Homeland Security.  The second and third sentences of paragraph 21 are admitted.

22.     The first sentence of paragraph 22 consists of the description of the capacity in which L.

6

Francis Cissna is named as a Defendant, to which no response is required.  To the extent a response is required, Defendants admit L. Francis Cissna is the Director, U.S. Citizenship and Immigration Services.  The second sentence of paragraph 22 is admitted.

23.    The first sentence of paragraph 23 consists of the description of the capacity in which Donald Neufeld is named as a Defendant, to which no response is required.  To the extent a response is required, Defendants admit Donald Neufeld is the Associate Director of Service Center Operations, U.S. Citizenship and Immigration Services.  The second sentence of paragraph 23 is admitted.

24.    Paragraph 24 is admitted.

## FACTUAL BACKGROUND

## Congress Creates the Iraqi and Afghan

## Special Immigrant Visa Programs to Protect Allies from Violent Reprisals

25.    Paragraph 25 consists of Plaintiffs' characterization of Congress' motives in passing the RCIA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA speaks for itself. Defendants admit Congress passed the RCIA in 2007.

26.    The first, third and fourth sentences of paragraph 26 consists of Plaintiffs' characterization of Congress' motives in passing the RCIA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA speaks for itself.  The second sentence of paragraph 26 is admitted.

27.    Paragraph 27 is admitted to the extent that Senator Kennedy made the statements contained in the first sentence of paragraph 27.  Defendants lack knowledge or information sufficient to admit or deny the veracity of the allegations contained in paragraph 27, and instead Defendants aver that Congress passed the National Defense Authorization Act for Fiscal Year

USCA Case #25-5279 Document #2171785 Filed: 05/04/2026 Page 65 of 287

2006, Pub. L. No. 109-163, § 1059, 119 Stat. 3443 (Jan. 6, 2006), which provided for certain Iraqi and Afghan translators and interpreters to be classified as a special immigrant and is a different statute then the RCIA and AAPA.

28. Paragraph 28 consists of Plaintiffs' characterization of Congress' motives for passing the AAPA, to which no response is required. To the extent that a response is required, Defendants aver that the AAPA speaks for itself.

**Defendants Establish a Multistep SIV Application Process**

29. Paragraph 29 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required. To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

30. Paragraph 30 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required. To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

31. Paragraph 31 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required. To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves. Defendants further aver that, to the extent that Plaintiffs are referring to the steps in the Joint Department of State/Department of Homeland Security quarterly reports published on the Department of State's website, the Joint Department of State/Department of Homeland Security quarterly reports speak for themselves.

32. Paragraph 32 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required. To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves. Defendants further aver that, to the extent that Plaintiffs are referring to the steps in the Joint Department of State/Department of Homeland Security

quarterly reports published on the Department of State's website, the Joint Department of State/Department of Homeland Security quarterly reports speak for themselves.  Lastly, Defendants deny any characterization of which party is under control of the steps outlined in Joint Department of State/Department of Homeland Security quarterly reports that are not supported by the RCIA and AAPA and other law applicable to the processing of an immigrant visa.

33.     Paragraph 33 is admitted.

## Extreme Delays in Visa Processing Spark Congressional Action

34.     The first clause of first sentence of paragraph 34 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.  Defendants lack knowledge or information sufficient to admit or deny the second clause of the first sentence of paragraph 34.  The first clause of second sentence of paragraph 34 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.  Defendants lack knowledge or information sufficient to admit or deny the second clause of the second sentence of paragraph 34.

35.     Paragraph 35 is admitted to the extent that the allegations contained in paragraph 35 are representative of the information contained in the article cited, but Defendants lack knowledge or information sufficient to admit or deny the veracity of the allegations contained in paragraph 35.

36.     Paragraph 35 is admitted to the extent that the allegations contained in paragraph 36 are representative of the information contained in the article cited, but Defendants lack knowledge or information sufficient to admit or deny the veracity of the allegations contained in paragraph 36..

37.     The first sentence of paragraph 37 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.  Defendants lack knowledge or information sufficient to admit or deny the second through the fourth sentence of paragraph 37.

38.     Paragraph 38 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.

39.     Paragraph 39 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

40.     Paragraph 40 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

41.     Paragraph 41 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

42.     The first sentence of paragraph 42 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.  The second sentence of paragraph 42 is denied to the extent that the Secretary of Homeland Security Jeh Johnson designated Deputy Secretary Alejandro N. Mayorkas, as the Department of Homeland Security's Senior Coordinator for the Iraqi and Afghan Special Immigrant Visa Programs, and said designee occupied that position from May 2014 until his departure from government service on October 31, 2016.

**Defendants Face Multiple Lawsuits Due to their Delays in Processing SIV Applications**

43.     The first sentence of paragraph 43 is denied.  The second through fourth sentences of paragraph 42 consist of Plaintiffs' characterization of *Nine Iraqis v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016) and *Doe v. U.S. Dep't of State*, No. 15-cv-01971(RWR) (D.D.C. closed Feb. 3, 2016), to which no response is required.  To the extent a response is required, Defendants aver that *Nine Iraqis v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016) and *Doe v. U.S. Dep't of State*, No. 15-cv-01971(RWR),  (D.D.C. closed Feb. 3, 2016) speak for themselves.

**SIV Processing Times Continue to Far Exceed the Congressional Timeline**

44.     Paragraph 44 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.

45.     The first sentence of paragraph 45 is denied, and instead Defendants aver that Joint Department of State/Department of Homeland Security quarterly report is an average processing

time that does not indicate the processing time of any single application for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA. Defendants further aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA. The second sentence of paragraph 45 is denied, and instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.

46.    Paragraph 46 consist of Plaintiffs' characterization of January 2018 Joint Department of State/Department of Homeland Security quarterly report published on the Department of State's website, to which no response is required. To the extent that a response is required, Defendants aver that January 2018 Joint Department of State/Department of Homeland Security quarterly report speaks for itself. Defendants further aver that a consular officer refused to issue Plaintiff Doe-Echo a visa under 8 U.S.C. § 1201(g) on February 26, 2016.

47.    Paragraph 47 consists of Plaintiffs' characterization of the contents of the Joint Department of State/Department of Homeland Security quarterly reports, to which no response is required. To the extent a response is required, Defendants aver the purpose of the Joint Department of State/Department of Homeland Security quarterly report is not to indicate the processing timeline of any specific application or applications, but rather in the 2014 NDAA, Congress modified the RCIA and AAPA, directing the Secretary of State and Secretary of

Homeland of Security to improve the efficiency of processing special immigrant visas under and the AAPA and the RCIA and to publish quarterly public reports on the efficiency improvements. Defendants further aver that: a consular officer refused to issue Plaintiff Doe-Alpha a visa under 8 U.S.C. § 1201 (g) on June 6, 2015; and, U.S. Embassy in Iraq denied Plaintiff Doe-Delta's application for Chief of Mission approval on December 30, 2016.

48.     The first sentence of, and the footnote to, paragraph 48 consists of Plaintiffs' characterization of the contents of the Joint Department of State/Department of Homeland Security quarterly reports, to which no response is required.  To the extent a response is required, Defendants aver the purpose of the Joint Department of State/Department of Homeland Security quarterly report is not to indicate the processing timeline of any specific application or applications, but rather in the 2014 NDAA, Congress modified the RCIA and AAPA, directing the Secretary of State and Secretary of Homeland of Security to improve the efficiency of processing special immigrant visas under and the AAPA and the RCIA and to publish quarterly public reports on the efficiency improvements.  The second sentence of paragraph 48 is denied, instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.

**Thousands of SIV Applicants Continue to Face Reprisals and Insecurity.**

49.     The first sentence of paragraph 49 is denied, and instead Defendants aver that Joint Department of State/Department of Homeland Security quarterly reports speak for themselves. The second sentence of paragraph 49 is denied, instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the

processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.

50.    Defendants lack knowledge or information sufficient to admit or deny the first sentence of paragraph 50. The second sentence of paragraph 50 is Plaintiffs' characterization of the environment in Iraq and Afghanistan, to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the second sentence of paragraph 50 as to each alien that has submitted an application forChief of Mission approval, a Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, or a DS-260, Immigrant Visa Application. The third sentence of paragraph 50 is admitted.

51.    The first sentence of paragraph 51 is Plaintiffs' characterization of the environment in Iraq and Afghanistan, to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the first sentence of paragraph 51 as to each alien that has submitted a Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, or DS-260, Immigrant Visa Application. Defendants lack knowledge or information sufficient to admit or deny the second sentence of paragraph 51.

52.    The first sentence of paragraph 52 is Plaintiffs' characterization of the environment in Iraq, to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the first sentence of paragraph 52 as to each alien that has submitted an application for Chief of Mission approval, a Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, or a DS-260, Immigrant Visa Application. The second sentence of paragraph 52 is admitted.

53.    Defendants lack knowledge or information sufficient to admit or deny paragraph 53.

54.    Defendants lack knowledge or information sufficient to admit or deny paragraph 54.

## The Allies Are Among the Thousands of SIV Applicants Who

## Must Live in Fear While Awaiting Application Processing by Defendants.

55.    Defendants lack knowledge or information sufficient to admit or deny the first sentence of paragraph 55.  Defendants deny the second sentence of paragraph 55, instead Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.

*John Doe-Alpha Has Spent More Than 53 Months (and Counting) Waiting for Defendants to Process His SIV Application*

56.    Defendants lack knowledge or information sufficient to admit or deny paragraph 56.

57.    Paragraph 57 is denied, and instead Defendants aver that a consular officer refused to issue Plaintiff Doe-Alpha a visa under 8 U.S.C. § 1201(g) on June 11, 2015 and on August 21, 2016.

*Jane Doe-Bravo Has Spent Nearly 32 Months (and Counting) Waiting for Defendants to Process Her SIV Application*

58.    Defendants lack knowledge or information sufficient to admit or deny paragraph 58.

59.    Paragraph 59 is denied, and instead Defendants aver that Plaintiff Doe-Bravo is scheduled for a visa interview on March 13, 2019.

*John Doe-Charlie Has Spent More Than 23 Months (and Counting) Waiting for Defendants to Process His SIV Application*

60.     Defendants lack knowledge or information sufficient to admit or deny paragraph 60.

61.     Paragraph 61 is denied, and instead Defendants aver that U.S. Embassy Afghanistan denied Plaintiff Doe-Charlie's application for Chief of Mission approval on December 30, 2016.of paragraph 61 is admitted.

*Jane Doe-Delta Has Spent More Than 18 Months (and Counting) Waiting for Defendants to*

*Process Her SIV Application*

62.     Defendants lack knowledge or information sufficient to admit or deny paragraph 62.

63.     Paragraph 63 is denied, and instead Defendants aver that U.S. Embassy Afghanistan denied Plaintiff Doe-Delta's application for Chief of Mission approval on December 20, 2018.

*John Doe-Echo Has Spent More Than 54 Months (and Counting) Waiting for Defendants to*

*Process His SIV Application*

64.     Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 64.

65.     Paragraph 65 is denied, and instead Defendants aver that a consular officer refused to issue Plaintiff Doe-Alpha a visa under 8 U.S.C. § 1201(g) on February 3, 2016 and on June, 6, 2017.

**CLASS ACTION ALLEGATIONS**

66.     Paragraph 66 consists of Plaintiffs' characterization of the Complaint, to which no response is required.  To the extent that a response is required, Defendants aver that the Secretary of State and Secretary of Homeland Security are meeting all statutory obligations to include the processing of applications for Chief of Mission approval, Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, and DS-260, Immigrant Visa Application, as required under the RCIA and AAPA.

67.     Paragraph 67 is denied.

## FIRST CAUSE OF ACTION
### Declaratory Judgment, Unreasonable Delay, on behalf of Plaintiffs and the Class

68.     Paragraph 68 consists of Plaintiffs' characterization of Defendants' statutory obligations, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

69.     Paragraph 69 consists of Plaintiffs' characterization of Defendants' statutory obligations, to which no response is required.  To the extent that a response is required, Defendants aver that the Administrative Procedure Act speaks for itself.

70.     Paragraph 70 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

71.     Paragraph 71 is denied.

## SECOND CAUSE OF ACTION
### Administrative Procedure Act, Unreasonable Delay, on behalf of Plaintiffs and the Class

72.     Paragraph 72 consists of Plaintiffs' characterization of Defendants' statutory obligations, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

73.     Paragraph 73 consists of Plaintiffs' characterization of the Administrative Procedure Act, to which no response is required.  To the extent that a response is required, Defendants aver that the Administrative Procedure Act speaks for itself.

74.     Paragraph 74 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAAPA speak for themselves.

JA 070

75.    Paragraph 75 is denied.

76.    Paragraph 76 consists of Plaintiffs' characterization of the Administrative Procedure Act, to which no response is required. To the extent that a response is required, Defendants aver that the Administrative Procedure Act speaks for itself.

77.    Paragraph 77 is denied.

## THIRD CAUSE OF ACTION
### Mandamus to Compel, Adjudication of SIVs, on behalf of Plaintiffs and the Class

78.    Paragraph 78 consists of Plaintiffs' characterization of 28 U.S.C. § 1361, to which no response is required. To the extent that a response is required, Defendants aver that 28 U.S.C. § 1361 speaks for itself.

79.    Paragraph 79 consists of Plaintiffs' characterization of Defendants' statutory obligations, to which no response is required. To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

80.    Paragraph 80 consists of Plaintiffs' characterization of the Administrative Procedure Act, to which no response is required. To the extent that a response is required, Defendants aver that the APA speaks for itself.

81.    Paragraph 81 is Plaintiffs' characterization of the RCIA and AAPA, to which no response is required. To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

82.    Paragraph 82 is denied.

83.    Paragraph 83 is denied.

## FOURTH CAUSE OF ACTION
### Administrative Procedure Act, Appointment of SIV Coordinators, on behalf of Plaintiffs and the Class

84.    Paragraph 84 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no

response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

85.     Paragraph 85 is denied to the extent that the Secretary of Homeland Security Jeh Johnson designated Deputy Secretary Alejandro N. Mayorrkas, as the Department of Homeland Security's Senior Coordinator for the Iraqi and Afghan Special Immigrant Visa Programs, and said designee occupied that position from May 2014 until his departure from government service on October 31, 2016.

86.     Paragraph 86 consists of Plaintiffs' characterization of the Administrative Procedure Act, to which no response is required.  To the extent that a response is required, Defendants aver that the APA speaks for itself.

87.     Paragraph 87 is denied.

## FIFTH CAUSE OF ACTION
**Mandamus to Compel, Appointment of SIV Coordinators, on behalf of Plaintiffs and the Class**

88.     Paragraph 88 consists of Plaintiffs' characterization of 28 U.S.C. § 1361, to which no response is required.  To the extent that a response is required, Defendants aver that 28 U.S.C. § 1361 speaks for itself.

89.     Paragraph 89 consists of Plaintiffs' characterization of the RCIA and AAPA, to which no response is required.  To the extent that a response is required, Defendants aver that the RCIA and AAPA speak for themselves.

90.     Paragraph 90 is denied to the extent that the Secretary of Homeland Security Jeh Johnson designated Deputy Secretary Alejandro N. Mayorkas, as the Department of Homeland Security's Senior Coordinator for the Iraqi and Afghan Special Immigrant Visa Programs, and said designee occupied that position from May 2014 until his departure from government service on

October 31, 2016.

91.   Paragraph 91 is denied.

92.   Paragraph 92 is denied.

## JURISDICTION AND VENUE

93.   Paragraph 93 consists of a legal conclusion, to which no response is required.  To the extent a response is required, Defendants admit that the Court has federal question jurisdiction.

94.   Paragraph 94 consists of a legal conclusion, to which no response is required.  To the extent a response is required, paragraph 94 is admitted.

95.   Paragraph 95 consists of a legal conclusion, to which no response is required.  To the extent a response is required, Defendants aver that venue is appropriate before the U.S. District Court for the District of Columbia.

## PRAYER FOR RELIEF

96.   The remaining paragraph consists of Plaintiffs' request for relief, to which no response is required.  To the extent a response is required, Defendants deny that Plaintiffs are entitled to any relief whatsoever.

97.   All allegations in paragraphs 1 through 96 that have not been specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

98.   Plaintiffs are not entitled to any relief.

99.   Plaintiffs are not entitled to an award of attorney's fees, costs, or expenses under the Equal Access to Justice Act or any other statute, regulation, rule, or order.

USCA Case #25-5279   Document #2171785   Filed: 05/04/2026   Page 78 of 287

100.    Defendants reserve the right to plead the affirmative defense of failure to state a claim

and any and all other affirmative defenses as they become known or available to them during the

course of this litigation.

Date:  February 13, 2019                                Respectfully submitted,

                                                        JOSEPH H. HUNT
                                                        Assistant Attorney General

                                                        WILLIAM C. PEACHEY
                                                        Director, District Court Section

                                                        EDWARD S. WHITE
                                                        Senior Litigation Counsel,
                                                        District Court Section

                                                        /s/ Joseph F. Carilli, Jr.
                                                        JOSEPH F. CARILLI, JR.
                                                        N.H. Bar Identification No. 15311
                                                        Trial Attorney
                                                        United States Department of Justice
                                                        Civil Division
                                                        Office of Immigration Litigation
                                                        District Court Section
                                                        P.O. Box 868, Ben Franklin Station
                                                        Washington, D.C. 20044
                                                        Telephone:  (202) 616-4848
                                                        E-mail:  joseph.f.carilli2@usdoj.gov

                                                        WILLIAM M. MARTIN
                                                        Trial Attorney

                                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, the foregoing was filed electronically.  Notice

of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.

/s/ Joseph F. Carilli, Jr.
JOSEPH F. CARILLI, JR.
N.H. Bar Identification No. 15311
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4848
E-mail: joseph.f.carilli2@usdoj.gov

*Attorney for Defendants*

JA 075

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MICHAEL R. POMPEO, *et. al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

Civil Action No. 18-cv-01388 (TSC)

## MEMORANDUM OPINION

Plaintiffs represent a class of individuals who, despite real and significant personal risk, aided the United States in its time of need and now look to the United States for protection for themselves and their immediate family members.

Plaintiffs are five anonymous Afghan or Iraqi nationals seeking refuge in the United States. They allege that they "provided faithful and valuable service to the US government or its allied forces" in their capacities as employees of or on behalf of the United States government over the past several years. (ECF. No. 23 ("Am. Compl.") at ¶¶ 1, 56, 58, 60, 62.) They claim that because of their service, they "face an ongoing serious threat to their lives in their home countries." (*Id.*) Because of these threats, they submitted Special Immigrant Visa ("SIV") applications to the U.S. Department of State, seeking lawful admission into the United States. (*Id.* at ¶¶ 13–17.) Two Plaintiffs submitted their applications in 2013, one in 2015, and the other two in 2016. (*Id.*) Plaintiffs claim that at the time they filed this action on June 12, 2018, none of their SIV applications had received a final decision. (*Id.* at ¶¶ 57, 59, 61, 63, 65.)

Plaintiffs bring this case on behalf of themselves and a class of all people who have applied for an Afghan or Iraqi SIV pursuant to the Afghan Allies Protection Act of 2009, Pub. L. No. 111-8, 123 Stat. 807 ("AAPA"), or the Refugee Crisis in Iraq Act of 2007, Pub. L. No. 110-181, 122 Stat. 395 ("RCIA"), by submitting an application for Chief of Mission ("COM") approval, and whose applications have been awaiting government action for longer than 9 months.[1]  (ECF No. 3 ("Mot. Class Certification") at 1.)  They claim that Defendants have failed to process and adjudicate their SIV applications within a reasonable time.  (Am. Compl. at ¶ 1.)

Plaintiffs moved, pursuant to Federal Rule of Civil Procedure 65, "for a preliminary injunction order declaring unreasonable Defendants' delay in the processing of Plaintiffs' SIV applications and ordering Defendants to (1) submit within 30 days a plan for promptly processing and adjudicating the applications, which should be developed with Plaintiffs' input, and (2) submit progress reports every 30 days thereafter."  (ECF. No. 34 ("Pls.' PI Mot.") at 1.)[2]  During the July 26, 2019 motions hearing, the court consolidated the hearing on the preliminary injunction with the "trial on the merits," pursuant to Federal Rule of Civil Procedure 65(a)(2); thereby converting Plaintiffs' motion to one for summary judgment.  Upon consideration of Plaintiffs' motion and the parties' briefs in support thereof and in opposition thereto, the arguments presented at the July 26, 2019 motions hearing, and for the reasons set forth below, Plaintiffs' motion is hereby **GRANTED**, in part, and **DENIED**, in part.

---

[1] By Memorandum Opinion and Order dated January 30, 2019, Plaintiffs' motion for class certification was granted on a provisional basis for the sole purpose of resolving Defendants' partial motion to dismiss (ECF No. 30), Plaintiffs' motion for preliminary injunction, (ECF No. 34), and Plaintiffs' motion for expedited discovery (ECF No. 35).  In addition, Plaintiffs' counsel was appointed to represent the provisional class.

[2] Plaintiffs filed their preliminary injunction motion and memorandum in support as one document; therefore, some page numbers are repeated.  This is the only reference to the motion.  All other citations are located within the memorandum in support.

## I. BACKGROUND

The court assumes the parties' familiarity with the facts of this case and recites only what is necessary to resolve the narrow issue before the court.[3]

Along with its response to Defendants' motion to dismiss, Plaintiffs also filed a preliminary injunction motion and an expedited discovery motion. (ECF Nos. 34–36.) The motion for a preliminary injunction explained that the additional filings were needed to "avoid further delay" in light of "Defendants' failure to produce data in informal discovery that should have been simple for them to produce." (Pls.' PI Mot. at 13.) Plaintiffs requested permission to supplement the preliminary injunction motion once discovery had been completed. (*See id.*; ECF No. 44 ("Pls.' Reply") at 1, n.2.)

Because Plaintiffs asked to supplement the motion with discovery before the court ruled on the merits, the court turned first to Defendants' partial motion to dismiss and Plaintiffs' motion for expedited discovery. By Memorandum Opinion and Orders dated January 30, 2019 (ECF Nos. 47–49), the court:

1.  Granted Plaintiffs' motion for class certification on a provisional basis, for the sole purpose of resolving Defendants' partial motion to dismiss, Plaintiffs' motion for preliminary injunction, and Plaintiffs' motion for expedited discovery;
2.  Appointed Plaintiffs' counsel to represent the provisional class;
3.  Denied Defendants' motion to dismiss;
4.  Granted Plaintiffs' motion to expedite discovery; and
5.  Issued a discovery, briefing, and hearing schedule.

Despite some delays, Plaintiffs eventually received most of the discovery that they sought, and supplemented their motion.[4]

---

[3] The January 30, 2019 Memorandum Opinion (ECF No. 47) contains additional background information.

[4] At the July 26, 2019 hearing, Plaintiffs indicated they needed additional discovery to "identify and to determine the magnitude of delays across the entire SIV process." (ECF No. 72 ("Hearing Tr.") at 5:17–6:3.) Defendants abandoned their request to depose Plaintiffs' counsel. (*Id.* at 6:9–7:20.) The court concluded that Plaintiffs had proffered sufficient evidence for the court to advance Plaintiffs' preliminary injunction motion to a trial on the merits. (*Id.* at 7:22–8:13.)

3

Before expedited discovery began, Plaintiffs used named Plaintiffs' individual circumstances and data mined from the periodic SIV reports and adduced that applicants experienced wait times longer than the 9-month benchmark referenced in the statute.  When the preliminary injunction motion was filed, named Plaintiffs had been waiting in government-controlled steps of the process between 18 and 52 months.  (Pls.' PI Mot. at 10.)  And, given the application deadline, all Iraqi applicants had been waiting over 3.5 years.  (*Id.* at 12 n.1.)  In addition, Plaintiffs noted that in the SIV reports, Defendants admitted that (1) even if an applicant acted promptly in each of the applicant-controlled steps, the application may pend longer than 9 months in Step 13 alone; and (2) on average, excluding time spent awaiting a COM appeal, applicants spent 2.5 years awaiting adjudication.  (*Id.* at 11–12.)  Plaintiffs also noted that the Defendants' reported numbers likely undercounted the backlog and delays because the reported averages omit waiting times for applicants who are still awaiting adjudication.  (*Id.* at 12.)

Following expedited discovery, Plaintiffs supplemented the record with additional data regarding the time applicants await adjudication:

- At least 7,700 applications have been pending for longer than the 9-month benchmark referenced in the statute.  (ECF No. 68 ("Pls.' PI Supp.") at 4.)  Of those 7,700 applicants, over 5,300 have waited an average of 2.5–5 years for COM approval, and over 2,300 have waited an average of three years after receiving COM approval.[5]  (ECF No. 68-12 ("Onken Decl.") at ¶¶ 13, 44.)

- When Defendants produced the data, "over 7,000 applicants had been pending only in their <u>current</u> step for longer than nine months (not including time spent awaiting government action in previous steps)."  (Pls.' PI Supp. at 11 n.10 (emphasis in original) (citing Onken Decl. at ¶¶ 13, 28, 33, 40).)

---

[5] Plaintiffs were unable to track the complete average wait time because Defendants do not maintain information that links applicants across all stages except for their names and birthdays, and Plaintiffs were provided only anonymized data.  (Pls.' PI Supp. at 4 n.3.)

- Over 80% of the Afghan applications that have been designated as complete have been pending over 9 months, awaiting a decision at the COM approval stage. (Onken Decl. at ¶ 13.)

- The Iraqi class members have waited over 5 years for an initial decision on their COM application. (*Id.*)

- There are over 6,300 applicants who have already waited at least 9 months for a decision on their COM appeal. (*Id.* at ¶ 20.) This figure represents 94% of all individuals awaiting a COM appeal decision. (*Id.*) The average wait for Afghan applicants is 2 years and 8 months; for Iraqi applicants, the average wait is 3 years and 8 months. (*Id.*) Historically, COM appeals are successful 50% of the time. (*See generally* ECF No. 34-6 ("Afghan SIV Joint Reports Jan. 2016 – Apr. 2018") and ECF No. 34-7 ("Iraqi SIV Joint Reports Jan. 2016 – Apr. 2018").)

- On average, after obtaining COM approval, Afghan and Iraqi applicants spend more than 9 months awaiting final adjudication.[6] (Onken Decl. at ¶ 44.) Ninety-eight percent of applicants who have completed an interview have been waiting over 9 months for a final adjudication. (*Id.*) Those who received a final adjudication waited on average 1 year and 4 months. (*Id.*)

Plaintiffs also identified several potential problems with Defendants' method of tracking and reporting SIV application processing times:

- Defendants' recorded application completion date is unreliable for two reasons. First, an application that was complete upon receipt would not be marked as complete until the date it was reviewed. (ECF No. 68-8 ("Ockerman Dep. II") at 237:19–238:3.)

---

[6] Plaintiffs note that their calculations do not encompass applicants who have waited less than nine months after receiving COM approval, "but have spent nine months awaiting government action if the time spent awaiting COM approval were added to the time spent awaiting government decision-making in the remaining steps." (Pls.' PI Supp. at 8 n.8.)

Second, the application completion date can be modified after an application is marked as complete. (ECF No. 68-10 ("May 2019 Carilli Email") at 1.)

- The time spent awaiting a COM appeal decision is unreliable in some instances because an appeal that was complete upon receipt would not be marked as complete until the date it was reviewed. (Ockerman Dep. II at 239:13–240:11.)

- The periodic SIV reports exclude time spent awaiting the adjudication of a COM appeal. (Pls.' PI Supp. at 11.)

- Defendants' average wait calculation results in an undercount for at least the following reasons:

  o At step 2, instead of capturing the time it takes for the National Visa Center to review an application for completion, Defendants' figures reflect the time it takes to respond to any communication from an applicant. (Ockerman Dep. II at 277:16–278:15.)

  o At step 4, the COM review stage, regardless of how many applications are actually reviewed, Defendants select 40 to 50 applications from which to calculate the average wait times, instead of including all applicants. (*Id.* at 279:24–282:20.) In so doing, they exclude time spent seeking information from third parties such as employers. (*Id.* at 281:12–282:11.)

  o At step 7, the I-360 review stage, Defendants exclude applicants who undergo additional background checks from the figures reported in the periodic SIV reports. (ECF No. 68-5 ("Afuh Dep. II") at 189:2–20.)

  o At step 11, when calculating the interview wait times, instead of capturing the actual date of an interview, Defendants capture the date the interview was scheduled. (Ockerman Dep. II at 288:22–289:12.) Interviews are scheduled 6

6

weeks to 3 months in advance.  (ECF No. 68-7 ("Ockerman Dep I") at 153:12–14.)

- o At steps 5 and 12, the processing times are not calculated using actual processing times, but instead are constant numbers based on the practices of the review team.  (Ockerman Dep. II at 286:1–10 & 293:7–23.)

- o At step 14, the visa issuance stage, Defendants do not appear to track the time it takes to make a final decision because they characterize this time as "applicant-controlled."  (ECF No. 68-9 ("Oct. 2018 Joint Report") at 3.)

Moreover, in a Notice of Supplemental Authority, Plaintiffs alerted the court to the April 2019 Iraqi Joint Report, covering January 1, 2019 to March 31, 2019.  (ECF No. 73 ("Pls.' Supp. Authority") at 1.)  In the report, Defendants note that the current wait time for Iraqi applicants is 537 days, which Plaintiffs allege is more than four times the wait time in the prior report.[7]  (*Id.* at 2.)  The report states that the "growth in processing times . . . is due to the resolution of several longstanding cases which caused the overall average to jump significantly" and notes Defendants' policy of excluding pending cases in its calculation of average processing times.  (ECF No. 73-1 at 99.)

## II.  LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment

---

[7] On August 21, 2019, Defendants filed a response to Plaintiffs' Notice of Supplemental Authority (ECF No. 74), in which they did not contest that the Iraqi applicant wait times had increased, but noted that the Afghan applicant wait time decreased from 708 days to 564 days (*id.* at 2).

determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.*

"[A] motion for summary judgment adequately underpinned is not defeated simply by a bare opinion or an unaided claim that a factual controversy persists."  *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988).  If, however, "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case," summary judgment should be denied.  *See id.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

### III. ANALYSIS[8]

By Memorandum Opinion and Order dated January 30, 2019, the court denied Defendants' motion to dismiss and declined Defendants' invitation to reject the reasoning and holding of *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016).  In so doing, the court held, in part, that (1) Plaintiffs have standing to sue for an order compelling Defendants to adjudicate their SIV applications in a reasonable amount of time, and (2) Plaintiffs identified a required action to compel that does not rise or fall based on whether the 9-month deadline is congressionally mandated.

Given the court's prior ruling, it will now address the merits of Plaintiffs' unreasonable delay claim and the appropriate remedy.

#### A. UNREASONABLE DELAY CLAIM

The Administrative Procedure Act requires an agency to "proceed to conclude a matter presented to it" within "a reasonable time," 5 U.S.C. § 555(b), and directs courts to "compel agency

---

[8] Plaintiffs' Complaint states an unreasonable delay claim under both the Administrative Procedure Act and the Mandamus Act.  Because Plaintiffs' motion addresses only the Administrative Procedure Act claim (Pls.' PI Mot. at 17 n.13), the court's analysis is confined to that claim.

8

action . . . unreasonably delayed." *Id.* § 706(1). Together, "[t]hese provisions give courts authority to review ongoing agency proceedings to ensure that they resolve the questions in issue within a reasonable time." *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 32 (D.C. Cir. 1984).

In *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"), the D.C. Circuit identified six factors for the court to consider when determining "whether the agency's delay is so egregious" as to warrant relief:[9]

1. Whether a "rule of reason" governs the time an agency takes to make a decision;

2. Whether Congress has provided in the enabling statute a timetable or other indication of the speed with which it expects the agency to proceed, thus supplying content for the rule of reason;

3. The affected sphere of regulation, because delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

4. The effect of expediting delayed action on agency activities of a higher or competing priority;

5. The nature and extent of the interests prejudiced by delay; and

6. Any impropriety of the agency, although the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 80.

The court will address each factor—excluding the sixth factor, which is not necessary—in turn.

### 1.   First and Second *TRAC* Factors

Through discovery, Plaintiffs determined that class members with pending COM applications wait, on average, 2.5 years for a decision on their COM application. (Pls.' PI Supp. at 13.) Class members who receive COM approval wait an additional 3 years for a final adjudication. (*Id.* at 13–14.) Plaintiffs contend that these delays violate the AAPA and RCIA's 9-month timetable for reasonableness. (Pls.' PI Mot. at 19–20.) And, 9-month timetable aside, Plaintiffs assert that

---

[9] The court disagrees with Defendants' contention that the *TRAC* factors should not apply because Plaintiffs seek programmatic change as opposed to discrete and mandatory action in Counts 1 and 2 of their Amended Complaint. (*See* ECF No. 42 ("Defs.' Opp.") at 8–9.)

Defendants' dilatory pace violates Congress' intent that Defendants process the SIV applications quickly.  (*Id.* at 20–21.)

Defendants respond that Plaintiffs over rely on the length of the delays, which are due to (1) Defendants' efforts to balance individual eligibility for a visa and national security, and (2) the complex nature of the adjudication of the applications.  (*See* ECF No. 42 ("Defs.' Opp.") at 9; ECF No. 70 ("Defs.' Supp.") at 6–19.)  Defendants also argue that the 9-month deadline relates to institutional efficiency, and is not a timetable.  (*See* Defs.' Opp. at 9.)

The first factor, which asks whether Defendants' SIV application adjudication time is governed by rule of reason, carries the most weight in the analysis.  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) ("The first and most important factor is that 'the time agencies take to make decisions must be governed by a "rule of reason."'" (quoting *TRAC*, 750 F.2d at 80)).  The second factor provides that "[i]f a specific deadline for final agency action is provided by Congress, the reasonableness of the delay can be measured in relation to this deadline."  *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 38 (D.D.C. 2000).  "[T]hese factors get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Interest v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  Because of their interrelatedness, factors one and two are often assessed in tandem.

At oral argument, Defendants' counsel minimized the significance of the discrepancy between the 9-month statutory benchmark and the 5-year average wait time.  (*See* ECF No. 72 ("Hearing Tr.") at 5:17–6:3.)  The court takes a different view.[10]  However, its inquiry cannot end here.  Whether the amount of time Defendants are taking to act on the SIV applications satisfies the rule of reason "cannot be decided in the abstract, by reference to some number of months or years beyond which agency

---

[10] Defense counsel appeared to take issue with Plaintiffs' inclusion of applications submitted since January 1, 2013.  (*See* Hearing Tr. at 17:15–20.)  However, as Plaintiffs' counsel noted, the applications dating back to 2013 "are all pending cases where a final decision has not been rendered."  (*See id.* at 50:14–17.)  Therefore, the court takes no issue with the inclusion of these data points.

inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task

at hand, the significance (and permanence) of the outcome, and the resources available to the agency."

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

Therefore, the court must consider the delays in conjunction with Defendants' explanations for their

pace.

Defendants argue that the delays are a result of their obligation to balance national security

with individual eligibility for a visa.  However, the construction of the statute makes clear that

Congress was patently aware of the national security implications when it set the 9-month time limit.[11]

The statute provides:

> 4) Application process.--
>
> A) In general.--Not later than 120 days after the date of the enactment of the National
> Defense Authorization Act for Fiscal Year 2014 [Dec. 26, 2013], the Secretary of State
> and the Secretary of Homeland Security, in consultation with the Secretary of Defense,
> shall improve the efficiency by which applications for special immigrant visas under
> paragraph (1), are processed so that all steps under the control of the respective
> departments incidental to the issuance of such visas, including required screenings and
> background checks, should be completed not later than 9 months after the date on which
> an eligible alien submits all required materials to complete an application for such visa.
>
> (B) Construction.--Nothing in this section shall be construed to limit the ability of a
> Secretary referred to in subparagraph (A) to take longer than 9 months to complete
> those steps incidental to the issuance of such visas in high-risk cases for which
> satisfaction of national security concerns requires additional time.

AAPA § 602(b)(4) (emphasis added), RCIA § 1242(c) (same, except title is "Improved

application process").  And as Plaintiffs contend, "[t]o give meaning to both the nine-month

provision and the rule-of-construction provision, the latter must be read as creating an

exception to the nine-month timeframe for high risk cases."  (Pls.' Reply at 7.)  Defendants'

interpretation of the statute—that Congress gave "unequivocal direction" to Defendants "to

---

[11] During oral argument, Defense counsel referred to the nine-month timeframe as both a "benchmark"
and a "time limit."  (Hearing Tr. at 19:23, 25:3.)

take whatever time is required to resolve national security concerns" on cases that have not been designated as high risk (Defs.' Supp. at 15–16)—is tortured and untenable.

Similarly, the fact that the adjudication process is a complex one does not excuse delays of such magnitude, because Congress explicitly referenced that complexity in the 9-month provision. The statutes provide that "all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed not later than 9 months." AAPA § 602(b)(4)(A) (emphasis added), RCIA § 1242(c)(1) (same). To date, despite receiving reports relaying the complex nature of the adjudication process, Congress has chosen not to extend the 9-month time limit. In addition, contrary to Defendants' assertion that "any delay, which is a result of these complex background checks and screening, is reasonable" (Defs.' Supp. at 15), complexity alone does not justify extensive delay, *see Cobell v. Norton*, 240 F.3d 1081, 1097 (D.C. Cir. 2001) ("[N]either a lack of sufficient funds nor administrative complexity, in and of themselves, justify extensive delay, nor can the government claim that it has become subject to unreasonable expectations [when it has been aware of its obligations for years and failed to discharge its duties in a timely fashion]."), *vacated on other grounds,* 392 F.3d 461 (D.C. Cir. 2004).

Moreover, Defendants' argument that the 9-month time limit cannot provide a rule of reason timetable has shifted. In briefing, Defendants argued that the 9-month "provision is specifically directed at intuitional [sic] efficiency—operations in the aggregate[]—and provides an explicit rule of construction that forecloses application of a timetable." (Defs.' Opp. at 9.) Then, at oral argument, Defendants' counsel argued that "in looking at the adjudication of an individual application, in other words, the singular named plaintiffs and not the class claims, [] the Court can use that nine-month benchmark as something to gauge when assessing whether . . . the TRAC factor 2 applies." (Hearing Tr. at 22:23–23:3.) He continued, "[b]ut [], when we are seeking classwide relief, which is relief that is seeking to change the process of which the government is using—which is not a discrete act . . . the [c]ourt needs to view that very differently." (*Id.* at 23:5–9.) This most recent version of Defendants'

argument would require the court to view Plaintiffs' requested relief as programmatic in nature.  The court declines to take such a view.  Plaintiffs' first and second causes of action ask this court only to (1) declare the delay unreasonable and (2) compel Defendants to adjudicate Plaintiffs' SIV applications.  (Am. Compl. at ¶¶ 71, 77.)  In addition, it would be an inefficient use of the court's resources to require each of the 7,700 class members to bring an individual claim in order to avail themselves of the 9-month benchmark.

Finally, Defendants have not proffered a time frame for when they expect to adjudicate Plaintiffs' applications.  Therefore, the court cannot comply with the D.C. Circuit's edict that trial courts "should ascertain the length of time that has elapsed since the agency came under a duty to act, and should evaluate any prospect of early completion."  *Cutler v. Hayes*, 818 F.2d 879, 897 (D.C. Cir. 1987); *see also Muwekma Tribe*, 133 F. Supp. 2d at 37 (finding unreasonable delay where "defendants' refusal to provide the plaintiff with a definite time frame for review of its petition [did] not enable the court to evaluate any prospect of completion").

Accordingly, the court finds that the first and second *TRAC* factors weigh in favor of Plaintiffs.  It is clear that Congress did not intend to give Defendants an unbounded, open-ended timeframe in which to adjudicate SIV applications.  And although Defendants have noted that they spend some time working "with individual applicants to help the applicant establish this [sic] or her eligibility" (Defs.' Supp. at 17), they have not established how much of the delay is attributable to providing additional assistance, and providing additional assistance does not *per se* justify extensive delay, *see, e.g.*, *Muwekma Tribe*, 133 F. Supp. 2d at 39 (finding unreasonable delay where the defendants "assert[ed] that an open-ended time frame affords certain advantages, including the ability to conduct preliminary reviews of petitions to inform petitioners of deficiencies or omissions in their petitions").

### 2.  Third and Fifth *TRAC* Factors

The third and fifth *TRAC* factors are best analyzed together here because of their overlap.  "The third looks to whether human health and welfare are at stake—in which case compulsion is more

13

justified—and the fifth assesses the nature and extent of the interests prejudiced by delay." *Ctr. for Sci. in the Pub. Interest*, 74 F. Supp. 3d at 304 (internal quotation marks omitted).

Plaintiffs argue that "given the purpose of the AAPA and the RCIA to protect the Allies from danger, the systemic delays in processing of SIVs is egregious and merits relief." (Pls.' PI Mot. at 21.) They have provided the court with first-hand accounts from those facing harm as they await the adjudication of their SIV applications, as well as statements, from those intimately involved with the SIV application process, attesting to the interests prejudiced by the delay. (*See, e.g.*, ECF Nos. 3-5 ("Alpha Decl."), 3-6 ("Bravo Decl."), 3-7 ("Charlie Decl."), 3-8 ("Delta Decl."), 3-9 ("Echo Decl."), 34-2 ("Miska Decl."), and 34-5 ("Poellot Decl.").) In these submissions, Plaintiffs have provided support for their argument that the delays (1) place Plaintiffs' lives in danger, (2) cause Plaintiffs to live with the stress and anxiety of trying to protect themselves and their families from danger, (3) prevent Plaintiffs from adequately planning for the future, and (4) harm national interests, because delays undermine other countries' trust in this country's commitments. (Pls.' PI Mot. at 21–23.) On this last point, former United States Ambassador Ryan C. Crocker, who was the U.S. Ambassador to Iraq when the RCIA was enacted and who became the U.S. Ambassador to Afghanistan shortly after the AAPA was enacted, filed an amicus brief expounding on the ways in which the delays injure American interests. (ECF No. 40 ("Crocker Amicus Br."))

Defendants did not challenge Plaintiffs' assertions regarding the third factor in their briefs; instead they contend that "the nature and extent of the interests prejudiced by delay—is addressed by the statute where the agencies are given the discretion to keep applications as pending even where the time exceeds nine months." (Defs.' Opp. at 9–10.) However, as stated above, the discretion to keep applications pending longer than 9 months is limited to "high risk cases" and Defendants do not contend that any cases have been so designated. (*See, e.g.*, Hearing Tr. at 26:12–15.)

At oral argument, Defendants proffered two additional justifications. One, that an applicant's risk is the same on the day she submits an application until the day she receives a final decision, and

14

two, with regard to harm, a decision would relieve only uncertainty because admission is not guaranteed. (*Id.* at 36:18–37:2.) But Defendants cannot credibly argue these points and simultaneously acknowledge that "Congress passed this statute in an attempt to try to help [individuals who worked for U.S. forces and now face a risk of harm] alleviate the harm." (*Id.* at 36:10–11.) While the nature of the harm (*i.e.*, death or severe bodily injury) may indeed be constant, the probability of actual harm and the related stress are compounded each day an applicant waits for adjudication. Moreover, if the harm did not increase in some fashion during the pendency of an application, why would Congress include a benchmark and repeatedly express interest in the prompt adjudication of SIV applications? Defendants also understate the importance of the relief and ability to plan for the future that comes with certainty. *See Geneme v. Holder*, 935 F. Supp. 2d 184, 194 (D.D.C. 2013) (finding that third and fifth factors weighed in favor of plaintiff who argued "that she cannot adequately plan for her future without knowing whether or not she will be permitted to adjust her status" from asylee to permanent resident). In addition, the level of uncertainty increases for some applicants the longer they wait for processing because the passage of time makes it more difficult to obtain the requisite verifications and information to pass background checks.

Accordingly, the court finds that the third and fifth factors weigh in favor of Plaintiffs.

### 3. Fourth *TRAC* Factor

The fourth factor requires the court to consider the possible effects of Plaintiffs' requested relief on Defendants' activities of a higher or competing priority. In assessing this factor, courts examine whether the defendants' specific, proffered activities will be de-prioritized, in error, if the plaintiff is successful. *See Muwekma Tribe*, 133 F. Supp. 2d at 40–41 (assessing whether prioritizing the plaintiff's petition would unduly expense other tribe's petitions); *Ctr. for Sci. in the Pub. Interest*, 74 F. Supp. 3d at 305 (finding that prioritizing plaintiff's relief would "draw resources from actually resolving issues related to mercury consumption" and noting that the agency was also responsible for implementing "new regulatory framework for infant formula" and upgrading "nutrition panels"). If

15

"an order compelling agency action will serve only to delay other important [agency] matters, then the delay in question may be considered reasonable." *Muwekma Tribe*, 133 F. Supp. 2d at 40.

In its written submissions, Defendants did not proffer any specific agency activities that would be adversely affected,[12] however at oral argument they argued that a February 2019 amendment changed the type of applicant who should receive priority. (*See* Hearing Tr. at 45:5–46:9.) Specifically, Defendants argued that the amendment required them to prioritize the applications of "those individuals that are working directly for U.S. forces, that face the most harm, that have been involved in combat operations with U.S. forces." (*Id.* at 45:9–15.) But Defendants did not clearly identify the portion of the amendment that supported this argument.[13] The amendment provides:

> (a) AFGHAN ALLIES.—Section 602(b)(3)(F) of the Afghan Allies Protection Act of 2009 (division F of Public Law 111–8), as amended, is further amended by substituting "18,500" for "14,500" in the matter preceding clause (i).

> (b) CONDITIONS.—None of the funds appropriated by this Act may be made available for the additional special immigrant visas made available under subsection (a) until the Secretary of State—

> (1) develops and implements a system to prioritize the processing of Afghan applicants for special immigrant visas under section 602 of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note); and

> (2) submits to the appropriate congressional committees, as defined in section 602(a) of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note), the following reports:

---

[12] Defendants argued in its briefs that Congress' exercise of oversight precludes judicial intervention and that national security and accurate decision-making were competing priorities. (*See* Defs.' Opp. at 9; Defs.' Supp. at 16, 42.) The court finds the first argument without merit because Defendants have not demonstrated how this case is any different from other cases in which a court ordered an agency to comply with a provision promulgated by Congress. The second argument is similarly baseless because Congress was aware of the competing priorities when it imposed the 9-month time limit. *See In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012) (dismissing agency argument that the court cannot rule that it was not acting quickly enough because it "must make a decision in this matter while carrying out duties of the most paramount importance, addressing nearly constant emergencies" and finding that "Congress undoubtedly knew the enormous demands placed upon the Secretary and nonetheless limited her time to act on a petition for revocation to 180 days"). Defendants have not demonstrated how these considerations, which exist in every immigration-related delay case, are unique.

[13] Defendants' counsel mentioned a "report to Congress about that section of the CAA," but did not provide the report or connect the report to the final version of the statute. (Hearing Tr. at 45:25–46:1.)

(A) the report required under paragraph (12) of section 602(b) of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note), as amended by section 1222 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 (Public Law 115–232);

(B) a report on the procedures and processes used by the Chief of Mission to determine whether an Afghan applicant for a special immigrant visa under section 602 of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note) has experienced, is experiencing, or may reasonably be expected to experience an ongoing, serious threat as a result of the qualifying service of the applicant; and

(C) a report on the procedures for background and security checks on Afghan applicants for special immigrant visas under such section.

Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, 133 Stat. 13 (emphasis added).

This amendment does not appear to alter Defendants' mandate under the Afghan SIV program: to prioritize Afghan applicants for special immigrant visas under the program. If the amendment has not shifted the prioritization, then Defendants have failed to provide the court with any evidence of a competing activity that justifies the delay in processing the applications. *See Liu v. Novak*, 509 F. Supp. 2d 1, 10 (D.D.C. 2007) (finding that "defendants have not provided any information that would allow the Court to find this factor in their favor" where defendants "failed to submit any information regarding the extent of this potential impact on the processing of other applications"). Alternatively, if Defendants are to prioritize applicants by the type of work they performed, this issue can be addressed in the structure of the class and the scope of the remedy, thus obviating any concerns of queue-jumping. *Cf. Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 116–18 (D.D.C. 2005) (finding in favor of agency where the agency's "first-in, first out" processing of applications "would simply move petitioners to the front of the queue, at the expense of other similarly situated applicants").

Accordingly, the court finds that the fourth factor is either neutral or weighs in favor of Plaintiffs.

B. **REMEDY**

Plaintiffs do not ask this court to order the immediate adjudication of the applications as a remedy for Defendants' delay. Instead, they seek an order directing Defendants to "(1) submit within 30 days a plan for promptly processing and adjudicating the applications, which should be developed with Plaintiffs' input, and (2) submit progress reports every 30 days thereafter." (Pls.' PI Mot. at 1.)

The remedy of requiring an agency to create a plan and submit periodic progress reports is common in this district. *See Solenex LLC v. Jewell*, 156 F. Supp. 3d 83, 85 (D.D.C. 2015) ("Indeed, our Circuit Court frequently orders recalcitrant agencies to establish schedules, subject to court approval, to finish their reviews and reach final agency decisions.") (collecting cases); *MCI Telecomms. Corp. v. F.C.C.*, 627 F.2d 322, 345–46 (D.C. Cir. 1980) (ordering agency to develop a plan, setting timeline for any objections to plan, stating that court would review the plan, and retaining jurisdiction to ensure compliance with the plan); *TRAC*, 750 F.2d at 81 (ordering agency to propose a plan and file progress reports every 60 days); *see also Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102 ("[I]f the district court is unable to conclude that the delay to date has been unreasonable, then it may nevertheless retain jurisdiction over the case in order to monitor the agency's assurances that it is proceeding as diligently as possible with the resources available to it.").

Having considered the arguments advanced by Plaintiffs and Defendants both in their written submissions (*see* Pls.' PI Mot. at 24–26; Pls.' Reply at 11–13; Pls.' PI Supp. at 15–19; Defs.' Opp. at 8–9; Defs.' Supp. at 39–44) and at oral argument, the court finds that the plan-progress report remedy will aid Plaintiffs in their quest for an adjudication without unduly intruding into Defendants' province.[14] However, the court will make some modifications to Plaintiffs' proposed order to ensure that it is no more intrusive than necessary. For example, Plaintiffs propose that this court require Defendants to obtain Plaintiffs' input before submitting the initial plan for court review and permit

---

[14] The court has reviewed Defendants' recent efforts to improve the application process, and finds that while the efforts are much needed, they do not obviate the need for judicial monitoring.

Plaintiffs to file objections to the submitted plan, a process that the court finds unduly intrusive. While Defendants may—and are encouraged to—consult with Plaintiffs regarding the proposed plan, they are not required to do so.

Accordingly, within thirty days of the resolution of the class certification dispute, Defendants shall submit a plan for promptly processing and adjudicating the applications of current class members; Defendants may consult with Plaintiffs regarding the proposed plan. Plaintiffs shall file any objections to the plan within twenty-one days, at which time the court may schedule further proceedings or take such other steps as may be needed before deciding whether to approve the plan. Once the court approves the plan, Defendants will be required to submit progress reports every 60 days thereafter; Defendants may consult with Plaintiffs regarding the format of the progress reports. In the progress reports, Defendants are encouraged to include the following information: (1) data on currently pending applications and processing times; (2) whether Defendants have met the target timeframes and interim benchmarks; and (3) if the target timeframes and benchmarks have not been met, an explanation of the failure and a description of the actions that will be taken to address the issue.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion is hereby **GRANTED**, in part, and **DENIED**, in part.

An appropriate Order accompanies this Memorandum Opinion.

Date:  September 20, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

19

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL R. POMPEO, *et. al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 18-cv-01388 (TSC) |

**ORDER**

Before the court is Plaintiffs' motion for a preliminary injunction on Counts One and Two of the Amended Complaint.  (ECF No. 34.)  Upon consideration of Plaintiffs' motion and the parties' briefs, the arguments presented at the July 26, 2019 motions hearing, and for the reasons set forth below, Plaintiffs' motion is hereby converted to a motion for summary judgment, which is **GRANTED**, in part, and **DENIED**, in part.

Consistent with the court's September 20, 2019 Memorandum Opinion (ECF No. 75), it is hereby:

**DECLARED** that Defendants' delays in the processing and adjudication of the SIV applications of the Plaintiffs and members of the Class are unreasonable in light of the Refugee Crisis in Iraq Act of 2007 ("RCIA") and the Afghan Allies Protection Act of 2009 ("AAPA");

**ORDERED** that within thirty days of the resolution of the class certification dispute, Defendants shall submit a plan for promptly processing and adjudicating the applications of current class members;

1

JA 095

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 100 of 287

**ORDERED** that Plaintiffs shall file any objections to the plan within twenty-one days, at which time the court may schedule further proceedings or take such other steps as may be needed before deciding whether to approve the plan; and

**ORDERED** that once the court approves the plan, Defendants will be required to submit progress reports every 60 days thereafter.


Date:  September 20, 2019


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-cv-01388 (TSC) |
| MICHAEL R. POMPEO, *et. al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

By Memorandum Opinion and Order dated September 20, 2019, this court found that Defendants have unreasonably delayed the processing of Plaintiffs' Special Immigrant Visa ("SIV") applications. (ECF Nos. 75, 76.) Defendants have moved the court to reconsider that finding. (ECF. No. 79 ("Defs. Mot. for Reconsideration").)

### I. BACKGROUND

The court assumes the parties' familiarity with the facts of this case and recites only what is necessary to resolve the issues now before it.[1]

To successfully obtain admission into the United States through the SIV program, Iraqi and Afghan nationals must complete fourteen steps. Of relevance here are steps one through four and step nine. Step one is the submission of an application to the Chief of Mission

---

[1] Additional background information can be found in the court's January 30, 2019 Memorandum Opinion (ECF No. 47) and the September 20, 2019 Memorandum Opinion (ECF No. 75).

USCA Case #25-5279      Document #2171785         Filed: 05/04/2026      Page 102 of 287

("COM").  (*See* ECF No. 36-14 ("January 2018 Joint Report") at 58–64.)  By step four,

applicants receive approval or denial from the COM.  (ECF No. 31 ("Am. Compl.") at ¶ 31.)

After additional processing in steps five through eight, at step nine, the applicant submits

documents to the National Visa Center.  (*Id.*)  Defendants acknowledge that they control all steps

except for 1, 6, 9, and 14 (related to submission of documents and the medical examination). (*Id.*

¶ 32; ECF No. 3-3 at 3–4.)

Also relevant here is the statutory 9-month timetable for the steps to be completed, as

well as the exception for high-risk cases requiring additional time:

> 4) Application process.--
>
> A) In general.--Not later than 120 days after the date of the enactment of the National Defense Authorization Act for Fiscal Year 2014 [Dec. 26, 2013], the Secretary of State and the Secretary of Homeland Security, in consultation with the Secretary of Defense, shall improve the efficiency by which applications for special immigrant visas under paragraph (1), are processed so that all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed not later than 9 months after the date on which an eligible alien submits all required materials to complete an application for such visa.
>
> (B) Construction.--Nothing in this section shall be construed to limit the ability of a Secretary referred to in subparagraph (A) to take longer than 9 months to complete those steps incidental to the issuance of such visas in high-risk cases for which satisfaction of national security concerns requires additional time.

AAPA § 602(b)(4), RCIA § 1242(c) (same, except title is "Improved application process").

## II. STANDARD

A motion for reconsideration under Federal Rule of Civil Procedure 59(e) is

"discretionary and need not be granted unless the district court finds that there is an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or

manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (citations omitted).

## III. ANALYSIS

Defendants contend the court clearly erred in two respects.  The first relates to the question of when the statutes' 9-month timetable begins to run; the second relates to the court's finding that Defendants unreasonably delayed adjudicating applications that have now been deemed high-risk.

### A.  <u>Nine-Month Timetable</u>

In its September 20, 2019 Memorandum Opinion, this court used the 9-month timetable to evaluate the reasonableness of the delay experienced by applicants at *all* government-controlled steps in the SIV application process (steps 1-5, 7, 8, 10-13).  (ECF No. 75 at 8–13.) Defendants argue that the timetable should only apply to those who have completed step 9. (Defs. Mot. for Reconsideration at 10–11.)  This issue was extensively briefed by both sides before the court's earlier ruling, and the court finds no basis to reconsider that ruling.

Defendants' position is based on their interpretation of the terms "eligible alien" and "application for such visa" in the relevant statutes.  The RCIA and AAPA provide that:

> all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed not later than 9 months after the date on which an *eligible alien* submits all required materials to complete an *application for such visa*.

AAPA § 602(4)(A); RCIA § 1242(c)(1) (emphasis added).

Defendants contend that the 9-month deadline cannot start until step 4 because the deadline only applies to "eligible aliens," and eligibility is not established until Step 4. In their words, because "eligibility is determined by the consular office" at step 4 "there is no alternative interpretation that is faithful to existing law."  (Defs. Mot. for Reconsideration at 9.)

3

This argument is unavailing because while the COM may *confirm* eligibility, they do it does not *establish* eligibility.  Eligibility is determined by the role of the applicants who, in this case, "provided faithful and valuable service to the United States Government" and "experienced or [are] experiencing an ongoing serious threat as a consequence of [their] employment."  RCIA § 1242(a)(2), 1244(b)(1); AAPA § 602(b)(1)-(2).  The COM simply confirms those facts.  In other words, visa applicants are eligible once they meet the necessary criteria; COM approval is a confirmation of that eligibility.[2]  Thus, Defendants' assertion that Plaintiffs awaiting COM approval are not yet "eligible" is unpersuasive.

Defendants next argue that limiting the 9-month deadline to those who complete an "application for such visa" would mean the deadline applies only to those who have completed Step 9.  (Defs. Mot. for Reconsideration at 9.)  In other words, they argue, an applicant has not submitted an "application for such visa" until Step 9, and thus is not protected by the 9-month timetable until then.  This interpretation is inconsistent with the rest of the relevant statutes, which explicitly provide that the 9-month timetable applies to "all steps under the control of the respective departments incidental to the issuance of such visas . . ."  AAPA § 602(4)(A); RCIA § 1242(c)(1).

Moreover, the interpretation urged by the Defendants is inconsistent with holdings in this District on this very issue.  *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 275–76, 293 (D.D.C. 2016) ("The text of the statutes makes clear that . . . the timeline applies to each of the fourteen steps . . . that are within Defendants' control, including 'administrative processing'

---

[2] Normally, a person is "eligible" when they personally satisfy the relevant criteria, and this status exists before any official gives a stamp of approval.  For example, an individual becomes "eligible" to vote when they turn the legal age or become a U.S. citizen; they do not become "eligible" when their voter registration card is issued.  The card is merely confirmation that the individual can vote.

and 'COM Approval.'"); *Airaj v. United States*, No. CV 15-983 (ESH), 2016 WL 1698260, at \*9 (D.D.C. Apr. 27, 2016), *aff'd sub nom.*, *Airaj v. U.S. Dep't of State*, No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017) ("the statute gives the State Department 9 months to adjudicate SIV applications, a timeline which includes all steps 'incidental to the issuance of [SIV] visas,' 'including . . . COM approval.' . . .") (citation omitted).  Although these rulings are not binding on this court, the court nonetheless finds their reasoning persuasive.  Therefore, this court remains persuaded that the 9-month timetable applies to individuals at all steps under Defendants' control.[3]

### B. High-risk Applications

Defendants also argue that in its deciding that Defendants unreasonably delayed in the SIV application process, the court improperly included class members with applications considered high-risk.  Defendants argue that because the RCIA and AAPA create an exception to the 9-month timetable for individuals deemed to be high-risk, the court cannot find delay in processing their applications unreasonable and cannot order prompt adjudication of their applications.  (Defs. Mot. for Reconsideration at 18.)  While the statutes do create such an exception, it does not follow that relief cannot be granted to individuals deemed high-risk.  First, Defendants maintain a non-discretionary duty under the APA to avoid unreasonable delay, and this duty applies to all class members alike, with no exception for high-risk applicants whose applications may take longer than 9 months to process.  *See* 5 U.S.C. § 706(1); *see also Telecomm.  Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984).  Second, the

---

[3] Even if the 9-month timetable did not apply to applicants at all steps, the APA itself provides a cause of action for required agency actions to be completed within a reasonable amount of time. *See Nine Iraqi Allies*, 168 F. Supp. 3d at 293 ("the APA imposes a duty on Defendants to act within a 'reasonable' time on Plaintiffs' applications.").

USCA Case #25-5279   Document #2171785   Filed: 05/04/2026   Page 106 of 287

ordered relief (that Defendants propose a plan to promptly adjudicate applications) gives Defendants the flexibility to accommodate processing applications considered high-risk and still meet their obligations under the RCIA and AAPA.  The court notes that the only individual whose application was deemed high-risk waited in Government-controlled steps for longer than five years, and thus experienced unreasonable delay under the 9-month timetable as well as under the APA more generally.  (Am. Compl., ¶ 57).

## IV. CONCLUSION

For the foregoing reasons, this court finds that there is no basis to reconsider earlier findings.


Date:  February 5, 2020

*Tanya S. Chutkan*
TANYA S.  CHUTKAN
United States District Judge

JA 102

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL R. POMPEO, *et. al.*,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 18-cv-01388 (TSC) |

**ORDER**

For the reasons set forth in the accompanying Memorandum Opinion, the court hereby

DENIES Defendants' Motion for Reconsideration (ECF No. 79).

Date:  February 5, 2020

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

1

JA 103

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-cv-01388 (TSC) |
| MICHAEL R. POMPEO, *et. al.*, | ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs—five anonymous Afghan or Iraqi nationals—represent a class of individuals who, despite significant personal risk, aided the United States in its time of need and now look to the United States for refuge for themselves and their immediate family members.  They allege that they "provided faithful and valuable service to the US government or its allied forces" in their capacities as employees of or on behalf of the United States government over the past several years, and that because of their service, they "face an ongoing serious threat to their lives in their home countries."  (ECF No. 23, Amended Complaint ("Am.  Compl.") at ¶¶ 1, 56, 58, 60, 62, 64.)

In response to these threats, Plaintiffs submitted Special Immigrant Visa ("SIV") applications to the U.S. Department of State, seeking lawful admission into the United States.  (*Id*. at ¶¶ 13–17.)  Two Plaintiffs submitted their applications in 2013, one in 2015, and the other two in 2016.  (*Id.*)  At the time they filed this action on June 12, 2018, none of their SIV

applications had received a final decision.  (*Id*. at ¶¶ 57, 59, 61, 63, 65.)  They claim that

Defendants have failed to process and adjudicate their SIV applications within a reasonable time.

(*Id*. at ¶ 1.)

Plaintiffs have moved for class certification.[1]  (ECF No. 3 ("Mot. for Class

Certification".)  After three rounds of briefing, Defendants have shown that implementing this

court's remedy—a plan for prompt adjudication—does present certain administrative challenges.

However, the court finds that despite these challenges, the requirements for class certification are

satisfied.  Moreover, the administrative challenges pale in comparison to the inefficiency, cost,

and waste of resources that would result if each applicant (there are hundreds), were to bring

individual claims.  The burden of such inefficient and needlessly duplicative litigation would be

borne by the court, the Defendants, and the Plaintiffs, whose lives, and whose families' lives, are

at risk every day their applications are pending.  (*See* ECF No. 3-13 (describing recent murders

of individuals with pending SIV applications).)

Having reviewed the parties' filings, the record, and the relevant case law, the court will

GRANT Plaintiffs' motion for class certification.  The relevant class is defined as all people who

have (1) applied for an Afghan or Iraqi SIV pursuant to the Afghan Allies Protection Act of

2009, Pub. L. No. 111-8, 123 Stat.  807, or the Refugee Crisis in Iraq Act of 2007, Pub. L. No.

110-181, 122 Stat. 395, by submitting an application for Chief of Mission ("COM") approval,

and (2) whose applications have been awaiting government action for longer than 9 months.

---

[1] By Memorandum Opinion and Order dated January 30, 2019, the court granted Plaintiffs'
motion for class certification on a provisional basis for the sole purpose of resolving Defendants'
Partial Motion to Dismiss (ECF No. 30 ("Defs. Mot. to Dismiss")), Plaintiffs' Motion for
Preliminary Injunction, (ECF No. 34 ("Pls. PI Mot.")), and Plaintiffs' Motion for Expedited
Discovery (ECF No. 35 ("Pls. Mot. for Exp. Discovery")).  Plaintiffs' counsel was also
appointed to represent the provisional class.  (*See* ECF No. 47, 48).

## I. BACKGROUND

A.  <u>Refugee Crisis in Iraq Act and Afghan Allies Protection Act</u>

In 2007, Congress enacted the Refugee Crisis in Iraq Act ("RCIA"), in part to fulfill the United States' "fundamental obligation to help the vast number of Iraqis displaced in Iraq and throughout the region by the war and the associated chaos, especially those who have supported America's efforts in Iraq."  S. Res. 1651, 110th Cong. (2007) (enacted).  In so doing, Congress noted:

> Many Iraqis who have worked in critical positions in direct support of the United States Government in Iraq have been killed or injured in reprisals for their support of the American effort.  Many more Iraqis associated with the United States have fled Iraq in fear of being killed or injured.

*Id.*  Under the RCIA, Iraqi nationals can apply and interview for admission to the United States as special immigrants if they: (1) were or are "employed by or on behalf of the United States Government in Iraq, on or after March 20, 2003, for not less than one year"; (2) "provided faithful and valuable service to the United States Government"; and (3) "experienced or [are] experiencing an ongoing serious threat as a consequence of [their] employment by the United States Government."  RCIA §§ 1242(a)(2), 1244(b)(1).

In 2009, Congress enacted the Afghan Allies Protection Act ("AAPA"), with similar objectives.  Pursuant to the AAPA, certain Afghan nationals may receive special immigrant status if they: (1) were or are "employed by or on behalf of the United States Government in Afghanistan on or after October 7, 2001, for not less than one year"; (2) "provided faithful and valuable service to the United States Government"; and (3) "experienced or [are] experiencing an ongoing serious threat as a consequence of [their] employment by the United States Government."  AAPA §§ 602(b)(1)–(2).

Plaintiffs allege that after the enactment of the RCIA and AAPA, applicants to both programs experienced "considerable processing delays that risked the lives of the very applicants they were intended to protect." (Am. Compl. ¶ 34.) For example, by mid-2011, four years after the start of the Iraqi SIV program, while nearly 30,000 Iraqi applicants and their family members had applied for the SIV program, only 4,000 applications had been processed. (*Id.* ¶ 37.) And, while some of the Iraqi applicants waited for a decision, they "endur[ed] threats or acts of violence against themselves and their families because of their assistance to the US Government." (*Id.* ¶ 34.)

In 2013, Congress amended the RCIA and AAPA to "improve the efficiency by which applications for special immigrant visas . . . are processed." RCIA § 1242(c)(1); AAPA § 602(b)(4)(A). Per the amendment, all government-controlled steps incidental to issuing the SIVs, "including required screenings and background checks," should be completed within 9 months after submission of a complete application. RCIA § 1242(c)(1); AAPA § 602(b)(4)(A). However, additional time may be taken to process "visas in high-risk cases for which satisfaction of national security concerns requires additional time." RCIA § 1242(c)(2); AAPA § 602(b)(4)(B).

## B. Afghan and Iraqi SIV Application Process

To successfully obtain admission into the United States through the SIV program, Iraqi and Afghan nationals must complete fourteen steps:

> 1) The applicant submits an application for approval by the Chief of Mission (COM Approval) to the National Visa Center (NVC). Application materials must include a "statement of credible threat" detailing the ongoing threat to the applicant as a result of the applicant's service and a letter of recommendation from a supervisor attesting to the applicant's "faithful and valuable service."
> 2) NVC reviews the applicant's documents for completeness.

4

JA 107

3) NVC sends the application materials to the Chief of Mission (COM) in either Afghanistan or Iraq.

4) The COM approves or denies the applicant's COM Approval application.

5) The COM advises NVC of the outcome of the application, which is communicated to the applicant.  If denied, the applicant has a statutory right to appeal within 120 days (COM Appeal).

6) If COM Approval is granted, the applicant submits a Special Immigrant Petition to USCIS for categorization as a special immigrant.

7) USCIS adjudicates the Special Immigrant Petition and communicates the results to NVC.

8) If the applicant is approved, NVC requests standard immigrant visa documentation from the applicant.

9) The applicant submits the required documentation to NVC.

10) NVC reviews the applicant's documents for completeness.

11) If the applicant is determined admissible to the United States and eligible for a US visa, NVC contacts the applicant to schedule an interview at the embassy in Afghanistan or Iraq.

12) The applicant attends an interview conducted by a consular officer.

13) If the application is approved, the applicant's case undergoes administrative processing, the final level of background checks.

14) If successful, the applicant is instructed to obtain a medical exam and is issued a US visa.

C. **Class Representatives**

There are five class representatives: John Doe-Alpha, Jane Doe-Bravo, John Doe-Charlie, Jane Doe-Delta, and John Doe-Echo.  All are SIV applicants who resided in Iraq or Afghanistan and allege that they lived "in fear of reprisal for their service to the US government" while they awaited "final decisions from Defendants on their applications."  (Am. Compl. ¶ 55.)  For each of them, "Defendants [took] far longer than the statutorily-allowed 9 months to complete all government-controlled processing steps."  (*Id.*)  Their application processes are now complete, as Defendants adjudicated each of their cases after Plaintiffs' filed their Complaint.  (*See* ECF No. 78-1, Supplemental Declaration of Evangeline Howard ("Howard Decl.").)

5

### 1. John Doe-Alpha

John Doe-Alpha is an Afghan national who applied to the SIV program on September 25, 2013, following approximately two years of service to a United States government contractor. (Am. Compl. ¶¶ 13, 56–57.)  Although John Doe-Alpha fled his Taliban-controlled hometown and relocated his wife and daughter to a nearby city, his family members who remained have been repeatedly threatened and harassed by individuals self-identifying as the Taliban. (*Id.* ¶¶ 9, 56.)  The Taliban also placed John Doe-Alpha's parents under house arrest. (*Id.* ¶ 56.)  As a result, he fears that if he returns to his hometown, he will be targeted by the Taliban. (*Id.*)

When the Amended Complaint was filed on July 12, 2018, John Doe-Alpha had been seeking a final decision on his SIV application for almost five years. (*Id.* ¶ 57.)  Defendants took "over four months for the initial COM decision; five days for his Special Immigrant Petition; and over twelve months for his visa interview." (*Id.*)  On June 11, 2015, John Doe-Alpha had his visa interview. (*Id.*)  His application then remained at step thirteen until February 20, 2019, when he was found ineligible for an immigrant visa under 9 U.S.C. § 1182(a)(3)(B), which lists terrorism-related inadmissibility grounds. (Howard Decl. at ¶ 4.)

### 2. Jane Doe-Bravo

Jane Doe-Bravo is an Afghan national who applied to the SIV program on October 15, 2015, following approximately two years of service to a United States government-funded development organization. (Am. Compl. ¶¶ 14, 58–59.)  In response to frequent death threats via letter and phone, Jane Doe-Bravo has changed her phone number and relocated with her husband and three young children numerous times. (*Id.* ¶¶ 9, 58.)  She claims that she feels hopeless and unable to trust anyone as she recovers from recent childbirth and cares for her newborn. (*Id.* ¶ 58.)

6

When the Amended Complaint was filed, Jane Doe-Bravo had been seeking a final decision on her SIV application for almost three years. (*Id.* ¶ 59.) Defendants took nearly three months to issue a denial on her application for COM Approval, which she subsequently appealed. (*Id.*) Twenty-nine months after she appealed (and six days before she filed the Amended Complaint), Defendants granted her request for COM Approval and informed her that she was authorized to submit her Special Immigration Petition. (*Id.*) She promptly made the requisite submission. (*Id.*) On March 28, 2019, a consular officer issued Jane Doe-Bravo an immigrant visa. (Howard Decl. ¶ 6.)

### 3. John Doe-Charlie

John Doe-Charlie is an Afghan national who applied to the SIV program on April 18, 2016, following approximately four years of service as an interpreter and translator for two U.S. military contractors. (Am. Compl. ¶¶ 15, 60–61.) John Doe-Charlie and his family have received death threats, (*id.* ¶ 60), and the Taliban attacked and repeatedly stabbed John Doe-Charlie's brother, believing he was John Doe-Charlie (*id.* ¶¶ 9, 60). Although John Doe-Charlie has relocated to protect his family, he continues to fear for their safety. (*Id.*)

At the time the Amended Complaint was filed, John Doe-Charlie had been awaiting a final decision on his SIV application for over two years. (*Id.* ¶ 61.) Defendants took over eight months to deny his application for COM Approval, which he successfully appealed on April 3, 2017. (*Id.*) On September 28, 2019, a consular officer issued John Doe-Charlie an immigrant visa. (Howard Decl. ¶ 8.)

### 4. Jane Doe-Delta

Jane Doe-Delta is an Afghan national who applied to the SIV program on December 23, 2016, following approximately three years of service to a U.S. government communications

contractor.  (Am. Compl. ¶¶ 16, 62–63.)  The nature of her position requires her to travel with colleagues to active conflict zones and interact with the public.  (*Id.* ¶ 62.)  The Taliban has threatened her and her family, and they have been followed by masked men.  (*Id.* ¶¶ 9, 62.)  Jane Doe-Delta and her father also have been threatened with Jane Doe-Delta's death if she did not quit her job.  (*Id.*)  As a result, Jane Doe-Delta constantly feels unsafe.  (*Id.* ¶ 62.)

At the time the Amended Complaint was filed, Jane Doe-Delta had been awaiting a final decision on her SIV application for over a year and a half.  (*Id.* ¶ 63.)  On December 20, 2018, U.S. Embassy Kabul denied Jane Doe-Delta's application for COM approval.  (Howard Decl. ¶ 13.) On April 23.  2019, Jane Doe-Delta appealed the denial, and on August 30, 2019, the U.S. Embassy Kabul denied her appeal.  (*Id.* ¶ 14.)

### 5. John Doe-Echo

John Doe-Echo is an Iraqi national who applied to the SIV program in July 2013, following approximately two years of service as a translator for U.S. forces, "including eight months training Iraqi police at the request of the United States."  (Am. Compl. ¶¶ 17, 64–65.)  Because of his service, John Doe-Echo has been threatened by militants, who shot at his home, and kidnapped and murdered his father.  (*Id.* ¶¶ 9–10, 64.)  After his father's murder, John Doe-Echo fled Iraq, but has since had to return because he was unable to find a job or otherwise support himself.  (*Id.* ¶ 64.)  He now lives in hiding in Iraq.  (*Id.*)

At the time the Amended Complaint was filed, John Doe-Echo had been awaiting a final decision on his SIV application for almost five years.  (*Id.* ¶ 65.)  Defendants took "approximately sixteen months for the original COM decision; nearly a month for his COM Appeal to be granted; nearly six months for his Special Immigrant Petition; and nearly three months to schedule and hold his interview."  (*Id.*)  On February 3, 2016, John Doe-Echo had his

8

visa interview.  (*Id.*)  On March 19, 2019, a consular officer issued him an immigrant visa.

(Howard Decl. ¶ 10.)

## D.  Procedural History

On June 12, 2018, Plaintiffs filed this action and moved for class certification and the

appointment of class representatives and class counsel.  (ECF No. 1; Mot. for Class

Certification.)  One month later, on July 12, 2018, Plaintiffs filed an Amended Complaint.  (Am.

Compl.)  Defendants then moved to partially dismiss Plaintiffs' Amended Complaint on August

13, 2018.  (Defs. Mot. to Dismiss.)  On September 7, 2018, Plaintiffs filed a motion for

preliminary injunction and a motion for expedited discovery shortly before their response to

Defendants' partial motion to dismiss.  (Pls. PI Mot.; Pls. Mot. for Exp. Discovery; ECF No. 36

("Pls. Opp. to Mot. to Dismiss").)  On September 28, 2018, Defendants filed a reply in support

of their motion to dismiss, a response to Plaintiffs' motion to expedite discovery, and a response

to Plaintiffs' motion for a preliminary injunction.  (ECF No. 41–43; ECF No. 44 ("Pls. Reply")

at 1, n.2.))

Because Plaintiffs asked to supplement the motion with discovery before the court ruled

on the merits, the court turned first to Defendants' partial motion to dismiss and Plaintiffs'

motion for expedited discovery.  By Memorandum Opinion and Orders dated January 30, 2019

(ECF No. 47–49), the court:

1.   Granted Plaintiffs' motion for class certification on a provisional basis, for the
     sole purpose of resolving Defendants' partial motion to dismiss, Plaintiffs' motion
     for preliminary injunction, and Plaintiffs' motion for expedited discovery;
2.   Appointed Plaintiffs' counsel to represent the provisional class;
3.   Denied Defendants' motion to dismiss;
4.   Granted Plaintiffs' motion to expedite discovery; and
5.   Issued a discovery, briefing, and hearing schedule.

9

In so doing, the court held, in part, that (1) Plaintiffs have standing to sue for an order compelling Defendants to adjudicate their SIV applications in a reasonable amount of time, and (2) Plaintiffs identified a required action to compel that does not rise or fall based on whether the 9-month timetable is congressionally mandated.  (*See* ECF No. 47 at 20–21.)

Despite some delays, Plaintiffs eventually received most of the discovery that they sought and supplemented their motion.[2]  Before expedited discovery began, Plaintiffs used named Plaintiffs' individual circumstances and data mined from the periodic SIV reports and adduced that applicants experienced wait times longer than the 9-month benchmark referenced in the statute.  When the preliminary injunction motion was filed, named Plaintiffs had been waiting in government-controlled steps of the process between 18 and 52 months.  (Pls. PI Mot. at 10.) And, given the application deadline, all Iraqi applicants had been waiting over 3.5 years.  (*Id.* at 12 n.1.)  Following expedited discovery, Plaintiffs supplemented the record with additional data regarding the time applicants await adjudication:[3]

- At least 7,700 applications have been pending for longer 9 months.  (ECF No. 68 ("Pls. PI Supp.") at 4.)  Of those 7,700 applicants, over 5,300 have waited an average of 2.5–5 years for COM approval, and over 2,300 have waited an average of three years after receiving COM approval.[4]  (ECF No. 68-12 ("Onken Decl.") at ¶¶ 13, 44.)

---

[2] At the July 26, 2019 hearing, Plaintiffs indicated they needed additional discovery to "identify and to determine the magnitude of delays across the entire SIV process."  (ECF No. 72 ("Hearing Tr.") at 5:17–6:3.)  The court concluded that Plaintiffs had proffered sufficient evidence for the court to advance Plaintiffs' preliminary injunction motion to a trial on the merits.  (*Id at* 7:22–8:13.)

[3] Plaintiffs also identified several potential problems with Defendants' method of tracking and reporting SIV Application processing times.  (*See* Pls. PI Supp. at 9–11.)

[4] Plaintiffs were unable to track the complete average wait time because Defendants do not maintain information linking applicants across all stages except for their names and birthdays, and Plaintiffs were provided only anonymized data.  (Pls. PI Supp. at 4 n.3.)

10

- When Defendants produced the data, "over 7,000 applicants had been pending only in their current step for longer than 9 months (not including time spent awaiting government action in previous steps)." (Pls. PI Supp. at 11 n.10 (emphasis in original) (citing Onken Decl. at ¶¶ 13, 28, 33, 40).)
- Over 80% of the Afghan applications that have been designated as complete have been pending over 9 months, awaiting a decision at the COM approval stage. (Onken Decl. at ¶ 13.)
- The Iraqi class members have waited, on average, over 5 years for an initial decision on their COM application. (*Id.*)
- More than 6,300 applicants have already waited at least 9 months for a decision on their COM appeal. (*Id.* at ¶ 20.)  This figure represents 94% of all individuals awaiting a COM appeal decision. (*Id.*)  The average wait for Afghan applicants is 2 years and 8 months; for Iraqi applicants, the average wait is 3 years and 8 months. (*Id.*)  Historically, COM appeals are successful 50% of the time. (*See generally* ECF No. 34-6 ("Afghan SIV Joint Reports Jan.  2016 – Apr.  2018"); ECF No. 34-7 ("Iraqi SIV Joint Reports Jan.  2016 – Apr.  2018").)
- Ninety-eight percent of applicants who have completed an interview have been waiting over 9 months for a final adjudication. (Onken Decl. at ¶ 44.)

Subsequently, in a Notice of Supplemental Authority, Plaintiffs alerted the court to the April 2019 Iraqi Joint Report, covering January 1, 2019 to March 31, 2019.  (ECF No. 73 ("Pls. Supp. Authority") at 1.)  In the report, Defendants note that the current wait time for Iraqi applicants is 537 days, which Plaintiffs allege is more than four times the wait time in the prior report.[5]  (*Id* at 2.)  The report states that the "growth in processing times . . .  is due to the resolution of several longstanding cases which caused the overall average to jump significantly" and notes Defendants' policy of excluding pending cases in its calculation of average processing times.  (ECF No. 73-1 at 99.)  Despite the long delays, when asked on the record whether it was Defendants' position that the nine-month timeline was impossible, Mr. Carilli responded for the Defendants that "[he] do[es]n't think the government's position is that it's impossible." (Hearing Tr. 32:15–20.)

---

[5] On August 21, 2019, Defendants filed a response to Plaintiffs' Notice of Supplemental Authority (ECF No. 74), in which they did not contest that the Iraqi applicant wait times had increased, but noted that the Afghan applicant wait time decreased from 708 days to 564 days (*Id.* at 2.)

11

JA 114

By Memorandum Opinion and Order dated September 20, 2019 (ECF Nos. 75, 76), the court granted in part and denied in part Plaintiffs' motion for a preliminary injunction, ordering that:

- Within thirty days of the resolution of the instant class certification dispute, Defendants shall submit a plan for promptly processing and adjudicating the applications of current class members.
- Within twenty-one days after submission of the plan, Plaintiffs shall file any objections to the plan.
- Upon approval by the court of the plan, Defendants shall file a progress report every 60 days.

(ECF No. 75 at 19.)  Defendants then filed a second supplemental memorandum in opposition to Plaintiffs' motion for class certification (ECF No. 78 ("Defs. 2nd Supp. Opp.")) as well as a Motion for Reconsideration of the court's preliminary injunction (ECF No. 79) that is addressed by this court in a separate memorandum opinion and order.  The court will now address the question of whether Plaintiffs' proposed class satisfies Rule 23 of the Federal Rules of Civil Procedure.

## II.  ANALYSIS

Under Fed. R. Civ. P. 23(a), the proponent of the class action must establish that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  The proposed class must also meet one of the three additional requirements set forth in Rule 23(b).  Relevant here is Rule 23(b)(2)'s requirement that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, such that injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Class certification is not automatic, and sets forth more than a pleading standard—Rule 23 demands affirmative demonstration of compliance, and requires proof that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 249 (D.C. Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (emphasis in original) (internal quotation marks omitted).  While the court may find it "necessary . . . to probe behind the pleadings before coming to rest on the certification question," *In re Rail Freight Fuel Surcharge*, 725 F.3d at 249 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (internal quotation marks omitted), in determining whether to certify a class, a court may not examine whether "plaintiffs have stated a cause of action or will prevail on the merits." *In re Veneman*, 309 F.3d 789, 794 (D.C. Cir. 2002) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)) (internal quotation marks omitted).

### A. <u>Numerosity</u>

A proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Although the absolute number of class members is not the sole determining factor, joinder will usually be impracticable when the class is large." *Council of and for the Blind of Delaware Cnty. Valley, Inc. v. Regan,* 709 F. 2d 1521, 1543 n. 48 (D.C. Cir. 1983).  Still, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)).  Moreover, plaintiffs "need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided." *Lightfoot v. District of Columbia*, 246

13

F.R.D. 326, 335 (D.D.C. 2007) (citing *Bynum v. District of Columbia*, 214 F.R.D. 27, 32–33 (D.D.C. 2003)).

Plaintiffs argue that joinder is impracticable because the putative class size is in the "hundreds." (Mot. for Class Certification at 12.) They further argue that adjudicating the class members' claims individually would take years, during which time the class members' lives would be at risk and the court's resources needlessly tied up. (*Id.* at 14.) Plaintiffs note that earlier, successful lawsuits on this issue (but with small groups of applicants) failed to bring Defendants into compliance with statutory obligations, thus necessitating a class action. (*Id.*) Defendants do not contest numerosity. (ECF No. 27 ("Defs. Opp. to Mot. for Class Certification"); ECF No. 59-1 ("Defs. Supp. Opp. to Mot. for Class Certification"); Defs. 2nd Supp. Opp.)

The court finds that: (1) there is a reasonable basis for Plaintiffs' estimation of the putative class size; and that (2) joinder is impracticable. Plaintiffs' estimations are based on data provided by Defendants DHS and State and form a reasonable basis to believe that the class numbers in the hundreds. *See Lightfoot*, 246 F.R.D. at 335 (noting that "plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided"). Joinder is impracticable for hundreds of individuals, especially when they are geographically dispersed internationally. *See Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) (finding geographical dispersion relevant to impracticability of joinder). Moreover, the inefficiency of bringing individual cases is costly, where, as here, class members are at risk of being killed each passing day. (*See* ECF No. 3-13) (describing recent murders of individuals with pending SIV applications).

14

### B. **Commonality**

Commonality requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Members of the proposed class must "have suffered the same injury," *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 152) (internal quotation marks omitted), to support the existence of a common contention that "is capable of classwide resolution," meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  The commonality requirement is satisfied where the challenge is to "a uniform policy or practice that affects all class members." *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013); *see also R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015).

Plaintiffs argue that all class members suffered the same injury: unreasonable delay in the adjudication of their SIV applications.  (Mot. for Class Certification at 16.)  And that all class members challenge the same policy or practice: "Defendants' systematic and unaddressed failure to complete processing and adjudication of their SIV applications within nine months."  (*Id.*)  Plaintiffs further argue that there are multiple questions of law applicable to all class members, including whether Defendants are required to adjudicate SIV applications, whether Defendants must adjudicate SIV applications within 9 months, and whether Defendants' failure to adjudicate SIV applications merits relief from this court.  (*Id*. at 15.)

Defendants argue that there is insufficient commonality because factual differences between class members necessitate case-by-case adjudication.  (ECF No. 27 at 17–21.)  But courts regularly certify classes where individual members have different factual circumstances. *See, e.g.*, *Nio v. U.S. Dep't. of Homeland Sec.*, 323 F.R.D. 28, 32 n.2 (D.D.C. 2017) (class certified of people alleging unreasonable delays to naturalization applications, even though

15

"class members' naturalization applications may have applications with varying times of delay that could influence the type of relief this Court could grant"); *Bynum*, 214 F.R.D. at 34 (class certified despite differences in lengths of detainment because systemic detainment after scheduled date of release was a common issue).  Here, the factual variations among the class members (such as the date they applied and the kind of threat they face) are not fatal to commonality because they do not undermine the class's common characteristics—that they have submitted SIV applications and have been waiting longer than 9 months for final adjudication.

Defendants' stronger argument is that commonality is defeated because the class as currently defined would include individuals with "high-risk" cases who stand on a different legal footing than the rest of the class.  (Defs. Opp. to Mot. for Class Certification at 20–21.)  Under AAPA § 602(b)(4) and RCIA § 1242(c), Defendants may take longer than 9 months "in high-risk cases for which satisfaction of national security concerns requires additional time."  Defendants note that one of the class representatives—John Doe-Alpha—fits within this exception because a consular officer found him ineligible for a visa for national security reasons.  (Defs. Supp. Opp. to Mot. for Class Certification at 3.)  Apart from John Doe-Alpha, however, Defendants point to no other applicants who are high-risk and require additional processing time, and it is the Defendants who decide which applicant is high-risk.

While the difference between a high-risk applicant and one that is not is legally relevant, it is nonetheless insufficient to undermine commonality here given the generality of Plaintiffs' claim, the indeterminate nature of what it means to be high-risk, and the fact that the court's relief allows Defendants flexibility in processing high-risk applications.  First, all class members, including those considered high-risk, assert a common legal injury: that Defendants have breached their duty under the APA to adjudicate SIV applications without unreasonable delay.

(Am. Compl. ¶ 73.)  While the RCIA and the AAPA create an exception for high-risk cases that require more time, the APA applies to all applicants.  *See* 5 U.S.C. § 706(1); *see also Telecomm. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting forth a standard to assess unreasonably delay claims that does not require a Congressional timetable for consideration of a claim).  And as Plaintiffs make clear, they "challenge Defendants' failure to address and adjudicate their SIV applications within a reasonable time . . .  Plaintiffs do not seek to enforce the nine-month timeframe in this action."  (Pls. Opp. to Mot. to Dismiss at 2.)  This claim is common to all class members, regardless of high-risk status.

Second, high-risk cases do not follow a set path.  Merely because a case is considered high-risk does not mean that it will continue permanently in that status.  (*See* Defs. Supp. Opp. to Mot. for Class Certification at 4–5) ("Defendants conduct required background and security checks throughout the adjudication of each application[.]")  In fact, Defendants explained at oral argument that the statute does not require them to "designate" cases as high-risk.  (Hearing Tr. at 25:7–10.)  Accordingly, given the fluidity of the process, it is possible that an applicant may not be considered high-risk until after extensive, unreasonable delay.  John Doe-Alpha, for example, waited five years before he was considered high-risk.  (Howard Decl. ¶¶ 3–4; Am. Compl., ¶ 57.)  In his case, it would strain credulity to argue that his classification as "high-risk" caused the delay given that the delay occurred well before that classification.

Moreover, just because a case is considered high-risk does not mean that additional time is required.  Notably, the statutory exception permits Defendants to take longer than 9 months in only those high-risk cases "for which satisfaction of national security concerns *requires additional time*."  AAPA § 602(b)(4)(B) (emphasis added); RCIA § 1242(c)(2) (same).  And while some high-risk cases will require additional time, there is nothing to indicate that this is

true for all such cases. Therefore, while it is true that the statute does allow Defendants to take longer than nine months for high-risk cases that require additional time, it does not necessarily follow that high-risk status automatically means there has been no unreasonable delay. Nor does it vitiate the ability of a high-risk applicant to raise a claim under the APA. Finally, it does not even establish, without more, that additional time is needed. John Doe-Alpha, the only class member that Defendants have declared high-risk, exemplifies this point: his case was not considered high-risk until after he experienced extensive and unreasonable delay, and Defendants have not indicated that his high-risk status had anything to do with the delay.

Finally, all class members, including those whose applications require additional processing time because they are high-risk, seek and will benefit from the same remedy. In the September 20, 2019 Memorandum Opinion and Order (ECF Nos. 75, 76) this court ordered Defendants to "submit a plan for promptly processing and adjudicating the applications of current class members" within "thirty days of the resolution of the class certification dispute." (ECF No. 75 at 19.) Such a remedy is applicable to all class members, including those with high-risk applications like John Doe-Alpha, because it is sufficiently flexible to enable Defendants to specify which applications require additional processing time because they are high-risk. If the "government credibly claim[s] that a particular case [is] high risk" and requires additional time, a court should "defer to the government's expertise in the area of foreign policy and national security." *Nine Iraqi Allies v. Kerry,* 168 F. Supp. 3d 268, 295 (D.D.C. 2016). The court's remedy allows Defendants to incorporate such expertise into its proposed plan, and provides the government with flexibility to process high-risk applications that require extra time. That certain applications may require more than 9 months to process does not undermine commonality.

For all the foregoing reasons, and based on the record before it, the court concludes that Plaintiffs have satisfied the commonality requirement.  Plaintiffs challenge a uniform act and allege a uniform harm for which there is a common remedy.[6]  *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.

## C. Typicality

Rule 23's typicality requirements are met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Unlike commonality, which is concerned with the similarity of class members' injuries, the typicality requirement "focuses on whether the representatives of the class suffered a similar injury from the same course of conduct."  *Bynum*, 214 F.R.D. at 34.  The requirement "ensures that the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of, the class."  *Littlewolf v. Hodel*, 681 F.  Supp. 929, 935 (D.D.C. 1988), *aff'd sub nom.*, *Littlewolf v. Lujan*, 877 F.2d 1058 (D.C. Cir. 1989).  Typicality is established if "[a] plaintiff's claim . . .  arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory."  *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (quoting *EEOC v. Printing Indus.*, 92 F.R.D. 51, 54 (D.D.C. 1981)).

---

[6] Defendants also argue that commonality is defeated because the proposed class includes individuals without standing to sue.  (Defs. Opp. to Mot. for Class Certification at 15.)  The premise of this argument, that only applicants at certain steps benefit from the 9-month timetable has already been rejected by this court and others.  *See Nine Iraqi Allies,* 168 F. Supp. 3d at 292; *Airaj v. United States*, No. CV 15-983 (ESH), 2016 WL 1698260, at *9 (D.D.C. Apr. 27, 2016).

The named Plaintiffs argue that their claims are typical of the class because they all share the same injury ("Defendants' systematic failure to adjudicate their SIV application within the 9-month statutory requirement"), and because they all share common characteristics (they "worked for the US government or allied forces; applied for SIVs; face threats to their safety and that of their families; and have been waiting for longer than 9 months for the government to complete government-controlled steps to process and adjudicate the SIV application."). (Mot. for Class Certification at 18.)  Defendants counter with the same arguments they proffered against commonality. (Defs. Opp. to Mot. for Class Certification at 21–22.)  Just as those arguments do not defeat commonality, neither do they defeat typicality.  The differences between the named Plaintiffs and the class members that Defendants highlight (applicants who are at different steps in the process and who are considered high-risk), do not undermine the relevant shared characteristics between the named Plaintiffs and the class as a whole.  All class members' claims "arise from the same event or practice or course of conduct" and, as discussed above, are "based on the same legal theory." *Stewart*, 948 F. Supp. at 1088.  Moreover, "factual variations between the claims of class representatives and the claims of other class members . . . do not negate typicality." *Bynum*, 214 F.R.D. at 34; *see also Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) (noting that "[c]ourts have held that typicality is not destroyed merely by 'factual variations'"); *United States v. Trucking Emp., Inc.*, 75 F.R.D. 682, 688 (D.D.C. 1977) (collecting cases and noting that "where the claims or defenses raised by the named parties are typical of those of the class, differences in the factual patterns underlying the claims or defenses of individual class members will not defeat the action").[7]

---

[7] Defendants also argue that the named Plaintiffs are not typical of the class because their claims are moot. (Defs. Supp. Opp. to Mot. for Class Certification at 3.)  This issue is addressed in the discussion of adequacy below. (*See supra*, pp. 25–28.)

The court concludes that the named Plaintiffs' claims are typical of those of the proposed class. The record establishes that the course of conduct at issue (the application of Defendants' policies), the injury itself, and the legal theory underlying the claims are the same in all material respects between the named Plaintiffs and the rest of the class. *See Stewart*, 948 F. Supp. at 1088 (noting that claims arising from "the same event or practice or course of conduct" and based on the same legal theory as other class members are considered typical).

### D. Adequacy

Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation is typically measured by two criteria: (1) whether the named representative has antagonistic or conflicting interests with the members of the class, and (2) whether the representative appears capable of vigorously prosecuting class interests through qualified counsel. *See Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017); *Twelve John Does v. District of Columbia,* 117 F.3d 571, 575–76 (D.C. Cir. 1997). The first criterion focuses on conflicts of interest, which "prevent named plaintiffs from satisfying the adequacy requirement only if they are fundamental to the suit and . . . go to the heart of the litigation." *Nat'l Veteran Legal Servs. Program*, 235 F. Supp. 3d at 41 (quoting *Keepseagle v. Vilsack,* 102 F. Supp. 3d 205, 216 (D.D.C. 2015)). Speculative or hypothetical conflicts will not defeat the adequacy requirement. *Nat'l Veteran Legal Servs. Program*, 235 F. Supp. 3d at 41. The second criterion ensures that class counsel is competent. *See id.* at 43.

Plaintiffs contend that the named Plaintiffs' interests do not conflict with those of the class members, since all class members will benefit from the remedy named Plaintiffs seek:

21

prompt adjudication of all SIV applications pending in excess of 9 months. (Mot. for Class Certification at 19–20.) Defendants argue, *inter alia*, that Plaintiffs are not adequate representatives because there is a conflict between individuals with applications pending before Step 10 and those with applications pending after Step 10. (Defs. Opp. to Mot. for Class Certification at 22–23.) Defendants also argue that there is a tension between those plaintiffs who prefer "the near-term certainty of an agency decision" and those who would prefer uncertainty to "maximize[] eligibility and thus the opportunity for a favorable decision." (Defs. 2nd Supp. Opp. at 13.) Finally, Defendants argue that because the named Plaintiffs' claims are now moot, they are not adequate representatives for class members with live claims. (*Id.* at 14.)

None of the conflicts alleged by Defendants would prevent the named Plaintiffs from "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). The alleged tension between those before and those after Step 10 is illusory given this and other courts' holdings that applicants at all government-controlled steps are covered by the 9-month timetable. *See Nine Iraqi Allies*, 168 F. Supp. 3d at 292; *Airaj*, 2016 WL 1698260 at *9. Additionally, Defendants' argument about the tension between speed of process and success on the merits is unavailing because Defendants offer no evidence that delay "maximizes" the "opportunity for a favorable decision." (Defs. 2nd Supp. Opp. at 13.) To the contrary, the record suggests that delay *harms* an applicant's chance of success, because, with the passage of time, documents can be harder to locate and supervisors harder to contact. (*See* ECF No. 34-5 ¶ 18.) And while Defendants provide some evidence that staff members work with applicants to fill gaps in their applications (*see* ECF No. 70 at 17–19), there is no reason that such support cannot be provided within the timeline set by Congress.

Lastly, Defendant's argument that mootness undermines adequacy is unpersuasive because this case fits within the "inherently transitory" exception to the mootness doctrine. This exception exists for claims that "are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *see also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991); *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975) ("There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion."). The exception applies when "the individual claim might end before the district court has a reasonable amount of time to decide class certification, and . . . some class members will retain a live claim at every stage of litigation." *J.D. v. Azar,* 925 F.3d 1291, 1311 (D.C. Cir. 2019).

Because this case involves visa applications, the class is inherently transitory, and its membership is not fixed. Some Plaintiffs have already received decisions on their applications, and others could receive decisions while this litigation is ongoing. Thus, even though the proposed class likely includes many individuals with visa applications that will remain pending long enough for a court to rule on class certification, Plaintiffs have no way of ensuring that any particular class representative will be in that group. *See Thorpe v. District of Columbia,* 916 F. Supp. 2d 65, 67 (D.D.C. 2013) ("The length of any individual's stay in a nursing facility is impossible to predict, so even though there are certainly individuals whose claims will not expire within the time it would take to litigate their claims, there is no way for plaintiffs to ensure that the Named Plaintiffs will be those individuals"). Indeed, while the five named Plaintiffs' claims have been resolved, most of the hundreds of class claims have not. (Mot. for Class Certification

23

at 12; Onken Decl.)  Where a live controversy exists for class members, mootness alone does not render the named Plaintiffs inadequate.  *See Basel v. Knebel,* 551 F.2d 395, 397 n.1 (D.C. Cir. 1977).

For these reasons, the court rejects Defendants' contention that named Plaintiffs are unable to vigorously prosecute class interests because their claims are now moot.  The court concludes that: (1) an exception to the mootness doctrine applies, and that (2) the named Plaintiffs have no conflicts of interest with the class and are capable of vigorously prosecuting class interests.

The court further finds that Freshfields Bruckhaus Deringer US LLP (Freshfields) and the International Refugee Assistance Project (IRAP) are capable of vigorously prosecuting class interests as class counsel.  *See Nat'l Veterans Legal Servs. Program*, 235 F. Supp., at 41.  In appointing class counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Freshfields and IRAP have litigated APA claims brought by SIV applicants in the past, *see Nine Iraqi Allies*, 168 F. Supp. 3d at 268, have handled other immigration related class actions and complex litigation, (*See* ECF No. 3-10 ¶¶ 5, 7; ECF No. 3-11 ¶¶ 5, 7–8), and have invested significant resources into developing the claims in this case (Mot. for Class Certification at 22).  Thus, finding Freshfields and IRAP qualified and capable of vigorously prosecuting this litigation, the court will appoint them class counsel.

24

### E. **Rule 23(b)(2)**

A plaintiff seeking class certification must also satisfy one of the three Rule 23(b) requirements. Relevant here is the requirement that the defendant "has acted or refused to act on grounds that apply generally to the class," such that declaratory or injunctive relief is appropriate as to the whole class. Fed. R. Civ. P. 23(b)(2). A Rule 23(b)(2) action is specifically "intended for civil rights cases" involving allegations of class-based discrimination. *In re D.C.*, 792 F.3d 96, 102 (D.C. Cir. 2015). Under Rule 23(b)(2), "(1) the defendant's action or refusal to act must be 'generally applicable to the class', and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016), *on reconsideration in part,* 200 F. Supp. 3d 217 (D.D.C. 2016) (quoting *Disability Rights Council of Greater Wash.,* 239 F.R.D. 9, 28 (2006)); *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1003 n.7 (D.C. Cir. 1986). Certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class," and not where each member would have grounds to seek a different injunction or declaratory judgment. *Wal-Mart Stores, Inc.*, 564 U.S. at 360–61.

Plaintiffs contend that the class meets Rule 23(b)(2)'s requirements because it seeks injunctive rather than monetary relief, and the injunctive relief sought (prompt adjudication of applications pending in government-controlled steps for longer than 9 months) "would necessarily result in relief for all SIV applicants in the class." (Mot. for Class Certification at 20.) Defendants respond that because Plaintiffs have unique factual circumstances, "class wide injunctive relief is therefore both unrealistic and unworkable." (Defs. Opp. to Mot. for Class Certification at 23–24.)

The court finds that in this case, "the defendant[s'] action or refusal to act [is] 'generally applicable to the class.'" *Steele*, 159 F. Supp. 3d at 81.  Specifically, Defendants have unreasonably delayed the adjudication of all putative class members' SIV applications.  Moreover, "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360–61.  Plaintiffs seek, and this court has ordered, a plan for prompt adjudication.  Consequently, this injunction does provide relief to each class member, including those deemed high-risk, since the APA itself prohibits unreasonable delay.  *See* 5 U.S.C. § 706(1); *see also Telecomm. Research & Action Ctr.*, 750 F.2d at 80.  Therefore, the court finds that the proposed class meets Rule 23(b)(2)'s requirements.

### F.  Ascertainability

Defendants argue that that the "general outlines of class membership" are not ascertainable here because the proposed class is defined by a "within a reasonable time evaluation."  (Defs. Opp. to Mot. for Class Certification at 24–25) (internal quotation marks omitted).  But this misstates the proposed class definition, which requires 9 months in government-controlled steps, not "a reasonable time."  Defendants also assert that the proposed class is a "fail-safe class" because class members stand to benefit from success but will not be bound by a loss.  (*Id.*)  That is not the case.  If the court were to certify the class and find the delay reasonable and that relief was not warranted, *res judicata* would apply to the class members.  Moreover, while this Circuit has not addressed the issue, the ascertainability requirement has been disavowed by four Circuits courts.[8]  *See Hoyte v. District of Columbia,* 325

---

[8] See *Briseno v. ConAgra Foods, Inc.* 844 F. 3d 1121 (9th Cir. 2017); *Sandusky Wellness Ctr., LLC, v. Medtox Sci., Inc.*, 821 F.3d 992 (8th Cir. 2016); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).

JA 129

F.R.D. 485, 490 n.3 (D.D.C. 2017) (collecting cases).  Thus, "it is far from clear that there exists

in this district a requirement that a class certified under Rule 23(b)(2) must demonstrate

ascertainability to merit certification." *Ramirez v. U.S. Immigration and Customs Enf't.,* 338 F.

Supp. 3d 1, 48 (D.D.C. 2018).  However, even if such a requirement did exist, the proposed class

would satisfy it.

### G.  Recent Statutory Changes

Defendants argue that the practical implications of a February 2019 statutory amendment

militate against certifying this class.  (Defs. 2nd Supp. Opp. at 15–22.)  The amendment

provides:

> (a) AFGHAN ALLIES.—Section 602(b)(3)(F) of the Afghan Allies Protection Act of 2009 (division F of Public Law 111–8), as amended, is further amended by substituting "18,500" for "14,500" in the matter preceding clause (i).

> (b) CONDITIONS.—None of the funds appropriated by this Act may be made available for the additional special immigrant visas made available under subsection (a) until the Secretary of State—

> (1) develops and implements a system to prioritize the processing of Afghan applicants for special immigrant visas under section 602 of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note); and

> (2) submits to the appropriate congressional committees, as defined in section 602(a) of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note), the following reports:

>> (A) the report required under paragraph (12) of section 602(b) of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note), as amended by section 1222 of the John S.  McCain National Defense Authorization Act for Fiscal Year 2019 (Public Law 115–232);

>> (B) a report on the procedures and processes used by the Chief of Mission to determine whether an Afghan applicant for a special immigrant visa under section 602 of the Afghan Allies Protection Act of 2009 (8 U.S.C. 1101 note) has experienced, is experiencing, or may reasonably be expected to experience an ongoing, serious threat as a result of the qualifying service of the applicant; and

27

(C) a report on the procedures for background and security checks on Afghan applicants for special immigrant visas under such section.

Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, § 7076 133 Stat. 13, 391.  Because nothing in this amendment eliminates the 9-month timetable or in any way relieves Defendants of that obligation, the amendment does not undermine the certification of the class or the court's remedy.  Furthermore, to the extent the amendment does lead to policy changes by Defendants regarding prioritization, Plaintiffs' requested relief accommodates such changes, because they seek a plan for prompt adjudication rather than a fixed outcome as to any particular applicant.  Plaintiffs simply ask that whatever prioritization the agency chooses be consistent with prompt adjudication.

## IV.   CONCLUSION

While the SIV process is complex and resource-intensive, Defendants have a non-discretionary duty to fully adjudicate applications without unreasonable delay.  Plaintiffs filed this suit as a class to efficiently and effectively bring Defendants into compliance with that statutory duty.  Because Plaintiffs' proposed class meets the requirements of Federal Rule of Civil Procedure 23, the motion to certify the class (ECF No. 3) will be GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

Date:  February 5, 2020

*Tanya S. Chutkan*

TANYA S.  CHUTKAN
United States District Judge

28

JA 131

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-cv-01388 (TSC) |
| MICHAEL R. POMPEO, *et. al.*, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that Plaintiffs' Motion to Certify Class (ECF No. 3) is GRANTED and this case is

certified to proceed as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of

Civil Procedure. The Plaintiff Class shall consist of:

> all people who have (1) applied for an Afghan or Iraqi SIV pursuant to the
> Afghan Allies Protection Act of 2009, Pub. L. No. 111-8, 123 Stat. 807
> ("AAPA"), or the Refugee Crisis in Iraq Act of 2007, Pub. L. No. 110-181, 122
> Stat. 395 ("RCIA"), by submitting an application for Chief of Mission ("COM")
> approval, and (2) whose applications have been awaiting government action for
> longer than 9 months.

It is further ORDERED that Plaintiffs John/Jane Does Alpha, Bravo, Charlie, Delta, and

Echo are appointed as class representatives for the Plaintiff Class; and ORDERED that, pursuant

to Rule 23(g) of the Federal Rules of Civil Procedure, Freshfields Bruckhaus Deringer US LLP

and the International Refugee Assistance Project are appointed as Counsel for the Plaintiff Class.


Date:  February 5, 2020



*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-cv-01388 (TSC) |
| MICHAEL R. POMPEO, *et. al.*, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

On September 20, 2019 the court granted in part and denied in part Plaintiffs' motion for a preliminary injunction, ordering that:

- Within thirty days of the resolution of the instant class certification dispute, Defendants shall submit a plan for promptly processing and adjudicating the applications of current class members.
- Within twenty-one days after submission of the plan, Plaintiffs shall file any objections to the plan.
- Upon approval by the court of the plan, Defendants shall file a progress report every 60 days.

(ECF No. 75 at 19.)  The court certified the class on February 5, 2020 (ECF Nos. 87, 88) and

Defendants timely filed their proposed adjudication plan on March 5, 2020 (ECF No. 96).

Plaintiffs filed a response to the plan (ECF No. 99) as well as a motion to find Defendants in

contempt for failing to follow the court's orders (ECF No. 97).  In the alternative, Plaintiffs

moved for this court to enforce its September 20, 2019 and February 5, 2020 orders.  (*Id.*)

1

At this time, Defendants' conduct does not warrant a finding of contempt, because Defendants have not "by clear and convincing evidence . . . failed to comply with [this court's] order." *Int'l Painters & Allied Trades Industry Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010); *see also Armstrong v. Executive Office of the President*, 1 F. 3d 1274, 1289 (D.C. Cir. 1993). Nonetheless, Defendant's proposed adjudication plan is misguided and inadequate. Most fundamentally, the plan fails to commit to reducing the time that *Defendants* spend adjudicating applications. Instead, it targets SIV applicants and forces a reduction in their time to submit materials. That mechanism, which amounts to the majority of the plan, misapprehends the nature of this suit and the court's holdings, which relate to Defendant's processing time. To address the inadequacies of the proposed adjudication plan, it is hereby:

ORDERED that within 14 days of this order, Defendants shall confer with Plaintiffs regarding a new, JOINT proposed adjudication plan;

ORDERED that within 28 days of this order, the parties shall file a JOINT proposed adjudication plan that targets Defendant's processing time rather than applicant deadlines and includes, at minimum, the following:

- A clear basis by which the court and Plaintiffs can evaluate Defendants' progress in remedying the unreasonable delay such as target timeframes for processing class member applications and interim benchmarks for achieving those targets;

- A proposal for identifying class members consistent with the class certification order; and

- A proposed format for progress reports; and

2

JA 135

ORDERED that if the court approves the new plan, Defendants shall submit a progress report every 60 days thereafter.

Any proposal filed separately will be stricken sua sponte.  If the filed plan fails to comply with the clear requirements listed above, sanctions may be imposed.

Date:  April 15, 2020

*Tanya S. Chutkan*
TANYA S.  CHUTKAN
United States District Judge

3

JA 136

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-cv-01388 (TSC) |
| | ) ) | |
| MICHAEL R. POMPEO, et. al, | ) ) | |
| Defendants. | ) ) | |

**ORDER**

The court hereby approves and adopts the joint proposed adjudication plan,

attached as Exhibit A.

Date: June 14, 2020

*Tanya S. Chutkan*
—————————————
TANYA S. CHUTKAN
United States District Judge

1

# Exhibit A

## APPROVED ADJUDICATION PLAN

### I.   CLASS MEMBER IDENTIFICATION

Class members covered by the Joint Adjudication Plan are all people who applied for an

Afghan or Iraqi Special Immigrant Visa ("SIV") pursuant to the Afghan Allies Protection Act of

2009, Pub. L. No. 111-8, 123 Stat. 807 ("AAPA"), and Refugee Crisis in Iraq Act of 2007, Pub.

L. No. 110-181, 222 Stat. 395 ("RCIA"), by submitting an application for Chief of Mission

("COM") approval, and whose applications have been awaiting government action for longer

than 9 months, as of May 21, 2020, the date of the submission of this plan. The following

parameters will be used to identify class members:[1]

(1) submitted Chief of Mission ("COM") applications to the National Visa Center

("NVC") prior to August 21, 2019 [*i.e.*, (CASE_RECEIVE_DTE) is earlier than

August 21, 2019], and whose COM applications are pending, either on original

review or on appeal, or approved;

(2) submitted COM applications to the NVC prior to August 21, 2019 and whose COM

applications were denied after January 22, 2020 [*i.e.*, (CASE_RECEIVE_DTE) is

earlier than August 21, 2019 AND (NOT_APPROVED_DTE) is later than January

22, 2020], and therefore are still within the statutorily allotted 120-day time period for

appealing the denial;

(3) submitted I-360 petitions that are pending or were issued a notice of approval [*i.e.*, (I-

360 Filing Date) is earlier than May 21, 2020]; or

---

[1] The parties acknowledge that this methodology will result in over-inclusive class identification, but no class identification methodology will perfectly capture class members given the manner in which Defendants maintain records for SIV applicants and that any methodology will be over-inclusive and/or under-inclusive.

(4) are pre- or post- visa application interview [*i.e.*, whose NVC_CREATE_DATE is earlier than May 21, 2020], including those refused under INA section 221(g) for administrative processing.

II.   **ADJUDICATION PLAN**

| Stage | | Description | Number of class members[2] | Adjudication Plan Performance Standards |
|---|---|---|---|---|
| COM application process, including appeals | 1 | Applicant submits a COM application or appeal package to the NVC. | | N/A: Applicant-Controlled |
| | 2 | The NVC reviews documents and evaluates whether the applicant submitted all of the required items. | N/A | The NVC will complete review within 15 days of receipt of the applicant's submission (a submission is an application or an appeal, or additional documentation if such documentation was requested by the NVC). |
| | 3 | The NVC sends completed application or appeal package to the COM Committee. | N/A | The NVC will send the application or appeal to the COM Committee within 5 days of determining the application or appeal to be documentarily complete. |
| | 4 | The COM Committee reviews the application or appeal and makes a decision to approve or deny. | AAPA: 9,210 awaiting government action<br><br>RCIA: 21 awaiting government action | The COM Committee will adjudicate a completed application or appeal within 120 days of receipt from the NVC.<br><br>For class members currently in Step 4, the COM Committee will adjudicate the completed application or appeal within 120 days of the date of the Court's approval of the Plan. |

---

[2] The parties note that these numbers do not reflect the total number of class members per the parties agreed upon class identification method given that some class members are between government-controlled steps and cannot be easily identified unless or until they enter the next step. Because of the nature of Steps 2, 3, 5, and 8, the parties agreed that Defendants will not report the number of class members.

| | 5 | The COM Committee advises the NVC of the determination on the COM application or appeal and NVC notifies the applicant of the decision. | N/A | The COM Committee will advise the NVC within 5 days of the COM Committee making a determination on the COM Application or Appeal.<br><br>The NVC will send the applicant the COM Application Approval or Denial letter, or COM Appeal determination within 5 days of the NVC receiving notification from the COM Committee. |
| --- | --- | --- | --- | --- |
| Form I-360 Petition adjudication process | 6 | Applicant submits Form I-360 to USCIS | | N/A: Applicant-controlled |
| | 7 | USCIS adjudicates petition and sends to the NVC if approved. | AAPA: 40 awaiting government action; 15 awaiting applicant action<br><br>RCIA: 3 awaiting government action; 3 awaiting applicant action | Upon receipt of a petition from the applicant, USCIS will adjudicate the petition and send an approved petition to the NVC within 60 days unless USCIS issues a Request For Evidence ("RFE") or a Notice of Intent to Deny ("NOID") to the applicant.<br><br>Upon receipt of a response to an RFE or a NOID, USCIS will adjudicate the petition and send an approved petition to the NVC within 60 days.<br><br>Cases that require additional processing time to reconcile any national security concerns, *see* AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified on the progress report in the following manner: number of cases pending between 90–180 days; number of cases pending between 181–240 days; and number of cases pending 241 days or more. For the purpose of progress reporting, the |

3

|  |  |  |  | timeframes will be calculated starting from the date of receipt of the applicant's petition. USCIS will request that third party agencies prioritize the vetting of these cases. The parties understand that USCIS cannot require a third party agency to complete vetting in any particular timeframe.<br><br>Based on these target timeframes, the parties expect that all cases awaiting USCIS adjudication as of the date of the beginning of each reporting period will be adjudicated before the end of the same reporting period, unless USCIS issued an RFE or a NOID or the case requires additional processing time to reconcile any national security concerns. |
|---|---|---|---|---|
| Visa interview process, including pre- and post-interview | 8 | The NVC sends instruction packet to applicant requesting standard immigrant visa documentation. | N/A | Upon receipt of the petition from USCIS, the NVC will send an instruction packet to the applicant within 5 days. |
|  | 9 | Applicant submits all required documentation, per the instruction packet, to the NVC. | AAPA: 107 awaiting applicant action<br><br>RCIA: 8 awaiting applicant action | N/A: Applicant-controlled |
|  | 10 | The NVC reviews documents and evaluates whether the applicant submitted the required items. | AAPA: 12 awaiting government action<br><br>RCIA: 1 awaiting government action | Upon receipt of the application or further information requested by the NVC, the NVC will determine whether the application is complete within 5 to 15 days of receipt.<br><br>If the NVC determines that the application is not complete, |

4

| | | | the NVC will notify the applicant within 5 days of that determination. |
|---|---|---|---|
| 11 | The NVC schedules applicant for next available interview at U.S. embassy's consular section. | AAPA: 120 awaiting interview scheduling; 2 awaiting interview<br><br>RCIA: 2 awaiting interview scheduling | After the NVC determines the application is complete, the NVC will offer the applicant the next available interview within 10 days of making that determination.<br><br>The NVC will schedule the interview within 60 days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the Progress Reports.<br><br>The parties acknowledge that the Department of State suspended all routine visa services worldwide due to COVID-19 worldwide pandemic, and, thus, the NVC is not scheduling interviews as of the date of the submission of this plan, except to the extent that a U.S. Embassy or Consulate's resources allow them to schedule emergency or mission-critical cases. In addition, the parties acknowledge that as of the date of the submission of the plan the Visa Unit at the U.S. Embassy in Afghanistan is closed and consular services in Iraq are severely limited. |
| 12 | Applicant is interviewed by consular officer on the scheduled appointment date. Administrative processing is initiated following the interview. | AAPA: 0<br><br>RCIA: 0 | After completion of the visa application interview, if the consular officer refuses the visa application under section 221(g) for administrative processing, the consular |

| | | | officer will initiate any administrative processing within 5 days. |
| | | | If the applicant is required to provide any additional information or documentation, the consular officer will initiate any administrative processing within 5 days of receipt of all necessary information or documentation. |
| 13 | The applicant's case undergoes administrative processing. | AAPA: 286 awaiting government action<br><br>RCIA: 47 awaiting government action | All cases refused under INA section 221(g) for administrative processing that is solely within the Department of State's control, including Advisory Opinions, will be completed within 90 days.<br><br>For class members currently in Step 13 who are in administrative processing that is solely with the Department of State's control, administrative processing will be completed within 90 days of the date of the Court's approval of the Plan.<br><br>All cases refused under INA section 221(g) for administrative processing that is not solely with the Department of State's control and which require additional processing time to reconcile any national security concerns, *see* AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress report in the following manner: number of cases pending greater than 120 days; number of cases pending |

| | | | |
|---|---|---|---|
| | | | greater than 180 days; and number of cases pending greater than one year. For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.<br><br>The Department of State will request that third party agencies expedite the processing of class members. The parties understand that the Department of State cannot require a third party agency to complete their actions in any particular timeframe. |
| Visa issuance to eligible applicants | 14 | Upon completion of administrative processing, applicant is instructed to obtain a medical exam. The visa is issued if applicant is eligible. In some cases, the passport will have expired and requires renewal by the applicant. | N/A: Applicant-controlled |

## III.   PROGRESS REPORTS

Beginning 90 days after the Court approves the proposed joint adjudication plan and every 90 days thereafter, Defendants shall lodge a progress report with the Court, within 10 days of the 90-day reporting period. The progress report will include Defendants' performance under the proposed adjudication plan during the prior 90-day period, and, if Defendants' performance does not meet the target timeframe, will include an explanation regarding why Defendants' performance did not meet the target timeframe and, if appropriate, also include actions to be

7

taken to bring performance back in line with the performance standard. The template for the progress report is attached hereto.

If Defendants' performance does not meet the target timeframe, and Plaintiffs on a good faith basis do not believe that Defendants' explanation or revised plan for adjudicating delayed applications is sufficient, the Parties agree to meet and confer to attempt to resolve any differences. Within fourteen (14) days after submission of the progress reports, Plaintiffs must notify Defendants in writing, specifying the basis for Plaintiffs' challenge to Defendants' performance. Within fourteen (14) days of receipt of Plaintiffs' correspondence, the parties will meet and confer.

JA 146

**PROGRESS REPORT**

Defendants submit this Progress Report as required under the Court's Month DD, 2020

order.  The Progress Report is for the period of Month Year to Month Year.

**I.      Class Member Breakdown[1]**

Refugee Crisis in Iraq Act of 2007

| | Number of Class Members at the beginning of reporting period (as of Month DD, Year) | Number of Class Members at the end of reporting period (as of Month DD, Year) | Number of Class Members who entered the step during the reporting period | Number of Class Members who completed the step during the reporting period | Number of Class Members who began and ended the reporting period in the step |
|---|---|---|---|---|---|
| **Step 4** | [x] | [x] | [x] | [x] | [x] |
| **Step 7** | [x] (awaiting government action)<br><br>[y] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days) | [x] (awaiting government action)<br><br>[y] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days) | [x] | [x] (approved)<br><br>[y] (denied) | [x] (awaiting government action)<br><br>[y] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days) |

---

[1] The parties acknowledge that this report may include SIV applicants outside of the Court's class definition that the parties have nonetheless agreed to treat as class members because no class identification methodology can perfectly capture class members given the manner in which Defendants maintain records for SIV applicants.

1

|  | | | | | |
|---|---|---|---|---|---|
|  | [c] (national security cases pending greater than 241 days) | [c] (national security cases pending greater than 241 days) | | | [c] (national security cases pending greater than 241 days) |
| **Step 11** | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) | [x] | [x] | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) |
| **Step 13** | [x] (cases in administrative processing)<br><br>[a] (national security cases pending greater than 120 days)<br><br>[b] (national security cases pending greater than 180 days)<br><br>[c] (national security cases pending greater than 1 year) | [x] (cases in administrative processing)<br><br>[a] (national security cases pending greater than 120 days)<br><br>[b] (national security cases pending greater than 180 days)<br><br>[c] (national security cases pending greater than 1 year) | [x] | [x] | [x] (cases in administrative processing)<br><br>[a] (national security cases pending greater than 120 days)<br><br>[b] (national security cases pending greater than 180 days)<br><br>[c] (national security cases pending greater than 1 year) |
| **Step 14** | | | | [x] (visas issued) | |

Afghan Allies Protection Act of 2009

| | Number of Class Members at the beginning of reporting period (as of Month DD, Year) | Number of Class Members at the end of reporting period (as of Month DD, Year) | Number of Class Members who entered the step during the reporting period | Number of Class Members who completed the step during the reporting period | Number of Class Members who began and ended the reporting period in the step |
|---|---|---|---|---|---|
| Step 4 | [x] | [x] | [x] | [x] | [x] |
| Step 7 | [x] (awaiting government action)<br><br>[y] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) | [x] (awaiting government action)<br><br>[y] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) | [x] | [x] (approved)<br><br>[y] (denied) | [x] (awaiting government action)<br><br>[y] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) |
| Step 11 | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) | [x] | [x] | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) |

3

| Step 13 | [x] (cases in administrative processing)

[a] (national security cases pending greater than 120 days)

[b] (national security cases pending greater than 180 days)

[c] (national security cases pending greater than 1 year) | [x] (cases in administrative processing)

[a] (national security cases pending greater than 120 days)

[b] (national security cases pending greater than 180 days)

[c] (national security cases pending greater than 1 year) | [x] | [x] | [x] (cases in administrative processing)

[a] (national security cases pending greater than 120 days)

[b] (national security cases pending greater than 180 days)

[c] (national security cases pending greater than 1 year) |
| Step 14 | | | | [x] (visas issued) | |

4

JA 150

II.     **Performance Standards**

    A.     Standards Met

For the period of this Progress Report, Defendants met the performance standards in the

Joint Adjudication Plan for Steps [list steps].

    B.     Standards Not Met

For the period of this Progress Report, Defendants did not meet the performance

standards in the Joint Adjudication Plan for Steps [list steps].

    1.     Step [list Step Number]

       *a.     Performance Standard [list Standard]*

       *b.     Actual Performance [list Performance]*

       *c.     Explanation [explain why Defendants did not meet standard and, if appropriate, actions to bring performance back in line with the performance standard]*

5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL R. POMPEO, *et. al.*,<br><br>   Defendants. | Civil Action No. 18-cv-01388 (TSC) |

## <u>ORDER</u>

"The same issue presented a second time in the same case in the same court should lead to the same result." *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999). In their opposition to class certification, Defendants argued that a 2019 amendment to the AAPA introduced heterogeneity into the proposed class, and therefore "foreclose[d] any ability for Plaintiffs to plead commonality and typicality and any resolution by the Court that could satisfy Rule 23(b)(2) that 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" (ECF No. 78, Def. Supp., at 19.) The amendment, passed by Congress in the FY2019 Consolidated Appropriations Act, directs the Secretary of State to "develop[] and implement[] a system to prioritize the processing of Afghan applicants for special immigrant visas . . ." Pub. L. 116-6, § 7076(b)(1). Defendants took the position that if, by virtue of this amendment, some members of the class are prioritized over others, class certification

1

would be improper because their interests would diverge and the court would not be able to grant

common relief.  (Def. Supp. at 21.)  In certifying the class, the court disagreed:

> Because nothing in this amendment eliminates the 9-month timetable or in any way
> relieves Defendants of that obligation, the amendment does not undermine the
> certification of the class or the court's remedy.  Furthermore, to the extent the
> amendment does lead to policy changes by Defendants regarding prioritization,
> Plaintiffs' requested relief accommodates such changes, because they seek a plan
> for prompt adjudication rather than a fixed outcome as to any particular applicant.
> Plaintiffs simply ask that whatever prioritization the agency chooses be consistent
> with prompt adjudication.

(ECF No. 88, Mem. Op. at 28.)  Now, Defendants move to de-certify the class, based on

the same argument that the court previously rejected: "As a result of the Prioritization Plan, the

Secretary will treat class member [sic] differently—prioritizing higher priority class members

over other class members in order to increase the likelihood that the highest priority applicants

have a visa number available.  This heterogeneity makes Rule 23(b)(2) certification no longer

appropriate."  (ECF No. 98, Mot. to De-Certify, at 24.)

 Defendants acknowledge, in a footnote, that the court already ruled against them on this

issue but assert that two recent events warrant new analysis.  (*Id.* at 17, n.6.)  First, they argue, at

the time of class certification, "the Department of State had not implemented the Prioritization

Plan."  (ECF No. 105, Reply, at 2.)  That is incorrect; the court did not certify the class until

February 5, 2020, and as Defendants point out, "on November 12, 2019, the Secretary of State

implemented the Prioritization Plan."  (Mot. to De-Certify at 13.)  Moreover, even if Defendants

were correct that the plan had not been implemented prior to class certification, that would not

alter the court's analysis.  The court's ruling specifically contemplated the effects of a

prioritization plan and determined that it did not undermine class certification.  (Mem. Op. at

16.)

2

Defendants also urge renewed analysis because "the Court did not consider the impact of the FY2020 National Defense Authorization Act ("FY2020 NDAA"). (Reply at 2.) It is true that the court did not consider this particular statute, which was passed in December 2019. After its passage, Defendants provided no supplement indicating that it had any bearing on their position. The court did, however, consider the issue raised by the statute. Defendants argue that the passage of the statute means that the Department of State will "prioritize the processing of applicants and aim to ensure the highest priority applicants have a visa number available." (Mot. to De-Certify at 19.) In other words, Defendants claim that the FY2020 NDAA introduces prioritization within the class, and therefore undermines the requirements for class certification. But the court already determined that prioritization within the class does not undermine class certification, because nothing about internal prioritization alters the statutory timeframe of adjudication within nine months, that is common to all.

The court agrees with Plaintiffs that the law of the case doctrine "precludes revisiting this issue." (ECF No. 102, at 9.) Under that doctrine, "a court involved in later phases of a lawsuit should not re-open questions decided (*i.e.* established as the law of the case) by that court in earlier phases." *Ferring Pharm., Inc. v. Azar*, 296 F. Supp. 3d 166, 175 (D.D.C. 2018) (citing *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995)). Because the court already ruled that prioritization within the class does not preclude class certification, the court will not re-open the question now. Moreover, none of the exceptions to the law of the case doctrine apply. *See Melong v. Micronesian Claims Commn.*, 643 F.2d 10, 17 (D.C. Cir. 1980) (acknowledging exceptions where "evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice"). The court already

3

JA 154

considered the Secretary of State's implementation of a prioritization plan, and though the

FY2020 NDAA does enact certain changes, they do not alter the questions that were previously

decided by this court.  Because the same issue raised in the same case should lead to the same

result, Defendants' Motion to De-Certify the Class is hereby DENIED.


Date:  June 23, 2020



*Tanya S. Chutkan*
_____
TANYA S.  CHUTKAN
United States District Judge

USCA Case #25-5279   Document #2171785   Filed: 05/04/2026   Page 160 of 287

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AFGHAN AND IRAQI ALLIES UNDER
SERIOUS THREAT BECAUSE OF
THEIR FAITHFUL SERVICE TO THE
UNITED STATES, ON THEIR OWN
AND ON BEHALF OF OTHERS
SIMILARLY SITUATED,

        Plaintiffs,

v.

**ANTONY J. BLINKEN**, *et al.*,

        Defendants.

Civil Action No. 18-cv-1388 (TSC)

## MEMORANDUM OPINION

Plaintiffs are a class of Afghan and Iraqi Special Immigrant Visas (SIV) applicants whose applications have been pending for more than nine months despite Congress's instruction that they should be processed within that time. In a 2019 Order, the court granted partial summary judgment to Plaintiffs, and in 2020 ordered Defendants to follow an Adjudication Plan for processing Plaintiffs' applications. ECF Nos. 75, 113. Having stayed that Plan for over a year, initially at the request of the parties, the court now addresses Defendants' Motion for Relief from Judgment, ECF No. 163, and Plaintiffs' Cross Motion to Enforce and Clarify the Court's Orders, ECF No. 169. For the reasons below, the court will GRANT in part and DENY in part both motions.

JA 156

## I.    BACKGROUND

The court assumes the parties' familiarity with the facts of this case and recites only what is necessary to resolve the pending motions.[1]

The court granted summary judgment to Plaintiffs on Counts One and Two of their Amended Complaint. *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565 (D.D.C. Sept. 20, 2019) (*Afghan & Iraqi Allies II*).  In its Memorandum Opinion, the court analyzed the six factors set forth in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), and concluded that Defendants unreasonably delayed the adjudication of Plaintiffs' SIV applications. *Afghan & Iraqi Allies II* at *5-11. Based on that conclusion, the court ordered the parties to develop a joint plan for "promptly processing and adjudicating the applications of current class members." *Id.* at *11.

In June 2020, the court approved the parties' proposed joint plan (the "2020 Plan").  ECF No. 113.  The 2020 Plan comprised four parts.  First, it set forth a methodology for identifying the class members that it covered.  ECF No. 113-1 at 1.  Second, it set timing benchmarks for the number of days in which the government should complete each of the steps under its control in the application process.  *Id.* at 2-7.  Third, it required the government to track the progress of class members through each step of the application process, *id.*, and to file a report with those details every 90 days, *id.* at 7-8.  And fourth, it required the government to explain any failure to meet the timing benchmarks and, if appropriate, state the actions it would take to bring its performance back in compliance.  *Id.*  The 2020 Plan was in place for over a year, during which time Defendants filed four quarterly progress reports. *See* ECF Nos. 120, 133, 137, 138.  The

---

[1] Additional factual background is available in the court's Memorandum Opinions, ECF Nos. 47 and 75.

reports admitted several failures to meet timing benchmarks, and Plaintiffs identified certain errors that the government later corrected. ECF Nos. 121, 141, 142, 149.

Upon joint motion from the parties, the court granted a temporary stay of the 2020 Plan, effective October 2021, so that the parties could pursue settlement negotiations. December 20, 2021 Minute Order. The parties continued those negotiations, and the court granted their joint requests for extending the stay, until March 2022. Since then, the court has extended the stay while the parties reported on whether intervening events had mooted any of the issues and briefed the pending motions. *See* April 28, 2022 Minute Order; June 7, 2022 Minute Order. Plaintiffs also appealed the court's refusal to lift the stay, ECF Nos. 165, 166, but the D.C. Circuit dismissed that interlocutory appeal for lack of jurisdiction, *Afghan and Iraqi Allies, et al. v. Antony Blinken, et al.*, No. 22-5183, Per Curiam Order, Doc. No. 1973117 (November 10, 2022).

On May 24, 2022, the government filed a Motion for Relief from Judgment. ECF No. 163 ("Mot. for Relief"). The motion asks the court—under Federal Rule of Civil Procedure 54(b), or alternatively 60(b)—to reconsider its partial grant of summary judgment to Plaintiffs, conclude there is no longer unreasonable delay, and vacate the 2020 Plan. The government points to both external and internal changes over the past two years that, in its view, fundamentally alter the *TRAC* analysis in this case. Externally, the U.S. has withdrawn from Afghanistan and closed its embassy there so that applicants must leave the country to obtain an interview, the number of Afghans seeking SIVs has increased exponentially, ongoing attacks in Baghdad have significantly reduced that embassy's capacity, COVID-19 has made all processing more difficult, and the crisis in Ukraine has diverted government resources. *Id.* at 7-8, 12-19. Internally, the government claims it has significantly ramped up its adjudication capacity, the

application process has been simplified and streamlined, and more applicants are being processed more quickly than ever. *Id.* at 8, 19-24. The government also calls attention to the administrative burdens that the 2020 Plan created. *Id.* at 29-30. The government submits that in light of these facts, its delay in processing Plaintiffs' SIV applications is no longer unreasonable, and it should no longer be subject to any court-ordered adjudication plan. *Id.* 35-36, 43. Alternatively, the government asks for the opportunity to propose a new adjudication plan that accounts for the intervening changes in circumstances. *Id.* at 43-45.

In response, Plaintiffs filed a Cross Motion to Enforce and Clarify the Court's Orders. ECF No. 169 ("Pl. Cross Mot."). They argue that Rule 60(b), not Rule 54(b), is the appropriate procedural vehicle for the government's motion, but that under either rule, the changes in recent years do not justify disturbing the court's partial summary judgment decision or the 2020 Plan. *Id.* at 17-38. Should the court be inclined to vacate or change the 2020 Plan, Plaintiffs request discovery to test the factual validity of the government's assertions regarding those changes, and ask that a magistrate judge oversee the development of any plan modifications. *Id.* at 38-41. Plaintiffs also ask that the court "Enforce and Clarify" its partial summary judgment decision by lifting the stay, ordering the government to report on all class members' statuses within 30 days, imposing additional tracking and reporting measures, and declaring that the adjudication plan covers class members added since 2020. *Id.* at 41-45.

## II.    LEGAL STANDARD

Both Rule 54(b) and 60(b) contemplate the court revising a prior judgment, albeit in distinct circumstances and under somewhat different legal standards. Rule 54(b) provides that

> [w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . .
> Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or

parties and may be revised at any time before the entry of a judgment adjudicating all the claims.

Fed. R. Civ. P. 54(b). Reconsideration under this rule is granted "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). The movant must demonstrate "an intervening change in the law," "discovery of new evidence not previously available," "a clear error in the first order," or "a controlling or significant change in the [] facts . . . since the submission of the issue to the court." *Banks v. Booth*, 518 F. Supp. 3d 57, 62 (D.D.C. 2021).

Under Rule 60(b), relief from final judgment may be granted when "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Under Rule 60(b)(5), "a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). Modifying injunctive requirements imposed on the government, for example, "may be warranted when changed factual conditions make compliance with the decree substantially more onerous," "when a decree proves to be unworkable because of unforeseen obstacles," "or when enforcement . . . would be detrimental to the public interest." *Rufo*, 502 U.S. at 384. The movant bears the burden of making those showings, and of establishing that "the proposed modification is suitably tailored to the changed circumstance." *Id.* at 393. Rule 60(b)(6) also permits relief for "any other reason that justifies relief," but only in "extraordinary circumstances." *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007).

### III.   ANALYSIS

As a threshold matter, the court need not decide whether Rule 54(b) or Rule 60(b) governs the pending motions because under either rule, intervening factual developments warrant

Page **5** of **13**

modification of the court's judgment and the 2020 Plan.  The changes in circumstances since the court ordered relief—both within the government and around the globe—are relevant to the *TRAC* analysis, even if they do not change the court's ultimate determination of unreasonable delay.  Those changes warrant allowing the government to propose modified timing benchmarks, but not to abandon its reporting or explanation obligations—including for Plaintiffs that have recently joined the class because of the government's continued unreasonable delay.  Plaintiffs will have the opportunity to participate in the development of a new adjudication plan, including through limited discovery, in proceedings before a magistrate judge.  This will allow Plaintiffs to receive the expeditious relief they deserve while ensuring that it remains "suitably tailored to the changed circumstance[s]." *Rufo*, 502 U.S. at 393.

## A.  Renewed Unreasonable Delay Analysis

Both Rule 54(b) and Rule 60(b) permit reconsideration of a prior judgment after significant changes in the relevant facts.  *See Horne*, 557 U.S. at 447; *Banks*, 518 F. Supp. 3d at 62.  The court granted partial summary judgment and approved the 2020 plan after it found unreasonable delay under the *TRAC* factors in *Afghan & Iraqi Allies II*.  Some of the factual developments since that time are both significant and relevant to that analysis, but ultimately do not alter the court's determination that the government's delay in adjudicating Plaintiffs' applications is unreasonable.

*TRAC* identifies six factors for the court to consider when evaluating the need for relief with respect to a claim of unreasonable delay:

> 1. Whether a "rule of reason" governs the time an agency takes to make a decision;
>
> 2. Whether Congress has provided in the enabling statute a timetable or other indication of the speed with which it expects the agency to proceed, thus supplying content for the rule of reason;

Page **6** of **13**

JA 161

3. The affected sphere of regulation, because delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

4. The effect of expediting delayed action on agency activities of a higher or competing priority;

5. The nature and extent of the interests prejudiced by delay; and

6. Any impropriety of the agency, although the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Afghan & Iraqi Allies II* at *5 (quoting *TRAC*, 750 F.2d at 80).

*Afghan & Iraqi Allies II* considered the *TRAC* factors' application to this case at some length. *Id.* at *6-11. Much of that analysis remains applicable. Rather than repeat it here, the court will only revisit the factors to the extent that they may be affected by changed circumstances.

    i.      <u>First and Second *TRAC* Factors</u>

"Time is the first and most important factor" in the assessment of unreasonable delay, *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 274 (D.C. Cir. 2020) (cleaned up) (quotation omitted), and it is where the government's case for relief is the strongest. Whether the agency's timeline conforms to a "rule of reason" depends not only on any statutory timetable, but also on "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.* (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)); *Afghan & Iraqi Allies II* at *6.

Since the court ordered relief in this case, the government's task of timely adjudicating Plaintiffs' visa applications has undoubtably become more difficult. For starters, the United States has withdrawn its troops from Afghanistan and completely suspended operations in its Embassy in Kabul. Mot. for Relief, Exh. C, Declaration of Mark R. Evans ("Evans Decl.")

¶¶ 18-22.  In the wake of that withdrawal, the monthly volume of SIV case inquiries surged by 816 percent, and the number of new cases grew by 443 percent.  Mot. for Relief, Exh. D, Declaration of Peggy Petrovich ("Petrovich Decl.") ¶¶ 7-9.  At the same time, the government lost its ability to conduct the legally required in-person visa interviews for Afghan applicants in Afghanistan, and arranging for those interviews outside of Afghanistan involves an array of diplomatic, logistical, and other hurdles.  Evans Decl. ¶ 41, *see* 8 U.S.C. § 1202(e), 22 C.F.R. §§ 42.62(a)-(b).  The government's simultaneous increase in workload and decrease in processing capacity affect "the complexity of the task at hand" and "the resources available to the agency." *In re Pub. Emps. for Env't Resp.*, 957 F.3d at 274.  These changes thus bear directly on the rule of reason that must guide the government's timeline for adjudication of Plaintiffs' visa applications.

Despite these significant developments, however, many key facts have not changed.  Not least of these is Congress's instruction that SIV applications "should be completed not later than 9 months after the date on which an eligible alien submits all required materials."  National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66 §§ 1218-19, 127 Stat. 910, 914 (2013).  Congress issued that instruction in 2013, understanding that the process would often be challenging and complex, *Afghan & Iraqi Allies II* at *7, and has declined to disturb it even after the complications of recent years, *see* Emergency Security Supplemental Appropriations Act, 2021, Pub. L. No. 117-31, 135 Stat. 309.  And despite the government's reported—and laudable—improvements in processing times, *see* Mot. for Relief at 15-16, 24, 30, the fact remains that Plaintiffs' applications are still pending beyond the statutory deadline and the government has not provided any concrete timetable for adjudicating them.  *See Afghan & Iraqi Allies II* at *8.  In addition, some of the changes that the government identifies from the time the

court imposed the 2020 Plan—such as the COVID-19 pandemic and the instability around its Embassy in Baghdad—are not changes at all.

As a result, the first and third *TRAC* factors still favor Plaintiffs, albeit slightly less heavily than before. The difference in weight does not alter the court's ultimate determination of unreasonable delay or justify ending court supervision of the government's adjudication process. But as discussed below, *see infra* Section III.B., it does warrant some modifications to the adjudication plan.

ii.     Third and Fifth *TRAC* Factors

As in *Afghan & Iraqi Allies II*, the court considers the third and fifth *TRAC* factors together because of their overlap. 2019 WL 4575565 at *8. "The third looks to whether human health and welfare are at stake—in which case compulsion is more justified—and the fifth assesses the nature and extent of the interests prejudiced by delay." *Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 304 (D.D.C. 2014).

Here, the government's arguments for reconsideration do not move the needle. First, the government argues that because adjudicating SIV applications implicates foreign affairs and national security, it is better left to the political branches. Mot. for Relief at 27-29, 30-31. But the court has already heard and rejected that line of argument. *Afghan & Iraqi Allies II* at *7 n.12. In any event, it is irrelevant to Plaintiffs' health, welfare, and other interests jeopardized by the government's delay—the focus of the third and fifth *TRAC* factors. Second, the government contends that the administrative costs of its tracking and reporting requirements under the 2020 Plan "may actually hinder" the expeditious adjudication of Plaintiffs' visas by diverting valuable resources. Mot. for Relief at 29-30. But while the government cites the hours it has devoted to those obligations, *id.*, it does not quantify the opportunity cost of adjudicating Plaintiffs' visas. That makes the true impact too speculative to disturb the court's conclusion that the

Page **9** of **13**

USCA Case #25-5279 Document #2171785 Filed: 05/04/2026 Page 169 of 287

administrative burdens associated with tracking and reporting requirements are worth ensuring the government's compliance with its legal obligations.[2]

There is one significant development relevant to these factors: Since the court ordered relief, more Plaintiffs have joined the class. Because the government has continued to fail to timely process SIV applications in the past several years, even relatively newer applicants have now been waiting for more than nine months. These Plaintiffs are in no less need of relief than those who were covered by the 2020 Plan, even though that Plan only covered class members as of May 21, 2020. The interests of justice and equity therefore justify modifying the relief to include the new class members.

If anything, the third and fifth *TRAC* factors weigh more heavily for Plaintiffs than they did in *Afghan & Iraqi Allies II*. "[T]he probability of actual harm and the related stress are compounded each day an applicant waits for an adjudication." *Afghan & Iraqi Allies II* at *9. Many Plaintiffs have now waited years more for the adjudication of their visa applications, while the conditions for them and their families have become increasingly desperate and dangerous. *See* Pl. Cross Mot. at 14-16. Accordingly, the government's delay is more unreasonable under these factors, not less—and it is unreasonable with respect to the Plaintiffs who joined the class after as well as before May 21, 2020.

---

[2] By the same token, however, Plaintiffs fail to demonstrate that these requirements should be made more rigorous. Plaintiffs briefly highlight the government's missteps in tracking and reporting under the 2020 Plan and predict that these will continue unless the court "enforce[s]" its ordered relief by directing the government to report the time it takes "to process an application within and across all government-controlled stages of the application process." Pl. Cross Mot. at 42-43. But they fail to persuade the court that, at this juncture, the solution to noncompliance is the imposition of additional requirements, or that their benefits would outweigh their administrative burden.

JA 165

### iii. Fourth *TRAC* Factor

The fourth *TRAC* factor examines whether the government's "specific, proffered activities will be de-prioritized, in error," by court-ordered relief. *Afghan & Iraqi Allies II* at *9. Once again, the government does "not proffer any specific agency activities that would be adversely affected." *Id.* Instead, it points to its general "commitment to provide assistance to address global events such as the Ukrainian refugee crisis, [the] COVID-19 visa backlog, the civil war in Ethiopia, and the lack of consular services in Moscow." Mot. for Relief at 33. But as the government itself observes, it "constantly face[s] humanitarian and foreign relations concerns of pressing urgency." *Id.* at 34. These concerns therefore do not represent changes warranting reconsideration of the unreasonable delay analysis. The court will therefore not alter its determination that this factor is either neutral or weighs in favor of Plaintiffs. *Afghan & Iraqi Allies II* at *11.

### iv. Sixth *TRAC* Factor

The court previously found it unnecessary to address the sixth *TRAC* factor. *Afghan & Iraqi Allies II* at *11. Consequently, at this stage the court will assume without deciding that there is no agency impropriety.

*       *       *

On balance, the *TRAC* factors analysis continues to demonstrate the government's unreasonable delay. The court therefore declines to terminate the relief that it has ordered. However, the intervening events justify some modifications to the 2020 Plan.

## B. Remedial Modifications

In light of the court's renewed unreasonable delay analysis and the government's technical alterations to the SIV visa adjudication process, the court will provide for modification of the relief it ordered. As it did previously, the court will offer some guidance with respect to

the new plan's development and basic requirements, but will allow the government to propose a specific plan with Plaintiffs' input. *See Afghan & Iraqi Allies II* at *11.

The new adjudication plan shall include the four basic elements of the 2020 Plan: (1) a methodology for identifying class members, (2) timing benchmarks for the government-controlled steps of the SIV adjudication process, (3) tracking and reporting requirements, and (4) mandatory explanation and proposed remedies in the event of government failure to meet the timing benchmarks. The methodology for identifying class members shall include Plaintiffs who have joined the class before and after May 21, 2020. The government may propose modifying the timing benchmarks to reflect its increased caseload and difficulty scheduling in-person applicant interviews, subject to the discovery and objection procedures discussed below. The government may also propose modifying the timing benchmarks, as well as the tracking and reporting requirements, to correspond with the changes in internal processes that it has made in recent years.[3]

The court will temporarily refer this case to a magistrate judge to oversee the development of a new plan. Once the case is referred, Plaintiffs may conduct limited discovery with respect to the declarations attached to the government's motion for relief and any other justifications the government advances for its proposed modifications, and the magistrate judge shall resolve any discovery disputes. Within 30 days of referral, the government shall submit a report, similar to its prior quarterly reports, detailing the progress of Plaintiffs' applications through the adjudication process. The report need not include an explanation for failure to meet the timing benchmarks or provide a plan for rectifying that failure. Within 30 days of filing that

---

[3] For example, the government states that it has effectively eliminated "Step 5" of the process. Mot. for Relief at 22-23. As a result, any proposed plan would not need a timing benchmark or reporting requirement for Step 5.

report, the government shall submit a new proposed plan reflecting the court's guidance in the previous paragraph. The government is encouraged to consult with Plaintiffs in developing the plan. Within twenty-one days of the new plan's submission, Plaintiffs shall file any objections to it. The court will then decide whether to schedule further proceedings or take additional steps before approving or rejecting the plan.

The court will continue to stay the 2020 Plan while the parties develop the new plan. The court cautions the government, however, that significant delay or noncompliance may result in the stay being lifted.

## IV.    CONCLUSION

For these reasons, and in the ways explained above, the court will GRANT in part and DENY in part the government's Motion for Relief from Judgment, ECF No. 163; and the court will GRANT in part and DENY in part Plaintiffs' Cross Motion to Enforce and Clarify the Court's Orders, ECF No. 169. An appropriate order will accompany this opinion.


Date: November 30, 2022

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

Page **13** of **13**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,**

Plaintiffs,

v.

**ANTONY J. BLINKEN**, *et al.*,

Defendants.

---

Civil Action No. 18-cv-1388 (TSC)

## ORDER

As set forth in the accompanying Memorandum Opinion, ECF No. 190, the government's Motion for Relief from Judgment, ECF No. 163, is hereby GRANTED in part and DENIED in part, and Plaintiffs' Cross Motion to Enforce and Clarify the Court's Orders, ECF No. 169, is hereby GRANTED in part and DENIED in part.

Date: November 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED**,

      Plaintiffs,

      v.

**MICHAEL R. POMPEO**, *et al.*,

      Defendants.

Civil Action No. 18-01388 (TSC) (MAU)

## ORDER

For the reasons set forth therein, Plaintiffs' Consent Motion to Amend the Class Certification Order (ECF No. 247) is GRANTED.  It is hereby ORDERED that the court's ORDER certifying this case to proceed as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure (ECF No. 89) is amended, so that the Plaintiff Class shall consist of:

> all people who have (1) applied for an Afghan or Iraqi SIV pursuant to the Afghan Allies Protection Act of 2009, Pub. L. No. 111-8, 123 Stat. 807 ("AAPA"), or the Refugee Crisis in Iraq Act of 2007, Pub. L. No. 110-181, 122 Stat. 395 ("RCIA"), by submitting an application for Chief of Mission ("COM") approval, and (2) whose applications have been awaiting government action for longer than 9 months on or before November 30, 2022.

It is further ORDERED that the Joint Stipulation and Motion to Dismiss Counts Four and Five of Plaintiffs' First Amended Complaint (ECF No. 248) is GRANTED.  Counts Four and Five both sought to compel "Defendants to appoint SIV coordinators."  First Amended Compl. ¶¶ 87, 92, ECF No. 23.  Count Four demanded relief under 5 U.S.C. §§ 702 and 706(1) and Count Five sought a writ of mandamus pursuant to 28 U.S.C. § 1362.  *Id.*  Defendants have designated the

Page **1** of **2**

JA 170

Deputy Chief of Mission at Embassy Doha's Afghan Affairs Unit and the U.S. Embassy Baghdad's Consul General as SIV coordinators.  Joint Stipulation and Mot. to Dismiss at 2–3, ECF No. 248.  Therefore, the court finds that Counts Four and Five are moot as to all class members. *See Kremens v. Bartley*, 431 U.S. 119, 129 (1977).  Counts Four and Five of Plaintiffs' First Amended Complaint (ECF No. 23) are DISMISSED as MOOT.


Date: October 4, 2024

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AFGHAN AND IRAQI ALLIES UNDER
SERIOUS THREAT BECAUSE OF THEIR
FAITHFUL SERVICE TO THE UNITED
STATES, ON THEIR OWN AND ON
BEHALF OF OTHERS SIMILARLY
SITUATED,

   *Plaintiffs*,

  v.

ANTHONY BLINKEN, *et al.*,

   *Defendants*.

Civil Action No. 18-cv-1388-TSC-MAU

## ORDER ADOPTING REVISED ADJUDICATION PLAN

On November 11, 2022, the District Court issued an Order that granted in part and denied in part Defendants' Motion for Relief from Judgment. *See* ECF No. 191. The District Court allowed Defendants to propose a revised adjudication plan.

On December 1, 2022, the District Court referred this matter to this Court "for the development of a new adjudication plan and limited discovery related to that plan." Minute Order (Dec. 1, 2022). This Court thereafter oversaw limited discovery related to the plan.

On January 23, 2023, Defendants appealed the District Court's November 11, 2022 Order (ECF No. 191).

On February 2, 2023, Defendants filed a Proposed Revised Adjudication Plan ("Revised Plan"). *See* ECF No. 207. On March 9, 2023, Plaintiffs filed their Objections. *See* ECF No. 217.

On March 18, 2024, pending the D.C. Circuit's decision on Defendants' appeal, the District Court stayed the case. *See* Minute Order (Mar. 18, 2024).

1

JA 172

On June 7, 2024, the D.C. Circuit affirmed the District Court's November 11, 2022 decision. *See Afghan and Iraqi Allies et al. v. Blinken et al.*, 103 F.4th 807 (D.C. Cir. 2024).

On July 29, 2024, the District Court lifted the stay. *See* Minute Order (July 29, 2024).

On August 12, 2024, this Court ordered Defendants to file clarifications to their Revised Plan and set a briefing schedule. *See* Minute Order (Aug. 12, 2024).

On October 10, 2024, this Court held a hearing regarding Defendants' Revised Plan and its clarifications (ECF Nos. 207 and 243) and heard oral argument from counsel for both Parties. The Court resolved all objections. The Court ordered the Parties to submit a Joint Proposed Order with a Final Adjudication Plan incorporating the Court's rulings.

On October 24, 2024, Defendants filed a Motion for Clarification and Short Extension (ECF No. 258). Defendants requested clarification as to the procedure by which they may file objections to this Court's rulings with regards to the Final Adjudication Plan.

Upon consideration of the Parties' written and oral arguments, and for the reasons stated on the record at the October 10, 2024 hearing, it is hereby,

**ORDERED** that the Court adopts the Joint Proposed Revised Adjudication Plan (ECF No. 254-1) as the Final Adjudication Plan. The Final Adjudication Plan is attached as Exhibit 1 to this Order. It is further,

**ORDERED** that, to the extent either Party objects to this Court's October 10, 2024 rulings, objections shall be filed no later than November 18, 2024. The filing of oppositions and replies shall be governed by LCvR 7(b) and (d). Defendant's Motion (ECF No. 258) is DISMISSED AS MOOT.

**SO ORDERED.**

2

Date: November 4, 2024

_____
MOXILA A. UPADHYAYA
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> **MARCO A. RUBIO**, *et al.*, <br><br> Defendants. | Civil Action No. 18-1388 (TSC) (MAU) |

**<u>MEMORANDUM OPINION</u>**

Congress enacted the Refugee Crisis in Iraq Act of 2007 ("RCIA"), Pub. L. No. 110-181, §§ 1241–49, 122 Stat. 395 (2008), and Afghan Allies Protection Act of 2009 ("AAPA"), Pub. L. No. 111-8, §§ 601–02, 123 Stat. 807 (2009), authorizing the Secretary of State to grant Special Immigrant Visas (SIV) to Iraqi and Afghan nationals who had worked for the U.S. Government or International Security Assistance Force for at least one year, provided "faithful and valuable service," and experienced "an ongoing serious threat" as a result. RCIA § 1244(b)(1); AAPA § 602(b)(1). In 2013, to address the slow pace of SIV applications, Congress amended the RCIA and AAPA to require Defendants to complete all government-controlled steps within nine months. National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, §§ 1218–19, 127 Stat. 672, 910–15 (2013) ("NDAA of 2014").

Plaintiffs—a class of Afghan and Iraqi SIV applicants whose applications have been pending for more than nine months—brought this class action to compel Defendants—the U.S.

JA 175

Department of State, U.S. Department of Homeland Security, and officials at those agencies—to process and adjudicate their SIV applications in accordance with Congress's instructions. In 2019, the court granted summary judgment to Plaintiffs on Counts One and Two of the Amended Complaint, concluding that Defendants unreasonably delayed the adjudication of Plaintiffs' SIV applications. *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565 (D.D.C. Sep. 20, 2019) (*Afghan & Iraqi Allies II*). After granting Defendants relief from judgment, the court referred the parties to a magistrate judge for development of a revised adjudication plan. *Afghan & Iraqi Allies v. Pompeo*, 643 F. Supp. 3d 148, 157 (D.D.C. 2022) (*Afghan & Iraqi Allies III*), *aff'd*, 103 F.4th 807 (D.C. Cir. 2024). Magistrate Judge Upadhyaya adopted a Revised Adjudication Plan. Order Adopting Revised Adjudication Plan at 2, ECF No. 260 ("MAU Order"). Defendants timely objected under Federal Rule of Civil Procedure 72(a). Defs.' Objs. to Revised Adjudication Plan, ECF No. 261 ("Defs.' Objs."). The court now resolves Defendants' objection and will ADOPT in part and MODIFY in part the Revised Adjudication Plan, ECF No. 260-1.

## I. BACKGROUND

The court assumes the parties' familiarity with the facts of this case and recites only what is necessary to resolve the issues now before it. *See, e.g.*, *Afghan & Iraqi Allies II*, 2019 WL 4575565, at *1–4; *Afghan & Iraqi III*, 643 F. Supp. 3d at 151–53. To obtain admission to the United States through the SIV program, applicants must proceed through four stages—corresponding to thirteen steps for Iraqi applicants and twelve steps for Afghan applicants. Final Adjudication Plan at 3, 7, ECF No. 260-1 ("MAU Revised Adjudication Plan"). The first stage—steps one through four for all applicants—is the Chief of Mission ("COM") application process, including any related appeals. *Id.* at 3. In stage one, an individual must submit a complete application for COM approval. *Id.* The National Visa Center ("NVC") and COM staff review the application, and the COM Designee approves or denies the application, which may be appealed.

Page **2** of **10**

*Id.* Stage two, which only applies to some applicants, is the Form I-360 Petition adjudication process. *Id.* at 3–4, 10–11. The applicant must submit a Form I-360 to USCIS, which USCIS adjudicates and sends to NVC if approved. *Id.* Stage three is the visa interview process. *Id.* Upon receipt of COM approval and/or an approved Form I-360 petition from USCIS, NVC sends an instruction packet requesting additional documentation from the applicant. *Id.* at 4–5, 7. Once NVC has received and reviewed the requested documentation, it schedules an interview for the applicant at the U.S. embassy, consulate, or alternate immigrant visa processing post. *Id.* at 5, 8. After the interview, further administrative processing may be required. *Id.* Finally, at stage four, the applicant is instructed to obtain a medical exam and, if the applicant is eligible, the SIV issues. *Id.* at 6, 10.

In 2019, the court granted summary judgment on Plaintiffs' unreasonable delay claims under the Administrative Procedure Act ("APA") and ordered the parties to develop a joint plan for "promptly processing and adjudicating the applications of current class members." *Afghan & Iraqi Allies II*, 2019 WL 4575565, at *11. In June 2020, the court approved the parties' proposed joint plan (the "2020 Plan"), ECF No. 113. The 2020 Plan comprised four parts: "(1) a methodology for identifying class members, (2) timing benchmarks for the government-controlled steps of the SIV adjudication process, (3) tracking and reporting requirements, and (4) mandatory explanation and proposed remedies in the event of government failure to meet the timing benchmarks." *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157.

In May 2022, Defendants moved for relief from the judgment, Mot. for Relief from J., ECF No. 163, which the court granted in part and denied in part. *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 158. The court found that the Government's delay in adjudicating Plaintiffs' applications remained unreasonable, but intervening factual developments warranted modifications to the 2020

Plan. *Id.* at 157. It referred the case to a magistrate judge for the development of a new plan, which it ordered must include the same four basic elements. *Id.* Defendants could propose modifications to timing benchmarks and tracking and reporting requirements to reflect the increased caseload, difficulty scheduling in-person applicant interviews, and changes in internal processes. *Id.* Defendants filed a Proposed Revised Adjudication Plan, ECF No. 207, and Plaintiffs filed objections, ECF No. 217, but the court stayed further proceedings pending Defendants' appeal of the court's ruling on Defendants' motion for relief from judgment. Min. Order (Mar. 18, 2024). In July 2024, the D.C. Circuit affirmed and the court lifted the stay. Min. Order (July 29, 2024).

Magistrate Judge Upadhyaya ordered supplemental briefing on the Proposed Revised Plan and resolved all remaining objections during a hearing on October 10, 2024. MAU Order at 2; *see also* Hr'g Tr. (Oct. 10, 2024), ECF No. 255 ("MAU Hr'g Tr."). On November 4, 2024, Judge Upadhyaya adopted a Revised Adjudication Plan, incorporating her October 10, 2024, bench rulings. MAU Order at 2; *see generally* MAU Revised Adjudication Plan. Defendants raise eleven objections to Judge Upadhyaya's rulings and Revised Adjudication Plan. ECF No. 261. Plaintiffs do not object but oppose Defendants' objections. Pls.' Opp'n to Defs.' Objs., ECF No. 264 ("Pls.' Opp'n"). Upon consideration of the parties' briefing before Judge Upadhyaya, Judge Upadhyaya's rulings, Defendants' objections, Plaintiffs' responses, and the entire record, the court will ADOPT in part and MODIFY in part the Revised Adjudication Plan.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(a), the "district judge in the case must consider timely objections and modify or set aside any part [the magistrate judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "To find clear error, a court must be 'left with the definite and firm conviction that a mistake has been committed.'" *Payne v. District of*

*Columbia*, 859 F. Supp. 2d 125, 131 (D.D.C. 2012) (cleaned up) (quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011)). The magistrate judge's "legal conclusions are reviewed de novo." *Id.* (citations omitted).

### III. ANALYSIS

Defendants' objections fall into three categories—(1) objections to measuring performance by time increments; (2) objections to the duration of time increments; and (3) substantive objections to the plan's methodology, scope, or objectives.

### A. Objections to Measuring Performance by Time Increments

Defendants object to using timing benchmarks to measure performance at Steps 4 and 9 for Afghan SIVs. Step 4 for Afghan SIV applicants requires Defendants to complete the COM review and decision process within 120 calendar days of receiving the application from NVC. MAU Revised Adjudication Plan at 7. Defendants object to measuring progress by calendar days and instead propose measuring performance by the total applications receiving a COM decision per quarter, with a target of 4,500 applications per quarter. Defs.' Objs. at 5–6. Step 9 for Afghan SIV applicants requires Defendants to notify applicants of their interview date within 8 business days of determining the application is complete and provide an interview within 60 calendar days of that notification. MAU Revised Adjudication Plan at 7. Defendants ask to change the benchmark to require notification of the interview date within 60 days with no specific time period within which the interview must occur. Defs.' Objs. at 5–6. Judge Upadhyaya denied both requests because Defendants' proposals would eliminate timing benchmarks for the COM processing of any particular application or the time period in which an interview occurs. MAU Hr'g Tr. 47:01–20, 61:13–14.

The court agrees. Without timing benchmarks, some applications may be processed expeditiously, while others could stall indefinitely at both steps. Eliminating timing benchmarks

fails to comply with this court's prior rulings, *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157, and disregards Congress's instructions to process applicants within certain time parameters, RCIA § 1242(c)(1); AAPA § 602(b)(4)(A); NDAA of 2014 §§ 1218–19.    Therefore, the court will overrule Defendants' objections and adopt Judge Upadhyaya's rulings on this issue.

### B. Objections to the Duration of Timing Benchmarks

The next and largest category of objections is to the duration of the timing benchmarks for specific steps and reporting obligations.    Defendants first object to measuring Steps 2, 3, and 10 for Iraqi SIV applicants using calendar days, requesting measurement by business days instead, thereby effectively increasing the relevant time period.    Defs.' Objs. at 15.    Judge Upadhyaya adopted Defendants' request to measure Steps 7, 9, and 11 of the Iraqi SIV Plan and Steps 2, 5, 7, and 10 of the Afghan SIV plan in business days, but rejected Defendants' request to measure Steps 2, 3, and 10 of the Iraqi SIV plan in business days.    *See* Pls.' Opp'n at 17; MAU Hr'g Tr. 21:05–06, 22:03–06, 31:07–22.    Because Judge Upadhyaya rejected the request for business days in Steps 2, 3, and 10 for Iraqi SIV applicants, she accepted Defendants' request to increase the time period by five calendar days for Steps 2 and 10.    MAU Hr'g Tr. 21:05–06, 31:07–22.

All of these steps involve actions by NVC, and the early steps in both the Iraqi and Afghan SIV plans are identical.    MAU Revised Adjudication Plan at 3–9.    As a result, the MAU Revised Adjudication Plan requires Defendants to meet and track performance using unnecessarily different timing increments.    *See id.* at 3, 7 (requiring NVC to complete review within "15 calendar days" at Step 2 for Iraqi SIV applicants but "10 business days" at Step 2 for Afghan SIV applicants).    To avoid confusion and incongruous timing measurements, the court will modify Steps 2, 3, and 10 of the Iraqi SIV plan to business days.    Because Judge Upadhyaya increased the time period to account for tracking calendar days, the court will revert to the appropriate duration of time in business days at Steps 2 and 10, which aligns the time period for Iraqi applicants and

Page **6** of **10**

Afghan applicants.  Processing and tracking applicants pursuant to uniform timing benchmarks should streamline reporting and reduce any burden or confusion for Defendants.  Because Step 3 for Iraqi applicants does not correspond to a step for Afghan applicants, the court will not change the time period but will adopt business days as the appropriate increment.

Defendants also object to the time for NVC to send an instruction packet to the applicant— Step 7 for Iraqi SIV applicants and Step 5 for Afghan SIV applicants—requesting an increase from ten business days to fifteen business days, Defs.' Objs. at 15–16.  The court rejects this objection. Under the previous plan, the benchmark was five days.  2020 Plan at 3.  After reviewing the parties' evidence and hearing argument, Judge Upadhyaya concluded an increase to ten business days was sufficient "to account for the influx" in applications.  MAU Hr'g Tr. 27:19–25.  The court finds no error in this conclusion.

Turning to Defendants' objections to the timing requirements for reporting obligations and challenges to Defendants' progress reports.  Defendants object to (1) the time for filing progress reports, requesting an increase from twenty days to thirty days, Defs.' Objs. at 13–15; (2) the deadline for progress reports, requesting an increase from ninety days to 180 days, once Defendants meet the benchmarks for four consecutive quarters, *id.* at 16–17; and (3) the lack of a time limit for Plaintiffs to raise issues with the progress reports, requesting a waiver for failure to raise objections within fourteen days, *id.*  The court rejects all three objections.  As to the time for filing progress reports, Judge Upadhyaya increased the time from ten days to twenty days.  MAU Hr'g Tr. 25:03–05, 66:21–24.  Again, the court finds no error in that conclusion.  Defendants' vague assertions about "operational concerns" and the possibility of amendments to correct progress reports fail to persuade otherwise.  Defs.' Objs. at 13–14.  The court also rejects Defendants' objections to future adjustments to reporting obligations and a mandatory waiver for

Page **7** of **10**

Plaintiffs' failure to timely raise issues with the progress report. In Judge Upadhyaya's Revised Adjudication Plan, Plaintiffs must notify Defendants in writing of challenges to their progress reports within fourteen days. MAU Revised Adjudication Plan at 12. As Judge Upadhyaya found, Defendants remain free to request a reduction in the frequency of progress reports or to argue that Plaintiffs' challenges are untimely as needed. MAU Hr'g Tr. 66:21–67:13. A preemptive reduction in reporting obligations or waiver of challenges is premature.

## C. **Objections to the Plan's Methodology, Scope, or Objectives**

Defendants raise several substantive objections to the Revised Adjudication Plan's methodology, parameters, and/or objectives. First, they object to reporting on class members and instead ask to report on the entire pipeline of Afghan and Iraqi SIV applications. Defs.' Objs. at 10–11. That request exceeds the scope of revisions permitted by the court's prior ruling, which explicitly requires "a methodology for identifying class members," including "Plaintiffs who have joined the class before and after May 21, 2020." *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157. The court is concerned with the delay adjudicating class members' SIV applications, not SIV applications generally.

Next, Defendants object to USCIS' role in the Revised Adjudication Plan, arguing that USCIS has a significantly diminished role and is likely to complete their remaining SIV petitions in line with the Revised Adjudication Plan's benchmarks. Defs.' Objs at 21–22. The court declines to remove USCIS from the plan at this juncture. Once USCIS has in fact processed all SIV applications covered by the Revised Adjudication Plan, Defendants may renew their request.

Defendants then ask the court to replace the term "administrative processing" with "additional national security screening, a request for formal legal guidance, or fraud review" at Steps 11–13 for Iraqi SIV applicants and Steps 10–12 for Afghan SIV applicants. Defs.' Objs. at 19–20. Defendants argue that administrative processing refers to "various discretionary, post-

Page **8** of **10**

adjudication processes" and may encompass processing in the applicant's control. *Id.* at 19. They contend that their proposed language includes "the vast majority of government-controlled administrative processing." *Id.* at 20. But in conceding that their proposed language captures "the vast majority" but not all applications in "government-controlled administrative processing," *id.*, Defendants undermine their own proposal. The plan seeks to establish timing benchmarks for *all* "government-controlled steps of the SIV adjudication process." *See Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157. Because Defendants' proposed language fails to capture government-controlled administrative processing for all class members' SIV applications, the court rejects their objection. To the extent the administrative processing is applicant-controlled, the timing benchmarks would not apply during that time. To avoid any confusion, the court will insert "government-controlled" before "administrative processing" at Step 11 for Iraqi applicants and Step 10 for Afghan applicants. Because Step 12 for Iraqi applicants and Step 11 for Afghan applicants already distinguishes between government-controlled and applicant-controlled administrative processing, the court finds no reason to modify the language.

Finally, Defendants seek to impose a limit on the issues that Plaintiffs may raise. Specifically, Defendants ask the court to add a requirement that Plaintiffs may only raise challenges asserting that Defendants have failed to substantially comply with a performance standard. Defs.' Objs. at 17–18. As it stands, Plaintiffs must have "a good faith basis" to believe that Defendants' explanation for failure to meet a performance standard is "insufficient" to raise a challenge. MAU Revised Adjudication Plan at 12. If Plaintiffs repeatedly raise frivolous challenges, Defendants may seek judicial relief. *Id.* A substantial compliance standard, in addition to the good faith requirement, will only introduce another ground for dissension between the parties.

## IV.    CONCLUSION

For the reasons stated above, the court will GRANT in part and DENY in part Defendants'

Objections, ECF No. 261, to the Revised Adjudication Plan, ECF No. 260.  In doing so, the court

will ADOPT in part and MODIFY in part Judge Upadhyaya's Revised Adjudication Plan, ECF

No. 260-1.  An Order incorporating the court's rulings and adopting the Revised Adjudication Plan

shall accompany this Opinion.

Date: June 5, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**AFGHAN AND IRAQI ALLIES UNDER
SERIOUS THREAT BECAUSE OF
THEIR FAITHFUL SERVICE TO THE
UNITED STATES, ON THEIR OWN
AND ON BEHALF OF OTHERS
SIMILARLY SITUATED**,

      Plaintiffs,

  v.

**MARCO A. RUBIO**, *et al.*,

      Defendants.

Civil Action No. 18-1388 (TSC) (MAU)

---

**ORDER**

On September 20, 2019, the court granted in part and denied in part Plaintiffs' motion for summary judgment, and ordered the parties to develop a plan for promptly processing and adjudicating Class Members' SIV applications. *See* Order at 1–2, ECF No. 76. On June 14, 2020, the court approved and adopted the parties' joint proposed adjudication plan (the "2020 Plan"). ECF No. 113. On October 19, 2021, the parties entered into a joint stipulation to stay Defendants obligations under the 2020 Plan, ECF No. 144, amended on November 23, 2021, ECF No. 147, which the court entered, *nunc pro tunc*, effective October 19, 2021, Dec. 20, 2021 Min. Order.

On November 30, 2022, the court granted in part and denied in part Defendants' Motion for Relief from Judgment, and ordered Defendants to propose a revised adjudication plan. ECF No. 191. On December 1, 2022, the court referred this matter to a magistrate judge "for the development of a new adjudication plan." Dec. 1, 2022 Min. Order. On March 18, 2024, the court stayed further proceedings, pending the D.C. Circuit's resolution of Defendants' appeal of the

court's November 30, 2022 Order.  Mar. 18, 2024 Min. Order.  On June 7, 2024, the D.C. Circuit affirmed the court's November 30, 2022 Order.  *See Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807 (D.C. Cir. 2024).  On July 29, 2024, the court lifted the stay. July 29, 2024 Min. Order.

On November 4, 2024, following briefing and a hearing, Magistrate Judge Upadhyaya adopted a Revised Adjudication Plan.  ECF No. 260.  On November 18, 2024, Defendants filed objections to the Revised Adjudication Plan pursuant to Federal Rule of Civil Procedure 72(a). ECF No. 261.

For the reasons stated in the accompanying Memorandum Opinion, ECF No. 271, the court GRANTS in part and DENIES in part Defendants' Objections, ECF No. 261, to the Revised Adjudication Plan, ECF No. 260.  It is further,

ORDERED, that the court ADOPTS in part and MODIFIES in part the rulings and Order of the Magistrate Judge, ECF No. 260.  Accordingly, the court APPROVES the Revised Adjudication Plan, attached as Exhibit 1 to this Order.

Date: June 5, 2025

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

**REVISED ADJUDICATION PLAN**

## I.    CLASS MEMBER IDENTIFICATION

Pursuant to the Court's Order of February 5, 2020, as amended October 4, 2024, class members in this matter are "all people who have (1) applied for an Afghan or Iraqi [Special Immigrant Visa ("SIV")] pursuant to the Afghan Allies Protection Act of 2009, Pub. L. No. 111-8, 123 Stat. 807 ("AAPA"), or the Refugee Crisis in Iraq Act of 2007, Pub. L. No. 110-181, 122 Stat. 395 ("RCIA"), by submitting an application for Chief of Mission ("COM") approval, and (2) whose applications have been awaiting government action for longer than 9 months on or before November 30, 2022."

The Adjudication Plan approved on June 14, 2020, applied to certain class members, including those who had applied for COM approval prior to August 19, 2019. Defendants reported on the progress of this limited class through a 14-step adjudication process ("AAP Class"). The Court has ordered the new methodology to include those applicants who joined the class after May 21, 2020.[1]

Class members covered by the Revised Adjudication Plan are all people who applied for an Afghan or Iraqi Special Immigrant Visa ("SIV") pursuant to the Afghan Allies Protection Act of 2009, Pub. L. No. 111-8, 123 Stat. 807 ("AAPA"), and Refugee Crisis in Iraq Act of 2007, Pub. L. No. 110-181, 222 Stat. 395 ("RCIA"), by submitting an application for Chief of Mission ("COM") approval, and whose applications have been awaiting government action for longer than

---

[1] The Iraq SIV program sunsetted in 2014 and is no longer accepting new applications.

9 months, as of November 30, 2022, the date of the Court's order directing this revised adjudication plan. The following parameters will be used to identify class members:[2]

(1) submitted Chief of Mission ("COM") applications to the National Visa Center ("NVC") prior to February 28, 2022 [*i.e.*, (CASE_RECEIVE_DTE) is earlier than February 28, 2022], and whose COM applications are pending, either on original review or on appeal, or approved;

(2) submitted COM applications to the NVC prior to February 28, 2022 and whose COM applications were denied 120 days or fewer before the date that Defendants apply class identification tags [*i.e.*, (CASE_RECEIVE_DTE) is earlier than February 28, 2022 AND (NOT_APPROVED_DTE) is later than [(*Date Defendants apply class identification tags*) minus 120 days]], and therefore are still within the statutorily allotted 120-day time period for appealing the denial;

(3) submitted I-360 petitions that are pending or were issued a notice of approval [*i.e.*, (I-360 Filing Date) is earlier than November 30, 2022]; or

(4) are pre- or post- visa application interview [*i.e.*, whose NVC_CREATE_DATE is earlier than November 30, 2022], including those refused under INA section 221(g) for administrative processing.

## II.    REVISED ADJUDICATION PLAN STANDARDS

For individuals applying for Iraqi SIVs, Defendants Department of State and U.S. Citizenship and Immigration Services ("USCIS") will meet the performance standards below in

---

[2] The parties acknowledge that this methodology will result in over-inclusive class identification, but no class identification methodology will perfectly capture class members given the manner in which Defendants maintain records for SIV applicants and that any methodology will be over-inclusive and/or under-inclusive.

section A. For individuals applying for Afghan SIVs, Defendant Department of State will meet the performance standards below in section B, and for individuals with COM approval dates before July 20, 2022, and who filed I-360 petitions, USCIS will meet the performance standards below in section C.[3]

A.  Refugee Crisis in Iraq Act of 2007

| Stage | Step | Description | Revised Adjudication Plan Performance Standard |
|---|---|---|---|
| COM application process, including appeals | 1 | Applicant submits a complete COM application or appeal package to State's National Visa Center ("NVC"). | N/A: Applicant-Controlled |
| | 2 | NVC reviews documents for completeness. | NVC will complete review within 10 business days of receipt of the applicant's submission (a submission is an application or an appeal, or additional documentation if such documentation was requested by NVC). |
| | 3 | NVC sends completed application or appeal package to the COM Designee for Iraq SIV applicants. | NVC will send the application or appeal to the COM Designee within 5 business days of determining the application or appeal to be documentarily complete. |
| | 4 | COM staff reviews the COM application, and the COM Designee makes a decision. The applicant is automatically informed of the decision. | The COM Designee will adjudicate a completed application or appeal within 60 calendar days of receipt from NVC. |
| Form I-360 Petition | 5 | Applicant submits Form I-360 to USCIS. | N/A: Applicant-Controlled |

---

[3] USCIS has a steadily diminishing role in the Afghan SIV application process. As of July 20, 2022, all new SIV applications are filed with the Department of State via Form DS-157, consolidating the COM approval and petition adjudication responsibilities to Department of State.

3

| adjudication process | | | |
|---|---|---|---|
| | 6 | USCIS adjudicates petition and sends to NVC if approved. | Upon receipt of a petition from the applicant, USCIS will adjudicate the petition and send an approved petition to NVC within 60 calendar days unless USCIS issues a Request for Evidence ("RFE") or a Notice of Intent to Deny ("NOID") to the applicant.<br><br>Upon receipt of a response to an RFE or a NOID, USCIS will adjudicate the petition and send an approved petition to NVC within 60 calendar days.<br><br>Cases that require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B); RCIA § 1242(c)(2), will be identified on the progress reports in the following manner: number of cases pending between 90-180 calendar days; number of cases pending between 181-240 calendar days; number of cases pending between 241 calendar days or more. For the purpose of progress reporting, the timeframes will be calculated starting from the date of receipt of the applicant's petition. USCIS will request that third party agencies prioritize the vetting of these cases. USCIS cannot require a third-party agency to complete vetting in any particular timeframe.<br><br>Based on these target timeframes, all cases awaiting USCIS adjudication as of the date of the beginning of each reporting period will be adjudicated before the end of the same reporting period, unless USCIS issued an RFE or a NOID or the case requires additional processing time to reconcile any national security concerns. |
| Visa interview process, | 7 | NVC sends an instruction packet to applicant requesting | Upon receipt of the petition from USCIS, NVC will send an instruction packet to the applicant within 10 business days. |

4

| including pre- and post-interview | | standard immigrant visa documentation, including Form DS-260. | |
|---|---|---|---|
| | 8 | Applicant submits all required documentation, per the instruction packet, to NVC. | N/A: Applicant-Controlled |
| | 9 | NVC reviews documents for completeness, corresponding with applicant when additional documentation is needed. | Upon receipt of the Form DS-260 or further information requested by NVC, NVC will determine whether the case is documentarily complete and notify the applicant within 10 business days of receipt. |
| | 10 | NVC schedules applicant for next available visa application interview at U.S. embassy or consulate. | After the NVC determines the case is documentarily complete, the NVC will offer the applicant the next available interview within 5 business days of making that determination.<br><br>The NVC will schedule the interview within 60 calendar days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the progress reports. |
| | 11 | Applicant is interviewed and biometrics are collected by consular officer on the scheduled appointment date. Administrative processing, if needed, is initiated following the interview. | After completion of the visa application interview, if the consular officer refuses the visa application under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing, the consular officer will initiate any government-controlled administrative processing within 5 business days. If the applicant is required to provide any additional information or documentation, the consular officer will initiate any government-controlled administrative processing within 5 business days of receipt of all necessary information or documentation. |

5

| | 12 | The applicant's case undergoes administrative processing | All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.<br><br>All cases refused under INA section 221(g) (8 U.S.C. § 1201(g) for administrative processing that is not solely within the Department of State's control, and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.<br><br>For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.<br><br>The Department of State will request that third party agencies expedite the processing of applicants. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe. |
| Visa issuance to eligible applicants | 13 | Upon completion of administrative processing, applicant is instructed to obtain a medical exam. The visa is issued if applicant is eligible. In some cases, the passport will have expired and requires renewal by the applicant. | N/A: Applicant-Controlled |

B.  Afghan Allies Protection Act of 2009

| Stage | Step | Description | Revised Adjudication Plan Performance Standard |
|---|---|---|---|
| COM application process, including appeals | 1 | Applicant submits a COM application or appeal package to State's NVC. | N/A: Applicant-Controlled |
| | 2 | NVC reviews documents for completeness. | NVC will complete review within 10 business days of receipt of the applicant's submission (a submission is an application or an appeal, or additional documentation if such documentation was requested by NVC). |
| | 3 | NVC marks completed application or appeal as "document complete." | NVC will mark the application or appeal as "document complete" as soon as the application or appeal is determined to be documentarily complete. |
| | 4 | COM staff processes and reviews the COM application or appeal package and DS-157 petition for special immigrant status, and the COM Designee makes a decision. The applicant is automatically informed of the decision. | COM Designee will adjudicate a completed application or appeal within 120 calendar days of receipt from the NVC. |
| Visa interview process, including pre- and post-interview | 5 | NVC sends instruction packet to applicant requesting standard immigrant visa documentation, including Form DS-260. | Upon receipt of COM approval and Form DS-157 petition, or an approved Form I-360 petition from USCIS, NVC will send an instruction packet to the applicant within 10 business days. |

7

| | 6 | Applicant submits all required documentation, per the instruction packet, to NVC. | N/A: Applicant-Controlled |
|---|---|---|---|
| | 7 | NVC reviews documents for completeness, corresponding with applicant when additional documentation is needed. | Upon receipt of the Form DS-260 or further required information requested by NVC, NVC will determine whether the case is documentarily complete and notify the applicant within 10 business days of receipt. By no later than the time that NVC notifies the applicant that the case is documentarily complete, NVC will inform applicants of how they can request interview scheduling as provided in step 8. |
| | 8 | Applicant informs NVC of alternate immigrant visa processing post where the applicant will be able to personally appear and make a visa application. An applicant may keep their case assigned to Kabul, however, such a case would not be considered pending government action unless and until the U.S. Embassy in Kabul is able to resume visa processing. | N/A: Applicant-Controlled |

8

| | | | |
|---|---|---|---|
| | 9 | NVC schedules applicant for next available visa application interview at applicable U.S. embassy or consulate. | After the NVC determines the application is complete, the NVC will offer the applicant the next available interview within 8 business days of making that determination or of the applicant completing step 8, whichever is later.<br><br>The NVC will schedule the interview within 60 calendar days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the Progress Reports. |
| | 10 | Applicant is interviewed and biometrics are collected by consular officer on the scheduled appointment date. Administrative processing, if needed, is initiated following the interview. | After completion of the visa application interview, if the consular officer refuses the visa application under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing, the consular officer will initiate any government-controlled administrative processing within 5 business days.<br><br>If the applicant is required to provide any additional information or documentation, the consular officer will initiate any government-controlled administrative processing within 5 business days of receipt of all necessary information or documentation. |
| | 11 | The applicant's case undergoes administrative processing. | All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.<br><br>All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is not solely within the Department of State's control and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.<br><br>For the purpose of progress reporting, the beginning date for these cases is the date the |

JA 195

| | | | consular officer placed the case in administrative processing.

The Department of State will request that third party agencies expedite the processing of class members. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe. |
|---|---|---|---|
| Visa issuance to eligible applicants | 12 | Upon completion of administrative processing, applicant is instructed to obtain a medical exam, if required. The visa is issued if applicant is eligible. In some cases, the passport will have expired and requires renewal by the applicant. | N/A: Applicant-Controlled |

C.  Afghan Allies Protection Act of 2009: Form I-360 Petitions Reviewed By USCIS

| Stage | | Description | Revised Adjudication Plan Performance Standard |
|---|---|---|---|
| Form I-360 Petition Adjudication Process | | USCIS adjudicates petition and sends to NVC if approved. | Upon receipt of a petition from the applicant, USCIS will adjudicate the petition and send an approved petition to NVC within 60 calendar days unless USCIS issues a Request for Evidence ("RFE") or a Notice of Intent to Deny ("NOID") to the applicant.

Upon receipt of a response to an RFE or a NOID, USCIS will adjudicate the petition and send an approved petition to NVC within 60 calendar days.

Cases that require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B); RCIA § 1242(c)(2), will be identified on the progress reports in the following manner: number of cases pending between 90-180 calendar days; number of cases pending between 181-240 calendar days; number of cases pending between 241 calendar days or more. For the |

10

|  |  |  | purpose of progress reporting, the timeframes will be calculated starting from the date of receipt of the applicant's petition.<br><br>USCIS will request that third party agencies prioritize the vetting of these cases. The parties understand that USCIS cannot require a third-party agency to complete vetting in any particular timeframe.<br><br>Based on these target timeframes, the parties expect that all cases awaiting USCIS adjudication as of the date of the beginning of each reporting period will be adjudicated before the end of the same reporting period, unless USCIS issued an RFE or a NOID or the case requires additional processing time to reconcile any national security concerns. |

11

JA 197

## III.    PROGRESS REPORTS

Beginning 90 days after approval of this Revised Adjudication Plan and every 90 days thereafter, Defendants shall file a progress report with the Court within 20 days of the end of the 90-day reporting period. The progress report will include Defendants' performance under the Revised Adjudication Plan Standards in section II during the prior 90-day period. If Defendants' performance does not meet the standard for any particular step, the progress report will include an explanation regarding why Defendants' performance did not meet the standard and, if appropriate, include actions to be taken to improve performance to bring it in line with the standard. The template for the progress report is attached hereto.

If Defendants' performance does not meet the standard, and Plaintiffs on a good faith basis do not believe that Defendants' explanation or revised plan for adjudicating delayed applications is sufficient, within fourteen (14) days after filing of the progress report, Plaintiffs must notify Defendants in writing, specifying the basis for Plaintiffs' challenge to Defendants' performance. Within fourteen (14) days of receipt of Plaintiffs' correspondence—or at another time mutually agreed upon by the parties—the parties will meet and confer to attempt to resolve any differences. No party may file an enforcement motion or otherwise seek judicial relief related to the allegations of noncompliance until after this meet and confer.

## TEMPLATE PROGRESS REPORT

Defendants submit this Progress Report as required under the Court's Order of [DATE].

This Progress Report is for the period of [Month Day, Year] to [Month Day, Year].

**I.      Class Member Breakdown[1]**

Refugee Crisis in Iraq Act of 2007

A.      Report

| | Number of Class Members at the beginning of reporting period (as of Month DD, Year) | Number of Class Members at the end of reporting period (as of Month DD, Year) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| **Step 4** | [x] | [x] | [x] | [x] | [x] |
| **Step 6** | [x] (Total number of petitions pending at the beginning of the reporting period (as of Month DD, Year))<br><br>[y] awaiting government action)<br><br>[z] (awaiting applicant action) | [x] (Total number of petitions pending a final action at the end of the reporting period (as of Month DD, Year))<br><br>[y] (awaiting government action)<br><br>[z] (awaiting applicant action) | [x] (Number of petitions receipted during the reporting period) | [x] (Total number of petitions approved, denied, or administratively closed during the reporting period)<br><br>[y] (approved)<br><br>[z] (denied)<br><br>[a] (administratively closed) | [x] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)<br><br>[y] (awaiting government action)<br><br>[z] (awaiting applicant action) |

---

[1] The parties acknowledge that this report may include SIV applicants outside of the Court's class definition that the parties have nonetheless agreed to treat as class members because no class identification methodology can perfectly capture class members given the manner in which Defendants maintain records for SIV applicants.

1

| | | | | | |
|---|---|---|---|---|---|
| | [a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) | [a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) | | | [a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) |
| Step 10 | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) | [x] | [x] | [x] (awaiting interview scheduling)<br><br>[y] (awaiting interview) |
| Step 12 | [x] (Total number of cases in administrative processing)<br><br>[a] (national security cases pending greater than 120 days)<br><br>[b] (national security cases pending greater than 180 days)<br><br>[c] (national security cases pending greater than 1 year) | [x] (Total number of cases in administrative processing)<br><br>[a] (national security cases pending greater than 120 days)<br><br>[b] (national security cases pending greater than 180 days)<br><br>[c] (national security cases pending greater than 1 year) | [x] | [x] | [x] (Total number of cases in administrative processing)<br><br>[a] (national security cases pending greater than 120 days)<br><br>[b] (national security cases pending greater than 180 days)<br><br>[c] (national security |

2

| | | | | | cases pending greater than 1 year) |
|---|---|---|---|---|---|
| **Step 13** | | | | [x] (visas issued) | |

B.      Performance Standards

1.      Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps [list steps].

2.      Standard Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Steps [list steps]

          a.      Step [list Step Number]
               i.      Performance Standard [list Standard]
               ii.     Actual Performance [list Performance]
               iii.    Explanation [explain why Defendants did not meet standard and, if appropriate, actions to bring performance back in line with the standard]

3

Afghan Allies Protection Act of 2009

A.   Report

| | Number of Class Members at the beginning of reporting period (as of Month DD, Year) | Number of Class Members at the end of reporting period (as of Month DD, Year) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| Step 4 | [x] (new applications and reapplications)<br><br>[y] (appeals) | [x] (new applications and reapplications)<br><br>[y] (appeals) | [x] (new applications and reapplications)<br><br>[y] (appeals) | [x] (new applications and reapplications)<br><br>[y] (appeals) | [x] (new applications and reapplications)<br><br>[y] (appeals) |
| Step 9 | [x](awaiting interview scheduling)<br><br>[y](awaiting interview)<br><br>[z](awaiting interview scheduling at post where demand exceeds capacity)<br><br>[a] (awaiting interview at post where demand exceeds capacity) | [x](awaiting interview scheduling)<br><br>[y](awaiting interview)<br><br>[z](awaiting interview scheduling at post where demand exceeds capacity)<br><br>[a] (awaiting interview at post where demand exceeds capacity) | [x] | [x] | [x](awaiting interview scheduling)<br><br>[y](awaiting interview)<br><br>[z](awaiting interview scheduling at post where demand exceeds capacity)<br><br>[a] (awaiting interview at post where demand exceeds capacity) |
| Step 11 | [x] (Total number of cases in administrative processing)<br><br>[a] (national | [x] (Total number of cases in administrative processing)<br><br>[a] (national | [x] | [x] | [x] (Total number of cases in administrative processing)<br><br>[a] (national |

4

JA 202

| | | | | |
|---|---|---|---|---|
| | security cases pending greater than 120 days) | security cases pending greater than 120 days) | | | security cases pending greater than 120 days) |
| | [b] (national security cases pending greater than 180 days) | [b] (national security cases pending greater than 180 days) | | | [b] (national security cases pending greater than 180 days) |
| | [c] (national security cases pending greater than 1 year) | [c] (national security cases pending greater than 1 year) | | | [c] (national security cases pending greater than 1 year) |
| **Step 12** | | | | [x] (visas issued) | |

B.    Performance Standards

1.    Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps [list steps].

2.    Standard Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Steps [list steps]

a.    Step [list Step Number]
   i.    Performance Standard [list Standard]
   ii.    Actual Performance [list Performance]
   iii.    Explanation [explain why Defendants did not meet standard and, if appropriate, actions to bring performance back in line with the standard.]

5

JA 203

Form I-360 Petitions Reviewed by USCIS

A.    Report

| | Number of Class Members at the beginning of reporting period (as of Month DD, Year) | Number of Class Members at the end of reporting period (as of Month DD, Year) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [x] (Total number of petitions pending at the beginning of the reporting period (as of Month DD, Year))<br><br>[y] (awaiting government action)<br><br>[z] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) | [x] (Total number of petitions pending a final action at the end of reporting period (as of Month DD, Year))<br><br>[y] (awaiting government action)<br><br>[z] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) | [x] (Number of petitions receipted during the reporting period) | [x] (Total number of petitions approved, denied, or administratively closed during the reporting period)<br><br>[y] (approved)<br><br>[z] (denied)<br><br>[a] (administratively closed) | [x] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)<br><br>[y](awaiting government action)<br><br>[z] (awaiting applicant action)<br><br>[a] (national security cases pending between 90 to 180 days)<br><br>[b] (national security cases pending between 181 to 240 days)<br><br>[c] (national security cases pending greater than 241 days) |

6

B.    Performance Standard

1.    Standard Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps [list steps].

2.    Standard Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Step [list step]

      a.    Step [list Step Number]

      i.    Performance Standard [list Standard]
      ii.    Actual Performance [list Performance]
      iii.    Explanation [explain why Defendants did not meet standard and, if appropriate, actions to bring performance back in line with the standard]

7

JA 205

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> **MARCO A. RUBIO**, *et al.*, <br><br> Defendants. | Civil Action No. 18-1388 (TSC) (MAU) |

**<u>MEMORANDUM OPINION</u>**

Plaintiffs—a class of Afghan and Iraqi Special Immigrant Visa (SIV) applicants whose applications have been pending for more than nine months—brought this class action to compel Defendants—the U.S. Department of State, U.S. Department of Homeland Security, and officials at those agencies—to process and adjudicate their SIV applications in accordance with Congress's instructions. Defendants have moved to dismiss Count III for relief under the Mandamus Act, 28 U.S.C. § 1361, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defs.' Mot. to Dismiss Count III, ECF No. 249 ("MTD"). For the following reasons, the court will GRANT Defendants' motion.

JA 206

## I.      BACKGROUND

The court assumes the parties' familiarity with the facts of this case and recites only what is necessary to resolve the pending motion.[1]  Congress enacted the Refugee Crisis in Iraq Act of 2007 ("RCIA"), Pub. L. No. 110-181, §§ 1241–49, 122 Stat. 395 (2008), and Afghan Allies Protection Act of 2009 ("AAPA"), Pub. L. No. 111-8, §§ 601–02, 123 Stat. 807 (2009), authorizing the Secretary of State to grant  SIVs to Iraqi and Afghan nationals who worked for the U.S. Government or International Security Assistance Force for at least one year, provided "faithful and valuable service," and experienced "an ongoing serious threat" as a result.  RCIA § 1244(b)(1); AAPA § 602(b)(1).  In 2013, to address the slow pace of SIV applications, Congress amended the RCIA and AAPA to require Defendants to complete all government-controlled steps within nine months.  *See* National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, §§ 1218–19, 127 Stat. 672, 910–15 (2013).

In 2018, five SIV applicants filed this lawsuit on behalf of a class of Afghan and Iraqi SIV applicants whose applications have been pending for more than nine months.  ECF No. 1.  Plaintiffs' Amended Complaint asserts five claims—Counts I and II seek declaratory and injunctive relief for unreasonable delay under the Administrative Procedure Act ("APA"); Count III seeks a writ of mandamus to compel adjudication of their SIV applications under the Mandamus

---

[1] *See, e.g.*, *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 367841 (D.D.C. Jan. 30, 2019) (*Afghan & Iraqi Allies I*); *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565 (D.D.C. Sept. 20, 2019) (*Afghan & Iraqi Allies II*); *Afghan & Iraqi Allies v. Pompeo*, 643 F. Supp. 3d 148, 157 (D.D.C. 2022) (*Afghan & Iraqi Allies III*), *aff'd*, 103 F.4th 807 (D.C. Cir. 2024).

Act, 28 U.S.C. § 1361; and Counts IV and V seek appointment of SIV coordinators under the APA and Mandamus Act. Am. Compl. ¶¶ 68–92, ECF No. 23.[2]

In 2019, the court granted summary judgment to Plaintiffs on their unreasonable delay claims under the APA and ordered the parties to develop a joint plan for promptly processing and adjudicating the applications of current class members. *Afghan & Iraqi Allies II*, 2019 WL 4575565, at \*11. The court approved the parties' proposed joint plan in June 2020 (the "2020 Plan"), ECF No. 113. The 2020 Plan was in effect for over a year, during which time Defendants filed four quarterly progress reports. *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 152. At the parties' request, the court stayed the 2020 Plan, effective October 2021, to allow for settlement discussions. *Id.*

Then, in May 2022, Defendants moved for relief from the judgment, Mot. for Relief from J., ECF No. 163, which the court granted in part and denied in part, *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157. The court determined that the Government's delay in adjudicating Plaintiffs' applications remained unreasonable, but intervening factual developments warranted modifying the 2020 Plan. *Id.* The court referred the case to a magistrate judge to develop a revised plan, *id.*, but stayed proceedings pending Defendants' appeal of the court's ruling on Defendants' motion for relief from judgment, Min. Order (Mar. 18, 2024). After the D.C. Circuit affirmed the court's ruling, the court lifted the stay. Min. Order (July 29, 2024). In November 2024, Magistrate Judge Upadhyaya adopted a Revised Adjudication Plan. Order Adopting Revised Adjudication Plan at 2, ECF No. 260. The court resolved Defendants' objections to Judge Upadhyaya's rulings under Federal Rule of Civil Procedure 72(a), adopting in part and modifying in part Judge Upadhyaya's

---

[2] The court granted the parties' joint motion to dismiss Counts IV and V as moot in October 2024. ECF No. 251.

Revised Adjudication Plan.  ECF No. 272.  On June 5, 2025, the court approved the Revised Adjudication Plan.  *Id.*

Defendants have moved to dismiss Count III for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  ECF No. 249.

## II.   LEGAL STANDARD

The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the plaintiff establishes otherwise.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of North Am.*, 4 U.S. 8, 10 (1799)).  When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F. 3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F. 3d 970, 972 (D.C. Cir. 2005)).  "[T]he court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions."  *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  The court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted).

## III.   ANALYSIS

Mandamus relief is "an option of last resort," *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023) (citation omitted), that is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Council of and for the Blind of De. Cnty. Valley v. Regan*, 709 F.2d 1521, 1533 (D.C.

Cir. 1983) (en banc).  If "all three of these threshold requirements" are not met, the court must dismiss the petition for lack of subject matter jurisdiction.  *Ferriero*, 60 F.4th at 714.  "In other words, mandamus jurisdiction under § 1361 merges with the merits."  *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (cleaned up).

Plaintiffs' mandamus claim cannot proceed because the APA provides an adequate alternative remedy, as demonstrated by the court's prior rulings granting relief under the APA. *See, e.g.*, *Afghan & Iraqi Allies II*, 2019 WL 4575565, at *11; *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157; Order Approving Revised Adjudication Plan, ECF No. 272.  "The standards for APA relief under § 706(1) and for mandamus [] are identical."  *Citizens for Resp. & Ethics in Wash. (CREW) v. SEC*, 916 F. Supp. 2d 141, 151 (D.D.C. 2013) (citing *Norton v. So. Utah Wilderness All.*, 542 U.S. 55, 63 (2004)).  Plaintiffs' claims for injunctive relief under Section 706(1) of the APA in Count II and mandamus relief in Count III both seek to "compel[] Defendants to adjudicate their SIV applications."  Am. Compl. ¶¶ 77, 83.  Because Plaintiffs can—and in fact have—obtained relief under the APA, mandamus relief is not available.  *See, e.g.*, *Action All. of Senior Citizens v. Leavitt*, 483 F.3d 852, 858 (D.C. Cir. 2007) ("[T]he existence of an administrative remedy under Subchapter II . . . precludes the exercise of mandamus, which is available only if no other adequate remedy is available to plaintiff." (cleaned up)); *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) ("Because the CSRA regime affords beneficiaries an adequate remedy . . . , there is no jurisdiction to issue the writ.") *CREW,* 916 F. Supp. at 152 ("Plaintiff's mandamus claim cannot prevail because CREW does have another available remedy in the APA."); *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 311 (D.D.C. 2017) (dismissing mandamus claim "because plaintiffs are able to assert the same claim through the APA"); *Arabzada v. Donis*,

725 F. Supp. 3d 1, 13 n.1 (D.D.C. 2024) ("Because the APA provides an adequate remedy, mandamus relief is not available here." (citation omitted)).

Plaintiffs argue dismissal is premature because "there is no remedy in place and the contours of any future remedy are far from resolved." Opp'n at 6. That was true when the parties briefed Defendants' motion to dismiss. But the court has since approved the Revised Adjudication Plan, putting in place a clearly defined remedy under the APA. ECF No. 272. Although APA and mandamus claims may proceed in parallel when relief under the APA remains unclear, *see Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 257, 275–76 (D.D.C. 2018), the court lacks jurisdiction to issue a writ of mandamus once it determines the APA provides a remedy, *Fornaro*, 416 F.3d at 69. Because the court granted relief under the APA, it lacks jurisdiction to issue mandamus relief. Therefore, the court will grant Defendants' motion and dismiss Count III without prejudice.[3]

Because the court lacks subject matter jurisdiction, it need not address Defendants' alternative argument for dismissal on the merits as a matter of discretion. *See Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

### IV.    CONCLUSION

For the reasons stated above, the court will GRANT Defendants' motion to dismiss Count III. An Order shall accompany this Opinion.

Date: June 6, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[3] The parties agree that dismissal without prejudice is appropriate when dismissing a mandamus claim for lack of subject matter jurisdiction based on the availability of an alternative, adequate remedy. Defs.' Reply at 8–9, ECF No. 263; Opp'n at 9.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED**,<br><br>            Plaintiffs,<br><br>       v.<br><br>**MARCO A. RUBIO**, *et al.*,<br><br>            Defendants. | Civil Action No. 18-1388 (TSC) (MAU) |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, ECF No. 273, the court

GRANTS Defendants' Motion to Dismiss Count III, ECF No. 249. Count III of the Amended

Complaint, ECF No. 23, is hereby DISMISSED without prejudice.

Date: June 6, 2025

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

JA 212

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AFGHAN AND IRAQI ALLIES UNDER
SERIOUS THREAT BECAUSE OF THEIR
FAITHFUL SERVICE TO THE UNITED
STATES, ON THEIR OWN AND ON BEHALF
OF OTHERS SIMILARLY SITUATED,

                      Plaintiffs,          Case No. 18-cv-01388-TSC-MAU

      – against –

MARCO A. RUBIO, *et al.*,

                      Defendants.

## NOTICE OF APPEAL

Notice is hereby given that Defendants appeal to the United States Court of Appeals for the District of Columbia Circuit from this Court's Memorandum Opinion of June 5, 2025 (ECF No. 271), and Order of June 5, 2025 (ECF No. 272, 272-1).

***

1

JA 213

Dated: July 30, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

YAMILETH G. DAVILA
Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

DAVID J. BYERLEY
RICHARD G. INGEBRETSEN
Trial Attorneys

*/s/ Jaime A. Scott*
JAIME A. SCOTT (DC Bar #90027182)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | |
| Plaintiffs, | Case No. 18-cv-01388-TSC-MAU |
| – against – | |
| MARCO A. RUBIO, *et al.*, | |
| Defendants. | |

## NOTICE OF APPEAL OF FINAL JUDGMENT

Notice is hereby given that Defendants appeal to the United States Court of Appeals for the District of Columbia Circuit from the entry of final judgment in this matter pursuant to Federal Rule of Civil Procedure 58(b)(2)(B).

Plaintiffs' First Amended Complaint (ECF No. 23) contained five counts. The district court granted summary judgment as to Counts I and II in its September 20, 2019 Memorandum Opinion & Order (ECF No. 75, 76), and the court subsequently entered the corresponding injunctive-relief Approved Adjudication Plan on June 14, 2020 (ECF No. 113-1) and Revised Adjudication Plan, on June 5, 2025 (ECF No. 272-1). This Court dismissed with prejudice Plaintiffs' Count III on June 6, 2025 (ECF No. 273, 274). The parties stipulated to dismissal of Counts IV and V on September 18, 2024 (ECF No. 248).

Defendants submit this timely notice to preserve their appeal rights as to final judgment of this matter. This notice is timely because Fed. R. Civ. P. 58(b)(2)(B) states that final judgment is entered if a separate document is required under Rule 58(a), which it is in this case, "when the

judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs: (A) it is set out in a separate document; or (B) 150 days have run from the entry in the civil docket." 150 days after the June 6, 2025 Memorandum Opinion & Order resolving the final claim in this case (Count III) was November 3, 2025. Accordingly, Defendants' deadline to appeal final judgment is January 2, 2026.

Dated: December 30, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

RICHARD G. INGEBRETSEN
JOSHUA A. CLEM
Trial Attorneys

*/s/ Jaime A. Scott*
JAIME A. SCOTT (DC Bar #90027182)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

2

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 221 of 287

APPEAL,CONSOL,JURY,TYPE-E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:18-cv-01388-TSC

AFGHAN AND IRAQI ALLIES v. POMPEO et al
Assigned to: Judge Tanya S. Chutkan
 Cases: 1:21-cv-01697-TSC
        1:22-cv-01996-TSC
        1:22-cv-02051-TSC
Related Case: 1:24-cv-00143-TSC
Case in other court: USCA, 20-05251
              USCA, 22-05183
              USCA, 23-05025
              USCA, 25-05279
              USCA, 25-05480
Cause: 28:1361 Petition for Writ of Mandamus

Date Filed: 06/12/2018
Jury Demand: Plaintiff
Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**AFGHAN AND IRAQI ALLIES**
*UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED*

represented by **Alexandra Zaretsky**
NEW YORK LEGAL ASSISTANCE GROUP
Special Litigation Unit
100 Pearl Street
19th Floor
New York, NY 10004
212-659-7515
Fax: 212-714-7201
Email: azaretsky@nylag.org
*TERMINATED: 08/15/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anika Havaldar**
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street NW
Suite 10th Floor
Washington DC, DC 20005
202-777-4500
Email: anika.havaldar@freshfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Yury Livshiz**
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
212-284-4979

JA 217

Email: David.LIVSHIZ@freshfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Deepa Alagesan**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
Suite 33rd Floor
New York, NY 10004
516-838-7044
Email: deepa.alagesan@ppfa.org
*TERMINATED: 08/21/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Geroline A Castillo**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
4th Floor
New York, NY 10004
516-824-4256
Email: gcastillo@refugeerights.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin C. Simeone**
FRESHFIELDS US LLP
700 13th Street
Ste 10th Floor
Washington DC, DC 20005
202-777-4542
Email: justin.simeone@freshfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Robin Grano**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
Suite 4th Floor
New York, NY 10004
646-946-7453
Email: kgrano@refugeerights.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Linda H. Martin**
BAKER & BOTTS, L.L.P.
30 Rockefeller Plaza
New York, NY 10112
212-408-2500
Fax: 212-408-2501

JA 218

Email: linda.h.martin@bakerbotts.com
*TERMINATED: 04/07/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mariko Hirose**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT, INC.
One Battery Park Plaza
33rd Floor
New York, NY 10004
516-701-4620
Email: mhirose@refugeerights.org
*TERMINATED: 04/22/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa S. Keaney**
MUSLIM ADVOCATES
1032 15th Street N.W. # 362
Washington, DC 20005
202-897-2622
Email: melissa@muslimadvocates.org
*TERMINATED: 09/29/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mia Tsui**
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
650-618-9205
Email: mia.tsui@freshfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pedro Sepulveda , Jr**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT (IRAP)
One Battery Park Plaza
33rd Fl
New York, NY 10004
646-819-3805
Email: psepulveda@refugeerights.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Curwin Kerr**
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
212-277-4000
Email: rebecca.kerr@freshfields.com

JA 219

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allison Wilson**
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
601 Lexington Avenue
31st Floor
New York, NY 10022
(212) 284-4914
Email: allie.wilson@freshfields.com
*TERMINATED: 02/26/2020*

**Carla Sung Ah Yoon**
FRESHFIELDS US LLP
700 13th Street Nw
Ste 10th Floor
Washington, DC 20005
212-277-4057
Email: carla.yoon@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ghita Schwarz**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
Ste 33d Floor
New York, NY 10004
646-939-9169
Email: gschwarz@refugeerights.org
*ATTORNEY TO BE NOTICED*

**Guadalupe V Aguirre**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
Ste 33d Floor
New York, NY 10004
929-246-0154
Email: laguirre@refugeerights.org
*ATTORNEY TO BE NOTICED*

**Kathryn S. Austin**
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza
4th Floor
New York, NY 10004
516-296-0688
Email: kaustin@refugeerights.org
*TERMINATED: 10/10/2022*

**Olivia P. Greene**

WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8800
Email: Olivia.Greene@wilmerhale.com
*TERMINATED: 08/02/2022*
*PRO HAC VICE*

**Shannon M. Leitner**
EXXON MOBIL CORPORATION
22777 Springwoods Village Parkey
Spring, TX 77389
832-625-4797
Email: shannon.m.leitner@exxonmobil.com
*TERMINATED: 02/20/2020*

**Wang Jae Rhee**
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
212-277-4000
Email: wangjae.rhee@freshfields.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ABDUL K. NAJIB**                    represented by    **Melissa S. Keaney**
*22-cv-01996*                                          (See above for address)
                                                       *TERMINATED: 09/29/2025*
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Thomas J Dao**
                                                       LAW OFFICE OF THOMAS J. DAO
                                                       1313 Granite Hills Drive
                                                       El Cajon, CA 92019
                                                       (619) 259-5262
                                                       Fax: (619) 450-1932
                                                       Email: contact@tjdlegal.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MOHAMMAD I. AMIRY**                 represented by    **Melissa S. Keaney**
*22-cv-02051*                                          (See above for address)
                                                       *TERMINATED: 09/29/2025*
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Thomas J Dao**
                                                       (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GHULAM RABANI DAWAR**                    represented by    **Melissa S. Keaney**
*23-cv-332*                                                  (See above for address)
                                                            *TERMINATED: 09/29/2025*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**ASADULLAH ESCANDARI**                    represented by    **Melissa S. Keaney**
*23-cv-02779*                                               (See above for address)
                                                            *TERMINATED: 09/29/2025*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**JOHN DOE**                               represented by    **Melissa S. Keaney**
*24-cv-01629*                                               (See above for address)
                                                            *TERMINATED: 09/29/2025*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MICHAEL R. POMPEO**                      represented by    **Nandini Singh**
*TERMINATED: 09/23/2022*                                    DOJ-Civ
                                                            P.O. Box 868
                                                            Ben Franklin Station
                                                            Washington, DC 20044
                                                            202-532-4113
                                                            Email: nandini.singh@usdoj.gov
                                                            *TERMINATED: 09/15/2025*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Ruth Ann Mueller**
                                                            U.S. DEPARTMENT OF JUSTICE
                                                            Office of Immigration Litigation
                                                            450 5th Street, NW
                                                            Washington, DC 20001
                                                            202-598-2445
                                                            Email: ruth.a.mueller@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Sean Lynden King**
                                                            DOJ-CIV
                                                            Office of Immigration Litigation
                                                            PO Box 868
                                                            Ben Franklin Station

JA 222

Washington, DC 20044
202-353-9369
Email: sean.king@usdoj.gov
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
U.S. Department of Justice
Civil Division, Office of Immigration
Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
(202) 532-4074
Fax: (202) 305-7000
Email: steven.platt@cfpb.gov
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vaughn DE LA Vega Spencer**
DOJ-CIV
Oil-Dcs
450 5th Street NW
Washington, DC 20530
202-598-7593
Email: vaughn.d.spencer@usdoj.gov
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
U.S. DEPARTMENT OF JUSTICE
Antitrust Divison
450 Fifth Street
Suite 8000
Washington, DC 20530
(202) 616-2371
Fax: 202-307-8781
Email: william.martin@usdoj.gov
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yamileth G. Davila**
UNITED STATES DEPARTMENT OF
JUSTICE, CIVIL DIVISION
Office of Immigration Litigation District
Court Section
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
(202) 305-0137
Email: yamileth.g.davila@usdoj.gov

**JA 223**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
U.S. DEPARTMENT OF JUSTICE
District Court Section, Office of
Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
202-532-4268
Email: caroline.mcguire@usdoj.gov
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
DOJ-CIV
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
202-305-3620
Email: jaime.a.scott@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
UNITED STATES ATTORNEY'S OFFICE
601 D Street, NW
Washington, DC 20001
202-252-2525
Email: joseph.carilli@usdoj.gov
*TERMINATED: 12/02/2021*

**Joshua Clem**
DOJ-Civ
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
202-253-6762
Email: joshua.clem2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**CARL C. RISCH**                    represented by **Nandini Singh**
(See above for address)
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**

JA 224

(See above for address)
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
(See above for address)
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vaughn DE LA Vega Spencer**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yamileth G. Davila**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
U.S. DEPARTMENT OF JUSTICE
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 307-8704
Email: Alexander.J.Halaska@usdoj.gov
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
U.S. DEPARTMENT OF JUSTICE
Civil Division
P.O. Box 868 Ben Franklin Station
Washington, DC 20044
202-532-4523
Email: david.byerley@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
(See above for address)
*TERMINATED: 12/02/2021*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-598-9126
Email: larissa.k.johnson@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
U.S. DEPARTMENT OF JUSTICE
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-616-4848
Email: richard.ingebretsen@usdoj.gov
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES DEPARTMENT OF STATE**      represented by      **Nandini Singh**
(See above for address)
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**
(See above for address)
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
(See above for address)
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vaughn DE LA Vega Spencer**
(See above for address)

JA 226

*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yamileth G. Davila**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
(See above for address)
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
(See above for address)
*TERMINATED: 12/02/2021*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KIRSTJEN M. NIELSEN**                    represented by **Nandini Singh**
                                                         (See above for address)
                                                         *TERMINATED: 09/15/2025*

JA 227

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**
(See above for address)
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
(See above for address)
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vaughn DE LA Vega Spencer**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yamileth G. Davila**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
(See above for address)
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

JA 228

**Joseph F. Carilli , Jr.**
(See above for address)
*TERMINATED: 12/02/2021*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**L. FRANCIS CISSNA**          represented by   **Nandini Singh**
(See above for address)
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**
(See above for address)
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
(See above for address)
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vaughn DE LA Vega Spencer**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yanileth G. Davila**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
(See above for address)
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
(See above for address)
*TERMINATED: 12/02/2021*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DONALD NEUFELD**                    represented by  **Nandini Singh**
(See above for address)
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**
(See above for address)

JA 230

*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
(See above for address)
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vaughn DE LA Vega Spencer**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yamileth G. Davila**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
(See above for address)
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
(See above for address)
*TERMINATED: 12/02/2021*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**

JA 231

(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF HOMELAND SECURITY**    represented by    **Nandini Singh**
(See above for address)
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**
(See above for address)
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
(See above for address)
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vaughn DE LA Vega Spencer**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yamileth G. Davila**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
(See above for address)
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

JA 232

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
(See above for address)
*TERMINATED: 12/02/2021*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANTONY J. BLINKEN**                 represented by   **Nandini Singh**
(See above for address)
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**
(See above for address)
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Platt**
(See above for address)
*TERMINATED: 02/23/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

JA 233

USCA Case #25-5279 Document #2171785 Filed: 05/04/2026 Page 238 of 287

**Vaughn DE LA Vega Spencer**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Martin**
(See above for address)
*TERMINATED: 03/02/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yamileth G. Davila**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
(See above for address)
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph F. Carilli , Jr.**
(See above for address)
*TERMINATED: 12/02/2021*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

USCA Case #25-5279    Document #2171785         Filed: 05/04/2026    Page 239 of 287

**JOHN JOHNSON**                    represented by **Nandini Singh**
*22-cv-01996 / Acting Deputy Chief of*            (See above for address)
*Mission for United States Embassy Kabul*          *TERMINATED: 09/15/2025*
                                   *LEAD ATTORNEY*
                                   *ATTORNEY TO BE NOTICED*

                                   **Sean Lynden King**
                                   (See above for address)
                                   *TERMINATED: 12/12/2023*
                                   *LEAD ATTORNEY*
                                   *ATTORNEY TO BE NOTICED*

                                   **Victoria Turcios**
                                   DOJ-CIV
                                   450 5th Street NW
                                   Washington, DC 20001
                                   202-451-7661
                                   Email: victoria.e.turcios2@usdoj.gov
                                   *LEAD ATTORNEY*
                                   *ATTORNEY TO BE NOTICED*

                                   **Alexander Halaska**
                                   (See above for address)
                                   *TERMINATED: 10/18/2024*
                                   *ATTORNEY TO BE NOTICED*

                                   **Caroline McGuire**
                                   (See above for address)
                                   *TERMINATED: 10/17/2024*
                                   *ATTORNEY TO BE NOTICED*

                                   **David J. Byerley**
                                   (See above for address)
                                   *ATTORNEY TO BE NOTICED*

                                   **Jaime A Scott**
                                   (See above for address)
                                   *ATTORNEY TO BE NOTICED*

                                   **Joshua Clem**
                                   (See above for address)
                                   *ATTORNEY TO BE NOTICED*

                                   **Larissa Johnson**
                                   (See above for address)
                                   *ATTORNEY TO BE NOTICED*

                                   **Richard Gordon Winstead Ingebretsen**
                                   (See above for address)
                                   *TERMINATED: 04/02/2026*
                                   *ATTORNEY TO BE NOTICED*

                                   **Ruth Ann Mueller**

JA 235

USCA Case #25-5279      Document #2171785          Filed: 05/04/2026      Page 240 of 287

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**RENA BITTER**
*22-cv-01996 / Assistant Secretary for*
*Consular Affairs*

represented by **Nandini Singh**
(See above for address)
*TERMINATED: 09/15/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Lynden King**
(See above for address)
*TERMINATED: 12/12/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victoria Turcios**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Halaska**
(See above for address)
*TERMINATED: 10/18/2024*
*ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Ruth Ann Mueller**

JA 236

USCA Case #25-5279     Document #2171785          Filed: 05/04/2026     Page 241 of 287

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**SEAN MURPHY**                                    represented by   **Nandini Singh**
*23-cv-332 / Charg d'Affaires, U.S. Embassy*                        (See above for address)
*in the United Arab Emirates*                                      *TERMINATED: 09/15/2025*
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Caroline McGuire**
                                                                   (See above for address)
                                                                   *TERMINATED: 10/17/2024*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **David J. Byerley**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Jaime A Scott**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Joshua Clem**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Larissa Johnson**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Richard Gordon Winstead Ingebretsen**
                                                                   (See above for address)
                                                                   *TERMINATED: 04/02/2026*
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**APRIL WELLS**                                    represented by   **Nandini Singh**
*23-cv-332 / Deputy Chief of Mission, U.S.*                         (See above for address)
*Embassy in Afghanistan*                                           *TERMINATED: 09/15/2025*
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Caroline McGuire**
                                                                   (See above for address)
                                                                   *TERMINATED: 10/17/2024*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **David J. Byerley**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Jaime A Scott**
                                                                   (See above for address)

JA 237

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**NATIONAL VISA CENTER**                    represented by   **Nandini Singh**
*23-cv-02779 / a component of the U.S.*                      (See above for address)
*Department of State*                                       *TERMINATED: 09/15/2025*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**BOSTON IMMIGRATION COURT**               represented by   **Nandini Singh**
*23-cv-02779 / a component of the Executive*                (See above for address)
*Office of Immigration Review*                              *TERMINATED: 09/15/2025*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

JA 238

**Caroline McGuire**
(See above for address)
*TERMINATED: 10/17/2024*
*ATTORNEY TO BE NOTICED*

**David J. Byerley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jaime A Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua Clem**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Larissa Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Gordon Winstead Ingebretsen**
(See above for address)
*TERMINATED: 04/02/2026*
*ATTORNEY TO BE NOTICED*

**Amicus**

**RYAN C. CROCKER**                represented by **Evan A. Young**
                                                  THE SUPREME COURT OF TEXAS
                                                  201 W. 14th Street
                                                  Room 104
                                                  Austin, TX 78701
                                                  512-463-1312
                                                  Fax: 512-463-1365
                                                  Email: eayoung34@gmail.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

**Amicus**

**AFGHAN-AMERICAN FOUNDATION**     represented by **James M. Koukios**
                                                  MORRISON & FOERSTER LLP
                                                  2100 L Street NW
                                                  Suite 900
                                                  Washington, DC 20037
                                                  202-887-1590
                                                  Fax: 202-887-0763
                                                  Email: JKoukios@mofo.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

**Amicus**

**ASSOCIATION OF WARTIME ALLIES**  represented by **Christopher Westley Dempsey**
                                                  DEMPSEY LAW, PLLC

JA 239

1930 San Marco Boulevard, Suite 204
Jacksonville, FL 32207
904-760-6272
Fax: 904-587-0372
Email: chris@cdempseylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**VETERANS FOR AMERICAN IDEALS**        represented by  **Christopher Westley Dempsey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/12/2018 | 1 | COMPLAINT against L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE ( Filing fee $ 400, receipt number 4616092777) with Jury Demand filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Civil Cover Sheet)(ztd) (Entered: 06/13/2018) |
| 06/12/2018 | 2 | MOTION for Leave to File Complaint and Motion for Class Certification Under Pseudonyms by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(ztd) (Entered: 06/13/2018) |
| 06/12/2018 | 3 | MOTION to Certify Class, MOTION Appointment of Class Representatives and Counsel by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(ztd) Modified on 6/15/2018 (znmw). Added MOTION to Appoint Lead Counsel on 6/15/2018 (znmw). (Entered: 06/13/2018) |
| 06/12/2018 | 4 | SEALED MOTION TO CERTIFY CLASS AND APPOINTMENT OF CLASS REPRESENTATIVES AND COUNSEL filed by AFGHAN AND IRAQI ALLIES. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(ztd) (Entered: 06/13/2018) |
| 06/12/2018 | 5 | SEALED MOTION for Leave to File Complaint and Motion for Class Certification Under Pseudonyms filed by AFGHAN AND IRAQI ALLIES. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(ztd) (Entered: 06/13/2018) |
| 06/12/2018 | 7 | ORDER granting 2 Motion for Leave to File Complaint and Motion for Class Certification Under Pseudonyms. Signed by Chief Judge Beryl A. Howell on 6/12/2018. (zrdj) Modified to correct typo on 6/22/2018 (tg). (Entered: 06/14/2018) |

JA 240

USCA Case #25-5279        Document #2171785          Filed: 05/04/2026          Page 245 of 287

| 06/13/2018 | 6 | SUMMONS (7) Issued Electronically as to L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (ztd) (Entered: 06/13/2018) |
|---|---|---|
| 06/15/2018 | 8 | NOTICE of Appearance by Mariko Hirose on behalf of All Plaintiffs (Hirose, Mariko) (Entered: 06/15/2018) |
| 06/18/2018 | 9 | CERTIFICATE OF SERVICE by AFGHAN AND IRAQI ALLIES re 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel, 2 MOTION for Leave to File, 1 Complaint, 6 Summons Issued Electronically, 7 Order on Motion for Leave to File, Order on Sealed Motion *(Affidavit of Service on Michael R. Pompeo, c/o United States Department of State; Carl C. Risch, c/o United States Department of State; United States Department of State; Kirstjen Nielson, c/o United States Department of Homeland Security; L. Francis Cissna, c/o United States Department of Homeland Security; Donald Neufeld, c/o United States Department of Homeland Security; United States Department of Homeland Security; Attorney General of the United States)*. (Leitner, Shannon) (Entered: 06/18/2018) |
| 06/18/2018 | 10 | ENTERED IN ERROR. . . . .CERTIFICATE OF SERVICE by AFGHAN AND IRAQI ALLIES re 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel, 2 MOTION for Leave to File, 1 Complaint, 6 Summons Issued Electronically, 7 Order on Motion for Leave to File, Order on Sealed Motion *(Affidavit of Service on the US Attorney, District of Columbia)*. (Leitner, Shannon) Modified on 6/19/2018 (ztd). (Entered: 06/18/2018) |
| 06/18/2018 | 11 | NOTICE of Appearance by Joseph F. Carilli, Jr on behalf of L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Carilli, Joseph) (Entered: 06/18/2018) |
| 06/18/2018 | 12 | NOTICE of Appearance by William M. Martin on behalf of All Defendants (Martin, William) (Entered: 06/18/2018) |
| 06/19/2018 |  | NOTICE OF ERROR re 10 Certificate of Service; emailed to Shannon.LEITNER@freshfields.com, cc'd 6 associated attorneys -- The PDF file you docketed contained errors: 1. Please refile document, 2. Refile using the events under Initial Pleadings and Service, Service of Process and then select Summons Returned Executed as to U.S. Attorney. (ztd, ) (Entered: 06/19/2018) |
| 06/19/2018 | 13 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/14/2018. Answer due for ALL FEDERAL DEFENDANTS by 8/13/2018. (Leitner, Shannon) (Entered: 06/19/2018) |
| 06/20/2018 | 14 | Consent MOTION for Protective Order by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) (Entered: 06/20/2018) |
| 06/26/2018 | 15 | NOTICE of Appearance by Linda H. Martin on behalf of AFGHAN AND IRAQI ALLIES (Martin, Linda) (Entered: 06/26/2018) |
| 06/26/2018 | 16 | NOTICE of Appearance by Rebecca Curwin on behalf of AFGHAN AND IRAQI ALLIES (Curwin, Rebecca) (Entered: 06/26/2018) |
| 06/26/2018 | 17 | NOTICE of Appearance by Allison Wilson on behalf of AFGHAN AND IRAQI ALLIES (Wilson, Allison) (Entered: 06/26/2018) |

JA 241

USCA Case #25-5279  Document #2171785  Filed: 05/04/2026  Page 246 of 287

| | | |
|---|---|---|
| 06/27/2018 | 18 | Joint MOTION for Extension of Time to File Response/Reply as to 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel *with STATUS REPORT ON SCHEDULING* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Martin, William) (Entered: 06/27/2018) |
| 06/27/2018 | 19 | STATUS REPORT by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE; (See docket entry no. 18 to view.) (ztd) (Entered: 06/28/2018) |
| 07/03/2018 | 20 | Joint STATUS REPORT *on Scheduling* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Martin, William) (Entered: 07/03/2018) |
| 07/09/2018 | 21 | NOTICE of Appearance by David Yury Livshiz on behalf of AFGHAN AND IRAQI ALLIES (Livshiz, David) (Entered: 07/09/2018) |
| 07/11/2018 | 22 | Joint STATUS REPORT by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) (Entered: 07/11/2018) |
| 07/12/2018 | 23 | AMENDED COMPLAINT *(Amended Class Action Complaint)* against L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE filed by AFGHAN AND IRAQI ALLIES. (Leitner, Shannon) (Entered: 07/12/2018) |
| 07/18/2018 | 24 | Joint MOTION for Extension of Time to File Response/Reply as to 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 07/18/2018) |
| 07/18/2018 | 25 | VACATED PURSUANT OT ORDER 55 FILED ON 03/20/19.....ORDER granting 14 Motion for Protective Order. Signed by Judge Tanya S. Chutkan on 7/18/18. (DJS) Modified on 3/26/2019 (tb). (Entered: 07/18/2018) |
| 07/19/2018 | 26 | SEALED DOCUMENT filed by AFGHAN AND IRAQI ALLIES re 7 Order on Motion for Leave to File, Order on Sealed Motion (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Certificate of Service)(Leitner, Shannon) (Entered: 07/19/2018) |
| 07/25/2018 | | MINUTE ORDER: Granting 24 in part and denying in part Joint Motion for Extension of Time to File Response/Reply. Defendants' response to Plaintiffs' Motion for Class Certification 3 is due by July 26, 2018. Plaintiffs' reply in support of Class Certification Motion is due August 9, 2018. Signed by Judge Tanya S. Chutkan on 7/25/18. (DJS) (Entered: 07/25/2018) |
| 07/26/2018 | | Set/Reset Deadlines: Response due by 7/26/2018. Reply due by 8/9/2018. (tb) (Entered: 07/26/2018) |

| 07/26/2018 | 27 | Memorandum in opposition to re 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 07/26/2018) |
|---|---|---|
| 08/08/2018 | 28 | Joint MOTION for Extension of Time to File Response/Reply as to 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) (Entered: 08/08/2018) |
| 08/08/2018 | | MINUTE ORDER: Granting Joint Motion for Extension of Time to File Response/Reply. It is hereby ORDERED that Plaintiffs' reply in support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Counsel 3 is due on Thursday, August 16, 2018. Signed by Judge Tanya S. Chutkan on 8/8/2018. (lctsc3). (Entered: 08/08/2018) |
| 08/09/2018 | | Set/Reset Deadlines: Reply due by 8/16/2018. (tb) (Entered: 08/09/2018) |
| 08/13/2018 | 29 | ERRATA by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE 27 Memorandum in Opposition, filed by L. FRANCIS CISSNA, CARL C. RISCH, KIRSTJEN NIELSEN, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, MICHAEL R. POMPEO, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) (Entered: 08/13/2018) |
| 08/13/2018 | 30 | MOTION to Dismiss by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Carilli, Joseph) (Entered: 08/13/2018) |
| 08/16/2018 | 31 | REPLY to opposition to motion re 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel filed by AFGHAN AND IRAQI ALLIES. (Leitner, Shannon) (Entered: 08/16/2018) |
| 08/16/2018 | 32 | REQUEST for oral argument by AFGHAN AND IRAQI ALLIES. (See Docket Entry 31 to view document). (tth) (Entered: 08/17/2018) |
| 08/17/2018 | | ENTERED IN ERROR.....NOTICE OF ERROR re 31 Reply to opposition to Motion; emailed to Shannon.LEITNER@freshfields.com, cc'd 12 associated attorneys -- The PDF file you docketed contained errors: 1. Two-part docket entry (ztth, ) Modified on 8/17/2018 (jf). (Entered: 08/17/2018) |
| 08/17/2018 | | NOTICE OF CORRECTED DOCKET ENTRY: Docket Entry re Notice of QC, was entered in error and counsel was instructed to disregard docket entry.(jf) (Entered: 08/17/2018) |
| 08/20/2018 | 33 | Joint MOTION for Briefing Schedule by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 08/20/2018) |
| 09/07/2018 | 34 | MOTION for Preliminary Injunction by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Steven Miska, # 3 Exhibit A, # 4 Exhibit B, # 5 Declaration of Stephen Poellot, # 6 Exhibit A, # 7 Exhibit B, # 8 Exhibit C, # 9 |

| | | |
|---|---|---|
| | | Exhibit D, # 10 Exhibit E, # 11 Exhibit F, # 12 Declaration of Allison Wilson, # 13 Exhibit 1, # 14 Exhibit 2, # 15 Exhibit 3, # 16 Exhibit 4, # 17 Exhibit 5, # 18 Exhibit 6, # 19 Exhibit 7, # 20 Exhibit 8, # 21 Exhibit 9, # 22 Exhibit 10, # 23 Exhibit 11)(Leitner, Shannon) (Entered: 09/07/2018) |
| 09/07/2018 | 35 | MOTION to Expedite *Discovery* by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order, # 2 Plaintiffs' First Request for Production of Documents, # 3 Notice of Deposition Department of State, # 4 Notice of Deposition Department of Homeland Security)(Leitner, Shannon) (Entered: 09/07/2018) |
| 09/07/2018 | 36 | Memorandum in opposition to re 30 MOTION to Dismiss filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order, # 2 Declaration of John Doe-Echo, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Declaration John Doe-Alpha, # 9 Exhibit A, # 10 Exhibit B, # 11 Exhibit C, # 12 Exhibit D, # 13 Declaration of Stephen Poellot, # 14 Exhibit A, # 15 Exhibit B, # 16 Exhibit C, # 17 Exhibit D, # 18 Exhibit E, # 19 Exhibit F)(Leitner, Shannon) (Entered: 09/07/2018) |
| 09/13/2018 | | MINUTE ORDER: Granting 33 Joint Motion for Briefing Schedule. Plaintiffs' response to Defendants' motion to dismiss, as well as Plaintiffs' motion for preliminary injunction and motion for expedited discovery due on September 7, 2018. Defendants' reply in support of their motion to dismiss, in part, and response to Plaintiffs' motion for preliminary injunction/motion for expedited discovery due on September 21, 2018. Plaintiffs' reply in support of the motion for preliminary injunction and motion for expedited discovery due October 5, 2018. Signed by Judge Tanya S. Chutkan on 9/13/18. (DJS) (Entered: 09/13/2018) |
| 09/14/2018 | | Set/Reset Deadlines: Response to Dispositive Motion due by 9/7/2018. Reply to Dispositive Motion due by 9/21/2018. Motion due by 9/7/2018. Response due by 9/21/2018. Replies due by 10/5/2018. (tb) (Entered: 09/14/2018) |
| 09/14/2018 | 37 | NOTICE of Appearance by Evan A. Young on behalf of Ryan C. Crocker (Young, Evan) (Entered: 09/14/2018) |
| 09/14/2018 | 38 | Unopposed MOTION for Leave to File *Amicus Brief* by Ryan C. Crocker (Young, Evan) (Entered: 09/14/2018) |
| 09/19/2018 | 39 | Joint MOTION to Modify *Briefing Schedule* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Martin, William) (Entered: 09/19/2018) |
| 09/26/2018 | | ORDER granting 38 Motion for Leave to File Amicus Brief. Signed by Judge Tanya S. Chutkan on 9/26/18. (DJS) (Entered: 09/26/2018) |
| 09/26/2018 | 40 | AMICUS BRIEF by RYAN C. CROCKER. (td) (Entered: 09/27/2018) |
| 09/28/2018 | 41 | RESPONSE re 35 MOTION to Expedite *Discovery* filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 09/28/2018) |
| 09/28/2018 | 42 | RESPONSE re 34 MOTION for Preliminary Injunction filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 09/28/2018) |

JA 244

USCA Case #25-5279    Document #2171785        Filed: 05/04/2026    Page 249 of 287

| | | |
|---|---|---|
| 09/28/2018 | 43 | REPLY to opposition to motion re 30 MOTION to Dismiss filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) (Entered: 09/28/2018) |
| 10/16/2018 | 44 | REPLY to opposition to motion re 34 MOTION for Preliminary Injunction filed by AFGHAN AND IRAQI ALLIES. (Leitner, Shannon) (Entered: 10/16/2018) |
| 10/16/2018 | 45 | REPLY to opposition to motion re 35 MOTION to Expedite *Discovery* filed by AFGHAN AND IRAQI ALLIES. (Leitner, Shannon) (Entered: 10/16/2018) |
| 10/19/2018 | | MINUTE ORDER: The parties' September 19, 2018 joint motion 39 to modify the briefing schedules of Defendants' motion to dismiss, Plaintiffs' motion for a preliminary injunction, and Plaintiffs' motion for expedited discovery is GRANTED nunc pro tunc. Signed by Judge Tanya S. Chutkan on 10/19/18. (lctsc1) (Entered: 10/19/2018) |
| 12/13/2018 | 46 | MOTION for Hearing re 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel, 30 MOTION to Dismiss , 34 MOTION for Preliminary Injunction by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon). Added MOTION for Ruling on 12/18/2018 (znmw). (Entered: 12/13/2018) |
| 01/30/2019 | 47 | MEMORANDUM OPINION regarding Defendants' Motion 30 to Dismiss. Signed by Judge Tanya S. Chutkan on 1/30/2019. (lctsc1) (Entered: 01/30/2019) |
| 01/30/2019 | 48 | ORDER denying Defendants' Motion 30 to Dismiss. Signed by Judge Tanya S. Chutkan on 1/30/2019. (lctsc1) (Entered: 01/30/2019) |
| 01/30/2019 | 49 | ORDER granting Plaintiffs' motion 35 to expedite discovery and granting, in part, and denying, in part, Plaintiffs' motion 46 to schedule oral argument and for a ruling on the pending expedited discovery motion. Expedited discovery shall be completed on or before March 18, 2019. Plaintiffs' supplemental brief shall be filed on or before April 1, 2019. Defendants' response shall be filed on or before April 15, 2019. Oral argument on Plaintiffs' motion 34 for a preliminary injunction shall take place on May 3, 2019 at 10:00 a.m. Signed by Judge Tanya S. Chutkan on 1/30/2019. (lctsc1) (Entered: 01/30/2019) |
| 01/30/2019 | | Set/Reset Deadlines/Hearings: Expedited Discovery due by 3/18/2019. Plaintiffs' Supplemental Brief due by 4/1/2019. Responses due by 4/15/2019 Motion Hearing re 34 set for 5/3/2019 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. (dot) (Entered: 02/06/2019) |
| 02/13/2019 | 50 | ANSWER to 23 Amended Complaint, by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE.(Carilli, Joseph) (Entered: 02/13/2019) |
| 03/13/2019 | | Set/Reset Hearings: Telephone Conference set for 3/14/2019 at 11:30 AM in Courtroom 9 before Judge Tanya S. Chutkan. (tb) (Entered: 03/13/2019) |
| 03/14/2019 | | Minute Entry: Telephone Conference held on 3/14/2019 before Judge Tanya S. Chutkan: Order forthcoming. (Court Reporter Bryan Wayne) (tb) (Entered: 03/15/2019) |
| 03/18/2019 | 51 | Consent MOTION for Protective Order by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order, # 2 Text of Proposed Order)(Carilli, Joseph) (Entered: 03/18/2019) |

JA 245

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 250 of 287

| 03/19/2019 | 52 | MOTION to Compel *Production of Documents* by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Leitner, Shannon) (Entered: 03/19/2019) |
| 03/20/2019 | 53 | NOTICE of Change of Address by Deepa Alagesan (Alagesan, Deepa) (Entered: 03/20/2019) |
| 03/20/2019 | 54 | NOTICE of Change of Address by Mariko Hirose (Hirose, Mariko) (Entered: 03/20/2019) |
| 03/20/2019 | 55 | ORDER granting Consent Motion 51 for Stipulated Amended Protective Order and vacating current stipulated protective order 25 . Signed by Judge Tanya S. Chutkan on 3/20/2019. (lctsc1) (Entered: 03/20/2019) |
| 03/22/2019 | 56 | TRANSCRIPT OF 3/14/19 TELEPHONE CONFERENCE, before Judge Tanya S. Chutkan, held on March 14, 2019. Page Numbers: 1-22. Date of Issuance: 3/22/19. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form at https://www.dcd.uscourts.gov/court-reporting-and-transcript-information. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (PDF, condensed, CD or ASCII) may be purchased from the court reporter.**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 4/12/2019. Redacted Transcript Deadline set for 4/22/2019. Release of Transcript Restriction set for 6/20/2019.(Wayne, Bryan) (Entered: 03/22/2019) |
| 03/22/2019 | 57 | RESPONSE re 52 MOTION to Compel *Production of Documents* filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Carilli, Joseph) (Entered: 03/22/2019) |
| 03/25/2019 | 58 | WITHDRAWN PURSUANT TO DOCKET ENTRY 61 . . . . .Joint MOTION to Modify Discovery *and to Modify Briefing Schedule* by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) Modified text and event on 3/26/2019 (ztd). Modified on 4/10/2019 (ztd). (Entered: 03/25/2019) |
| 03/25/2019 | 59 | MOTION for Leave to File *Supplement to Opposition to Motion for Class Certification* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Supplement, # 2 Text of Proposed Order)(Carilli, Joseph) (Entered: 03/25/2019) |
| 03/26/2019 | 60 | REPLY to opposition to motion re 52 MOTION to Compel *Production of Documents* filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Rebecca Curwin)(Leitner, Shannon) (Entered: 03/26/2019) |
| 04/09/2019 | 61 | Joint MOTION Withdrawing 58 by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) Modified event and text on 4/10/2019 (ztd). Added MOTION to Modify on 4/10/2019 (ztd). (Entered: 04/09/2019) |
| 04/11/2019 | | MINUTE ORDER: The court has considered the arguments raised in Plaintiffs' motion 52 to compel production of documents, Defendants' response 57 , Plaintiffs' reply 60 , and in the March 14, 2019 teleconference. Under 8 U.S.C. § 1202(f), with some exceptions, |

JA 246

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 251 of 287

records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States." The court agrees with Defendants that the scope of the statute "is not limited to information supplied by the visa applicant, it includes information revealing the thought-processes of those who rule on the application." *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 744 (D.C. Cir. 1983). However, the court disagrees with Defendants' assertion that the dates decisions were made "are inextricably tied to the thought-processes and decisions required to determine whether an alien meets the statutory requirements for an SIV." (Defs.' Resp. at 4.) The dates will show only the pace at which an application is processed and where an application is in the process. As in a privilege log, the dates at issue here will shed no light on a reviewer's thought-process or decision-making. In addition, the dates will be associated only with an anonymized, unique identifier; they will not be associated with an applicant's name. Moreover, dates are not included in the definition of "record" provided in Defendant State's Foreign Affairs Manual. *See* 9 FAM 603.12(b). Accordingly, Plaintiffs' motion [52](#) to compel production of documents is GRANTED. No certificate of appealability will issue because Defendants' cursory request does not meet their "burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Virtual Def. & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 9, 22 (D.D.C. 2001). Signed by Judge Tanya S. Chutkan on 4/11/2019. (lctsc1) (Entered: 04/11/2019)

| 04/11/2019 | | MINUTE ORDER: The parties' joint motion [61](#) to withdraw the pending motion [58](#) and modify the discovery/briefing schedule, and Defendants' motion [59](#) for leave to file a supplement to their opposition to Plaintiffs' motion for class certification, to which Plaintiffs have failed to articulate the bases of their objection, are GRANTED. The parties are directed to adhere to the following deadlines: (1) Plaintiffs' response to Defendants' supplement regarding its opposition to Plaintiffs' motion for class certification shall be filed on or before April 15, 2019; (2) Plaintiffs shall depose Defendants' corporate representatives on or before April 17, 2019; (3) Defendant Department of State shall produce the remaining documents requested in Plaintiffs' first, second, and third Requests for Production on or before April 18, 2019; and (4) Plaintiffs' supplement to their preliminary injunction motion shall be filed on or before May 2, 2019, Defendants' response shall be filed on or before May 16, 2019, and Plaintiffs' Reply shall be filed on or before May 23, 2019. Further, the preliminary injunction hearing, previously scheduled for May 3, 2019, is adjourned to June 20, 2019 at 10:00 a.m. Signed by Judge Tanya S. Chutkan on 4/11/2019. (lctsc1) (Entered: 04/11/2019) |
| 04/12/2019 | | Set/Reset Deadlines/Hearings: Response due by 4/15/2019. Defendant's supplemental response due by 5/16/2019. Reply due by 5/23/2019. Preliminary Injunction Hearing set for 6/20/2019 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. (tb) (Entered: 04/12/2019) |
| 04/15/2019 | [62](#) | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AFGHAN AND IRAQI ALLIES (This document is SEALED and only available to authorized persons.) (Attachments: # [1](#) Exhibit A, # [2](#) Text of Proposed Order)(Leitner, Shannon) (Entered: 04/15/2019) |

JA 247

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 252 of 287

| | | |
|---|---|---|
| 04/19/2019 | | MINUTE ORDER: Upon consideration of Plaintiffs' unopposed motion for leave to file documents under seal (the "Motion"), it is hereby: ORDERED that the Motion is GRANTED; and it is further ORDERED that the Clerk shall file under seal the documents attached to the Motion. (This document is SEALED and only available to authorized persons.)Signed by Judge Tanya S. Chutkan on 04/18/19.(tb) Modified on 4/24/2019 (tb). (Entered: 04/19/2019) |
| 04/19/2019 | 63 | SEALED DOCUMENT filed by AFGHAN AND IRAQI ALLIES. re 3 MOTION to Certify ClassMOTION to Appoint Lead Plaintiff MOTION to Appoint Lead Counsel filed by AFGHAN AND IRAQI ALLIES. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 04/23/2019) |
| 04/30/2019 | 64 | Consent MOTION to Modify *the current briefing schedule* by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) (Entered: 04/30/2019) |
| 05/01/2019 | | MINUTE ORDER: Plaintiffs' consent motion 64 to modify the briefing schedule is GRANTED. Plaintiffs' supplement to their preliminary injunction motion shall be filed on or before May 10, 2019; Defendants' response shall be filed on or before May 24, 2019; and Plaintiffs' Reply shall be filed on or before May 31, 2019. Signed by Judge Tanya S. Chutkan on 5/1/2019. (lctsc1) (Entered: 05/01/2019) |
| 05/02/2019 | | Set/Reset Deadlines: Response due by 5/24/2019 Reply due by 5/31/2019. Supplemental Memorandum due by 5/10/2019. (tb) (Entered: 05/02/2019) |
| 05/09/2019 | 65 | Joint MOTION to Modify *Briefing Schedule* by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) (Entered: 05/09/2019) |
| 05/10/2019 | | MINUTE ORDER: The parties' May 9, 2019 joint motion 65 to modify the briefing schedule is GRANTED. Plaintiffs' supplement to their preliminary injunction motion shall be filed on or before June 11, 2019; Defendants' response shall be filed on or before June 25, 2019; and Plaintiffs' Reply shall be filed on or before July 2, 2019. Further, the preliminary injunction hearing, previously scheduled for June 20, 2019, is adjourned to July 26, 2019 at 10:00 a.m. Signed by Judge Tanya S. Chutkan on 5/10/2019. (lctsc1) (Entered: 05/10/2019) |
| 05/13/2019 | | Set/Reset Deadlines/Hearings: Response due by 6/25/2019. Reply due by 7/2/2019. Supplemental Memorandum due by 6/11/2019. Preliminary Injunction Hearing reset for 7/26/2019 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. (tb) (Entered: 05/13/2019) |
| 06/03/2019 | 66 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Olivia P. Greene, :Firm- Freshfields Bruckhaus Deringer US LLP, :Address- 601 Lexington Avenue, 31st Floor, New York, NY 10022. Phone No. - 212-277-4000. Fax No. - 212-277-4001 Filing fee $ 100, receipt number 0090-6161922. Fee Status: Fee Paid. by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Leitner, Shannon) (Entered: 06/03/2019) |
| 06/05/2019 | | MINUTE ORDER: Granting 66 Motion for Leave to Appear Pro Hac Vice. Olivia P. Greene is hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs. Signed by Judge Tanya S. Chutkan on 6/5/19. (DJS) (Entered: 06/05/2019) |
| 06/11/2019 | 67 | ENTERED IN ERROR. . . . .MEMORANDUM by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) Modified on 6/13/2019 (ztd). (Entered: 06/11/2019) |

JA 248

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 253 of 287

| 06/11/2019 | 68 | SUPPLEMENTAL MEMORANDUM to re 34 MOTION for Preliminary Injunction filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Rebecca Curwin, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Declaration of Laura Onken, # 13 Exhibit 1)(Leitner, Shannon) (Entered: 06/12/2019) |
| --- | --- | --- |
| 06/12/2019 | 69 | CERTIFICATE OF SERVICE by AFGHAN AND IRAQI ALLIES re 68 Supplemental Memorandum, . (Leitner, Shannon) (Entered: 06/12/2019) |
| 06/13/2019 | | NOTICE OF ERROR re 67 Memorandum; emailed to joseph.f.carilli2@usdoj.gov, cc'd 21 associated attorneys -- The PDF file you docketed contained errors: 1. Please refile document, 2. Please see LCvR 5.1(a) re:Correspondence and (d) re: Form of Documents. (ztd, ) (Entered: 06/13/2019) |
| 06/25/2019 | 70 | RESPONSE re 68 SUPPLEMENTAL MEMORANDUM to re 34 MOTION for Preliminary Injunction filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Carilli, Joseph); Modified event, text, and link on 6/26/2019 (tth). (Entered: 06/25/2019) |
| 07/02/2019 | 71 | REPLY re 34 MOTION for Preliminary Injunction *(Reply to Defendants' Response in Opposition to Plaintiffs' Supplement)* filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Deepa Alagesan, # 2 Exhibit A)(Alagesan, Deepa) (Entered: 07/02/2019) |
| 07/26/2019 | | Minute Entry: Motion Hearing held on 7/26/2019 before Judge Tanya S. Chutkan re 34 MOTION for Preliminary Injunction filed by AFGHAN AND IRAQI ALLIES; motion heard and taken under advisement. (Court Reporter Bryan Wayne) (tb) (Entered: 07/26/2019) |
| 07/29/2019 | 72 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Tanya S. Chutkan held on July 26, 2019. Page Numbers: 1-56. Date of Issuance: 7/29/19. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/19/2019. Redacted Transcript Deadline set for 8/29/2019. Release of Transcript Restriction set for 10/27/2019.(Wayne, Bryan) (Entered: 07/29/2019) |
| 08/15/2019 | 73 | NOTICE *of Supplemental Authority* by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Leitner, Shannon) (Entered: 08/15/2019) |
| 08/21/2019 | 74 | RESPONSE re 73 Notice (Other) filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES |

JA 249

USCA Case #25-5379          Document #2171785          Filed: 05/04/2026          Page 254 of 387

| | | DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) (Entered: 08/21/2019) |
|---|---|---|
| 09/20/2019 | 75 | MEMORANDUM AND OPINION regarding Plaintiffs' motion 34 for preliminary injunction. Signed by Judge Tanya S. Chutkan on 9/20/2019. (lctsc1) (Entered: 09/20/2019) |
| 09/20/2019 | 76 | ORDER converting Plaintiffs' motion 34 for preliminary injunction to a motion for summary judgment and GRANTING, in part, and DENYING, in part, Plaintiffs' motion for summary judgment on Counts One and Two of the Amended Complaint. See Order for additional details. Signed by Judge Tanya S. Chutkan on 9/20/2019. (lctsc1) (Entered: 09/20/2019) |
| 09/20/2019 | | MINUTE ORDER: On or before September 30, 2019, the parties shall file a joint status report, which shall include, but not necessarily be limited to, a proposed schedule for any supplements to the class certification briefing. Signed by Judge Tanya S. Chutkan on 9/20/2019. (lctsc1) (Entered: 09/20/2019) |
| 09/23/2019 | | Set/Reset Deadlines: Joint Status Report due by 9/30/2019. (tb) (Entered: 09/23/2019) |
| 09/30/2019 | 77 | Joint STATUS REPORT by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) (Entered: 09/30/2019) |
| 10/03/2019 | | MINUTE ORDER: Having considered the parties' joint status report 77 , it is hereby ordered that Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Counsel 3 is due on or before October 11, 2019. Plaintiffs' Response shall be filed on or before October 22, 2019. Signed by Judge Tanya S. Chutkan on 10/3/2019. (lctsc1) (Entered: 10/03/2019) |
| 10/03/2019 | | Set/Reset Deadlines: Response due by 10/22/2019. Supplemental Memorandum due by 10/11/2019. (tb) (Entered: 10/03/2019) |
| 10/11/2019 | 78 | SUPPLEMENTAL MEMORANDUM to re 27 Memorandum in Opposition, *re Motion for Class Certification* filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Declaration Exhibit A -- Evangeline Howard)(Martin, William) (Entered: 10/11/2019) |
| 10/18/2019 | 79 | MOTION for Reconsideration re 76 Order on Motion for Preliminary Injunction, by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Carilli, Joseph) (Entered: 10/18/2019) |
| 10/22/2019 | 80 | RESPONSE re 78 Supplemental Memorandum, filed by AFGHAN AND IRAQI ALLIES. (Leitner, Shannon) (Entered: 10/22/2019) |
| 10/25/2019 | 81 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AFGHAN AND IRAQI ALLIES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order Granting Motion to File Under Seal, # 2 Exhibit Motion to Unseal)(Alagesan, Deepa) (Entered: 10/25/2019) |
| 11/01/2019 | 82 | Memorandum in opposition to re 79 MOTION for Reconsideration re 76 Order on Motion for Preliminary Injunction, filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Leitner, Shannon) (Entered: 11/01/2019) |
| 11/08/2019 | 83 | REPLY to opposition to motion re 79 MOTION for Reconsideration re 76 Order on Motion for Preliminary Injunction, filed by L. FRANCIS CISSNA, DONALD |

JA 250

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 255 of 287

| | | |
|---|---|---|
| | | NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) (Entered: 11/08/2019) |
| 11/08/2019 | 84 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Exhibit)(Carilli, Joseph) (Entered: 11/08/2019) |
| 11/15/2019 | 85 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AFGHAN AND IRAQI ALLIES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A (Reply in Support of Plaintiffs' Motion to Unseal))(Alagesan, Deepa) (Entered: 11/15/2019) |
| 02/05/2020 | 86 | MEMORANDUM AND OPINION regarding Defendants' 79 Motion for Reconsideration. Signed by Judge Tanya S. Chutkan on 2/05/2020. (lcdl) (Entered: 02/05/2020) |
| 02/05/2020 | 87 | ORDER denying Defendants' 79 Motion for Reconsideration. See Order for details. Signed by Judge Tanya S. Chutkan on 2/5/2020. (lcdl) (Entered: 02/05/2020) |
| 02/05/2020 | 88 | MEMORANDUM AND OPINION regarding Plaintiffs' 3 Motion to Certify Class. Signed by Judge Tanya S. Chutkan on 2/5/2020. (lcdl) (Entered: 02/05/2020) |
| 02/05/2020 | 89 | ORDER granting Plaintiffs' 3 Motion to Certify Class. This case is hereby certified to proceed as a class action. See Order for additional details. Signed by Judge Tanya S. Chutkan on 2/5/2020. (lcdl) (Entered: 02/05/2020) |
| 02/07/2020 | | MINUTE ORDER: Pursuant to this court's earlier order (see ECF No. 75 at 19), Defendants shall submit a plan for promptly processing and adjudicating the applications of current class members no later than March 5, 2020. Plaintiffs shall file any objections to the plan within twenty-one days after submission of the plan. Signed by Judge Tanya S. Chutkan on 2/7/2020. (lcdl) (Entered: 02/07/2020) |
| 02/10/2020 | | Set/Reset Deadlines: The plan for promptly processing and adjudicating the applications of current class members due by 3/5/2020. (tb) (Entered: 02/10/2020) |
| 02/20/2020 | 90 | NOTICE OF WITHDRAWAL OF APPEARANCE as to AFGHAN AND IRAQI ALLIES. Attorney Shannon M. Leitner terminated. (Leitner, Shannon) (Entered: 02/20/2020) |
| 02/24/2020 | 91 | MOTION to Stay re 76 Order on Motion for Preliminary Injunction, Set/Reset Deadlines by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 02/24/2020) |
| 02/25/2020 | 92 | NOTICE of Appearance- Pro Bono by Melissa S. Keaney on behalf of AFGHAN AND IRAQI ALLIES (Keaney, Melissa) (Entered: 02/25/2020) |
| 02/26/2020 | 93 | NOTICE OF WITHDRAWAL OF APPEARANCE as to AFGHAN AND IRAQI ALLIES. Attorney Allison Wilson terminated. (Wilson, Allison) (Entered: 02/26/2020) |
| 03/02/2020 | 94 | Memorandum in opposition to re 91 MOTION to Stay re 76 Order on Motion for Preliminary Injunction, Set/Reset Deadlines filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Alagesan, Deepa) (Entered: 03/02/2020) |

JA 251

USCA Case #25-5279        Document #2171785        Filed: 05/04/2026        Page 256 of 287

| | | |
|---|---|---|
| 03/03/2020 | 95 | REPLY to opposition to motion re 91 MOTION to Stay re 76 Order on Motion for Preliminary Injunction, Set/Reset Deadlines filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) (Entered: 03/03/2020) |
| 03/04/2020 | | MINUTE ORDER: Upon consideration of Defendants' 91 Motion to Stay, this court finds that the balance of judicial economy and prejudice to the parties does not weigh in favor of a stay. Therefore, Defendants' 91 Motion to Stay is hereby DENIED.. Signed by Judge Tanya S. Chutkan on 03/04/2020. (lcdl) (Entered: 03/04/2020) |
| 03/05/2020 | 96 | NOTICE *of Lodging Proposed Adjudication Plan* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit A Proposed Adjudication Plan) (Carilli, Joseph) (Entered: 03/05/2020) |
| 03/19/2020 | 97 | MOTION for Contempt or, in the Alternative, to Enforce the Court's September 20, 2019 and February 5, 2020 Orders by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Memorandum in Support, # 2 Declaration of Deepa Alagesan, # 3 Text of Proposed Order)(Alagesan, Deepa). Added MOTION to Compel on 3/20/2020 (znmw). (Entered: 03/19/2020) |
| 03/23/2020 | 98 | MOTION De-Certify the Class by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Carilli, Joseph) (Entered: 03/23/2020) |
| 03/26/2020 | 99 | RESPONSE re 96 Notice (Other), *Plaintiffs' Objections to Defendants' Proposed Adjudication Plan* filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Deepa Alagesan, # 2 Exhibit A)(Alagesan, Deepa) (Entered: 03/26/2020) |
| 04/02/2020 | 100 | Memorandum in opposition to re 97 MOTION for Contempt or, in the Alternative, to Enforce the Court's September 20, 2019 and February 5, 2020 Orders MOTION to Compel filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Exhibit A)(Carilli, Joseph) (Entered: 04/02/2020) |
| 04/06/2020 | 101 | MOTION to Dismiss for Lack of Jurisdiction by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN NIELSEN, MICHAEL RICHARD POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Carilli, Joseph) (Entered: 04/06/2020) |
| 04/06/2020 | 102 | Memorandum in opposition to re 98 MOTION De-Certify the Class filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Curwin, Rebecca) (Entered: 04/06/2020) |
| 04/09/2020 | 103 | REPLY to opposition to motion re 97 MOTION for Contempt or, in the Alternative, to Enforce the Court's September 20, 2019 and February 5, 2020 Orders MOTION to Compel filed by AFGHAN AND IRAQI ALLIES. (Keaney, Melissa) (Entered: 04/09/2020) |

JA 252

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 257 of 287

| 04/09/2020 | 104 | STIPULATION re 101 MOTION to Dismiss for Lack of Jurisdiction *(regarding briefing schedule)* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Curwin, Rebecca) Modified on 4/10/2020 (ztd). (Entered: 04/09/2020) |
| --- | --- | --- |
| 04/13/2020 | | MINUTE ORDER: Having considered the 104 Stipulation to Modify Briefing Schedule, it is hereby ORDERED that Plaintiffs shall file their opposition to the Motion to Dismiss 101 no later than April 27, 2020 and that Defendants shall file their reply in support of the Motion to Dismiss no later than May 4, 2020. Signed by Judge Tanya S. Chutkan on 4/13/2020. (lcdl) (Entered: 04/13/2020) |
| 04/13/2020 | | Set/Reset Deadlines: Response to dispositive motion due by 4/27/2020. Reply to dispositive motion due by 5/4/2020. (tb) (Entered: 04/13/2020) |
| 04/13/2020 | 105 | REPLY to opposition to motion re 98 MOTION De-Certify the Class filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Carilli, Joseph) (Entered: 04/13/2020) |
| 04/15/2020 | 106 | ORDER regarding the proposed adjudication plan 96 , Plaintiffs' response 99 , and Plaintiffs' motion for contempt 97 . It is hereby ORDERED that the parties shall meet and confer no later than April 29, 2020 and shall submit a JOINT proposed adjudication plan consistent with this court's opinions and this order (see order for details) no later than May 13, 2020. Signed by Judge Tanya S. Chutkan on 4/15/2020. (lcdl) (Entered: 04/15/2020) |
| 04/15/2020 | | Set/Reset Deadlines: Joint Proposed Adjudication Plan due by 4/29/2020. (tb) (Entered: 04/15/2020) |
| 04/27/2020 | 107 | Memorandum in opposition to re 101 MOTION to Dismiss for Lack of Jurisdiction filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Deepa Alagesan, # 2 Exhibit A, # 3 Text of Proposed Order)(Curwin, Rebecca) (Entered: 04/27/2020) |
| 05/01/2020 | 108 | Joint MOTION for Extension of Time to File Response/Reply as to 101 MOTION to Dismiss for Lack of Jurisdiction by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 05/01/2020) |
| 05/02/2020 | | MINUTE ORDER: Having considered the 108 Joint Motion for Extension, it is hereby ORDERED that Defendants shall file their reply in support of the Motion to Dismiss no later than May 8, 2020. Signed by Judge Tanya S. Chutkan on 5/2/2020. (lcdl) (Entered: 05/02/2020) |
| 05/02/2020 | | Set/Reset Deadlines: Defendants' Reply due by 5/8/2020. (zjd) (Entered: 05/04/2020) |
| 05/08/2020 | 109 | REPLY to opposition to motion re 101 MOTION to Dismiss for Lack of Jurisdiction filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Carilli, Joseph) (Entered: 05/08/2020) |
| 05/13/2020 | 110 | STIPULATION re 106 Order on Motion for Miscellaneous Relief,, Order on Motion to Compel, *(requesting extension)* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Alagesan, Deepa) (Entered: 05/13/2020) |

JA 253

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 258 of 287

| | | |
|---|---|---|
| 05/14/2020 | | MINUTE ORDER: Having considered the parties' Stipulation 110 , it is hereby ordered that the Parties shall submit a complete joint proposed adjudication plan that complies with the Court's April 15, 2020 Order 106 no later than May 21, 2020. Going forward the parties are hereby reminded that they must file a motion, rather than a Stipulation, if they seek to change court deadlines. Signed by Judge Tanya S. Chutkan on 5/14/2020. (DJS) (Entered: 05/14/2020) |
| 05/15/2020 | | Set/Reset Deadlines: Proposed Adjudication Plan due by 5/21/2020. (tb) (Entered: 05/15/2020) |
| 05/21/2020 | 111 | NOTICE *of Lodging Joint Proposed Adjudication Plan* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit A Joint Proposed Adjudication Plan)(Carilli, Joseph) (Entered: 05/21/2020) |
| 05/21/2020 | 112 | Joint MOTION for Extension of Time to *Submit Periodic Progress Reports* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 05/21/2020) |
| 06/14/2020 | 113 | ORDER The court hereby approves and adopts the parties' joint proposed adjudication plan. See order for details. Signed by Judge Tanya S. Chutkan on 6/14/2020. (Attachments: # 1 Exhibit Adopted Adjudication Plan) (lcdl) (Entered: 06/14/2020) |
| 06/14/2020 | | MINUTE ORDER granting 112 Joint Motion for Extension of Time to Submit Periodic Progress Reports. It is FURTHER ORDERED that the Defendant shall prepare a progress report by September 15, 2020 and every 90 days thereafter. Defendant shall file a copy of the report for the preceding period by the 25th of the month in which the report was prepared. Signed by Judge Tanya S. Chutkan on 6/14/2020. (lcdl) (Entered: 06/14/2020) |
| 06/15/2020 | | Set/Reset Deadlines: Progress Report due by 9/15/2020. (tb) (Entered: 06/15/2020) |
| 06/23/2020 | 114 | ORDER denying 98 Motion to De-Certify the Class. See order for details. Signed by Judge Tanya S. Chutkan on 6/23/2020. (lcdl) (Entered: 06/23/2020) |
| 08/03/2020 | 115 | NOTICE OF WITHDRAWAL OF APPEARANCE as to AFGHAN AND IRAQI ALLIES. Attorney Rebecca Curwin terminated. (Curwin, Rebecca) (Entered: 08/03/2020) |
| 08/12/2020 | 116 | NOTICE of Appearance by Justin C. Simeone on behalf of AFGHAN AND IRAQI ALLIES (Simeone, Justin) (Entered: 08/12/2020) |
| 08/12/2020 | 117 | NOTICE OF INTERLOCUTORY APPEAL as to 106 Order on Motion for Miscellaneous Relief,, Order on Motion to Compel, 89 Order, 76 Order on Motion for Preliminary Injunction, 87 Order on Motion for Reconsideration, 113 Order, 114 Order on Motion for Miscellaneous Relief by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. Fee Status: No Fee Paid. Parties have been notified. (Carilli, Joseph) (Entered: 08/12/2020) |
| 08/13/2020 | 118 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 117 Notice of Interlocutory Appeal,,. (ztd) (Entered: 08/13/2020) |

JA 254

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 259 of 287

| | | |
|---|---|---|
| 08/19/2020 | | USCA Case Number 20-5251 for 117 Notice of Interlocutory Appeal,, filed by L. FRANCIS CISSNA, MICHAEL R. POMPEO, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, UNITED STATES DEPARTMENT OF STATE. (zrdj) (Entered: 08/19/2020) |
| 09/02/2020 | 119 | Unopposed MOTION to Modify *the Preparation and Submission Dates* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 09/02/2020) |
| 09/03/2020 | | MINUTE ORDER: Granting Consent 119 Motion to Modify Deadlines. Defendants shall prepare a progress report by October 1, 2020 and the first day of each quarter of the fiscal year thereafter. Within 10 days from date of preparation, Defendants shall file a progress report for the preceding reporting period. Signed by Judge Tanya S. Chutkan on 9/3/2020. (DJS) (Entered: 09/03/2020) |
| 09/04/2020 | | Set/Reset Deadlines: Progress Report due by 10/1/2020. (jth) (Entered: 09/04/2020) |
| 10/13/2020 | 120 | NOTICE *of Lodging Progress Report* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit Progress Report)(Carilli, Joseph) (Entered: 10/13/2020) |
| 11/17/2020 | 121 | NOTICE *of Lodging (Corrected) Progress Report* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit, # 2 Exhibit)(Carilli, Joseph) (Entered: 11/17/2020) |
| 11/30/2020 | | MINUTE ORDER: It is hereby ORDERED that the Plaintiffs' Motion to File Under Seal (ECF No. 81 ) is GRANTED. The Clerk of the Court shall file under seal the documents attached to the Sealing Motion at ECF No. 81-2. SO ORDERED by Judge Tanya S. Chutkan on 11/30/2020.(tb) Modified on 12/1/2020 (tb). (Entered: 11/30/2020) |
| 11/30/2020 | | MINUTE ORDER: It is hereby ORDERED that the Defendants' Motion to File Under Seal (ECF No. 84 ) is GRANTED. The Clerk of the Court shall file under seal the documents attached to the Defendants' Motion at ECF No. 84-2. SO ORDERED by Judge Tanya S. Chutkan on 11/30/2020.(tb) Modified on 12/1/2020 (tb). (Entered: 11/30/2020) |
| 11/30/2020 | | MINUTE ORDER: It is hereby ORDERED that the Plaintiffs' Motion to File Under Seal [ECF No. (85)] is GRANTED. The Clerk of the Court shall file under seal the documents attached to the Plaintiffs' Motion at ECF No. 85-2. SO ORDERED by Judge Tanya S. Chutkan on 11/30/2020.(tb) Modified on 12/1/2020 (tb). (Entered: 11/30/2020) |
| 11/30/2020 | 122 | SEALED MOTION filed by AFGHAN AND IRAQI ALLIES. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 12/02/2020) |
| 11/30/2020 | 123 | SEALED OPPOSITION filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY re 122 SEALED MOTION filed by AFGHAN AND IRAQI ALLIES. (This document is SEALED and only available to authorized persons.) (ztd) (Entered: 12/02/2020) |
| 11/30/2020 | 124 | SEALED REPLY TO OPPOSITION filed by AFGHAN AND IRAQI ALLIES re 122 SEALED MOTION filed by AFGHAN AND IRAQI ALLIES. (This document is |

JA 255

USCA Case #25-5279        Document #2171785        Filed: 05/04/2026        Page 260 of 287

| | | SEALED and only available to authorized persons.) (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 12/02/2020) |
|---|---|---|
| 12/04/2020 | 125 | NOTICE of Appearance by Ruth Ann Mueller on behalf of All Defendants (Mueller, Ruth) (Entered: 12/04/2020) |
| 12/08/2020 | 126 | NOTICE of Appearance by Steven A. Platt on behalf of All Defendants (Platt, Steven) (Entered: 12/08/2020) |
| 12/11/2020 | 127 | MOTION for Entry of Final Judgment *and, in the alternative, Motion for Entry of Partial Final Judgment under Rule 54(b)* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Mueller, Ruth) (Entered: 12/11/2020) |
| 12/14/2020 | 128 | Consent MOTION for Briefing Schedule by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Text of Proposed Order)(Carilli, Joseph) (Entered: 12/14/2020) |
| 12/22/2020 | | MINUTE ORDER: Granting Joint 128 Motion for Briefing Schedule. By 1/8/21 Plaintiffs shall file their Opposition to Defendants' Rule 58(d) Motion 127 for Entry of Final Judgment. Defendants' Reply is due 1/15/21. Signed by Judge Tanya S. Chutkan on 12/22/20. (DJS) (Entered: 12/22/2020) |
| 12/23/2020 | | Set/Reset Deadlines: Response due by 1/8/2021. Reply due by 1/15/2021. (tb) (Entered: 12/23/2020) |
| 01/04/2021 | 129 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Alistair D. Blacklock, Filing fee $ 100, receipt number ADCDC-8034496. Fee Status: Fee Paid. by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Declaration of Alistair D. Blacklock, # 2 Text of Proposed Order)(Simeone, Justin) (Entered: 01/04/2021) |
| 01/04/2021 | 130 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Wang Jae Rhee, Filing fee $ 100, receipt number ADCDC-8034547. Fee Status: Fee Paid. by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Declaration of Wang Jae Rhee, # 2 Text of Proposed Order)(Simeone, Justin) (Entered: 01/04/2021) |
| 01/06/2021 | 131 | NOTICE of Appearance by Geroline A Castillo on behalf of AFGHAN AND IRAQI ALLIES (Castillo, Geroline) (Entered: 01/06/2021) |
| 01/08/2021 | 132 | Memorandum in opposition to re 127 MOTION for Entry of Final Judgment *and, in the alternative, Motion for Entry of Partial Final Judgment under Rule 54(b)* filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Simeone, Justin) (Entered: 01/08/2021) |
| 01/11/2021 | | MINUTE ORDER: Granting 129 130 Motions for Leave to Appear Pro Hac Vice. Alistair D. Blacklock and Wang Jae Rhee are hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**;. Signed by Judge Tanya S. Chutkan on 1/11/21. (DJS) (Entered: 01/11/2021) |

USCA Case #25-5279     Document #2171785          Filed: 05/04/2026       Page 261 of 287

| 01/11/2021 | 133 | NOTICE *of Lodging Progress Report* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit Progress Report)(Carilli, Joseph) (Entered: 01/11/2021) |
|---|---|---|
| 01/15/2021 | 134 | REPLY to opposition to motion re 127 MOTION for Entry of Final Judgment *and, in the alternative, Motion for Entry of Partial Final Judgment under Rule 54(b)* filed by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Mueller, Ruth) (Entered: 01/15/2021) |
| 02/02/2021 | | MINUTE ORDER: In light of recent Executive and Administrative actions, the parties shall meet, confer and file a joint status report by 3/5/21 advising the court: 1) whether the current dispute has been mooted or the parties anticipate that it will be mooted; 2) whether the parties wish to stay this action for any reason, including the parties' negotiations over resolving this dispute; or 3) whether the parties agree that this litigation should continue as anticipated pursuant to the federal rules, local rules or a scheduling order. The report shall be accompanied by a proposed order as appropriate. Signed by Judge Tanya S. Chutkan on 2/2/21. (DJS) (Entered: 02/02/2021) |
| 02/02/2021 | | Set/Reset Deadlines: Joint Status Report due by 3/5/2021. (tb) (Entered: 02/02/2021) |
| 02/24/2021 | 135 | NOTICE of Appearance by Yamileth G. Davila on behalf of All Defendants (Davila, Yamileth) (Entered: 02/24/2021) |
| 03/05/2021 | 136 | Joint STATUS REPORT by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order Defendants' Proposed Order)(Mueller, Ruth) (Entered: 03/05/2021) |
| 04/12/2021 | 137 | NOTICE *of Lodging Progress Report* by L. FRANCIS CISSNA, RYAN C. CROCKER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Carilli, Joseph) (Entered: 04/12/2021) |
| 05/27/2021 | | MINUTE ORDER: Having considered the parties' joint status report 137 , and in light of the actions mandated by Executive Order 14012 and Executive Order 14013, the court hereby ORDERS that the parties shall meet, confer, and file a joint status report by November 22, 2021 advising the court of: (1) any relevant developments affecting this litigation; (2) any portion or portions of this case which the parties believe to have been mooted by Defendants' actions in response to the aforementioned Executive Orders; and (3) any portion or portions of this case which the parties wish to stay for any reason, including to await further action stemming from the aforementioned Executive Orders. The report shall be accompanied by a jointly proposed order as appropriate. Signed by Judge Tanya S. Chutkan on 05/27/2021. (lcfb) (Entered: 05/27/2021) |
| 06/01/2021 | | Set/Reset Deadlines: Joint Status Report due by 11/22/2021. (tb) (Entered: 06/01/2021) |
| 07/12/2021 | 138 | NOTICE *of Lodging Progress Report* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Carilli, Joseph) (Entered: 07/12/2021) |
| 08/02/2021 | 139 | NOTICE *of Change in Material Facts* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED |

JA 257

USCA Case #25-5270    Document #2171785    Filed: 05/04/2026    Page 262 of 287

| | | |
|---|---|---|
| | | STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE re 101 MOTION to Dismiss for Lack of Jurisdiction (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Carilli, Joseph) (Entered: 08/02/2021) |
| 09/16/2021 | 140 | MANDATE of USCA as to 117 Notice of Interlocutory Appeal,, filed by L. FRANCIS CISSNA, MICHAEL R. POMPEO, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, UNITED STATES DEPARTMENT OF STATE ; USCA Case Number 20-5251. (Attachments: # 1 USCA Order)(ztd) (Entered: 09/17/2021) |
| 09/20/2021 | 141 | ERRATA re 137 *Notice of Errata (April 2021 Progress Report)* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Carilli, Joseph) Modified event title and link on 9/22/2021 (znmw). (Entered: 09/20/2021) |
| 09/20/2021 | 142 | ERRATA re 138 *Notice of Errata (July 2021 Progress Report)* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE (Carilli, Joseph) Modified event title and link on 9/22/2021 (znmw). (Entered: 09/20/2021) |
| 10/10/2021 | 143 | MOTION for Extension of Time to File *Defendants' Quarterly Progress Report* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Mueller, Ruth) (Entered: 10/10/2021) |
| 10/19/2021 | 144 | STIPULATION *and Proposed Stipulated Order (Joint)* by L. FRANCIS CISSNA, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Mueller, Ruth) (Entered: 10/19/2021) |
| 10/21/2021 | 145 | NOTICE of Appearance by Kathryn S. Austin on behalf of All Plaintiffs (Austin, Kathryn) (Entered: 10/21/2021) |
| 11/22/2021 | 146 | Joint STATUS REPORT by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Mueller, Ruth) (Entered: 11/22/2021) |
| 11/23/2021 | 147 | STIPULATION *and Proposed Stipulated Order (Amended)* by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Mueller, Ruth) (Entered: 11/23/2021) |
| 12/02/2021 | 148 | NOTICE OF WITHDRAWAL OF APPEARANCE as to L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. Attorney Joseph F. Carilli, Jr terminated. (Carilli, Joseph) (Entered: 12/02/2021) |
| 12/20/2021 | | MINUTE ORDER: Parties' 144 proposed joint stipulation is entered as amended by parties' 147 joint proposed amendment nunc pro tunc, effective October 19, 2021. The stay contemplated by the Joint Stipulation shall end on 1/10/22. In light of parties' joint stipulation and ongoing discussions, parties' 143 motion for extension of time to file Defendants' Quarterly Progress Report is terminated as moot. Signed by Judge Tanya S. Chutkan on 12/20/2021. (lcac) (Entered: 12/20/2021) |

JA 258

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 263 of 287

| | | |
|---|---|---|
| 12/30/2021 | 149 | NOTICE *of Corrected Progress Reports* by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit)(Mueller, Ruth) (Entered: 12/30/2021) |
| 01/10/2022 | 150 | Joint MOTION for Extension of Time to *Extend Stay Period* by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Mueller, Ruth) (Entered: 01/10/2022) |
| 01/11/2022 | 151 | NOTICE of Appearance by Alexandra Zaretsky on behalf of All Plaintiffs (Zaretsky, Alexandra) (Entered: 01/11/2022) |
| 01/11/2022 | | MINUTE ORDER: In light of the parties' continued cooperation and dialogue pursuant to their Joint Adjudication Plan and Joint Stipulations, See ECF Nos. 110 ; 144 ; and 147 , Defendants' 101 Motion to Dismiss and 127 Motion for Entry of Final Judgment are hereby DENIED without prejudice. Plaintiff's 122 Sealed Motion is also DENIED without prejudice. Should the nature of this cooperation change, the parties may refile their motions with the requisite updates to the material facts in this case. Additionally, the parties' 150 Joint Motion for Extension of Time to Stay Period is hereby GRANTED. The stay contemplated by the Joint Stipulation, ECF No. 147 , is hereby extended until March 11, 2022. The parties' obligation to respond to the May 21, 2021 Minute Order is hereby stayed pending further order of the court. Signed by Judge Tanya S. Chutkan on 1/11/22. (lcac) (Entered: 01/11/2022) |
| 03/11/2022 | 152 | NOTICE of Appearance by Sean Lynden King on behalf of All Defendants (King, Sean) (Entered: 03/11/2022) |
| 03/11/2022 | 153 | Joint MOTION for Extension of Time to *Extend Stay Period* by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Mueller, Ruth) (Entered: 03/11/2022) |
| 03/15/2022 | | MINUTE ORDER re 153 *Joint Motion for Extension of Time*: The Stay in this action is hereby extended, *nunc pro tunc*, until further order of the court. The parties shall file a joint status report and proposed order by 3/16/22. Signed by Judge Tanya S. Chutkan on 3/15/2022. (lcac) (Entered: 03/15/2022) |
| 03/15/2022 | | Set/Reset Deadlines: Joint Status Report due by 3/16/2022. (tb) (Entered: 03/15/2022) |
| 03/16/2022 | 154 | Joint STATUS REPORT by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order Exhibit A, # 2 Text of Proposed Order Exhibit B)(Mueller, Ruth) (Entered: 03/16/2022) |
| 03/16/2022 | 155 | MOTION for Leave to File *to File Response to May 27, 2021 Order* by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(King, Sean) (Entered: 03/16/2022) |

JA 259

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 264 of 287

| 03/30/2022 | 156 | Memorandum in opposition to re 155 MOTION for Leave to File *to File Response to May 27, 2021 Order and Cross-Motion to Lift the Stay Nunc Pro Tunc* filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Austin, Kathryn) (Entered: 03/30/2022) |
|---|---|---|
| 03/30/2022 | 157 | Cross MOTION to Lift Stay *Nunc Pro Tunc and Opposition to Defendants' Motion for Leave to File Response to May 27, 2021 Order* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Austin, Kathryn) (Entered: 03/30/2022) |
| 04/06/2022 | 158 | REPLY to opposition to motion re 155 MOTION for Leave to File *to File Response to May 27, 2021 Order* filed by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (King, Sean) (Entered: 04/06/2022) |
| 04/13/2022 | 159 | Memorandum in opposition to re 157 Cross MOTION to Lift Stay *Nunc Pro Tunc and Opposition to Defendants' Motion for Leave to File Response to May 27, 2021 Order* filed by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(King, Sean) (Entered: 04/13/2022) |
| 04/20/2022 | 160 | REPLY to opposition to motion re 157 Cross MOTION to Lift Stay *Nunc Pro Tunc and Opposition to Defendants' Motion for Leave to File Response to May 27, 2021 Order* filed by AFGHAN AND IRAQI ALLIES. (Greene, Olivia) (Entered: 04/20/2022) |
| 04/28/2022 | | MINUTE ORDER: Defendants' 155 *Motion for Leave to File Response to May 27, 2021 Order* is **GRANTED IN PART and DENIED IN PART**. Plaintiff's 157 *Cross Motion to Lift Stay* is **GRANTED IN PART and DENIED IN PART**.<br><br>The stay contemplated by the court's March 15, 2022 Minute Order is extended until further order of the court. It is **ORDERED** that the parties shall meet and confer and file a Joint Status Report on or before **May 13, 2022** jointly responding to the court's May 27, 2021 Minute Order. That Joint Status Report shall be accompanied by a proposed order. Signed by Judge Tanya S. Chutkan on 4/28/2022. (lcac) (Entered: 04/28/2022) |
| 05/02/2022 | | Set/Reset Deadlines: Joint Status Report due by 5/13/2022. (tb) (Entered: 05/02/2022) |
| 05/11/2022 | 161 | NOTICE of Appearance by Vaughn DE LA Vega Spencer on behalf of All Defendants (Spencer, Vaughn) (Entered: 05/11/2022) |
| 05/13/2022 | 162 | Joint STATUS REPORT by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G)(Greene, Olivia) (Entered: 05/13/2022) |
| 05/24/2022 | 163 | MOTION for Relief from Judgment *Pursuant to Rule 54(b) and 60(b)* by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Text of Proposed Order)(Mueller, Ruth) (Entered: 05/24/2022) |
| 06/01/2022 | 164 | Joint MOTION for Extension of Time to *Set Briefing Schedule* by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Mueller, Ruth) (Entered: 06/01/2022) |

JA 260

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 265 of 287

| | | |
|---|---|---|
| 06/07/2022 | | MINUTE ORDER: GRANTING 164 *Joint Motion to Set Briefing Schedule*. The parties' briefing schedule as it pertains to Defendants' 163 *Motion for Relief from Judgment* is set as follows:<br>- Plaintiffs' Combined Opposition to Defendants' 163 *Motion for Relief from Judgment* & any Cross-Motions is due on or before **June 24, 2022**<br>- Defendants' Combined Reply in Support of its 163 *Motion for Relief from Judgment* & Opposition to Plaintiffs' Cross-Motions is due on or before **July 25, 2022**<br>- Plaintiffs' Reply in Support of Cross-Motions is due on or before **August 15, 2022**.<br><br>Signed by Judge Tanya S. Chutkan on 6/7/2022. (lcac) (Entered: 06/07/2022) |
| 06/08/2022 | | Set/Reset Deadlines: Cross Motion due by 6/24/2022. Response to Cross Motion due by 7/25/2022. Reply to Cross Motion due by 8/15/2022. Reply to Motion for Summary Judgment due by 7/25/2022. (tb) (Entered: 06/08/2022) |
| 06/22/2022 | 165 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to Order on Motion for Leave to File,,, Order on Motion to Lift Stay,, by AFGHAN AND IRAQI ALLIES. Filing fee $ 505, receipt number ADCDC-9324561. Fee Status: Fee Paid. Parties have been notified. (Greene, Olivia) Modified event title on 6/23/2022 (znmw). (Entered: 06/22/2022) |
| 06/23/2022 | 166 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 165 Notice of Interlocutory Appeal to DC Circuit Court. (znmw) (Entered: 06/23/2022) |
| 06/24/2022 | 167 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AFGHAN AND IRAQI ALLIES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 6, # 6 Exhibit 24, # 7 Exhibit 25, # 8 Exhibit 26, # 9 Text of Proposed Order, # 10 Certificate of Service)(Greene, Olivia) (Entered: 06/24/2022) |
| 06/24/2022 | 168 | Memorandum in opposition to re 163 MOTION for Relief from Judgment *Pursuant to Rule 54(b) and 60(b)* filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Text of Proposed Order)(Greene, Olivia) (Entered: 06/24/2022) |
| 06/24/2022 | 169 | Cross MOTION to Enforce *and Clarify the Court's Orders* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Text of Proposed Order)(Greene, Olivia) (Entered: 06/24/2022) |
| 06/28/2022 | | USCA Case Number 22-5183 for 165 Notice of Interlocutory Appeal to DC Circuit Court filed by AFGHAN AND IRAQI ALLIES. (znmw) (Entered: 06/28/2022) |
| 07/01/2022 | 170 | Unopposed MOTION for Leave to File *Amicus Curiae Brief* by AFGHAN-AMERICAN FOUNDATION. (Attachments: # 1 Amicus Curiae Brief, # 2 Text of Proposed Order)(Koukios, James) (Entered: 07/01/2022) |

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 266 of 287

| | | |
|---|---|---|
| 07/11/2022 | 171 | Unopposed MOTION for Leave to File *Brief of Amici Curiae* by ASSOCIATION OF WARTIME ALLIES, VETERANS FOR AMERICAN IDEALS. (Attachments: # 1 Brief of Amici Curiae, # 2 Text of Proposed Order)(Dempsey, Christopher) (Entered: 07/11/2022) |
| 07/25/2022 | 172 | REPLY to opposition to motion re 163 MOTION for Relief from Judgment *Pursuant to Rule 54(b) and 60(b)* filed by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Exhibit Supplemental Declaration of Melissa A. Schubert, # 2 Text of Proposed Order Proposed Order)(Mueller, Ruth) (Entered: 07/25/2022) |
| 07/25/2022 | 173 | RESPONSE re 169 Cross MOTION to Enforce *and Clarify the Court's Orders* filed by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Exhibit Supplemental Declaration of Melissa A. Schubert, # 2 Text of Proposed Order Proposed Order)(Mueller, Ruth) (Entered: 07/25/2022) |
| 08/02/2022 | 174 | NOTICE OF WITHDRAWAL OF APPEARANCE as to AFGHAN AND IRAQI ALLIES. Attorney Olivia P. Greene terminated. (Greene, Olivia) (Entered: 08/02/2022) |
| 08/12/2022 | | MINUTE ORDER granting 170 , 171 *Motions for Leave to File* Amicus Curiae *Brief.* Signed by Judge Tanya S. Chutkan on 8/12/2022. (lcac) (Entered: 08/12/2022) |
| 08/12/2022 | 176 | AMICUS BRIEF by AFGHAN-AMERICAN FOUNDATION. (zjm) (Entered: 08/15/2022) |
| 08/12/2022 | 177 | AMICUS BRIEF by ASSOCIATION OF WARTIME ALLIES and VETERANS FOR AMERICAN IDEALS. (zjm) (Main Document 177 replaced on 8/16/2022) (zjm). (Entered: 08/15/2022) |
| 08/15/2022 | 175 | REPLY to opposition to motion re 169 Cross MOTION to Enforce *and Clarify the Court's Orders* filed by AFGHAN AND IRAQI ALLIES. (Simeone, Justin) (Entered: 08/15/2022) |
| 08/16/2022 | | MINUTE ORDER: The court wishes to set a motion hearing in late August or September on the 163 *Motion for Relief from Judgment* and 169 *Cross-Motion to Enforce and Clarify the Court's Orders*. The parties are therefore directed to meet and confer and file a joint report with proposed dates for a motion hearing no later than August 18, 2022. The parties are advised that the court normally does not sit on Thursdays. Signed by Judge Tanya S. Chutkan on 8/16/2022. (lcac) (Entered: 08/16/2022) |
| 08/18/2022 | 178 | Joint STATUS REPORT by L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (King, Sean) (Entered: 08/18/2022) |
| 08/19/2022 | | Set/Reset Deadlines: Joint Report due by 8/18/2022. (tb) (Entered: 08/19/2022) |
| 08/22/2022 | | MINUTE ORDER: The court will hear argument on the parties' 163 *Motion for Relief from Judgment* and 169 *Cross-Motion to Enforce and Clarify the Court's Orders* at **3:30 PM on September 28, 2022 in-person in Courtroom 9**. The court will issue an order detailing its COVID-19 protocols shortly. Should the parties wish to convert this to a virtual hearing, they are directed to contact Chambers. Signed by Judge Tanya S. Chutkan on 8/22/2022. (lcac) (Entered: 08/22/2022) |

JA 262

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 267 of 287

| | | |
|---|---|---|
| 08/24/2022 | | Set/Reset Hearings: Motion Hearing set for 9/28/2022 at 03:30 PM in Courtroom 9- In Person before Judge Tanya S. Chutkan. (tb) (Entered: 08/24/2022) |
| 09/21/2022 | | COVID-19 PROTOCOLS for September 28 Motions Hearing: The parties are hereby instructed that they must wear a well-fitting KN95, N95, or equivalent mask over their mouth and nose at all times while in the courtroom and public areas. When speaking, counsel may temporarily remove their mask. Persons not speaking, including those seated in the gallery, must remain masked at all times during the hearing. Signed by Judge Tanya S. Chutkan on 9/21/2022. (lcac) (Entered: 09/21/2022) |
| 09/27/2022 | 179 | NOTICE of Appearance by Mia Tsui on behalf of AFGHAN AND IRAQI ALLIES (Tsui, Mia) (Entered: 09/27/2022) |
| 09/28/2022 | | MINUTE ORDER: Due to the court's trial schedule for the day, the motion hearing scheduled for 3:30 PM on September 28, 2022 is hereby **RESCHEDULED** to **4:30 PM on September 28, 2022**, in-person in Courtroom 9. The court's September 21, 2022 Order as to COVID-19 protocols remains in effect. Signed by Judge Tanya S. Chutkan on 9/28/2022. (lcac) (Entered: 09/28/2022) |
| 09/28/2022 | 180 | Consent MOTION to Withdraw as Attorney *Kathryn S. Austin* by AFGHAN AND IRAQI ALLIES. (Zaretsky, Alexandra) (Entered: 09/28/2022) |
| 09/28/2022 | | Minute Entry: Motions Hearing held on 9/28/2022 before Judge Tanya S. Chutkan: re 163 MOTION for Relief from Judgment *Pursuant to Rule 54(b) and 60(b)* filed by L. FRANCIS CISSNA, MICHAEL R. POMPEO, KIRSTJEN M. NIELSEN, CARL C. RISCH, DONALD NEUFELD, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE, 169 Cross MOTION to Enforce *and Clarify the Court's Orders* filed by AFGHAN AND IRAQI ALLIES; motions heard and taken under advisement. (Court Reporter Bryan Wayne) (tb) (Entered: 09/29/2022) |
| 10/09/2022 | 181 | TRANSCRIPT OF 9/28/22 MOTIONS HEARING before Judge Tanya S. Chutkan held on September 28, 2022. Page Numbers: 1-36. Date of Issuance: 10/09/2022. Court Reporter: Bryan A. Wayne, (202) 354-3186. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/30/2022. Redacted Transcript Deadline set for 11/9/2022. Release of Transcript Restriction set for 1/7/2023.(Wayne, Bryan) (Entered: 10/09/2022) |
| 10/10/2022 | | MINUTE ORDER **GRANTING** 180 *Motion to Withdraw as Attorney.* Attorney Kathryn S. Austin terminated. Signed by Judge Tanya S. Chutkan on 10/10/2022. (lcac) (Entered: 10/10/2022) |
| 10/13/2022 | 182 | NOTICE OF SUPPLEMENTAL AUTHORITY by AFGHAN AND IRAQI ALLIES (Zaretsky, Alexandra) (Entered: 10/13/2022) |

JA 263

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 268 of 287

| | | |
|---|---|---|
| 10/25/2022 | 183 | Unopposed MOTION to Consolidate Cases by ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order) (Mueller, Ruth) (Entered: 10/25/2022) |
| 10/27/2022 | 184 | RESPONSE re 183 Unopposed MOTION to Consolidate Cases filed by AFGHAN AND IRAQI ALLIES. (Simeone, Justin) (Entered: 10/27/2022) |
| 11/01/2022 | | MINUTE ORDER: Defendants ' 183 Unopposed Motion to Consolidate Cases is GRANTED. 18-cv-1388-TSC is hereby consolidated with 22-cv-2049 and 22-cv-2028, both of which have been reassigned to Judge Chutkan as related to this case. All filings shall be made in the lead case: 18-cv-1388-TSC (the parties shall NOT "spread the text" when filing documents in the lead case). The parties shall file a Joint Status Report by November 15, 2022, apprising the court on the effect, if any, of this consolidation on the pending motions or this case generally going forward. To the extent that the Report proposes any changes, it shall be accompanied by a proposed order. Signed by Judge Tanya S. Chutkan on 11/1/2022. (lcss) (Entered: 11/01/2022) |
| 11/02/2022 | | Set/Reset Deadlines: Joint Status Report due by 11/15/2022. (tb) (Entered: 11/02/2022) |
| 11/04/2022 | 185 | NOTICE OF SUPPLEMENTAL AUTHORITY by AFGHAN AND IRAQI ALLIES (Simeone, Justin) (Entered: 11/04/2022) |
| 11/15/2022 | 186 | Joint STATUS REPORT by ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (King, Sean) (Entered: 11/15/2022) |
| 11/15/2022 | 187 | Unopposed MOTION to Consolidate Cases by ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order) (Mueller, Ruth) (Entered: 11/15/2022) |
| 11/16/2022 | | MINUTE ORDER: Plaintiffs' 167 Sealed Motion for Leave to File Document Under Seal is hereby GRANTED. The Clerk of the Court shall file Under Seal the Declaration and Exhibits attached to that motion, ECF Nos. 167-1, 167-2, 167-3, 167-4, 167-5, 167-6, 167-7, and 167-8. Signed by Judge Tanya S. Chutkan on 11/16/2022. (lcss) (Entered: 11/16/2022) |
| 11/16/2022 | 188 | NOTICE OF SUPPLEMENTAL AUTHORITY by ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit Exhibit A Declaration)(Mueller, Ruth) (Entered: 11/16/2022) |
| 11/16/2022 | 189 | SEALED Declaration filed by AFGHAN AND IRAQI ALLIES. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 6, # 5 Exhibit 24, # 6 Exhibit 25, # 7 Exhibit 26) (zjm) (Entered: 11/17/2022) |

JA 264

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 269 of 287

| 11/17/2022 | | MINUTE ORDER: Defendants' 187 Unopposed Motion to Consolidate Cases is GRANTED. 18-cv-1388-TSC is hereby consolidated with 22-cv-1996 and 22-cv-2051, both of which have been reassigned to Judge Chutkan as related to this case. All filings shall be made in the lead case: 18-cv-1388-TSC (the parties shall NOT "spread the text" when filing documents in the lead case). Signed by Judge Tanya S. Chutkan on 11/17/2022. (lcss) (Entered: 11/17/2022) |
|---|---|---|
| 11/17/2022 | | Cases Consolidated. Cases 22-1996 and 22-2051 have been consolidated with case 18-1388, pursuant to an Order entered 11/17/2022. From this date forward, all pleadings shall be filed ONLY in the lead/earlier case, Civil Action No. 18-1388. The parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing (zjm) (Entered: 11/18/2022) |
| 11/30/2022 | 190 | MEMORANDUM AND OPINION re: Defendants' 163 Motion for Relief from Judgment and Plaintiffs' 169 Cross Motion to Enforce and Clarify the Court's Orders. Signed by Judge Tanya S. Chutkan on 11/30/2022. (lcss) (Entered: 11/30/2022) |
| 11/30/2022 | 191 | ORDER granting in part and denying in part Defendants' 163 Motion for Relief from Judgment; granting in part and denying in part Plaintiffs' 169 Cross Motion to Enforce and Clarify the Court's Orders. Signed by Judge Tanya S. Chutkan on 11/30/2022. (lcss) (Entered: 11/30/2022) |
| 12/01/2022 | | MINUTE ORDER OF REFERRAL TO MAGISTRATE JUDGE: As set forth in the 190 Memorandum and Opinion, at 11-13, the Court has determined that this action should be referred to a Magistrate Judge for the development of a new adjudication plan and limited discovery related to that plan. Accordingly, it is hereby ORDERED that this matter is referred to a Magistrate Judge for those purposes, beginning immediately. The Magistrate Judge will be randomly assigned by the Clerk's Office, and it is FURTHER ORDERED that any future filings related to this matter shall have the initials of the presiding judge and the Magistrate Judge following the case number in the caption. Signed by Judge Tanya S. Chutkan on 12/1/2022. (lcss) (Entered: 12/01/2022) |
| 12/01/2022 | | CASE RANDOMLY REFERRED to Magistrate Judge Moxila A. Upadhyaya for Discovery. (zmrl) (Entered: 12/02/2022) |
| 12/06/2022 | | MINUTE ORDER: The Parties shall appear before the Court for a status conference on Tuesday, December 13th at 4 p.m. in Courtroom 17. Signed by Magistrate Judge Moxila A. Upadhyaya on 12/6/2022. (ztl) (Entered: 12/07/2022) |
| 12/13/2022 | | Minute Entry for proceedings held before Magistrate Judge Moxila A. Upadhyaya: Status Conference held on 12/13/2022. Status Conference Concluded. Status Conference set for 2/2/2023 at 2:00 PM by Telephonic/VTC before Magistrate Judge Moxila A. Upadhyaya. Court Reporter FTR-GOLD; FTR Time Frame: CTRM 17: [4:05:54-4:50:55]. (ztl) (Entered: 12/15/2022) |
| 12/22/2022 | 192 | NOTICE of Appearance by Rebecca Curwin on behalf of AFGHAN AND IRAQI ALLIES (Curwin, Rebecca) (Entered: 12/22/2022) |
| 01/03/2023 | | MINUTE ORDER: The Parties shall submit a joint status report no later than Monday, January 30, 2023, as ordered on the record during the December 13, 2022 hearing in this matter, addressing the following: (1) what discovery has been taken to date; and (2) what discovery is being further proposed. The Parties are reminded that if a discovery dispute arises, they are to jointly call chambers to request a conference. No discovery motions shall be filed without leave of the Court. Signed by Magistrate Judge Moxila A. Upadhyaya on 1/3/2023. (ztl) (Entered: 01/03/2023) |
| 01/03/2023 | 193 | NOTICE of Lodging of Progress Report and Supplemental Report by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND |

JA 265

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 270 of 287

| | | |
|---|---|---|
| | | SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit A Progress Report, # 2 Exhibit B Supplemental Report)(King, Sean) (Entered: 01/03/2023) |
| 01/03/2023 | 194 | TRANSCRIPT OF PROCEEDINGS, before Magistrate Judge Moxila A. Upadhyaya, held on 12-13-2022. Page Numbers: 1 - 30. Date of Issuance: 1-03-2023. Transcriber: Elizabeth Saint-Loth, Telephone number: 202-354-3242. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter refere nced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/24/2023. Redacted Transcript Deadline set for 2/3/2023. Release of Transcript Restriction set for 4/3/2023.(Saint-Loth, Elizabeth) (Entered: 01/03/2023) |
| 01/04/2023 | 195 | MANDATE of USCA as to 165 Notice of Appeal to DC Circuit Court, filed by AFGHAN AND IRAQI ALLIES ; USCA Case Number 22-5183. (Attachment: # 1 USCA Order November 10, 2022)(zjm) (Entered: 01/05/2023) |
| 01/10/2023 | 196 | NOTICE of Appearance by Kimberly Robin Grano on behalf of AFGHAN AND IRAQI ALLIES (Grano, Kimberly) (Entered: 01/10/2023) |
| 01/17/2023 | 197 | STIPULATION *OF CLAWBACK AGREEMENT AND FEDERAL RULE OF EVIDENCE 502(d) ORDER* by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Spencer, Vaughn) (Entered: 01/17/2023) |
| 01/17/2023 | 198 | STIPULATION *re: Remote Depositions* by AFGHAN AND IRAQI ALLIES. (Simeone, Justin) (Entered: 01/17/2023) |
| 01/18/2023 | 199 | STIPULATED CLAWBACK AGREEMENT AND FEDERAL RULE OF EVIDENCE 502(d) ORDER. Signed by Magistrate Judge Moxila A. Upadhyaya on 1/18/2023. (zcll) (Entered: 01/18/2023) |
| 01/18/2023 | 200 | ORDER GOVERNING REMOTE DEPOSISTIONS. Signed by Magistrate Judge Moxila A. Upadhyaya on 1/18/2023. (zcll) (Entered: 01/19/2023) |
| 01/20/2023 | 201 | STIPULATION *AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION* by DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Appendix)(Spencer, Vaughn) (Entered: 01/20/2023) |
| 01/26/2023 | 202 | NOTICE *of Lodging Corrected Progress Report* by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, |

JA 266

USCA Case #25-5279          Document #2171785          Filed: 05/04/2026          Page 271 of 287

| | | |
|---|---|---|
| | | UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit Progress Report)(King, Sean) (Entered: 01/26/2023) |
| 01/27/2023 | 203 | MOTION for Extension of Time to *File Notice of Appeal* by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Mueller, Ruth) (Entered: 01/27/2023) |
| 01/30/2023 | | MINUTE ORDER re 203 MOTION for Extension of Time to *File Notice of Appeal* filed by MICHAEL R. POMPEO, ANTONY BLINKEN, KIRSTJEN M. NIELSEN, JOHN JOHNSON, DONALD NEUFELD, RENA BITTER, L. FRANCIS CISSNA, CARL C. RISCH, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE: Upon review of Defendants' Motion for Extension of Time to File Notice of Appeal (ECF No. 203) and for lack of good cause shown, Defendants' Motion is DENIED. See Fed. R. App. P. 4(a)(5)(A). SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 1/30/2023. (lcdr) (Entered: 01/30/2023) |
| 01/30/2023 | 204 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to Order Referring Case to Magistrate Judge,, 191 Order on Motion for Relief from Judgment,, Order on Motion to Enforce, 190 Memorandum & Opinion by UNITED STATES DEPARTMENT OF STATE, KIRSTJEN M. NIELSEN, DONALD NEUFELD, RENA BITTER, JOHN JOHNSON, L. FRANCIS CISSNA, MICHAEL R. POMPEO, DEPARTMENT OF HOMELAND SECURITY, CARL C. RISCH, ANTONY BLINKEN. Fee Status: No Fee Paid. Parties have been notified. (Mueller, Ruth) (Entered: 01/30/2023) |
| 01/30/2023 | 205 | Joint STATUS REPORT *re Discovery* by AFGHAN AND IRAQI ALLIES. (Simeone, Justin) (Entered: 01/30/2023) |
| 01/31/2023 | 206 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 204 Notice of Appeal to DC Circuit Court,. (zjm) (Entered: 01/31/2023) |
| 01/31/2023 | | MINUTE ORDER: In light of Defendants' ECF 204 Notice of Appeal filed on January 30, 2023, the Parties shall be prepared to advise the Court at the February 2, 2023, status hearing as to their respective positions regarding this Court's jurisdiction. The Parties shall also be prepared to advise the Court on any principal legal authority upon which they rely. Signed by Magistrate Judge Moxila A. Upadhyaya on 1/31/2023. (lckn) Modified on 2/1/2023 (zcll). (Entered: 01/31/2023) |
| 02/02/2023 | | Minute Entry for proceedings held before Magistrate Judge Moxila A. Upadhyaya: VTC Status Conference held on 2/2/2023. Parties discussed the issue of jurisdiction. Order forthcoming. Court Reporter FTR Gold; FTR Time Frame: CTRM 5 [2:06:22-2:40:39] [2:58:09-3:01:38]. (bb) (Entered: 02/02/2023) |
| 02/02/2023 | 207 | NOTICE *of Lodging New Proposed Adjudication Plan* by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit Proposed Revised Adjudication Plan)(King, Sean) (Entered: 02/02/2023) |
| 02/02/2023 | | USCA Case Number 23-5025 for 204 Notice of Appeal to DC Circuit Court, filed by MICHAEL R. POMPEO, ANTONY BLINKEN, KIRSTJEN M. NIELSEN, JOHN JOHNSON, DONALD NEUFELD, RENA BITTER, L. FRANCIS CISSNA, CARL C. RISCH, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (zjm) (Entered: 02/03/2023) |

JA 267

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 272 of 287

| 02/06/2023 | | Minute Order: On January 30, 2023, Defendants filed a notice of appeal ECF No. 204 of this Court's November 30, 2022 Order ECF No. 191 . At the February 2, 2023, status conference, Defendants took the position that their interlocutory appeal was proper under 28 U.S.C. § 1292(a)(1) and that the appeal divested this Court of jurisdiction and stayed any further proceedings. This is incorrect. There is no automatic stay pending an interlocutory appeal in this case. Fed. R. Civ. P. 62(c); see also Bo v. Blinken, No. 22-cv-2331 (D.D.C. Nov. 16, 2022) (Minute Order denying stay pending resolution of appeal); 11A Wright and Miller, Federal Practice and Procedure § 2962 (3d ed. 2022). In the absence of a stay (or even any identification of hardship or inequity Defendants would suffer absent a stay), the Court retains jurisdiction to carry out the further proceedings the District Court has ordered. Landis v. N. Am. Co., 299 U.S. 248, 255 (1936). Indeed, Defendants themselves filed their new proposed plan ECF No. 207 on February 2, 2023 despite their position that this Court no longer retained jurisdiction. In light of the Court's continuing jurisdiction and the District Courts order allowing Plaintiffs limited discovery as to Defendants' plan, the Parties are ordered to appear for a discovery conference on February 8, 2023, at 1 p.m. The conference will occur by video. Discovery Hearing set for 2/8/2023 at 01:00 PM in Telephonic/VTC before Magistrate Judge Moxila A. Upadhyaya. (lckn) (Entered: 02/06/2023) |
| 02/08/2023 | 208 | NOTICE by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Exhibit Pls' 30(b)(6) Notice to DOS, # 2 Exhibit Pls' 30(b)(6) Notice to DHS, # 3 Exhibit Def DOS's Responses to 30(b)(6) Notice, # 4 Exhibit Def DHS's Responses to 30(b)(6) Notice, # 5 Exhibit Feb 6 2023 Email to Counsel)(Grano, Kimberly) (Entered: 02/08/2023) |
| 02/08/2023 | | Minute Entry for proceedings held before Magistrate Judge Moxila A. Upadhyaya: VTC Discovery Hearing held on 2/8/2023. Parties were present by video. Parties discussed the posture of the case. Court ordered parties to file a joint submission with original 30(b)(6) topics, notices, objections, and most recent email communication. Order forthcoming via Chambers. Court Reporter FTR Gold; FTR Time Frame: CTRM 5 [1:06:37-1:52:28], [2:46:31-3:27:15]. (bb) (Entered: 02/09/2023) |
| 02/09/2023 | | Minute Order: For reasons stated on the record on February 8, 2023, the Defendants are ORDERED to complete document production no later than February 24, 2023. The Rule 30(b)(6) depositions noticed by Plaintiffs are allowed to proceed between February 24, 2023 and March 9, 2023. The Plaintiffs are ORDERED to file their objections to the Defendants' ECF No. 207 New Proposed Adjudication Plan no later than March 9, 2023. Defendants' request to reply to Plaintiffs' objections is DENIED. No further extensions of discovery will be granted. Proceedings held before Magistrate Judge Moxila A. Upadhyaya: Discovery due by 3/9/2023. (lckn) (Entered: 02/09/2023) |
| 02/15/2023 | 209 | ORDER of USCA as to 165 Notice of Appeal to DC Circuit Court, filed by AFGHAN AND IRAQI ALLIES ; USCA Case Number 22-5183. (zjm) (Entered: 02/15/2023) |
| 02/21/2023 | 210 | Appeal of Magistrate Judge Decision to District Court by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE re Set Hearings,,,,,, (Mueller, Ruth) (Entered: 02/21/2023) |
| 02/24/2023 | 211 | TRANSCRIPT OF PROCEEDINGS, before Magistrate Judge Moxila A. Upadhyaya, held on 2-08-2023. Page Numbers: 1 - 62. Date of Issuance: 2-24-2023. Transcriber: Elizabeth SaintLoth, Telephone number 202-354-3242, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, |

JA 268

USCA Case #25-5279  Document #2171785  Filed: 05/04/2026  Page 273 of 287

the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/17/2023. Redacted Transcript Deadline set for 3/27/2023. Release of Transcript Restriction set for 5/25/2023.(Saint-Loth, Elizabeth) (Entered: 02/24/2023)

| | | |
|---|---|---|
| 02/24/2023 | 212 | TRANSCRIPT OF PROCEEDINGS, before Magistrate Judge Moxila A. Upadhyaya, held on 2-02-2023. Page Numbers: 1 - 26. Date of Issuance: 2-24-2023. Transcriber: Elizabeth Saint-Loth, Telephone number: 202-354-3242. Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br> Redaction Request due 3/17/2023. Redacted Transcript Deadline set for 3/27/2023. Release of Transcript Restriction set for 5/25/2023.(Saint-Loth, Elizabeth) (Entered: 02/24/2023) |
| 02/27/2023 | 213 | NOTICE of Appearance by Alexander James Halaska on behalf of All Defendants (Halaska, Alexander) (Entered: 02/27/2023) |
| 03/02/2023 | 214 | NOTICE OF WITHDRAWAL OF APPEARANCE as to RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. Attorney William M. Martin and Vaughn DE LA Vega Spencer terminated. (Spencer, Vaughn) (Entered: 03/02/2023) |
| 03/07/2023 | 215 | RESPONSE re 210 Appeal of Magistrate Judge Decision to District Court *(Plaintiffs' Opposition to Defendants' Objections to the Magistrate Judge's February 6, 2023 Minute Order)* filed by AFGHAN AND IRAQI ALLIES. (Havaldar, Anika) Modified on 3/9/2023 to add docket link (zjm). (Entered: 03/07/2023) |
| 03/09/2023 | 216 | MOTION to Strike The Brooks (ECF163-1, 162-3), Vermillion (ECF 163-7), and Martin Declaration (163-8) re 163 MOTION for Relief from Judgment *Pursuant to Rule 54(b) and 60(b)* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Kimberly R. Grano, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Text of Proposed Order)(Simeone, Justin) (Entered: 03/09/2023) |
| 03/09/2023 | 217 | NOTICE *of Objections to Defendants' Proposed Revised Adjudication Plan* by AFGHAN AND IRAQI ALLIES re 207 Notice (Other), (Attachments: # 1 Declaration of Deepa |

JA 269

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 274 of 287

Alagesan, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24)(Simeone, Justin) (Entered: 03/09/2023)

| Date | No. | Docket Text |
|---|---|---|
| 03/10/2023 | 218 | NOTICE *of Lodging Corrected Progress Reports* by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE (Attachments: # 1 Exhibit Corrected Progress Reports)(King, Sean) (Entered: 03/10/2023) |
| 03/14/2023 | 219 | REPLY re 210 Appeal of Magistrate Judge Decision to District Court, filed by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Mueller, Ruth) (Entered: 03/14/2023) |
| 03/22/2023 | 220 | NOTICE of Appearance by David J. Byerley on behalf of All Defendants (Byerley, David) (Entered: 03/22/2023) |
| 03/23/2023 | 221 | Memorandum in opposition to re 216 Motion for Miscellaneous Relief, filed by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Byerley, David) (Entered: 03/23/2023) |
| 03/24/2023 | 222 | Consent MOTION for Extension of Time to File Response/Reply *in Support of Motion to Strike* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Zaretsky, Alexandra) (Entered: 03/24/2023) |
| 03/24/2023 | | MINUTE ORDER: Plaintiffs' 222 Consent Motion for Extension of Time is hereby GRANTED. Plaintiffs shall file a reply brief in support of their 216 Motion to Strike by April 4, 2023. SO ORDERED Judge Tanya S. Chutkan. (lcss) Modified on 3/29/2023 (tb). (Entered: 03/24/2023) |
| 03/29/2023 | | Set/Reset Deadlines: Reply due by 4/4/2023. (tb) (Entered: 03/29/2023) |
| 04/04/2023 | 223 | REPLY to opposition to motion re 216 MOTION to Strike *to Strike the Brooks, Vermillion, and Martin Declarations* filed by AFGHAN AND IRAQI ALLIES. (Zaretsky, Alexandra) Modified on 4/5/2023 to add docket link (zjm). (Entered: 04/04/2023) |
| 04/28/2023 | 224 | Unopposed MOTION to Consolidate Cases by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(King, Sean) (Entered: 04/28/2023) |
| 05/03/2023 | | MINUTE ORDER: Defendants' 224 Unopposed Motion to Consolidate Cases is GRANTED. 18-cv-1388-TSC is hereby consolidated with 23-cv-332, which has been reassigned to Judge Chutkan as related to this case. All filings shall be made in the lead case: 18-cv-1388-TSC (the parties shall NOT "spread the text" when filing documents in the lead case). Signed by Judge Tanya S. Chutkan on 05/03/2023. (lcss) (Entered: 05/03/2023) |
| 05/03/2023 | | Cases Consolidated. Cases 23-332 have been consolidated with case 18-1388, pursuant to an Order entered 05/03/2023. From this date forward, all pleadings shall be filed ONLY in the lead/earlier case, Civil Action No. 18-1388. The parties are advised NOT to elect |

JA 270

USCA Case #25-5279     Document #2171785          Filed: 05/04/2026     Page 275 of 287

the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 05/16/2023)

| | | |
|---|---|---|
| 06/16/2023 | 225 | Unopposed MOTION to Withdraw *to Withdraw Plaintiff John Doe Charlie as Class Representative* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of John Doe Charlie, # 2 Text of Proposed Order)(Grano, Kimberly) Modified on 6/20/2023 to correct relief (zjm). (Entered: 06/16/2023) |
| 06/16/2023 | 226 | STIPULATION of Dismissal *of Claims of Plaintiff John Doe Charlie* by AFGHAN AND IRAQI ALLIES. (Grano, Kimberly) (Entered: 06/16/2023) |
| 06/20/2023 | | MINUTE ORDER: Plaintiff John Doe Charlie's 225 Unopposed Motion to Withdraw as Class Representative is hereby GRANTED. Moreover, upon consideration of the parties' 226 Joint Stipulation of Dismissal of Claims, the claims of Plaintiff John Doe Charlie in this case are hereby dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Signed by Judge Tanya S. Chutkan on 06/20/2023. (lcss) (Entered: 06/20/2023) |
| 09/20/2023 | 227 | NOTICE OF SUPPLEMENTAL AUTHORITY by AFGHAN AND IRAQI ALLIES (Grano, Kimberly) (Entered: 09/20/2023) |
| 10/18/2023 | 228 | Unopposed MOTION to Consolidate Cases by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Byerley, David) (Entered: 10/18/2023) |
| 11/09/2023 | | MINUTE ORDER: Defendants' 228 Unopposed Motion to Consolidate Cases is GRANTED. 18-cv-1388-TSC is hereby consolidated with 23-cv-2779-TSC. All filings shall be made in the lead case: 18-cv-1388-TSC (the parties shall NOT "spread the text" when filing documents in the lead case). Signed by Judge Tanya S. Chutkan on 11/09/2023. (lcd) (Entered: 11/09/2023) |
| 11/09/2023 | | Cases Consolidated: The following case have been consolidated with this case: 23-cv-2779. pursuant to 11/09/2023 Minute Order on Motion to Consolidate Cases. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 11/15/2023) |
| 11/17/2023 | | MINUTE ORDER: Having consolidated 22-cv-2049 (Bakhtyar v. Johnson), 22-cv-2028 (Khaja v. Johnson), 22-cv-1996 (Majib v. Johnson), 22-cv-2051 (Amiry v. Johnson), 23-cv-332 (Dawar v. Murphy), and 23-cv-2779 (Escandari v. Blinken) with the present case, it is hereby ordered that when a document applies to all actions included in the Afghan and Iraqi Allies v. Pompeo et al Cases: (a) the document must be filed ONLY in the Master Case File; (b) the designation "ALL CASES" must appear immediately after the words "THIS DOCUMENT RELATES TO" in the caption; and (c) this same designation must appear in the title/description of the document when entered on the court's CM/ECF docket. When a document applies to only one case or more than one case, but not all of the cases included in the Afghan and Iraqi Allies v. Pompeo et al Cases: (a) it must be filed ONLY in the Master Case File; (b) the relevant case name(s) and case number(s) must appear in the caption of the document immediately after the words THIS DOCUMENT RELATES TO. For example: THIS DOCUMENT RELATES TO: Escandari v. Blinken 23-cv-2779 or THIS DOCUMENT RELATES TO: Escandari v. Blinken 23-cv-2779; Amiry v. Johnson 22-cv-2051; and Majib v. Johnson 22-cv-1996; and (c) this same designation must appear in the title/description of the document when entered on the courts CM/ECF docket. Signed by Judge Tanya S. Chutkan on 11/17/2023. (lcd) (Entered: 11/17/2023) |

JA 271

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 276 of 287

| 12/12/2023 | 229 | NOTICE OF WITHDRAWAL OF APPEARANCE as to RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. Attorney Sean Lynden King terminated. (King, Sean) (Entered: 12/12/2023) |
|---|---|---|
| 01/30/2024 | 230 | Unopposed MOTION to Consolidate Cases by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Text of Proposed Order)(Byerley, David) (Entered: 01/30/2024) |
| 01/31/2024 | | MINUTE ORDER: Defendants' 230 Unopposed Motion to Consolidate Cases is GRANTED. 18-cv-1388-TSC is hereby consolidated with 24-cv-143-TSC. All filings shall be made in the lead case: 18-cv-1388-TSC (the parties shall NOT "spread the text" when filing documents in the lead case). Signed by Judge Tanya S. Chutkan on 01/31/2024. (lcd) (Entered: 01/31/2024) |
| 02/22/2024 | 231 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Sung Ah ("Carla") Yoon, Filing fee $ 100, receipt number ADCDC-10708160. Fee Status: Fee Paid. by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Sung Ah ("Carla") Yoon, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Simeone, Justin) (Entered: 02/22/2024) |
| 02/23/2024 | 232 | NOTICE OF SUBSTITUTION OF COUNSEL by Caroline McGuire on behalf of All Defendants Substituting for attorney Steven A. Platt (McGuire, Caroline) (Entered: 02/23/2024) |
| 03/04/2024 | | MINUTE ORDER: GRANTING 231 Motion for Admission Pro Hac Vice of Sung Ah ("Carla") Yoon. Sung Ah ("Carla") Yoon is hereby ADMITTED pro hac vice to appear in this matter on behalf of Plaintiffs. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Tanya S. Chutkan on 03/04/2024. (lcd) (Entered: 03/04/2024) |
| 03/05/2024 | 233 | NOTICE of Change of Address by Linda H. Martin (Martin, Linda) (Entered: 03/05/2024) |
| 03/05/2024 | 234 | NOTICE of Change of Address by David Yury Livshiz (Livshiz, David) (Entered: 03/05/2024) |
| 03/05/2024 | 235 | NOTICE of Change of Address by Rebecca Curwin Kerr (Kerr, Rebecca) (Entered: 03/05/2024) |
| 03/05/2024 | 236 | NOTICE of Appearance by Carla Sung Ah Yoon on behalf of AFGHAN AND IRAQI ALLIES (Yoon, Carla) (Entered: 03/05/2024) |
| 03/18/2024 | | MINUTE ORDER: Pending the D.C. Circuit's decision in Case No. 23-5025, the appeal of this court's 191 order, it is hereby ORDERED that this case is STAYED until further order of the court. Within two weeks of the D.C. Circuit's decision, the parties shall meet, confer, and file a Joint Status Report informing the court of the Circuit's decision and proposing next steps for moving the case forward. The status report shall be accompanied by a proposed order. Signed by Judge Tanya S. Chutkan on 03/18/2024. (lcd) (Entered: 03/18/2024) |
| 04/22/2024 | 237 | Consent MOTION to Withdraw as Attorney *Mariko Hirose* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Hirose, Mariko) (Entered: |

JA 272

USCA Case #25-5379 Document #2171785 Filed: 05/04/2026 Page 277 of 287

| | | 04/22/2024) |
|---|---|---|
| 04/22/2024 | | MINUTE ORDER: GRANTING Mariko Hirose's 237 Consent Motion to Withdraw as Counsel for Plaintiffs. Attorney Mariko Hirose terminated. Signed by Judge Tanya S. Chutkan on 04/22/2024. (lcd) (Entered: 04/22/2024) |
| 06/10/2024 | 238 | NOTICE of Appearance by Wang Jae Rhee on behalf of AFGHAN AND IRAQI ALLIES (Rhee, Wang Jae) (Entered: 06/10/2024) |
| 06/21/2024 | 239 | Joint STATUS REPORT by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order by Plaintiffs, # 2 Text of Proposed Order by Defendants)(Grano, Kimberly) (Entered: 06/21/2024) |
| 07/29/2024 | | MINUTE ORDER: Upon consideration of the parties' 239 Joint Status Report, it is hereby ORDERED that the stay is LIFTED. Deadlines regarding the revised adjudication plan will follow in a separate Order. Signed by Judge Tanya S. Chutkan on 07/29/2024. (lcd) (Entered: 07/29/2024) |
| 07/30/2024 | | Case Unstayed. (zcll) (Entered: 07/30/2024) |
| 08/02/2024 | 240 | MANDATE of USCA as to 204 Notice of Appeal to DC Circuit Court, filed by MICHAEL R. POMPEO, KIRSTJEN M. NIELSEN, JOHN JOHNSON, DONALD NEUFELD, ANTONY J. BLINKEN, RENA BITTER, L. FRANCIS CISSNA, CARL C. RISCH, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE ; USCA Case Number 23-5025. (Attachment: # 1 USCA Judgment June 7, 2024)(zjm) (Entered: 08/02/2024) |
| 08/12/2024 | | MINUTE ORDER: In light of D.C. Circuit's June 7, 2024 decision, the Parties' Joint Status Report at 239 , and this Courts lifting of the stay of the case entered on March 18, 2024, it is HEREBY ORDERED that Defendants shall file any clarifications to their Proposed Revised Adjudication Plan, ECF No. [207-1], by August 26, 2024; Plaintiffs shall file any objections by September 9, 2024; and Defendants shall identify any areas of compromise/agreement, and otherwise respond to Plaintiffs' objections by September 16, 2024. SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 08/12/2024. (lchk) (Entered: 08/12/2024) |
| 08/14/2024 | 241 | Consent MOTION to Withdraw as Attorney by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order Proposed Order)(Zaretsky, Alexandra) (Entered: 08/14/2024) |
| 08/15/2024 | | MINUTE ORDER: Granting Alexandra Zaretsky's 241 Consent Motion to Withdraw as Attorney for Plaintiffs. Attorney Alexandra Zaretsky terminated. Signed by Judge Tanya S. Chutkan on 08/15/2024. (lcd) (Entered: 08/15/2024) |
| 08/16/2024 | 242 | Unopposed MOTION to Consolidate Cases by RENA BITTER, ANTONY BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Text of Proposed Order)(Byerley, David) (Entered: 08/16/2024) |
| 08/16/2024 | | MINUTE ORDER: Defendants' 242 Unopposed Motion to Consolidate Cases is GRANTED. 18-cv-1388-TSC is hereby consolidated with 24-cv-1629-JDB. All filings shall be made in the lead case: 18-cv-1388-TSC (the parties shall NOT "spread the text" when filing documents in the lead case). Signed by Judge Tanya S. Chutkan on 08/16/2024. (lcd) (Entered: 08/16/2024) |
| 08/16/2024 | | Cases Consolidated: The following cases have been consolidated with this case: 1:24-cv-01629 pursuant to 08/16/2024 Minute Order on Motion to Consolidate Cases. From this |

JA 273

USCA Case #25-5279 Document #2171785 Filed: 05/04/2026 Page 278 of 287

date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 08/23/2024)

| 08/26/2024 | 243 | NOTICE *of Lodging Modifications to Defendants' Proposed Adjudication Plan* by RENA BITTER, ANTONY BLINKEN, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS re Order,,, Set Deadlines,, (Attachments: # 1 Exhibit Modified Revised Adjudication Plan (Clean), # 2 Exhibit Modified Revised Adjudication Plan (Redline), # 3 Exhibit Template Progress Report (Clean), # 4 Exhibit Template Progress Report (Redline))(Byerley, David) (Entered: 08/26/2024) |
|---|---|---|
| 09/09/2024 | 244 | RESPONSE re 243 Notice (Other),, *Plaintiffs' Objections to Defendants' Modifications to Defendants' Proposed Adjudication Plan* filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Updated Exhibit 1, # 2 Updated Exhibit 2)(Grano, Kimberly) (Entered: 09/09/2024) |
| 09/12/2024 | 245 | NOTICE of Appearance by Richard Gordon Winstead Ingebretsen on behalf of All Defendants (Ingebretsen, Richard) (Entered: 09/12/2024) |
| 09/16/2024 | 246 | REPLY re 243 Notice (Other),, *In Support of Defendants' Notice of Lodging Modifications to Defendants' Proposed Adjudication Plan* filed by RENA BITTER, ANTONY BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Ingebretsen, Richard) (Entered: 09/16/2024) |
| 09/17/2024 | 247 | Consent MOTION to Amend/Correct 89 Order *Certifying Class* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Grano, Kimberly) (Entered: 09/17/2024) |
| 09/18/2024 | 248 | Joint MOTION for Order *Approving Dismissal of Counts Four and Five of Plaintiffs' First Amended Complaint* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Grano, Kimberly) (Entered: 09/18/2024) |
| 10/03/2024 | | MINUTE ORDER: Upon consideration of the Parties' briefs regarding Defendants' Proposed Adjudication Plan 243 , the Court hereby ORDERS the Parties to appear for a hearing on 10/10/2024 at 02:00 PM in Telephonic/VTC via Zoom before Magistrate Judge Moxila A. Upadhyaya. The Parties should be prepared to discuss their respective positions in connection with the Proposed Adjudication Plan. SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 10/03/2024. (lcrd) (Entered: 10/03/2024) |
| 10/03/2024 | 249 | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss by ANTONY BLINKEN, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Byerley, David) (Entered: 10/03/2024) |
| 10/04/2024 | 250 | Joint MOTION for Extension of Time to File Response/Reply as to 249 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss *and to Set a Briefing Schedule* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Kerr, Rebecca) (Entered: 10/04/2024) |
| 10/04/2024 | 251 | ORDER GRANTING 247 Consent Motion to Amend the Class Certification Order; GRANTING 248 Joint Motion for Order Approving Dismissal. Signed by Judge Tanya S. Chutkan on 10/4/2024. (lccc) (Entered: 10/04/2024) |

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 279 of 287

| 10/09/2024 | 252 | OPINION and ORDER: DENYING 216 Plaintiffs' Motion to Strike as MOOT. See Opinion and Order for further details. Signed by Judge Tanya S. Chutkan on 10/9/2024. (lccc) (Entered: 10/09/2024) |
|---|---|---|
| 10/09/2024 | | MINUTE ORDER: GRANTING 250 Joint Motion for Extension and to Set a Briefing Schedule. Plaintiffs' Response to Defendants' 249 Motion to Dismiss is due by October 31, 2024. Defendants' Reply is due November 21, 2024. Signed by Judge Tanya S. Chutkan on 10/9/2024. (lccc) (Entered: 10/09/2024) |
| 10/10/2024 | | MINUTE ORDER: Pursuant to the Court's order at the hearing on 10/10/2024, the Parties are hereby ORDERED to submit a Joint Proposed Order with a Final Adjudication Plan by no later than 10/16/2024. The Plan should incorporate the Court's rulings as stated on the record at the 10/10/2024 hearing. SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 10/10/2024. (lcrd) (Entered: 10/10/2024) |
| 10/10/2024 | | Minute Entry for proceedings held before Magistrate Judge Moxila A. Upadhyaya: Hearing on Adjudication Plan held on 10/10/2024. Order to be issued. Court Reporter: FTR- GOLD; FTR Time Frame: CRTM 5: [2:10:09-3:23:45][RECES: 3:23:46-3:53:32] [3:53:33-4:24:01]. (znjb) (Entered: 10/11/2024) |
| 10/14/2024 | 253 | NOTICE *of Change of Firm Name* by AFGHAN AND IRAQI ALLIES (Kerr, Rebecca) (Entered: 10/14/2024) |
| 10/16/2024 | 254 | NOTICE *of Lodging Joint Proposed Revised Adjudication Plan* by AFGHAN AND IRAQI ALLIES (Attachments: # 1 Exhibit Joint Proposed Revised Adjudication Plan) (Kerr, Rebecca) (Entered: 10/16/2024) |
| 10/17/2024 | 255 | TRANSCRIPT OF ADJUDICATION PLAN (FTR) before The Honorable Judge Moxila A. Upadhyaya held on 10/10/2024. Page Numbers: 1-71. Date of Issuance: 10/17/2024. Transcribing Court Reporter: Nancy J. Meyer. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left-hand side under Transcript Requests). Please select Former Reporter. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi-page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/7/2024. Redacted Transcript Deadline set for 11/17/2024. Release of Transcript Restriction set for 1/15/2025.(Meyer, Nancy J.) (Entered: 10/17/2024) |
| 10/17/2024 | 256 | NOTICE OF WITHDRAWAL OF APPEARANCE as to RENA BITTER, ANTONY BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. Attorney Caroline McGuire terminated. (McGuire, Caroline) (Entered: 10/17/2024) |
| 10/18/2024 | 257 | NOTICE OF WITHDRAWAL OF APPEARANCE as to RENA BITTER, ANTONY BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, |

JA 275

USCA Case #25-5278    Document #2171785    Filed: 05/04/2026    Page 280 of 287

NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. Attorney Alexander James Halaska terminated. (Halaska, Alexander) (Entered: 10/18/2024)

| | | |
|---|---|---|
| 10/24/2024 | 258 | MOTION to Clarify re Status Conference, by ANTONY BLINKEN, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Ingebretsen, Richard). Added MOTION for Extension of Time to on 10/25/2024 (znmw). (Entered: 10/24/2024) |
| 10/31/2024 | 259 | Memorandum in opposition to re 249 Motion to Dismiss/Lack of Jurisdiction, filed by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Kerr, Rebecca) (Entered: 10/31/2024) |
| 11/04/2024 | 260 | ORDER adopting Revised Adjudication Plan. Defendant's Motion 258 is DISMISSED AS MOOT. Any objections shall be filed no later than November 18, 2024. Signed by Magistrate Judge Moxila A. Upadhyaya on 11/04/2024. (Attachments: # 1 Exhibit Final Adjudication Plan) (lcrd) (Entered: 11/04/2024) |
| 11/18/2024 | 261 | NOTICE *of Objections to the Revised Adjudication Plan and Court's October 10, 2024 Rulings* by DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE, ANTONY BLINKEN re 260 Order on Motion to Clarify,, Order on Motion for Extension of Time to, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Text of Proposed Order)(Ingebretsen, Richard) (Entered: 11/18/2024) |
| 11/20/2024 | 262 | Unopposed MOTION for Extension of Time to *File an Opposition* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Kerr, Rebecca) (Entered: 11/20/2024) |
| 11/21/2024 | | MINUTE ORDER: Granting Plaintiff's 262 Unopposed Motion for Extension of Time. Plaintiff's opposition to 261 Defendants' Objections to the Revised Adjudication Plan due by December 4, 2024. Signed by Judge Tanya S. Chutkan on 11/21/2024. (lccc) (Entered: 11/21/2024) |
| 11/21/2024 | 263 | REPLY to opposition to motion re 249 Motion to Dismiss/Lack of Jurisdiction, filed by DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Byerley, David) (Entered: 11/21/2024) |
| 12/04/2024 | 264 | RESPONSE re 261 Notice (Other),, *Plaintiffs' Opposition to Defendants' Objections to the Revised Adjudication Plan and Court's October 10, 2024 Rulings* filed by AFGHAN AND IRAQI ALLIES. (Grano, Kimberly) (Entered: 12/04/2024) |
| 12/05/2024 | 265 | NOTICE of Appearance by Jaime A Scott on behalf of All Defendants (Scott, Jaime) (Main Document 265 replaced on 12/5/2024) (znmw). (Entered: 12/05/2024) |
| 12/11/2024 | 266 | REPLY re 261 Notice (Other),, *in support of Objections to the Revised Adjudication Plan and Court's October 10, 2024 Rulings* filed by DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE, ANTONY BLINKEN. (Scott, Jaime) (Entered: 12/11/2024) |
| 01/08/2025 | 267 | MOTION to Consolidate Cases by DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Byerley, David) (Entered: 01/08/2025) |

JA 276

USCA Case #25-5279        Document #2171785        Filed: 05/04/2026        Page 281 of 287

| 02/14/2025 | 268 | MOTION to Stay re 260 Order on Motion to Clarify,, Order on Motion for Extension of Time to, by DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (Attachments: # 1 Text of Proposed Order)(Byerley, David) (Entered: 02/14/2025) |
|---|---|---|
| 02/20/2025 | 269 | Memorandum in opposition to re 268 Motion to Stay filed by AFGHAN AND IRAQI ALLIES. (Grano, Kimberly) (Entered: 02/20/2025) |
| 02/20/2025 | | MINUTE ORDER: DENYING 268 Defendants' Motion to Stay as MOOT. The court will resolve 261 Defendants' Objections to the Revised Adjudication Plan and enter an order adopting, modifying, or setting aside 260 Order adopting Revised Adjudication Plan. Defendants' progress report obligations shall begin after this court approves the Revised Adjudication Plan. Signed by Judge Tanya S. Chutkan on 2/20/2025. (lccc) (Entered: 02/20/2025) |
| 04/07/2025 | 270 | NOTICE OF WITHDRAWAL OF APPEARANCE as to AFGHAN AND IRAQI ALLIES. Attorney Linda H. Martin terminated. (Martin, Linda) (Entered: 04/07/2025) |
| 06/04/2025 | | MINUTE ORDER: Defendants' 267 Motion to Consolidate Cases is GRANTED. 18-cv-1388-TSC is hereby consolidated with 24-cv-839-RC. All filings shall be made in the lead case: 18-cv-1388-TSC (the parties shall NOT "spread the text" when filing documents in the lead case). Signed by Judge Tanya S. Chutkan on 6/4/2025. (lccc) (Entered: 06/04/2025) |
| 06/04/2025 | | Cases Consolidated: The following cases have been consolidated with this case: 24-cv-00839-RC. pursuant to Order on Motion to Consolidate Cases. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 06/05/2025) |
| 06/05/2025 | 271 | MEMORANDUM OPINION re 261 Defendants' Objections to the Revised Adjudication Plan. Signed by Judge Tanya S. Chutkan on 6/5/2025. (lccc) (Entered: 06/05/2025) |
| 06/05/2025 | 272 | ORDER GRANTING in part, DENYING in part 261 Defendants' Objections to the Revised Adjudication Plan; ADOPTING in part, MODIFYING in part 260 Order adopting Revised Adjudication Plan. The court hereby approves and adopts the revised adjudication plan. See order for details. Signed by Judge Tanya S. Chutkan on 6/5/2025. (Attachments: # 1 Exhibit Adopted Revised Adjudication Plan) (lccc) (Entered: 06/05/2025) |
| 06/06/2025 | 273 | MEMORANDUM OPINION re 249 Defendants' Motion to Dismiss. Signed by Judge Tanya S. Chutkan on 6/6/2025. (lccc) (Entered: 06/06/2025) |
| 06/06/2025 | 274 | ORDER GRANTING 249 Defendants' Motion to Dismiss. Signed by Judge Tanya S. Chutkan on 6/6/2025. (lccc) (Entered: 06/06/2025) |
| 07/21/2025 | 275 | NOTICE of Appearance by Pedro Sepulveda, Jr on behalf of AFGHAN AND IRAQI ALLIES (Sepulveda, Pedro) Modified on 7/21/2025 to correct docket text (rj). (Entered: 07/21/2025) |
| 07/30/2025 | 276 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 271 Memorandum & Opinion, 272 Order, by KIRSTJEN M. NIELSEN, RENA BITTER, JOHN JOHNSON, SEAN MURPHY, BOSTON IMMIGRATION COURT, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS, DONALD NEUFELD, L. FRANCIS CISSNA, NATIONAL VISA CENTER, DEPARTMENT OF HOMELAND SECURITY, ANTONY J. BLINKEN, CARL C. RISCH. Fee Status: No Fee Paid. Parties have been notified. (Scott, Jaime) (Entered: 07/30/2025) |

USCA Case #25-5279      Document #2171785      Filed: 05/04/2026      Page 282 of 287

| | | |
|---|---|---|
| 07/30/2025 | 277 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 276 Notice of Appeal to DC Circuit Court,. (zjm) (Entered: 07/30/2025) |
| 08/01/2025 | 278 | NOTICE of Appearance by Nandini Singh on behalf of All Defendants (Singh, Nandini) (Main Document 278 replaced on 8/3/2025) (znmw). (Entered: 08/01/2025) |
| 08/01/2025 | 279 | MOTION for Order *for Accounting of Class Members* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Grano, Kimberly) (Entered: 08/01/2025) |
| 08/01/2025 | | USCA Case Number 25-5279 for 276 Notice of Appeal to DC Circuit Court, filed by KIRSTJEN M. NIELSEN, JOHN JOHNSON, DONALD NEUFELD, ANTONY J. BLINKEN, RENA BITTER, L. FRANCIS CISSNA, APRIL WELLS, NATIONAL VISA CENTER, SEAN MURPHY, BOSTON IMMIGRATION COURT, CARL C. RISCH, DEPARTMENT OF HOMELAND SECURITY, UNITED STATES DEPARTMENT OF STATE. (zjm) (Entered: 08/04/2025) |
| 08/07/2025 | 280 | ENTERED IN ERROR.....Joint MOTION to Modify *Revised Adjudication Plan's Class Identification Methodology* by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Text of Proposed Order)(Singh, Nandini) Modified on 8/12/2025 correctly refiled at 282 (zjm). (Entered: 08/07/2025) |
| 08/07/2025 | 281 | ENTERED IN ERROR.....ERRATA *Joint Motion to Modify Revised Adjudication Plan's Class Identification Methodology* by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS re 280 Motion to Modify,. (Singh, Nandini) Modified on 8/12/2025 correctly refiled at 282 (zjm). (Entered: 08/07/2025) |
| 08/07/2025 | 282 | MOTION to Amend/Correct *Joint Motion to Modify Revised Adjudication Plan's Class Identification Methodology* by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Text of Proposed Order)(Singh, Nandini) (Entered: 08/07/2025) |
| 08/12/2025 | 283 | NOTICE of Voluntary Dismissal re ASADULLAH ESCANDARI *(THIS CASE RELATES TO: Escandari v. Blinken 23-cv-2779)* by ASADULLAH ESCANDARI (Bless, Jesse) (Entered: 08/12/2025) |
| 08/15/2025 | 284 | Memorandum in opposition to re 279 MOTION for Order *for Accounting of Class Members* filed by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Text of Proposed Order)(Singh, Nandini) (Entered: 08/15/2025) |

JA 278

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 283 of 287

| | | |
|---|---|---|
| 08/20/2025 | 285 | Consent MOTION to Withdraw as Attorney *by Deepa Alagesan* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Alagesan, Deepa) (Entered: 08/20/2025) |
| 08/21/2025 | | MINUTE ORDER: The Consent Motion to Withdraw as an Attorney by Deepa Alagesan 285 is GRANTED. Deepa Alagesan is hereby withdrawn as an attorney in this matter. Signed by Judge Tanya S. Chutkan on 8/21/2025. (lcjb) (Entered: 08/21/2025) |
| 08/22/2025 | 286 | REPLY to opposition to motion re 279 Motion for Order *for Accounting of Class Members* filed by AFGHAN AND IRAQI ALLIES. (Grano, Kimberly) (Entered: 08/22/2025) |
| 09/12/2025 | 287 | NOTICE of Appearance by Ghita Schwarz on behalf of AFGHAN AND IRAQI ALLIES (Schwarz, Ghita) (Entered: 09/12/2025) |
| 09/15/2025 | 288 | NOTICE OF WITHDRAWAL OF APPEARANCE as to RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. Attorney Nandini Singh terminated. (Singh, Nandini) (Entered: 09/15/2025) |
| 09/17/2025 | 289 | NOTICE of Appearance by Joshua Clem on behalf of All Defendants (Clem, Joshua) (Main Document 289 replaced on 9/22/2025) (zjm). (Entered: 09/17/2025) |
| 09/23/2025 | 290 | NOTICE *of Lodging Progress Report* by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE (Scott, Jaime) (Entered: 09/23/2025) |
| 09/26/2025 | 291 | Consent MOTION to Withdraw as Attorney *Melissa S. Keaney* by AFGHAN AND IRAQI ALLIES, MOHAMMAD I. AMIRY, GHULAM RABANI DAWAR, JOHN DOE, ASADULLAH ESCANDARI, ABDUL K. NAJIB. (Attachments: # 1 Text of Proposed Order)(Keaney, Melissa) (Entered: 09/26/2025) |
| 09/29/2025 | | MINUTE ORDER: The Consent Motion to Withdraw Appearance of Melissa S. Keaney 291 is GRANTED. The appearance of Melissa S. Keaney is hereby withdrawn. Signed by Judge Tanya S. Chutkan on 9/29/2025. (lcjb) (Entered: 09/29/2025) |
| 12/02/2025 | 292 | NOTICE *OF CHANGE OF MATERIAL FACTS* by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE (Scott, Jaime) (Entered: 12/02/2025) |
| 12/05/2025 | 293 | MOTION to Enforce *the Revised Adjudication Plan and for Status Conference* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Kimberly Grano in Support of Motion to Enforce and Status Conference, # 2 Exhibit 1 - Plaintiffs' October 7, 2025 letter, # 3 Exhibit 2 - Defendants' October 28, 2025 letter, # 4 Exhibit 3 - Plaintiffs' October 30, 2025 letter, # 5 Exhibit 4 - Parties' email correspondence between Dec. 2-4, 2025, # 6 Text of Proposed Order)(Sepulveda, Pedro). Added MOTION for Hearing on 12/10/2025 (zjm). (Entered: 12/05/2025) |
| 12/08/2025 | | MINUTE ORDER: Defendants are hereby ORDERED to respond to Plaintiffs' 293 Motion to Enforce the Revised Adjudication Plan by 12/15/2025. Plaintiffs shall file any reply by 12/18/2025. The court will reserve judgment on whether to schedule a status conference until the parties submit their papers. Signed by Judge Tanya S. Chutkan on 12/8/2025. (lcjb) (Entered: 12/08/2025) |

JA 279

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 284 of 287

| | | |
|---|---|---|
| 12/15/2025 | 294 | Memorandum in opposition to re 293 MOTION to Enforce *the Revised Adjudication Plan and for Status Conference* MOTION for Hearing filed by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Declaration Andrea McDonald, # 2 Declaration S. Paul Kapur, # 3 Declaration Stuart Wilson, # 4 Text of Proposed Order)(Ingebretsen, Richard) (Entered: 12/15/2025) |
| 12/15/2025 | 295 | WITHDRAWN PURSUANT TO NOTICE FILED 12/30/2025.....MOTION to Stay re 272 Order, *Revised Adjudication Plan* by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Declaration Andrea McDonald, # 2 Declaration S. Paul Kapur, # 3 Declaration Stuart Wilson, # 4 Text of Proposed Order)(Ingebretsen, Richard) Modified on 12/31/2025 (zjm). (Entered: 12/15/2025) |
| 12/17/2025 | 296 | NOTICE *OF ERRATA TO DEFENDANTS LODGING OF PROGRESS REPORT FOR THE PERIOD OF JUNE 5, 2025 TO SEPTEMBER 3, 2025* by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE re 290 Notice (Other) (Scott, Jaime) (Entered: 12/17/2025) |
| 12/17/2025 | 297 | NOTICE OF SUPPLEMENTAL AUTHORITY by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE (Scott, Jaime) (Entered: 12/17/2025) |
| 12/18/2025 | 298 | NOTICE of Appearance by Guadalupe V Aguirre on behalf of AFGHAN AND IRAQI ALLIES (Aguirre, Guadalupe) (Entered: 12/18/2025) |
| 12/18/2025 | 299 | REPLY to opposition to motion re 293 Motion to Enforce,,, Motion for Hearing,, filed by AFGHAN AND IRAQI ALLIES. (Sepulveda, Pedro) (Entered: 12/18/2025) |
| 12/18/2025 | 300 | Memorandum in opposition to re 295 MOTION to Stay re 272 Order, *Revised Adjudication Plan* filed by AFGHAN AND IRAQI ALLIES. (Sepulveda, Pedro) (Entered: 12/18/2025) |
| 12/22/2025 | 301 | REPLY to opposition to motion re 295 Motion to Stay,, filed by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE. (Scott, Jaime) (Entered: 12/22/2025) |
| 12/23/2025 | 302 | NOTICE *of Lodging Progress Report* by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE (Scott, Jaime) (Entered: 12/23/2025) |
| 12/23/2025 | | MINUTE ORDER: Final judgment has been entered in this case: The court granted summary judgment to Plaintiffs on counts 1 and 2 and issued a Revised Adjudication Plan, ECF No. 272 ; count 3 was dismissed for lack of subject-matter jurisdiction, ECF No. 274 ; and counts 4 and 5 were dismissed as moot, ECF No. 251 . The court therefore construes Defendants' Motion to Stay the Revised Adjudication Plan, ECF No. 295 , as a request for relief from final judgment under Federal Rule of Civil Procedure 60(b), |

JA 280

USCA Case #25-5279    Document #2171785    Filed: 05/04/2026    Page 285 of 287

which significantly restricts the ability of district courts to revisit final orders." *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 81314 (D.C. Cir. 2024). On this record, Defendants have not met their burden of demonstrating "that a significant change in circumstances warrants" a suspension of this court's final order. *Gov't of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017). Defendants are therefore directed to file a Supplemental Brief by 1/6/2026 in support of their Rule 60(b) Motion. In particular, Defendants shall address whether they have lawful authority to suspend the processing of special immigrant visas when they are under court order to promptly process such visas, whether such a suspension is consistent with their statutory obligations, and whether a suspension of entry under 8 U.S.C. § 1182(f) can justify the suspension of visa processing. *See generally Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020). Defendants shall also indicate the anticipated length of the suspension. Plaintiffs may file a Response by 1/15/2026. Defendants' Reply, if any, shall be due by 1/20/2026. Signed by Judge Tanya S. Chutkan on 12/23/2025. (lcjb) Modified on 12/29/2025 to link ECF docket numbers (zcll). (Entered: 12/23/2025)

| Date | No. | Description |
|---|---|---|
| 12/30/2025 | 303 | NOTICE OF WITHDRAWAL OF MOTION by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE re 295 MOTION to Stay re 272 Order, *Revised Adjudication Plan* (Scott, Jaime) (Entered: 12/30/2025) |
| 12/30/2025 | 304 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 273 Memorandum & Opinion, 76 Order on Motion for Preliminary Injunction, 274 Order on Motion to Dismiss/Lack of Jurisdiction, 75 Memorandum & Opinion, 271 Memorandum & Opinion, 113 Order, 272 Order, by KIRSTJEN M. NIELSEN, RENA BITTER, UNITED STATES DEPARTMENT OF STATE, DONALD NEUFELD, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, ANTONY J. BLINKEN. Fee Status: No Fee Paid. Parties have been notified. (Scott, Jaime) Modified on 12/31/2025 to add docket link/ docket text (zjm). (Entered: 12/30/2025) |
| 12/31/2025 | 305 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 304 Notice of Appeal to DC Circuit Court,,. (zjm) (Entered: 12/31/2025) |
| 01/05/2026 | | USCA Case Number 25-5480 for 304 Notice of Appeal to DC Circuit Court,, filed by RENA BITTER, L. FRANCIS CISSNA, KIRSTJEN M. NIELSEN, DONALD NEUFELD, DEPARTMENT OF HOMELAND SECURITY, ANTONY J. BLINKEN, UNITED STATES DEPARTMENT OF STATE. (zjm) (Entered: 01/07/2026) |
| 01/06/2026 | 306 | RESPONSE TO ORDER OF THE COURT re Order,,,,,,,,, Set Deadlines,,,,,,,, *Minute Order entered 12/23/2025* filed by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Attachments: # 1 Declaration of Jessica Norris, # 2 Declaration of S. Paul Kapur)(Clem, Joshua) (Entered: 01/06/2026) |
| 01/15/2026 | 307 | RESPONSE re 306 Response to Order of the Court,, *Plaintiffs' Response to Defendants' Response to the Court's Dec. 23, 2025 Order* filed by AFGHAN AND IRAQI ALLIES. (Grano, Kimberly) (Entered: 01/15/2026) |
| 01/20/2026 | 308 | RESPONSE TO ORDER OF THE COURT re Order,,,,,,,,, Set Deadlines,,,,,,,, *Reply re Defendants' Supplemental Response (ECF No. 306)* filed by RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, |

JA 281

USCA Case #25-5379    Document #2171785    Filed: 05/04/2026    Page 286 of 287

DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, MICHAEL R. POMPEO, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. (Clem, Joshua) (Entered: 01/20/2026)

| | | |
|---|---|---|
| 02/06/2026 | 309 | OPINION & ORDER: Plaintiffs' 293 Motion to Enforce the Revised Adjudication Plan is GRANTED; Plaintiffs' 279 Motion for an Accounting of Class Members is DENIED; and the parties' 282 Joint Motion to Modify the Revised Adjudication Plan's Class Identification Methodology is DENIED without prejudice. The parties shall appear for a status conference in person in Courtroom 9 before Judge Tanya S. Chutkan on 2/24/2026 at 2:00 p.m. See Opinion & Order for further details. Signed by Judge Tanya S. Chutkan on 2/6/2026. (lcjb) (Entered: 02/06/2026) |
| 02/10/2026 | | Set/Reset Hearings pursuant to 309 Opinion and Order. (zakb) (Entered: 02/10/2026) |
| 02/12/2026 | 310 | NOTICE of Appearance by Larissa Johnson on behalf of All Defendants (Johnson, Larissa) (Entered: 02/12/2026) |
| 02/23/2026 | 311 | Unopposed MOTION for Leave to Appear by Telephone or Video *at February 24, 2026 Status Conference* by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Grano, Kimberly) (Entered: 02/23/2026) |
| 02/23/2026 | | MINUTE ORDER: Plaintiffs' 311 Unopposed Motion for Leave is GRANTED. Counsel for Plaintiffs may appear by video at the status conference set for 2/24/2026 should the weather impact their ability to travel. Counsel shall notify Chambers by 11 a.m. on 2/24/2026 whether they will appear remotely. Signed by Judge Tanya S. Chutkan on 2/23/2026. (lcjb) (Entered: 02/23/2026) |
| 02/24/2026 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Status Conference held on 2/24/2026. For reasons set forth on the record, a **Senior Representative from the Department of State** is to be present at the next hearing to address the Court's questions from the status hearing held today. Joint Status Report due by 3/30/2026. Further Status Conference set for 4/1/2026 at 10:30 AM in Courtroom 9- In Person before Judge Tanya S. Chutkan. (Court Reporter Christine Asif.) (zcll) (Entered: 02/24/2026) |
| 02/25/2026 | 312 | TRANSCRIPT OF PROCEEDINGS before Judge Tanya S. Chutkan held on 2/24/2026; Page Numbers: 1-32. Date of Issuance:2/25/2026. Court Reporter Christine T. Asif, Telephone number 202-354-3247, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/18/2026. Redacted Transcript Deadline set for 3/28/2026. Release of Transcript Restriction set for 5/26/2026.(Asif, Christine) (Entered: 02/25/2026) |

JA 282

USCA Case #25-5279     Document #2171785     Filed: 05/04/2026     Page 287 of 287

| | | |
|---|---|---|
| 03/24/2026 | 313 | NOTICE *of Lodging Progress Report* by RENA BITTER, ANTONY J. BLINKEN, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, DONALD NEUFELD, KIRSTJEN M. NIELSEN, UNITED STATES DEPARTMENT OF STATE (Scott, Jaime) (Entered: 03/24/2026) |
| 03/30/2026 | 314 | Joint STATUS REPORT by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Declaration of Andrea McDonald, # 2 Declaration of Andrew Veprek, # 3 Exhibit - Plaintiffs' Questions to Defendants)(Grano, Kimberly) (Entered: 03/30/2026) |
| 04/01/2026 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Status Conference held on 4/1/2026. The parties update the Court on the posture of the case. Assistant Secretary of State Andrew Veprek present to answer the Courts inquries. The parties are hereby ordered to meet and confer prior to the next hearing. Joint Status Report due by 4/30/2026. Further Status Conference set for 5/7/2026 at 2:00 PM in Courtroom 9- In Person before Judge Tanya S. Chutkan. (Court Reporter Rebecca Monroe.) (zcll) (Entered: 04/01/2026) |
| 04/02/2026 | 315 | NOTICE OF WITHDRAWAL OF APPEARANCE as to RENA BITTER, ANTONY J. BLINKEN, BOSTON IMMIGRATION COURT, L. FRANCIS CISSNA, DEPARTMENT OF HOMELAND SECURITY, JOHN JOHNSON, SEAN MURPHY, NATIONAL VISA CENTER, DONALD NEUFELD, KIRSTJEN M. NIELSEN, CARL C. RISCH, UNITED STATES DEPARTMENT OF STATE, APRIL WELLS. Attorney Richard Gordon Winstead Ingebretsen terminated. (Ingebretsen, Richard) (Entered: 04/02/2026) |
| 04/30/2026 | 316 | Joint STATUS REPORT by AFGHAN AND IRAQI ALLIES. (Attachments: # 1 Text of Proposed Order)(Simeone, Justin) (Entered: 04/30/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/03/2026 12:33:12 | | |
| **PACER Login:** | jaime.a.scott | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-01388-TSC |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

JA 283