No. 25-5279

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF
THEIR FAITHFUL SERVICE TO THE UNITED STATES, On Their Own and
On Behalf of Others Similarly Situated,

*Plaintiffs-Appellees*,

v.

MARCO A. RUBIO, in his official capacity as
Secretary of the United States Department of State, *et al*.,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court for the District of Columbia
No. 1:18-cv-1388 (Hon. Tanya S. Chutkan)

———————————

**BRIEF OF FORMER U.S. REPRESENTATIVE EARL BLUMENAUER AS
*AMICUS CURIAE* IN SUPPORT OF APPELLEES**

David Carter
Vinson & Elkins LLP
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Phone: 214.220.7893
Email: davidcarter@velaw.com

Meghan Natenson
Vinson & Elkins LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Phone: 415.979.6962
Email: mnatenson@velaw.com

*Counsel for Amicus Curiae Earl Blumenauer*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), *Amicus* former U.S. Representative Earl Blumenauer ("Mr. Blumenauer" or "*Amicus*") submits this certificate as to parties, rulings, and related cases.

### A.     PARTIES AND AMICUS CURIAE

Except for the following, all parties, intervenors, and amicus parties appearing in this Court are listed in the Appellants' Opening Brief:

- Former U.S. Representative Earl Blumenauer.

### B.     RULINGS UNDER REVIEW

References to the rulings at issue appear in the Certificate as to Parties, Rulings, and Related Cases included in the Appellants' Opening Brief.

### C.     RELATED CASES

The history of this case before the Court appears in the Certificate as to Parties, Rulings and Related Cases included in the Appellants' Opening Brief. Counsel for *Amicus* are not aware of any related cases within the meaning of Circuit Rule 28(a)(1)(C).

i

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF AUTHORITIES ...................................................................... iii

GLOSSARY ............................................................................................ vi

STATUTES AND REGULATIONS ............................................................1

INTEREST OF AMICUS CURIAE ............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

FACTUAL BACKGROUND ......................................................................5

ARGUMENT ...........................................................................................5

    I.    The SIV program was created following bipartisan concerns for national security and serious violence faced by Iraqi and Afghan allies...........................................................................................6

    II.    Aiming to reduce ongoing delays and backlog, Congress imposed a nine-month processing mandate in 2013.............................................8

    III.    Congress's repeated reauthorizations reaffirmed its nine-month mandate and acknowledged the serious harm caused by unreasonable delays.................................................................11

    IV.    Appellants' changed-circumstances arguments ignore Congress's continued emphasis on the need for speedy SIV adjudications..........15

CONCLUSION.......................................................................................19

CERTIFICATE OF SERVICE .................................................................20

CERTIFICATE OF COMPLIANCE.........................................................21

# TABLE OF AUTHORITIES

**Cases**

*Afghan & Iraqi Allies v. Blinken*,
    103 F.4th 807 (D.C. Cir. 2024) ................................................................ 6, 9, 16

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the
    United States v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016)...................................6

**Statutes**

Afghan Allies Protection Act of 2009
    Pub. L. No. 111-8, 123 Stat. 807 ....................................................................1, 7

Consolidated Appropriations Act of 2019,
    Pub. L. No. 116-6, 133 Stat. 391 (2019) ...........................................................11

Consolidated Appropriations Act, 2023,
    Pub. L. No. 117-328 ................................................................ 12, 16, 18

Emergency Security Supplemental Appropriations Act, 2021,
    Pub. L. No. 117-31 ................................................................ 11, 13

Further Consolidated Appropriations Act, 2024,
    Pub. L. No. 118-47 ................................................................ 12, 16, 18

National Defense Authorization Act for Fiscal Year 2014,
    Pub. L. No. 113-66, 127 Stat. 672 (2014) ...........................................................1, 8

National Defense Authorization Act for Fiscal Year 2016,
    Pub. L. 114-92, 129 Stat. 1045-47 (2016)...........................................................11

National Defense Authorization Act for Fiscal Year 2017,
    Pub. L. No. 114-328, 130 Stat. 2479 (2017) .......................................................11

National Defense Authorization Act for Fiscal Year 2018,
    Pub. L. No. 115-91, 131 Stat. 1649 (2018) .........................................................11

National Defense Authorization Act for Fiscal Year 2020,
    Pub. L. No. 116-92, 133 Stat. 1636 (2020) .........................................................11

