[ORAL ARGUMENT NOT YET SCHEDULED]

**No. 25-5279**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, *On Their Own and On Behalf of Others Similarly Situated*,

*Plaintiffs-Appellees*,

v.

MARCO A. RUBIO, in his official capacity as Secretary of the United States Department of State, *et al.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court for the District of Columbia
No. 1:18-cv-1388 (Hon. Tanya S. Chutkan)

---

### REPLY BRIEF FOR DEFENDANTS-APPELLANTS

---

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
JOSHUA A. CLEM
LARISSA K. JOHNSON
Trial Attorneys

i

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ARGUMENT ...............................................................................................................2

   I.   The District Court Abused its Discretion in Certifying the *Allies* Class..........2

     A.  Class Members Do Not Meet the Commonality and Typicality Requirements....................................................................................................3

     B.  The Court Abused its Discretion in Certifying the *Allies* Class Under Rule 23(b)(2)..................................................................................................11

   II.  The District Court Erred in Granting Summary Judgment to the Allies on Their Unreasonable Delay Challenge...............................................................14

     A.  The Allies' Proposed Standard of Review and Applicability of the *Allies 2024 Appeal* is Incorrect. .........................................................................15

     B.  The *TRAC* Factors Weigh in Favor of the Agencies..............................17

   III.   The District Court Erred in Determining That a Refusal Under 8 U.S.C. § 1201(g) Does Not Discharge the Duty Owed Under the Acts. ...........................21

   IV.   The District Court Abused its Discretion in Partially Denying Modifications to the Injunction. ........................................................................24

CONCLUSION.........................................................................................................27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Afghan & Iraqi Allies v. Blinken*,
103 F.4th 807 (D.C. Cir. 2024) ............................................................... 16, 17

*Agostini v. Felton*,
521 U.S. 203 (1997) .........................................................................26

*ALPO Petfoods, Inc. v. Ralston Purina Co.*,
913 F.2d 958 (D.C. Cir. 1990).........................................................25

*Al-Tamini v. Adelson*,
916 F.3d 1 (D.C. Cir. 2019)..............................................................24

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016)........................................ 12, 15, 25, 26

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001)........................................................17

*Da Costa v. Immigr. Inv. Program Off.*,
80 F.4th 330 (D.C. Cir. 2023) ..........................................................15

*Daskalea v. Washington Humane Soc.*,
275 F.R.D. 346 (D.D.C. 2011) ...........................................................8

*Doe v. Hampton*,
566 F.2d 265 (D.C. Cir. 1977)..................................................... 19, 20

*Ebanks v. Shulkin*,
877 F.3d 1037 (Fed. Cir. 2017) .........................................................12

*Fort Sumter Tours, Inc. v. Babbitt*,
202 F.3d 349 (D.C. Cir. 2000)..................................................... 15, 21

*Garcia v. Johanns*,
444 F.3d 625 (D.C. Cir. 2006).............................................................2

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) ...........................................................................3

*Godsey v. Wilkie*,
31 Vet. App. 207 (2019).......................................................................7

*Gulf Oil Corp. v. Brock*,
778 F.2d 834 (D.C. Cir. 1985)...........................................................25

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952) ............................................................... 5, 10, 18

*Horne v. Flores*,
557 U.S. 433 (2009) ............................................................... 25, 26

*Hussein v. Beechcroft*,
  782 F. App'x 437 (6th Cir. 2019)................................................................23
*In re Barr Lab'ys, Inc.*,
  930 F.2d 72 (D.C. Cir. 1991)........................................................... 12, 20
*In re Core Commc'ns, Inc.*,
  531 F.3d 849 (D.C. Cir. 2008)...................................................................17
*In re People's Mojahedin Org. of Iran*,
  680 F.3d 832 (D.C. Cir. 2012)...................................................................21
*In re Pub. Emps. for Env't. Resp.*,
  957 F.3d 267 (D.C. Cir. 2020)...................................................................17
*In re United Mine Workers of Am. Int'l Union*,
  190 F.3d 545 (D.C. Cir. 1999)...................................................................17
*J.D. v. Azar*,
  925 F.3d 1291 (D.C. Cir. 2019)...................................................................8
*Jamie S. v. Milwaukee Pub. Sch.*,
  668 F.3d 481 (7th Cir. 2012) ....................................................................11
*Janko v. Gates*,
  741 F.3d 136 (D.C. Cir. 2014)...................................................................13
*Karimova v. Abate*,
  No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) ................... 15, 22, 23
*LaShawn A. v. Barry*,
  87 F.3d 1389 (D.C. Cir. 1996)...................................................................17
*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ....................................................................................9
*López Bello v. Smith*,
  651 F.Supp.3d 20 (D.C. Cir. 2022) ...........................................................13
*Matthews v. Diaz*,
  426 U.S. 67 (1976) ....................................................................................10
*Nat'l Fed'n of Fed. Emps.-IAM v. Vilsack*,
  681 F.3d 483 (D.C. Cir. 2012)...................................................................21
*Nine Iraqi Allies v. Kerry*,
  168 F. Supp. 3d 268 (D.D.C. 2016) ..........................................................23
*Nio v. DHS*,
  323 F.R.D. 28 (D.D.C. 2017) .......................................................................7
*NLRB v. Harris Teeter Supermarkets*,
  215 F.3d 32 (D.C. Cir. 2000)....................................................................26
*Parker v. Bank of Am., N.A.*,
  99 F. Supp. 3d 69 (D.D.C. 2015)................................................................6
*Pigford v. Glickman*,
  206 F.3d 1212 (D.C. Cir. 2000)...................................................................5