National Defense Authorization Act for Fiscal Year 2021,
    Pub. L. No. 116-283, 134 Stat. 3922 (2021) .......................................................11

Refugee Crisis in Iraq Act of 2007,
Pub. L. No. 110-181, 122 Stat. 395 (2008) ......................................................1, 7

Refugee Crisis in Iraq Act of 2007
S.1651, 110th Cong. (2007) ...........................................................................8

**Legislative History**

H. Rept. 117-88, Report of the Committee on Appropriations,
Department of Defense Appropriations Bill 2022 (July 15, 2021) .....................12

H. Rept. 118-146, State, Foreign Operations, and Related Programs Appropriations
Bill, 2024 (July 17, 2023).................................................................................17

153 Cong. Rec. H15353 (daily ed. Dec. 12, 2007)
(statement of Rep. Blumenauer).....................................................................7

153 Cong. Rec. H5573 (daily ed. May 22, 2007)
(statement of Rep. Blumenauer)..................................................................7, 8

153 Cong. Rec. S7892 (daily ed. June 19, 2007)
(statement by Sen. Kennedy for himself, Sen. Smith, Sen. Biden, Sen. Hagel,
Sen. Leahy, Sen. Levin, and Sen. Lieberman) ....................................................6, 8

154 Cong. Rec. H75-H259, S54-S57...............................................................6

155 Cong. Rec. H2738-H2739 (daily ed. Feb. 25, 2009)........................................7

159 Cong. Rec. 162 (November 14, 2013)
(statement of Rep. Blumenauer)...................................................................10

159 Cong. Rec. H2030-H2031 (Apr. 16, 2013).....................................................9

159 Cong. Rec. H3622 (daily ed. June 14, 2013)
(statement of Rep. Blumenauer)................................................................9, 10

159 Cong. Rec. S7050 (daily ed. Sept. 30, 2013)
(statement of Sen. Shaheen) ......................................................................10

159 Cong. Rec. S7100 (daily ed. Oct. 1, 2013)
(statement of Sen. Leahy)...........................................................................10

164 Cong. Rec. S3900-S3902 (daily ed. June 13, 2018)
(statement of Sen. Shaheen) ......................................................................12

165 Cong. Rec. E614 (May 16, 2019)
(statement of Rep. Blumenauer)........................................................................13

166 Cong. Rec. H6664 (daily ed. Dec. 3, 2020)..................................................12

167 Cong. Rec. E804 (Extension of Remarks – July 26, 2021)
(statement of Rep. González-Colón) ............................................................ 13, 14

167 Cong. Rec. E831 (Extension of Remarks – Aug. 9, 2022)
(statement of Rep. Blumenauer)........................................................................13

167 Cong. Rec. H4348 (daily ed. Aug. 23, 2021)
(statement of Rep. Wexton)...............................................................................14

167 Cong. Rec. H4364 (daily ed. Aug. 24, 2021) ...............................................14

167 Cong. Rec. S5213 – S5214 (daily ed. July 30, 2021)
(statement of Sen. Shaheen) ..............................................................................14

**Rules**

D.C. Cir. R. 28(a)(1) ............................................................................................ i

Fed. R. App. P. 29(a)(4)(E).................................................................................1

**Other Authorities**

Office of Sen. Jeanne Shaheen, *Standing Up for Our Afghan Allies* (Sept. 2022),
https://www.shaheen.senate.gov/imo/media/doc/Afghan%20SIV%20Report%20
-%20FINAL.pdf (last visited June 9, 2026)......................................................11

*Earl Blumenauer: 28 Years in Congress*,
https://www.earlblumenauer.com/media/uploads/earlblumenauer28yearsincongr
ess.pdf .............................................................................................................2, 3

Letter to President Biden (May 18, 2021),
https://www.shaheen.senate.gov/imo/media/doc/2021-05-
18%20%5bLetter%5d%20Afghan%20SIV%20Program.pdf.............................13

Letter to President Biden (Aug. 19, 2021),
https://www.shaheen.senate.gov/imo/media/doc/2021-08-19%20-
%20SIV%20Evacuation%20and%20Implementation%20Letter%20(2).pdf......15

# <u>GLOSSARY</u>

As used herein,

"SIV" shall mean Special Immigrant Visa.