iv

*Pro Football, Inc. v. Harjo*,
    565 F.3d 880 (D.C. Cir. 2009)..................................................................15
*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*,
    174 F.4th 81 (D.C. Cir. 2026) .................................................................12
*Trump v. Hawaii*,
    585 U.S. 667 (2018) .................................................................................10
*U.S. ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) .................................................................................10
*United States v. Curtiss-Wright Exp. Corp.*,
    299 U.S. 304 (1936) .................................................................................10
*United States v. Regenerative Scis., LLC*,
    741 F.3d 1314 (D.C. Cir. 2014)...............................................................21
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................... 3, 4, 5, 6, 11

Statutes

5 U.S.C. 701(a)(2)...........................................................................................9
8 U.S.C. § 1201(g) .................................................................................. 21, 22
Afghan Allies Protection Act of 2009, Pub. L. No. 111-8,
123 Stat. 807 (2009)...................................... 1, 3, 5, 9, 11, 13, 19, 20, 23
Refugee Crisis in Iraq Act of 2007, Pub. L. No. 110-181,
122 Stat. 395 (2008)...................................... 1, 3, 5, 9, 11, 13, 19, 20, 23

Rules

FED. R. CIV. P. 23 ........................................................ 1, 3, 4, 8, 13, 14

Regulations

22 C.F.R. § 42.81(a)............................................................................ 22, 23

v

# GLOSSARY OF ABBREVIATIONS

AAPA  Afghan Allies Protection Act of 2009,
Pub. L. No. 111-8, 123 Stat. 807 (2009)
(codified as note to 8 U.S.C. § 1101)

Agencies  Defendants-Appellants

Allies  Plaintiffs-Appellees

Allies' Br.  Brief for Plaintiffs-Appellees
Doc. No. 2176639, June 3, 2026

Br.  Opening Brief for Defendants-Appellants
Doc. No. 2171784, May 4, 2026

DOS  Department of State

Dkt.  District Court Docket Citation in *Afghan & Iraqi Allies v. Rubio*, No. 1:18-cv-01388-TSC (D.D.C. June 12, 2018)

JA  Joint Appendix
Doc. No. 2171785, May 4, 2026

RAP  Revised Adjudication Plan of 2025

RCIA  Refugee Crisis in Iraq Act of 2007,
Pub. L. No. 110-181, 122 Stat. 395 (2008),
(codified as note to 8 U.S.C. § 1157)

SIV  Afghan and Iraqi Special Immigrant Visa

USCIS  U.S. Citizenship and Immigration Services

## INTRODUCTION

The Agencies remain in compliance with the statutory requirements under the AAPA and RCIA (the Acts). Throughout this litigation, the Agencies adjudicated and issued Special Immigrant Visas (SIVs) to qualifying Afghan and Iraqi applicants who have received Chief of Mission approval. No argument in the Allies' Answering Brief disputes the fulfillment of that obligation. Instead, the Allies misconstrue the discretion Congress provided the Secretaries of State and Homeland Security to take longer than nine months to complete adjudication of "high-risk cases for which satisfaction of national security concerns requires additional time." RCIA § 1242(c)(2); AAPA § 602(b)(4)(B). The Allies fail to reconcile congressional intent and the rules of FED. R. CIV. P. 23 with the district court's application of a rule of reason that necessarily cannot apply to certain members of the class as defined. They also fail to note the myriad individual circumstances that can contribute to alleged unreasonable delays in SIV processing. The Allies' speculative arguments and misunderstanding of the statutory text also serve to undermine their unsuccessful argument that this appeal is an attempt to relitigate issues already presented before this panel. As the Agencies and this Court know, this is an appeal of final judgment on incorrectly decided legal issues.

1

## ARGUMENT

### I.    The District Court Abused its Discretion in Certifying the *Allies* Class.

The district court certified the *Allies* class and erroneously ignored the inapplicability of the nine-month timeline to an entire subset of individuals necessarily included in the class—those high-risk cases described in the Acts. In certifying the class, the district court further failed to account for a plethora of divergent factual circumstances that impact SIV processing for individual applicants, including their location, ability to travel outside of Afghanistan, their responsiveness to requests from the government, whether administrative processing is needed and what type, and the nature of their qualifying employment and the government's ability to properly verify that employment history. The Allies and the district court rely on the Agencies' purported inability to identify specific "high risk" class members to the district court yet fail to cite any provision of the Acts supporting such a requirement. The district court thus upheld a blanket assertion that all applications taking longer than nine months to adjudicate are similarly situated. Ultimately, the Allies' arguments do nothing to cure this flawed analysis. *See Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006) (holding that although the circuit court must review a class certification "conservatively," "[f]ailure to adequately demonstrate any of the four [Rule 23 factors] is fatal to class certification.").

### A. Class Members Do Not Meet the Commonality and Typicality Requirements.

The commonality and typicality requirements "serve as guideposts" to determine "whether the named Plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 159 n.15 (1982). The district court did not properly consider the differences between class members and abused its discretion in determining that class members meet the commonality and typicality requirements of FED. R. CIV. P. 23.