## STATUTES AND REGULATIONS

Relevant statutes and regulations are reproduced in the addenda to Appellants' and Appellees' briefs.

## INTEREST OF AMICUS CURIAE

Earl Blumenauer is a former Member of the U.S. House of Representatives and represented Oregon's Third Congressional District in the Congress from 1996 to 2025.[1]  Through his nearly 30 years of service in the U.S. Congress, Mr. Blumenauer developed a strong interest in the proper administration of duly-enacted Acts of Congress.  In particular, Mr. Blumenauer had a direct interest and involvement in issues relating to the Special Immigrant Visa ("SIV") program, and spearheaded bipartisan efforts that led to the creation of that program and repeated reauthorizations of key pieces of legislation in this area, such as the Refugee Crisis in Iraq Act of 2007, Pub. L. No. 110-181, 122 Stat. 395; the Afghan Allies Protection Act of 2009, Pub. L. No. 111-8, 123 Stat. 807; and the National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, 127 Stat. 672.  Indeed, for more than fifteen years, Mr. Blumenauer worked to make sure that the SIV

---

[1] No party or party's counsel authored this brief in whole or in part, and no party or party's counsel contributed money intended to fund preparing or submitting the brief.  *See* Fed. R. App. P. 29(a)(4)(E).  Counsel to Mr. Blumenauer represents him in this matter on a *pro bono* basis.  *Amicus* received consent from all parties to file this brief.

program was repeatedly reauthorized and did not run out of visas.

Mr. Blumenauer submits this separate brief to provide the Court background and context regarding the legal and moral imperative of U.S. government agencies to faithfully implement the Refugee Crisis in Iraq Act of 2007 and the Afghan Allies Protection Act of 2009, and particularly the visa-processing deadlines stated therein. As one of the original sponsors of the SIV legislation, Mr. Blumenauer can provide the Court a unique perspective on the background and history associated with the legislation Congress has enacted that bears on the issues in this case. Additionally, Mr. Blumenauer believes the United States should show a strong commitment to our allies in Iraq and Afghanistan, and to the policies embodied within the SIV program. And he shares a strong expectation, consistent with Congressional mandates, that SIV applications be processed with reasonable dispatch by the Executive Branch. *See, e.g., Earl Blumenauer: 28 Years in Congress*, https://www.earlblumenauer.com/media/uploads/earlblumenauer28yearsincongress .pdf (last visited June 9, 2026) (*Amicus* began working with former Senators John McCain and Ted Kennedy "to uphold our responsibility to people whose lives were at risk for having helped and having put confidence in the American government.").

The importance of these issues, and the relevance of Congress's actions in this area of the law, remain urgent following the U.S. evacuation of Afghanistan, the number of SIV applicants that remain in Afghanistan and are facing serious deadly

threats by the Taliban, ISIS, and militant non-State actors, and the extreme delay experienced by SIV applicants, which places those applicants' lives in continuing danger. A similar situation continues in Iraq, where in many instances SIV applicants have been forced to wait over a decade for a decision. As this *amicus* brief will explain, the agency-based delays in both the Afghan and Iraqi SIV programs frustrates Congress's intent in enacting Refugee Crisis in Iraq Act and the Afghan Allies Protection Act, and setting forth a nine-month deadline for the quick processing of SIV applications.

## INTRODUCTION AND SUMMARY OF ARGUMENT

For more than two decades, thousands of Afghan and Iraqi individuals have provided critical assistance to American and allied troops and civilian missions in conflicts overseas. As a result of their association with, and service to, the United States, these Afghan and Iraqi individuals have incurred significant personal risk, including being targeted with harassment, violence, and persecution at the hands of the Taliban, the Islamic State (ISIS), and other extremist groups in their home countries. Indeed, these individuals and their families are targeted by such bad actors and "are subject to disappearances, torture, and murder when they are caught."[2]

---

[2]    *See Earl Blumenauer: 28 Years in Congress*, https://www.earlblumenauer.com/media/uploads/earlblumenauer28yearsincongress.pdf (last visited June 9, 2026).

3

Being a friend to the United States should not be deadly. In an effort to support and secure the safety of brave individuals who risked their lives to support American troops, Mr. Blumenauer—with broad bipartisan support from his Congressional colleagues—helped establish and repeatedly reauthorize the Iraqi and Afghan SIV programs since approximately 2006. And the importance of these SIV programs has increased since the withdrawal of American troops from Afghanistan, and the Taliban's subsequent takeover of the nation's governance.