> #### i. Commonality Is Not Met Just Because Each Class Member Asserts an Unreasonable Delay Claim.

The district court improperly conflated the issue brought by class members in finding commonality. The Allies similarly rest their arguments in support of class certification on the premise that all class members have experienced the same program-wide delay. *See* Allies' Br. 16–18. But despite their contentions that this "single common question will do," the Supreme Court in the same cited case looked to dissimilarities within the proposed class to determine *if that single question even exists*. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

The statutory construction provisions of the Acts explicitly *remove* high risk cases from the nine-month timeline upon which the district court based its delay finding. *See* AAPA § 602(b)(4), RCIA § 1242(c)(2). Congress' intent is clear—the

verbiage "[n]othing in this section" clearly signals that no provision, including the directive to increase efficiency and the precatory nine-month timeline, is applicable when the Secretaries of State or Homeland Security, in their discretion, determine that a case requires additional security vetting and review. While the Allies complain that the Agencies are taking "infinite time" to process SIV applications, they point to no authority that divests the Secretaries of the ability to process an application until national security concerns are satisfied. *See* Allies' Br. 24, n.5; *see also* Br. of Amicus Curiae Rep. Blumenauer, Doc. No. 217, at 6–18 (failing to discuss this carveout when describing Congressional intent). Further, they point to nothing in the statute that limits *when* the Secretaries may designate cases during the SIV adjudication process. *See* Allies' Br. 23.

The class cannot be saved merely because the district court certified a class so generally as to make a hypothetical question literally common. The commonality language of FED. R. CIV. P. 23 "is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349. By ignoring the clear mandate *not* to limit Secretarial authority to deem a case high-risk, the district court put its thumb on the scale in favor of the Allies by removing the thrust of that mandate—opting instead to assert that all class member applications were unreasonably delayed because Congress directed (or strongly suggested) that such applications be processed and adjudicated in nine months. *See* JA120. This

4

finding is divorced from the statutory reality—Congress explicitly mandated that *nothing* in the provisions of the Acts, including the timeline and efficiency directive, require adjudication within a certain time other than what is required to *satisfy* the Agencies' national security concerns. *See* AAPA § 602(b)(4); RCIA § 1242(c)(2).

Furthermore, the district court and the Allies erroneously rely on the supposition that "the difference between a high-risk applicant and one that is not … is nonetheless insufficient to undermine commonality here given the generality of the Allies' claim, the indeterminate nature of what it means to be high-risk, and the fact that the court's relief allows Defendants flexibility in processing high-risk applications." JA119; Allies' Br. 24. To begin, the determination of what is "high-risk" is necessarily committed to Executive discretion. *See, e.g.*, *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-90 (1952). It is not "indeterminate" merely because the agency must contend with a multitude of national security risk assessments that vary between the factual circumstances of class members. The fact that the defined class fails to account for this discretion, preserved by the Acts, is further indication that the district court erred in concluding that class members demonstrated commonality. *Wal-Mart* specifically cautions about generalizations that necessarily manufactures commonality where none might exist. 564 U.S. at 349. The Allies' reliance on *Pigford v. Glickman*, 206 F.3d 1212 (D.C. Cir. 2000), a case involving a question about whether the court abused its discretion in approving a consent decree

5

that established the class, is inapposite because it does not speak to the broad discretion that the Acts grant the Secretaries.

The Allies also err in concluding that the Agencies "would need to distinguish such cases to conclude they are not subject to the nine-month timeline." Allies' Br. 23. While arguing that the Agencies should be prohibited from allowing "an undefined, discretionary label … to defeat certification", the Allies have ignored that the Acts themselves vest the Agencies with that discretion. Moreover, this discretionary determination changes the landscape of any duty purportedly owed to class members. While some subset of the class may be entitled to speedier adjudications than others, the class as defined encompasses all Afghan or Iraqi SIV applications pending "government action for longer than nine months on or before November 30, 2022." JA170. This necessarily includes any individual who, during the application process, is deemed high-risk such that satisfaction of national security requires additional time for further investigation, review, and vetting. The class definition inappropriately fails to account for agency discretion in this determination by concluding there is a common question regarding the duty owed, timeline governing reasonableness of processing speed, and disparate factual circumstances between applicants. Consequently, resolution of the purported common question cannot resolve class members' claims in "one stroke." *See Wal-Mart*, 564 U.S. at 350; *see, e.g., Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69

(D.D.C. 2015) (Jackson, J.) ("[B]inding precedent in this jurisdiction establishes that a plaintiff must allege that the policy or practice affects all members of the class … and that anything less is not faithful to the Supreme Court's interpretation of Rule 23(a).").