Throughout its creation and repeated reauthorizations of the Afghan and Iraqi SIV programs, Congress clearly expressed its intent that—absent expressly enumerated and narrow circumstances—SIV applicants must have their applications timely processed "not later than 9 months" after the application's submission. *See* Refugee Crisis in Iraq Act § 1242(c)(1) (2013); Afghan Allies Protection Act § 602(b)(4)(A) (2013). Yet Defendants-Appellants have failed to comply with this Congressional mandate, greatly exceeding the statutory timeframe and leaving thousands of applicants in administrative limbo while they face continued persecution and violence in their home countries. Mr. Blumenauer submits this *amicus* brief to reinforce Congress's intent on this critical matter: absent clear exceptions, SIV applications must be processed within nine months of their submission. The U.S. Government promised these allies a speedy path to safety in the United States in exchange for their support; this Court should reject the

4

Administration's attempts to undo that promise and escape accountability for their moral and legal responsibilities.

## FACTUAL BACKGROUND

*Amicus* Blumenauer incorporates the Appellees' Counter-Statement of the Case by reference. *See* Appellees' Br. at 5-14.

## ARGUMENT

Congress has repeatedly enacted laws that expect and require efficient processing of SIV applications. From the initial enactment of the Refugee Crisis in Iraq Act and Afghan Allies Protection Act, through the imposition of a nine-month processing mandate in 2013, and continuing through later program expansions, Congress has made unmistakably clear that applicants who risked their lives to serve the United States must have their applications adjudicated with reasonable dispatch. Critically, Congress has maintained and strengthened this mandate with full awareness of the very circumstances that Defendants-Appellants now invoke to justify their noncompliance—including the withdrawal from Afghanistan, the closure of the U.S. Embassy in Kabul, and subsequent increase in applications. Rather than relax its expectations in light of these developments, Congress responded by authorizing tens of thousands of additional visas, extending application deadlines, and directing the Executive Branch to eliminate processing backlogs. The District Court correctly entered summary judgment in favor of

Plaintiffs-Appellees and granted injunctive relief, which advances Congress's clearly expressed intent and provides a critical pathway to remedy Defendants-Appellants' unreasonable delays.  The judgment below should be affirmed.

## I.    The SIV program was created following bipartisan concerns for national security and serious violence faced by Iraqi and Afghan allies.

Over a decade ago, Congress created the SIV program following a bipartisan consensus forged in the late 2000s.  Since the program's initial enactment, Congress underscored key concerns underlying the need for speedy SIV adjudications, including national security interests and the serious risks that our Afghan and Iraqi allies continue to face.  Indeed, the SIV program recognizes that Afghan and Iraqi allies face "grave dangers" as a result of their service to American forces and, in some cases, can only be protected by prompt resettlement in the United States.  *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 273 (D.D.C. 2016); *see also Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 811 (D.C. Cir. 2024) (noting the "many Iraqi and Afghan nationals [who] helped the United States—often at great personal risk").

In recognition of such serious threats, the Refugee Crisis in Iraq Act—the statute that first created the SIV program—received overwhelming bipartisan support in Congress, passing by a vote of 369-46 in the House of Representatives and 91-3 in the Senate.  154 Cong. Rec. H75-H259, S54-S57; *see also* 153 Cong. Rec. S7892 (daily ed. June 19, 2007) (statement by Sen. Kennedy for himself, Sen.