The Allies cite *Nio v. DHS*, 323 F.R.D. 28 (D.D.C. 2017), and *Godsey v. Wilkie*, 31 Vet. App. 207 (2019), to assert that factual differences between class members need not defeat the commonality requirement. These cases are inapposite. In *Nio*, class members sought naturalization under 8 U.S.C. § 1440. *Nio*, 323 F.R.D. at 30. The class in *Godsey* sought certification of their agency appeals and broadly challenged the time taken under the Board of Veterans' Appeals' legacy system for docketing appeals. *See* 31 Vet. App. At 314; *see also* 38 U.S.C. § 7107(a)(1); 38 C.F.R. § 7105(a) (2018). However, unlike the statutes at issue there, the Acts explicitly distinguish between common and high-risk applications and preserve the Agencies' discretion to make such determinations at any point in the SIV adjudication process. This distinction places members of the *Allies* class on different legal footing since the Acts remove the precatory timeline and efficiency directive from the analysis of whether certain applicants have experienced unreasonable delays. Ultimately, the Acts create the possibility of "different answers" that the naturalization statute and VA benefits statutes in *Nio* and *Godsey* did not.

### ii. Typicality is Not Met Simply Because Class Representatives and Members Can Ground Their Claims in the Same Statutes.

The district court erred in finding the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3); *see* Br. 29–31. Typicality requires "the claims or defenses of the representatives and the members of the class stem from…a unitary course of conduct" or be "based on the same legal or remedial theory." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (internal quotation omitted). The broad class definition is ultimately fatal to the typicality requirement. *See, e.g.*, *Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346, 358-59 (D.D.C. 2011) (holding typicality not met when "members of the proposed class had suffered a wide range of deprivations, had been provided with different kinds of notice at different points in time, and had claimed distinct injuries…").

The Allies incorrectly argue that the Agencies failed to show any one class representative received a "high risk" designation and conclude *none* of the delays in class member SIV processing were subject to the exception. Allies Br. 24–26. This argument misapprehends the nature of the designation. It is clear from the text of the Acts that Congress did not intend to divest the Secretaries of their plenary authority to make that designation, nor to require that the Secretaries preliminarily identify which cases are high risk upon commencement of the process for seeking an SIV. *See also id.* at 21–24. Indeed, part of the difficulty in determining whether a class

8

member requires additional processing for national security purposes lies in the overbroad treatment of the class definition. Whereas the Allies and the district court assume that all SIV applicants are on equal footing at the time they file an application, the reality is that the factual differences between the applicants are so diverse as to render impossible any consistent archetyping of the "high risk" applicant. Further, whether an SIV applicant is high risk is not a static determination; the Agencies may obtain information during the SIV process that is relevant to the risk posed by an applicant. SIV processing requires multi-agency cooperation throughout the COM and visa interview process, which includes the exchange of information for vetting mechanisms. Both information gleaned from the individual applicant and through Executive functions may require an applicant to undergo further review and additional vetting to satisfy national security concerns—a decision ultimately vested in the Secretaries. *See* AAPA § 602(b)(4); RCIA § 1242(c)(2); *see also* 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 191–92 (1993).

Nor do the Acts require the Secretaries to publicly identify which specific applicants are subject to additional security screening. Nowhere in either statute did Congress mandate the sharing of agency targets, sources, methods, and means for determining national security risks and standards, and such a requirement would be highly irregular considering the sensitive nature of these processes and the

9

Executive's exclusive role relating to the exclusion of aliens. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936); *see, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 705 (2018) ("The Proclamation is expressly premised on legitimate purposes: prevent entry of nationals who cannot be adequately vetted …."); *Matthews v. Diaz*, 426 U.S. 67, 81 (1976) (immigration policy involves "changing political and economic circumstances" that are best suited for Legislative or Executive decision-making); *Harisiades*, 342 U.S. at 588-90 (recognizing that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations" and that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

The Allies' reliance on *Nio* and *DL v. District of Columbia* is unavailing for the same reasons they were unavailing in response to the Agencies' refutation of the class commonality. Once again, the Allies underscore the commonality and typicality of their most general claim—e.g., that the Agencies have unreasonably delayed adjudication of all class member applications as typified by the class representatives. *See* Allies Br. 25–26. However, whether unreasonable delay occurred in any class member's application depends substantially on whether the Agencies identified a need for additional review or security vetting during the SIV

10

process. *See* AAPA § 602(b)(4)(B); RCIA § 1242(c)(2). The Allies fail to refute why such determinations at any step in the process, including at the end, disturb this analysis.

## B. The Court Abused its Discretion in Certifying the *Allies* Class Under Rule 23(b)(2).

The district court further erred in certifying the class under Rule 23(b)(2). "The key to the (b)(2) class is the *indivisible* nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to *all* of the class members or as to *none* of them." *DL v. D.C.*, 713 F.3d 120, 125 (D.C. Cir. 2013) (citing *Wal-Mart*, 564 U.S. at 360) (emphasis added). It is not sufficient for class plaintiffs to "superficially structure[] their case around a claim for class-wide injunctive and declaratory relief…if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made…." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498–99 (7th Cir. 2012).

The district court erroneously concluded that the "Defendants have unreasonably delayed the adjudication of all putative class members' SIV applications" and, thus refused to act in a manner "generally applicable to the class." JA129 (internal quotations and citations omitted). But as previously briefed, the Agencies cannot engage in "systemic disregard," *see id.*, of a congressional directive when acting consistent with that directive's own express preservation of secretarial

11

discretion to take longer than nine months. *See* Br. 33–34. The Allies have failed to provide any arguments or case law refuting this categorical problem with the district court's certification. In citing *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026), they contend that the district court correctly applied Rule 23(b)(2) to address systemic harm. Allies' Br. 27. However, a stay panel in that case had expressly narrowed the class definition from all individuals subject to an identified presidential proclamation to, in part, exclude those who would not be statutorily eligible for relief. *Refugee & Immigrant Ctr. for Educ. & Legal Servs.*, 174 F.4th at 113; *see also id.* at 113 ("The scope of a Rule 23(b)(2) class [] tracks the extent of the violation."). Here, the district court likewise failed to appropriately consider the impact of the statutory exception for high-risk cases on the applicability of Rule 23(b)(2). JA129.