6

Smith, Sen. Biden, Sen. Hagel, Sen. Leahy, Sen. Levin, and Sen. Lieberman) (explaining that "[m]any Iraqis who have worked in critical positions in direct support of the U.S. Government in Iraq have been killed or injured in reprisals for their support of our effort"); 153 Cong. Rec. H5573 (daily ed. May 22, 2007) (statement of Rep. Blumenauer) ("[O]ur moral responsibility is unquestionable to Iraqis whose lives are at risk because they helped the United States.  Having cooperated with the United States military, the United Nations, or even a nongovernmental organization, can literally mean a death sentence at the hands of any of the many sides of this civil war."); 153 Cong. Rec. H15353 (daily ed. Dec. 12, 2007) (statement of Rep. Blumenauer) (supporting provision of SIVs for "Iraqis at risk because they helped the United States," based in part on prior bill introduced by *Amicus*).  President Bush signed the Refugee Crisis in Iraq Act into law on January 28, 2008.  *See* Pub. L. No. 110-181, 122 Stat. 395-401 (2008).  Congress demonstrated its ongoing commitment to the program when it later extended SIV protection to eligible Afghans by enacting the Afghan Allies Protection Act of 2009. *See* Pub. L. No. 111-8, 123 Stat. 807; 155 Cong. Rec. H2738-H2739 (daily ed. Feb. 25, 2009) (text of the Afghan Allies Protection Act within the Omnibus Appropriations Act of 2009).

Through the Refugee Crisis in Iraq Act and Afghan Allies Protection Act, Congress expressed its intention that the Executive Branch act efficiently to protect

the safety of individual applicants and promote our nation's interests.  For example, in an early version of the Refugee Crisis in Iraq Act, the sponsors included a list of congressional findings intended to establish the bill's policy justification.  Included in the list was a finding that "[t]he humanitarian needs of [] Iraqi refugees" are "significant," and that such needs should be "*quickly* and adequately met."  S.1651, 110th Cong. § 2 (2007) (emphasis added); *see also* 153 Cong. Rec. S7892 (daily ed. June 19, 2007) (statement by Sen. Kennedy for himself, Sen. Smith, Sen. Biden, Sen. Hagel, Sen. Leahy, Sen. Levin, and Sen. Lieberman) (same); 153 Cong. Rec. H5573 (daily ed. May 22, 2007) (statement by Rep. Blumenauer) (explaining that "[w]e are, sadly, failing Iraqi refugees," lamenting "bureaucratic hurdles," and emphasizing need for SIV program).

## II.    Aiming to reduce ongoing delays and backlog, Congress imposed a nine-month processing mandate in 2013.

Although the efficient and speedy resettlement of Afghan and Iraqi allies has been among Congress's policy priorities from the beginning, the Executive Branch's initial implementation of the SIV program was anything but.  Consequently, in 2013, Congress directed Appellants to "improve the efficiency by which applications" for SIVs "are processed so that *all steps*" under government control "should be completed *not later than 9 months*" after an application is submitted, with a limited exception for "high-risk cases."  *See* National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, §§ 1218-19, 127 Stat. 910, 914 (2013) (as codified

8

in Refugee Crisis in Iraq Act and Afghan Allies Protection Act) (emphasis added);

Refugee Crisis in Iraq Act § 1242(c)(1) (2013) (same); Afghan Allies Protection Act

§ 602(b)(4)(A) (2013) (same); *see also Afghan & Iraqi Allies*, 103 F.4th at 811 (2013

amendments intended "to address the slow pace at which the government had been

processing applications").  And, underscoring its strong interest in the efficient

administration of the SIV program, Congress mandated that Appellants regularly

report the number and status of SIV applications and improvements to the

application process.  *See* Refugee Crisis in Iraq Act § 1248(a), (f); Afghan Allies

Protection Act § 602(b)(12).

The need for timely SIV application processing and the serious consequences

of an ever-growing backlog animated Congress's discussions leading up to the 2013

amendments and other extensions of the SIV program.  For instance, in remarks

urging his colleagues to extend and reform the Iraqi and Afghan SIV programs, Mr.

Blumenauer emphasized the importance that "the special immigration visas … that

have already been authorized are utilized," criticizing the Executive Branch's past

performance on processing SIV applications as "abysmal" and "incredibly slow."

159 Cong. Rec. H2030-H2031 (Apr. 16, 2013).  The "backlog and delay means …

years for those who risked their lives to help the U.S. mission, and means living in

constant fear and hiding, knowing they or their families could be killed at any

moment."  159 Cong. Rec. H3622 (daily ed. June 14, 2013) (statement of Rep.