Just as the district court abused its discretion by concluding that the Allies refused to act on grounds that apply generally to the class, injunctive relief is not appropriate with respect to the defined class as a whole. The Allies contend that an expedited timeline for all SIV adjudications is necessary to avoid "line-jumping." Allies' Br. 28 (citing to *Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017); *Allies I* at 819; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016); *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Firstly, *none* of the cited cases (other than *Allies*) are class actions. The fact that individual mandamus claims

would not resolve alleged underlying problems does not mean the district court can disregard class certification requirements under FED. R. CIV. P. 23. This is for good reason, as cases compelling agency action necessarily rest on a myriad of individual circumstance, and is particularly true here where some class members may become subject to additional security review.

The Allies also fail to recognize that the creation of the class has created its own line-jumping concerns because class members may be prioritized ahead of non-class members that are in front of them in queue. Contrary to the district court's policy-based contention that Congress sought to hold the Agencies to the nine-month timeline and efficiency directive in *all* cases, *see* JA87, the Agencies rely on the plain meaning of the text as legislated. *See López Bello v. Smith*, 651 F. Supp. 3d 20, 35 (D.C. Cir. 2022) (noting, "[t]he preeminent cannon of statutory interpretation requires [the Court] to presume that [the] legislature says in a statute what it means and means in a statute what it says there.") (quoting *Janko v. Gates*, 741 F.3d 136, 139-40 (D.C. Cir. 2014)) (alterations in original). The Allies' and the district court's lack of serious contention with the statutory construction provision is telling. The ordinary meaning of the phrase "*[n]othing in this section shall be construed to limit the ability of a Secretary ….*" prohibits the kind of broad, one-size-fits-all injunctive relief the district court fashioned in finding the requirements of Rule 23(b)(2) were met. *See* AAPA § 602(b)(4)(A); RCIA §1242(c)(2) (emphasis added).

13

Finally, the Allies contend, "[e]ven if Defendants later deem a class member 'high-risk,' that would not retroactively render their prior delay reasonable ….". Allies' Br. 29. But this contention highlights the fundamental problem with the class as defined—the highly individualized nature of the national security assessment committed to the Secretaries' discretion by the Acts. Ultimately, the Allies miss the point. The decision to certify the class relied upon application of a stringent rule of reason that necessarily cannot apply to certain members of the class as defined or adapt to individualized circumstances of class members. This erroneous conclusion consequently renders the class certification under FED. R. CIV. P. 23(b)(2) an abuse of discretion.

## II.    The District Court Erred in Granting Summary Judgment to the Allies on Their Unreasonable Delay Challenge.

Congress did not mandate a duty to process high-risk applications within a particular timeline, and the district court erred in finding that the precatory timeline and efficiency directive within the Acts were sufficient to find both an unreasonable delay and basis for requiring processing benchmarks for the class. *See* Br. 35–38. The Allies fundamentally misunderstand this assertion and the Agencies' arguments in their brief. *See* Allies' Br. 29–33.

The Agencies do not argue there is no obligation to adjudicate SIV applications, nor that violation of a clear statutory deadline is required to find unreasonable delay. *See id.* at 31–33. Rather, the Agencies dispute the circumstances

14

in which that discrete, nondiscretionary duty is rendered. *Id.* at 35–38; *see Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at \*4 (D.C. Cir. July 24, 2024) (holding that a denial under 8 U.S.C. § 1201(g), INA § 221(g), executes the duty to adjudicate a visa application). The Allies instead minimize the applicability of *Karimova* and rely on case law about mandatory duties owed that are not in conflict with the Agencies' arguments. *See* Allies' Br. 31–33 (citing cases). They additionally minimize the reliance of the district court on the precatory timeline as a rule of reason in its *TRAC* analysis. Allies' Br. 31, n.9; *see also id.*, n.13. Because they don't engage with these fundamental points, their response does not disturb the Agencies' arguments.

### A. The Allies' Proposed Standard of Review and Applicability of the *Allies 2024 Appeal* is Incorrect.

The standard of review for an issue decided on summary judgment is *de novo*. *Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 354 (D.C. Cir. 2000). In *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 339 (D.C. Cir. 2023), this Court reviewed a district court's determination that the Allies failed to state an unreasonable delay claim *de novo*. The Allies attempt to elevate the well-settled standard of review in this instance from *de novo* to abuse to discretion. Allies' Br. 34. In contrast, the Allies' cited case *Pro Football, Inc. v. Harjo*, 565 F.3d 880, 883 (D.C. Cir. 2009) does not concern an APA unreasonable delay claim, and *Am. Hosp. Ass'n*, 812 F.3d at 190, explicitly states "[w]e review the threshold requirements for

15

mandamus jurisdiction de novo." *See* Allies' Br. 36. Any endeavor to ask this Court to review the district court's *TRAC* analysis for abuse of discretion is thus inconsistent with long-standing circuit precedent.