9

Blumenauer).  With this backdrop, Mr. Blumenauer explained that the amendment was meant to "enhance[] the programs by providing efficiency, transparency, accuracy, and oversight."  *Id.*; *see also* 159 Cong. Rec. 162, 1 (November 14, 2013) (statement of Rep. Blumenauer) (noting "the State Department [has] drag[ged] its feet on these visas for Afghans who risked their lives," and "have only approved a trickle" of SIVs).  Likewise, then-Representative Adam Kinzinger (R-IL) explained that while the parties "sponsoring this amendment probably don't even agree on the future of the Iraq war or the Afghanistan war[,]" they did agree that it was critical to uphold the United States' commitment to the SIV program.  159 Cong. Rec. H3622 (daily ed. June 14, 2013).  And he too recognized that the SIV program "has been bogged down in bureaucracy."  *Id.*

Numerous Senators raised similar concerns with the backlog of SIV applications.  For example, Senator Jeanne Shaheen explained, "The stories we are hearing about the backlog are entirely inexcusable.  Applicants ought to be able to cut through the redtape and bureaucratic nightmare to get their visas processed quickly and more efficiently, while still ensuring proper vetting and background checks."  159 Cong. Rec. S7050 (daily ed. Sept. 30, 2013); *see also* 159 Cong. Rec. S7100 (daily ed. Oct. 1, 2013) (statement of Sen. Leahy) (noting "there are thousands of Iraqis still waiting for their paperwork to be processed").  The strong concern for timely processing underlying the amendments was also reaffirmed in a September

10

2022 report, in which Senator Shaheen made clear that in modifying the program in Fiscal Year 2014, Congress "included a requirement that these government-controlled stages [of review] *be completed within nine months*" absent an exception for high-risk applicants.[3]

**III.    Congress's repeated reauthorizations reaffirmed its nine-month mandate and acknowledged the serious harm caused by unreasonable delays.**

From 2013 to 2024, Congress repeatedly expanded and reauthorized the SIV program. This included enacting legislation to expedite the special-immigrant resettlement process in light of the 2021 withdrawal of U.S. forces from Afghanistan. *See* National Defense Authorization Act for Fiscal Year 2016, Pub. L. 114-92, 129 Stat. 1045-47 (expanding SIV program); National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, 130 Stat. 2479 (same); National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1649 (same); Consolidated Appropriations Act of 2019, Pub. L. No. 116-6, 133 Stat. 391 (same); National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, 133 Stat. 1636 (same); National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3922, § 1216 (same); Emergency Security Supplemental Appropriations Act, 2021 ("ESSAA"), Pub. L. No. 117-31 §§ 401-04

---

[3] Office of Sen. Jeanne Shaheen, *Standing Up for Our Afghan Allies* (Sept. 2022), https://www.shaheen.senate.gov/imo/media/doc/Afghan%20SIV%20Report%20-%20FINAL.pdf (emphasis added) (last visited June 9, 2026).

(adding provisions to Afghan Allies Protection Act to speed SIV processing, e.g., a provision allowing officials to waive a required medical exam and clarifying that the nine-month statutory requirement includes *all* government-controlled steps, including Chief of Mission approval); Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 7034(d)(9) (expanding SIV program); Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 7034(d)(9) (same).

Congress's repeated, bipartisan reauthorizations of the SIV program, as well as the context and history of those enactments, demonstrate Congress's longstanding concern over delays and expectation that Defendants-Appellants efficiently adjudicate the SIV applications submitted by class members here. *See, e.g.*, 164 Cong. Rec. S3900-S3902 (daily ed. June 13, 2018) (statement of Sen. Shaheen) ("The support for this program truly is bipartisan"). As explained in the House's Conference Report related to the National Defense Authorization Act for Fiscal Year 2021, "[a]ny backlog in processing special immigrant visa applications should be addressed as quickly as possible so as to honor the United States commitment to Afghan allies as soon as possible." 166 Cong. Rec. H6664 (daily ed. Dec. 3, 2020). "The failure to process such applications in an expeditious manner puts lives at risk and jeopardizes a critical element of support to United States operations in Afghanistan." *Id.*; *see also* H. Rept. 117-88, at 112, Report of the Committee on Appropriations, Department of Defense Appropriations Bill 2022 (July 15, 2021)

12

("the Committee is concerned with the backlog of current applications and urges the Secretary of Defense to review and improve the Department of Defense's contribution to this process"); 165 Cong. Rec. E614 (May 16, 2019) (statement of Rep. Blumenauer) ("the processing times for existing applications has slowed dramatically, forcing many to wait for years while living in fear of being targeted"); Letter to President Biden, at 1 (May 18, 2021) (identifying need to "[a]ddress the backlog of applications that has left Afghan applicants languishing in a dangerous limbo")[4]; 167 Cong. Rec. E831 (Extension of Remarks – Aug. 9, 2022) (statement of Rep. Blumenauer) (SIV applicants face a system with "substantial backlogs, long processing times, and logistical obstacles.").