The Allies' citation to this Court's opinion in *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 814 (D.C. Cir. 2024) ("*Allies 2024 Appeal*") and argument that it is binding on the question on both the standard of review and the *TRAC* analysis is a mischaracterization of this Court's prior opinion. *See* Allies' Br. 37–38. This Court discreetly addressed whether the district court abused its discretion in deciding to modify rather than terminate the injunction in its partial denial under the Rule 54(b) standard. *See Allies 2024 Appeal*, 103 F. 4th at 814. That decision does not bind this Court in evaluating the district court's grant of summary judgment as to the unreasonable delay allegation. This Court limited its holding to whether the district court abused its discretion in denying the Agencies' motion seeking termination of the injunction under Rule 54(b). *See Allies 2024 Appeal*, 103 F. 4th at 815 ("The parties here make sweeping arguments, but the question before us is narrow. In seeking termination of the injunction, the government did not contend that the district court impermissibly found unreasonable delay in 2019 or impermissibly entered the injunction in 2020. Instead, it sought relief based on changed circumstances between 2020 and 2022. So, we take the 2019 and 2022 orders as a given, and we consider only whether the district court reasonably responded to the

16

changes."). The Allies' citation to *LaShawn A. v. Barry*, 87 F.3d 1389, 1393-95 (D.C. Cir. 1996) is inapposite because "the *same* issue" is not being presented a second time. Allies' Br. 37. Consequently, the law-of-the-case doctrine does not require this Court to import its holding as to the appropriateness of the district court's determination pursuant to FED. R. CIV. P. 54(b) into the determination of whether the *TRAC* factors weigh in favor of the Agencies or Allies under the *de novo* standard that applies to an appeal on final judgment. *See also Cobell*, 240 F.3d at 1096 ("The legal standard used to determine whether agency delay is unreasonable is a question of law to be reviewed *de novo* by this court.").

### B. The *TRAC* Factors Weigh in Favor of the Agencies.

*TRAC* factors one and two, when weighed together, balance in favor of the Agencies. As described by this Court, the first *TRAC* factor— "the time agencies take to make decisions must be governed by a rule of reason"—is the "most important" consideration under *TRAC*. *Allies 2024 Appeal*, 103 F.4th at 816 (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). Additionally, it is the second *TRAC* factor—the existence of a Congressional indication of speed—that "gives content to the first." *Id.* (citing *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999). However, the "rule of reason," even coupled with a Congressional indication of speed, remains flexible. *See In re Pub. Emps. for Env't. Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020). Thus, a nine-month

17

"rule of reason" for all SIV applications is too stringent when the complexity of the process and carveouts in the Acts are considered.

The Congressional indication of speed, from the Allies' and the district court's perspective is that every application should be held to the nine-month timeline. *See, e.g.*, JA84–88; Allies Br. 39. This ignores that Congress did not intend its precatory guidance on the speed of adjudications and directive to increase efficiency of application processing to infringe on the Executive function—namely, the assessment and satisfaction of national security concerns. *See, e.g.*, *Harisiades*, 342 U.S. at 588-90 (discussing that immigration policy is often exclusively entrusted to the political branches).

The Allies also argue that in the absence of the nine month timeline, the Agencies "do not indicate any rule of reason that *does* govern their processing speed …." Allies Br. 40. Congress explicitly, through this provision, preserves the Secretaries' discretion to determine the contours of national security concerns, and does not limit that discretion to an indication of speed. Indeed, it would be odd for Congress to preserve the Executive function of *satisfying* national security concerns while simultaneously requiring the Agencies to process SIVs on an expedited timeline. Congress' approval of additional time is expressly linked to the "satisfaction" of national security concerns—a determination left to the Secretaries despite legislative efficiency goals. While the Allies may lament the broad discretion

18

vested in the Secretaries, they and the district court must contend with the explicit construction of the statute.

The Allies further argue that the use of "should" is intended as mandatory in context. *See* Allies Br. 38. Nevertheless, this provision cannot be mandatory as to all SIV adjudications considering that the construction provision removes applicability of both the timeline and the efficiency directive from the analysis in cases requiring additional processing for national security purposes. *See* AAPA § 602(b)(4)(B); RCIA § 1242(c)(2). In finding unreasonable delay, the district court adopted the timeline as the stringent governing rule of reason for all cases. *See* JA99 ("[T]his court used the 9-month timetable to evaluate the reasonableness of the delay experienced by applicants."); *see also* JA84–88. The Agencies agree that "the construction of the statute makes clear that Congress was patently aware of the national security implications when it set the 9-month time limit …." JA86. Indeed, the very existence of the construction provision that *removes* the timeline and efficiency directive from cases deemed high-risk demonstrates the legislative intent to preserve the Secretaries' discretion in national security matters, despite efficiency goals. Any attempt to suggest the contrary is unavailing. Allies Br. 38 n. 11 (citing cases in Agencies' brief). The Allies' reliance upon *Doe v. Hampton*, 566 F.2d 265 (D.C. Cir. 1977) is inconsequential. There, this Court found that "should" is not by *itself* determinative of a nonmandatory provision, the verbiage should be looked at

in light of the provision's language, context, intent, and any extrinsic evidence. *Id.* at 281–82. That is what the Agencies ask of this Court.