Indeed, Members of Congress acknowledged that the need for timely processing became even more urgent in light of the United States' withdrawal from Afghanistan and the "imminent threat facing Afghan translators and their families" from the Taliban. 167 Cong. Rec. E804 (Extension of Remarks – July 26, 2021) (statement of Rep. González-Colón). In connection with Congress's 2021 enactment of an extension and modification aimed to improve the SIV program's efficiency, *see* Emergency Security Supplemental Appropriations Act, Pub. L. No. 117-31 §§ 401-04, Senator Shaheen explained that "[a]s U.S. troops withdraw from

---

[4] *Available at* https://www.shaheen.senate.gov/imo/media/doc/2021-05-18%20%5bLetter%5d%20Afghan%20SIV%20Program.pdf.

Afghanistan, the safety and security of our Afghan allies who put their lives on the line to help our servicemembers and diplomats must be a top priority."  167 Cong. Rec. S5213 – S5214 (daily ed. July 30, 2021).  In fact, "[t]he Taliban's brutality against vulnerable populations like our Afghan allies has increased over the last several months, but as the U.S. withdrawal nears completion, conditions on the ground have become all the more dangerous." *Id.*  As explained by Representative Brian Mast (R-FL) referencing "the dangers" described in a classified briefing on the situation in Afghanistan, "there are Special Immigrant Visa applicants cut off who need our help *right now* who will be killed."  167 Cong. Rec. H4364 (daily ed. Aug. 24, 2021) (emphasis added); *see also* 167 Cong. Rec. H4348 (daily ed. Aug. 23, 2021) (statement of Rep. Wexton) (raising concerns about "deteriorating situation in Afghanistan" and emphasizing that we "cannot abandon our Afghan allies"); 167 Cong. Rec. E804 (Extension of Remarks – July 26, 2021) (statement of Rep. González-Colón) ("These translators played a critical role in serving the United States and helped ensure the safety and success of our troops abroad.  Yet today our allies--and their families--are being hunted down and killed by the Taliban as it retakes Afghanistan.").  Critically, as stated in a bipartisan letter signed by over half of all Senators around the time of the U.S. withdrawal from Afghanistan, "all application processing *must comply* with the Congressionally-mandated nine month

14

processing requirement." Letter to President Biden, at 2 (Aug. 19, 2021) (emphasis added).[5]

## IV. Appellants' changed-circumstances arguments ignore Congress's continued emphasis on the need for speedy SIV adjudications.

Defendants-Appellants, however, ignore Congress's express concerns over processing delays, which animated its various amendments to the SIV program. For instance, in amending the Afghan Allies Protection Act, Congress reaffirmed the importance of the nine-month benchmark, emphasizing that all government-controlled steps "should be completed not later than 9 months." ESSAA § 401(a)(3). Appellants seize on the word "should" to rehash their prior arguments that this language is merely precatory. *See* Appellants' Br. at 43. But Congress's confirmation that all government-controlled administrative steps fall within the nine-month window reflects the opposite intent: Congress understood that agencies were using intermediate processing stages—such as Chief of Mission review—as justifications for exceeding the deadline, and responded by reconfirming that those stages are part of the nine-month period, not exceptions to it. A legislature that considered administrative processing steps to be legitimate grounds for delay would have no reason to specify that those steps fall within the deadline it was setting. This Court need not revisit its prior determination that the nine-month timeline is akin to

---

[5] *Available at* https://www.shaheen.senate.gov/imo/media/doc/2021-08-19%20-%20SIV%20Evacuation%20and%20Implementation%20Letter%20(2).pdf.

a "command." *Afghan & Iraqi Allies*, 103 F.4th at 817.