The balance of the remaining factors favors the Agencies. *See* Br. 44–46. This Court has emphasized the primary role of the government in determining how to direct their scarce and finite resources. *See In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 ("The agency is in a unique—and authoritative—position to ... allocate its resources in the optimal way."). Here, both the Congressional mandate for the Agencies to conduct "a background check and appropriate screening" on all SIV applicants, *see* AAPA § 602(b)(1)(D); RCIA § 1244(a)(4), as well as the explicit removal of the precatory timeline and efficiency directive from the process when the Secretaries determine that national security concerns must be satisfied, *see* AAPA § 602(b)(4)(B); RCIA § 1242(c)(2), shows Congress' deference to the Agencies on the allocation of resources. To hold otherwise usurps the Agencies' ability to manage competing priorities and scarce resources. Furthermore, divesting the Secretaries with the discretion to balance speed and national security concerns is highly prejudicial because it is directly contrary to Congress' explicit intent as stated in the Acts. Congress' awareness of the government's many responsibilities when providing such discretion thus supports that the factors favor the Agencies when properly considering the Acts as a whole rather than only the reference to nine

20

months. *See* Allies' Br. 43 (citing *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012)).

### III. The District Court Erred in Determining That a Refusal Under 8 U.S.C. § 1201(g) Does Not Discharge the Duty Owed Under the Acts.

The standard of review of the district court's determination on summary judgment that 8 U.S.C. § 1201(g) refusals are within the bounds of the unreasonable delay analysis is *de novo*. *See Fort Sumter Tours, Inc.,* 202 F.3d at 354. The Allies misapprehend this appealed ruling as a dispute of the scope of the district court's injunction. Allies' Br. 44. The Agencies are not challenging the district court's *entry* of a permanent injunction, *see* Allies' Br. 45 (*citing United States v. Regenerative Scis., LLC*, 741 F.3d 1314 (D.C. Cir. 2014), but rather the court's inclusion of § 1201(g) denials within the grant of summary judgment to the Allies. Underlying conclusions of law, even in the injunctive relief context, are still reviewed *de novo*. *Nat'l Fed'n of Fed. Emps.-IAM v. Vilsack*, 681 F.3d 483, 488 (D.C. Cir. 2012); *see also Regenerative Scis., LLC*, 741 F.3d at 1318. The Allies' continued attempts to elevate the standard of review in this appeal—to abuse of discretion or clear error— are misguided and unsupported. *See* Allies' Br. 45.

The district court erred in applying its injunction to SIV applications that consular officers at the DOS have already refused for "administrative processing" under 8 U.S.C. § 1201(g), INA § 221(g). Under the Acts and applicable regulations, a consular officer must either issue or refuse a visa application once it has been

executed. *See* 22 C.F.R. § 42.81(a) (stating "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA … the consular officer must issue … [or] refuse the visa under INA 212(a) or INA 221(g) or other applicable law…."). A consular officer may refuse a visa application under § 1201(g) if the applicant has failed to demonstrate eligibility. Although the officer may choose in his or her discretion to reconsider a refusal under § 1201(g) based on additional information, the Acts contain no duty to do so. *See, e.g.*, *Karimova*, 2024 WL 3517852 at *4–5 (explaining that mandamus and APA relief are limited to "required agency action" and, by issuing a § 1201(g) refusal, the consular officer has already acted on an application—e.g., there is no further required action to take). The mere fact that a consular officer *may* reconsider a refusal does not render the refusal non-final, temporary, or interim. *See id*. Accordingly, the district court erred in concluding that such refusals did not constitute a final agency decision under the Acts. *See* JA49. Notably, this also bears on the district court's *TRAC* analysis, which necessarily included consideration of applications of class members who were refused under § 1201(g). *See* JA18–20.

The Allies assert, without any citation or support, that § 1201(g) refusals, for "administrative processing," are a "mandatory step incidental to the issuance of Afghan and Iraqi SIVs." Allies' Br. 45. Moreover, their characterization runs afoul of the regulations requiring officers of the DOS to either approve or deny a visa. *See*

22

22 C.F.R. § 42.81(a). Their reliance on Congressional reports does not establish that § 1201(g) refusals are merely a step in the process. *See* Allies' Br. 45–46, n.14. Rather, as they observe, Congress required reports on,

> applications that are pending due to the failure … (I) to receive approval from the Chief of Mission; (II) of [USCIS] to complete the adjudication of the Form I-360; (III) to conduct a visa interview; or (IV) to issue the visa to an eligible alien.

AAPA § 602(b)(11)(B); RCIA § 1248(f)(2). The Agencies reporting on applications refused post-interview does not concede these refusals were non-final. Instead, they confirm that the Agencies may, at some other point, revisit the previous denial should further information become available.