Additionally, since *Amicus* last appeared before this Court in the prior appeal, Congress again expanded the SIV program—and did so with full awareness of the very circumstances that Appellants again invoke to justify their noncompliance. Appellants contend that the United States' withdrawal from Afghanistan, the closure of the U.S. Embassy in Kabul, and the subsequent surge in applications fundamentally altered the landscape, purportedly rendering the District Court's benchmarks unworkable. *See* Appellants' Br. at 49. But far from signaling any retreat from its expectations, Congress responded to these developments by increasing the number of authorized SIVs, extending application deadlines, and demanding that the Executive Branch take concrete steps to eliminate the processing backlog.

Indeed, in December 2022—well after the withdrawal from Afghanistan and the surge in applications that Appellants emphasize—Congress enacted the Consolidated Appropriations Act, 2023, which authorized an additional 4,000 SIVs for Afghan principal applicants and extended the application deadline to December 31, 2024. Pub. L. No. 117-328, § 7034(d)(9). Then, in March 2024, Congress raised the Afghan SIV cap to 50,500 applicants and extended both the employment-termination date and the application deadline to December 31, 2025. *See* Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, Div. F, § 7034(d)(9).

These successive expansions are significant: Congress did not merely maintain the status quo in the face of any changed circumstances that Defendants-Appellants assert. Instead, Congress materially enlarged the program, authorizing tens of thousands of additional visas and extending the application deadline. That is the action of a legislature that expects the Executive Branch to process applications, not one that has acquiesced in indefinite delay.

In fact, the legislative record reflects Congress's increased frustration with the slow pace of SIV processing. In July 2023, the House Appropriations Committee issued a report expressing pointed concern with the ongoing backlog. The Committee stated that it "encourages the Secretary of State to take appropriate steps to address the years of backlog of families of Special Immigrant Visa (SIV) holders," observing that "[s]ome family members of SIV holders have waited more than five years without any notification from either the Department of State or the Department of Homeland Security on the status or timeline of an SIV applicant's visa." H.R. Rep. No. 118-146, State, Foreign Operations, and Related Programs Appropriations Bill, 2024 (July 17, 2023), at 15. The Committee further noted that it "remains concerned about the backlog and delays of SIV applications that continue to hamper the program," and recommended that the Department of State receive additional funds "to fully vet applicants, eliminate the backlog, and complete the adjudication of these SIV cases." *Id*. at 110. The Committee also directed the Secretary of State

17

to submit a report within 45 days "on the status of the Afghan SIV program and the specific actions taken to provide additional personnel, operational, and technical support to eliminate processing backlogs and expedite the adjudication of Afghan SIV cases." *Id.*

The significance of these developments is self-evident. Appellants ask this Court to credit the withdrawal from Afghanistan, the closure of the embassy in Kabul, and the resulting surge in applications as justifications for relaxing the benchmarks the District Court imposed. But Congress was fully aware of each of these developments when it twice renewed and expanded the SIV program and when its committees demanded concrete action to eliminate the backlog after the 2021 withdrawal. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 7034(d)(9); Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 7034(d)(9). Congress's response to the same changed circumstances that Appellants invoke was not to lower its expectations, but instead to reemphasize the need for speedy processing of SIV applications. This Court should deny Appellants' requested relief and affirm the District Court's judgment.

# CONCLUSION

The Court should affirm the District Court's judgment.

Respectfully submitted,

Date: June 10, 2026                    /s/ Meghan Natenson

David Carter                          Meghan Natenson
Vinson & Elkins LLP                   Vinson & Elkins LLP
2001 Ross Avenue, Suite 3900          555 Mission Street, Suite 2000
Dallas, TX 75201                      San Francisco, CA 94105
Phone: 214.220.7893                   Phone: 415.979.6962
Email: davidcarter@velaw.com          Email: mnatenson@velaw.com

*Counsel for Amicus Curiae Earl Blumenauer*

**CERTIFICATE OF SERVICE**

I certify that on June 10, 2026, I caused a true and accurate copy of the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit through the CM/ECF system. I certify that the participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Meghan Natenson
Meghan Natenson
*Counsel for Amicus Curiae*
*Earl Blumenauer*

20

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.     This motion complies with the type-volume limitations of Federal Rules of Appellate Procedure 27(d)(2) because it contains 4,083 words, as determined by the word-count function of Microsoft Word, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

2.     This motion complies with the type-face requirements and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) and D.C. Circuit Rules 32.1 and 32.2 because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

> */s/ Meghan Natenson*
> Meghan Natenson
> *Counsel for Amicus Curiae*
> *Earl Blumenauer*