In any regard, that an applicant previously denied under § 1201(g) may receive further consideration, does not establish that they are entitled to it under the Acts. The Allies' reliance on *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016) is unavailing. In that decision, the district court determined that "administrative processing is not an opportunity for reconsideration of a decision but is a prerequisite to reaching the decision itself—a crucial distinction." *Id*. at 284. However, the district court's determination there is at odds with *Karimova*, which, while unpublished, was decided by this Court after *Nine Iraqi Allies*. In *Karimova*, this Court found that a refusal under § 1201(g) discharged the only duty owed. *See Karimova*, 2024 WL 3517852, at *4; *see also Hussein v. Beechcroft*, 782 F. App'x 437, 442 (6th Cir. 2019) (holding the § 1201(g) refusal had "discharged [the

23

agency's] duties under the law."). The Allies' attempt to distinguish *Karimova* is likewise unavailing. The Acts merely include steps *incidental* to the issuance of SIVs; however, nothing in the Acts requires § 1201(g) refusals incident to SIV issuance. The fact that *Karimova* did not concern a visa application under the Acts is similarly irrelevant to whether § 1201(g) refusals should be considered in an injunctive relief plan tailored to actions determined to be unreasonably delayed. *See* Allies Br. 47 n.15. At base, *Karimova* supports that an action cannot be delayed if it has been completed.

### IV. The District Court Abused its Discretion in Partially Denying Modifications to the Injunction.

The district court abused its discretion when it failed to modify the 2020 AAP in any substantial way based on the significant changes in circumstances since summary judgment was entered, instead leaving in place rigid benchmarks that have become all but impossible to meet in light of the changes.[1]

In November 2022, the district court granted modification of the AAP "[i]n light of the court's renewed unreasonably delay analysis and the Agencies technical alterations to the SIV visa adjudication process." JA166. The district court *agreed*

---

[1] The Agencies deny any attempt from the Allies to argue they have "forfeited" arguments in the opening brief. *See* Allies' Br. 52. While the Agencies disagree that they mentioned any argument in a skeletal way, they maintain that it is also the district court's role to narrowly tailor its injunction to the harm that it has found, thus making the arguments presented in *Al-Tamini v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) irrelevant.

that "intervening factual developments warrant modification of the court's judgment and the 2020 Plan." JA160-61. Nevertheless, the district court adopted few token changes between the 2020 AAP and the 2025 RAP. No significant timing benchmarks were changed, leaving the Agencies to continue compliance with onerous timetables despite acknowledging the changed circumstances. Tracking and reporting requirements barely differ from the AAP and RAP: the Agencies have only ten additional days to lodge progress reports. Mandatory explanation and proposed remedies in the event of government failure to meet the onerous benchmarks also remained minimally changed.

The Allies contend that the Agencies' proposed modifications sought to relieve them of "any obligation to move forward class members at two significant steps of the process." Allies' Br. 48. Even if they are correct that the Agencies' proposal was not "narrowly tailored" to the circumstances, that does not remove the district court's obligation to suitably tailor an injunction to the circumstances. *See Am. Hosp. Ass'n*, 867 F.3d at 166. It is the district court's obligation to maintain an injunction "narrowly tailored" to the "harm that they address." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1990); *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 843–44 (D.C. Cir. 1985). In *Horne v. Flores*, 557 U.S. 433 (2009), the Supreme Court held that "[t]he party seeking relief bears the burden of establishing that changed circumstances warrant relief, … but once a party carries

25

this burden, *a court abuses its discretion 'when it refuses to modify an injunction …* *in light of such changes*.'" 557 U.S. at 447 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)) (emphasis added); *contra* Br. of Amicus Curiae Ambassador Crocker, Doc. No. 2178178, at 29 ("Changed circumstances may require practical adjustments, and the Revised Adjudication Plan accomplishes just that…."). That is what occurred here: the Agencies established changed circumstances, but the district court refused to substantively modify the injunction.

Notwithstanding the Agencies' objections regarding the workability of the AAP, and now RAP, the district court again relied on the precatory timeline of the statute and the assertion that timelines were necessary to prevent indefinite delay of applications. *See* JA179-80. However, in adopting the magistrate's rulings, the district court failed to address whether the previous benchmarks were still workable considering significantly changed circumstances. To do so was legal error and, thus, an abuse of discretion. *Am. Hosp. Ass'n*, 867 F.3d at 166; *see also NLRB v. Harris Teeter Supermarkets*, 215 F.3d 32, 35 (D.C. Cir. 2000) (no basis to modify an injunction where defendant did "no more than complain about harms inherent in all injunctive restraints."). Here, even if the district court was justified in maintaining an injunction, it still had to account for whether its injunctive relief was "suitably tailored to changed circumstance[s]." *Rufo*, U.S. at 393. It did not do so here.

26

Ultimately, the district court's denial of the Agencies' proposed modifications does not mean it was appropriate to essentially maintain the status quo.

Thus, alternatively, this Court should set aside the district court's order adopting the RAP and remand to the district court with instructions to enter a new adjudication plan that contains modifications consistent with its November 2022 order.

## CONCLUSION

For the foregoing reasons, the Court should issue the Agencies their requested relief.

***

Dated: June 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JOSHUA A. CLEM
LARISSA K. JOHNSON
Trial Attorneys

*/s/ Jaime A. Scott*
JAIME A. SCOTT
D.C. Cir. Bar No. 66335
Trial Attorney
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants-Appellants*

28

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation requirement in FRAP 32(g). The length of this document is 6,495 words.

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, I electronically filed the foregoing with the Clerk of the Circuit Court by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system. I further certify that I will cause eight paper copies of this brief to be filed with the Court within two business days.

Respectfully submitted,

*/s/Jaime A. Scott*
JAIME A. SCOTT
Trial Attorney